BMR:TJS
F.# 2005R00060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

VINCENT BASCIANO,
   also known as "Vinny Gorgeous"
   and "Vinny from the Bronx," and
DOMINICK CICALE,

        Defendants.

- - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§
924(c)(1)(A)(iii),
1959(a)(1), 1959(a)(5),
2 and 3551 et seq.)

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

At all times relevant to this indictment, unless otherwise indicated:

### The Enterprise

1.   The members and associates of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family"), also known as the Massino family, constituted an "enterprise," as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The Bonanno family was an organized criminal group that operated in the Eastern District of New York, other parts of the United States and Canada.

2. The Bonanno family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Bonanno family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Bonanno family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Bonanno family. The head of the Bonanno family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Bonanno family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Bonanno family, including murder.

5. The boss, underboss and consigliere of the Bonanno family, who were sometimes referred to collectively as the

"administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Bonanno family. In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew. When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Bonnano Family was often appointed to that position in an acting capacity.

6. The Bonanno family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families. For a period of time, the boss of the Bonanno family was removed from membership within the commission.

7. From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become members of the Bonanno family. The list would be circulated to the other families based in New York City. Upon becoming "made," each

member would take an oath of "omerta," vowing never to reveal any information about the Bonanno family, its members or associates.

### The Purposes, Methods and Means of the Enterprise

8. The Bonanno family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The principal purpose of the Bonanno family was to generate money for its members and associates. This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery. The members and associates of the Bonanno family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Bonanno family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

5

10. The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

### The Defendants

12. At various times, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," was an acting boss, a captain, a soldier and an associate within the Bonanno family. The defendant VINCENT BASCIANO became the acting boss of the Bonanno family following the January 20, 2004 arrest and incarceration of Bonanno family acting boss Anthony Urso, who became the Bonanno family acting boss following the January 9, 2003 arrest and incarceration of Bonnano family official boss Joseph Massino.

13.  At various times, the defendant DOMINICK CICALE was an acting captain, soldier and associate within the Bonanno family.

### VINCENT BASCIANO's Post-Arrest Participation in the Affairs of the Bonanno Family

14.  On or about November 19, 2004, the defendant VINCENT BASCIANO was arrested based on a separate indictment and incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC").

15.  Following his November 19, 2004 incarceration, the defendant VINCENT BASCIANO used a relative on his visiting list to send messages to members and associates of the Bonanno family regarding the maintenance and ongoing operation of the Bonanno family.  Prior to his November 19, 2004 incarceration, BASCIANO used a criminal defense attorney and a private investigator to send messages regarding the maintenance and ongoing operation of the Bonnano family to a high-ranking member of the Bonanno family incarcerated at the MDC.

16.  On or about and between November 19, 2004 and December 1, 2004, both dates being approximate and inclusive, BASCIANO saw the previously mentioned high-ranking member of the Bonanno family at the federal district courthouse in Brooklyn, New York.  At that time, BASCIANO proposed the murder of a federal law enforcement official involved in investigating and

prosecuting members and associates of the Bonanno family, including BASCIANO.

17. On or about December 3, 2004, the defendant VINCENT BASCIANO met the previously mentioned high-ranking member of the Bonanno family at the MDC. BASCIANO discussed, among other things, the murder of Randolph Pizzolo, also known as "Randy." BASCIANO reported that certain members and associates of the Bonanno family, acting at his direction, had murdered Pizzolo.

18. Pizzolo's body was found on December 1, 2004 in the Greenpoint section of Brooklyn, New York. Pizzolo's body had multiple gun shot wounds. Pizzolo was an associate of the Bonanno family.

19. Following the December 3, 2004 encounter with the defendant VINCENT BASCIANO, the previously mentioned high-ranking member of the Bonanno family reported to federal law enforcement officials the substance of BASCIANO's comments regarding the proposed murder of a federal law enforcement official and the murder of Randolph Pizzolo.

20. On January 3, 2005 and January 7, 2005, the defendant VINCENT BASCIANO met with the previously mentioned high-ranking member of the Bonanno family at the MDC. Prior to those meetings, the previously mentioned high-ranking member of the Bonanno family gave his consent to federal law enforcement officials to record these conversations, and the conversations

between BASCIANO and the previously mentioned high-ranking member of the Bonanno family on January 3 and 7, 2005 were recorded.

21. During the two January 2005 meetings, the defendant VINCENT BASCIANO and the previously mentioned high-ranking member of the Bonanno family spoke about, among other things, the threat on the federal law enforcement official, the murder of Randolph Pizzolo and the ongoing and future operation of the Bonanno family.

22. During the January 3, 2005 conversation, the defendant VINCENT BASCIANO explained his justification for ordering the murder of Randolph Pizzolo. In response to the question "Why didn't you just chase him?", BASCIANO stated: "You want to know why? Because he is a f-----g dangerous kid that don't f-----g listen." Later in the conversation, BASCIANO further discussed the murder of Pizzolo: "I thought this kid would have been a good wake-up call for everybody."

COUNT ONE
(Conspiracy to Commit Murder in Aid of Racketeering)

23. The allegations contained in paragraphs 1 through 22 are realleged and incorporated as if fully set forth in this paragraph.

24. The Bonanno family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion and gambling, in

violation of New York State Penal Law, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (the making, financing, and collecting of extortionate extensions of credit), acts indictable under Title 18, United States Code, Section 1951 (extortion), acts indictable under Title 18, United States Code, Section 1955 (gambling), and acts indictable under Title 21, United States Code, Sections 841 and 846 (narcotics trafficking).

25. In or about and between November 2004 and December 1, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and DOMINICK CICALE, together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno Family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT TWO
(Murder in Aid of Racketeering)

26. The allegations contained in paragraphs 1 through 22 and 24 are realleged and incorporated as if fully set forth in this paragraph.

27. On or about December 1, 2004, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and DOMINICK CICALE, together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonnano Family, an enterprise engaged in racketeering activity, knowingly and intentionally murdered Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

## COUNT THREE
(Using, Carrying and Possessing a Firearm)

28. The allegations contained in paragraphs 1 through 22 are realleged and incorporated as if fully set forth in this paragraph.

29. On or about December 1, 2004, within the Eastern District of New York, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and DOMINICK CICALE, together with others, knowingly and intentionally used

11

and carried a firearm during and in relation to a crime of violence, to wit: the crimes charged in Counts One and Two, and knowingly and intentionally possessed such firearm, which firearm was discharged in furtherance of such crimes of violence.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

A TRUE BILL

*[signature]*
FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: *[signature]*
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN \_\_\_\_ District of \_\_ NEW YORK \_\_\_\_

\_\_\_\_ CRIMINAL \_\_\_\_ Division

## THE UNITED STATES OF AMERICA

vs.

VINCENT BASCIANO, et. al.

Defendants.

# INDICTMENT

Cr. No.
(T. 18, U.S.C., §§ 924(c)(1)(A)(iii), 1959(a)(1), 1959(a)(5), 2 and 3551 et seq.)

A true bill.

_____
*Foreman*

Filed in open court this _____ day,

of _____ A.D. 19 \_\_\_\_\_

_____
*Clerk*

Bail, $ _____

THOMAS SEIGEL, AUSA (718) 254-6339