LAW OFFICES
BARRY LEVIN
Suite 406
666 Old Country Road
Garden City, New York 11530
-----
(516) 222-4500
FACSIMILE (516) 228-8120

BARRY LEVIN                                                                 WRITER'S DIRECT LINE
----------                                                                  --------
JEANNIE L. BERGSTEN                                                         516-222-4502


April 26, 2005


Judge Nicholas G. Garaufis
United States District Court
Eastern District Of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                               Re:    United States v. Basciano
                                           Ind. No.: 05-Cr.-060

Dear Judge Garaufis,

      The defendant, Vincent Basciano, hereby replies to the government's opposition to defendant's motion requesting that he be released from the "SHU" at the Metropolitan Correctional Center ("MCC"), returned to the general population at the Metropolitan Detention Center ("MDC"), and further permitting Mr. Basciano to attend and participate in co-defendant meetings.

      On March 21, 2005, the government submitted a letter outlining the basis for Mr. Basciano's conditions of confinement. In a nutshell, the government proposed two reasons for Mr. Basciano's administrative detention.

      First, the government alleges that Mr. Basciano has a "willingness to order an obstruction of justice murder from prison." The government sets forth in the Indictment that Mr. Basciano "proposed the murder of a federal law enforcement official."  Secondly, the government alleges that the defendant ordered the murder of Randolph Pizzolo from the MDC.

      After defendant submitted his brief, which makes clear that Mr. Basciano did not conspire or solicit the murder of a federal law enforcement official, nor did he order the murder of Randolph Pizzolo from jail, the government *now* changes its theory and relies on allegations that Mr. Basciano passed messages from the MDC.

1

The one thing that remains abundantly clear from a review of the consensual recordings dated January 3, 2005 and January 7, 2005, is Mr. Basciano did not order the murder of Mr. Pizzolo while a detainee at the MDC. The recorded conversations between Mr. Massino and Mr. Basciano are replete with statements by Mr. Basciano that he does not know who killed Mr. Pizzolo.

Most importantly Mr. Basciano was arrested on November 19, 2004. He was initially sent to "reception" at the MDC on the eighth floor where he remained for approximately two weeks. During Mr. Basciano's detention in the 8th floor reception area he was denied any visitors. Mr. Basciano was not transferred from the 8th floor to the 6th floor general population until after December 1, 2004. According to the government, Mr. Pizzolo was murdered on December 1, 2004. Therefore it would have been impossible for Mr. Basciano to have received or passed messages concerning the death of Mr. Pizzolo from November 19, 2004, the date of Mr. Basciano's arrest, through December 1, 2004. Most disturbingly, the government has disclosed Mr. Basciano's visitor logs from the MDC, which reflects visitors from December 3, 2004 to December 4, 2004. Apparently the government is aware that Mr. Basciano did not have any visitors prior to December 1, 2004.

Moreover, the government conveniently forgets that during the prosecution of Joseph Massino, who is presently a government cooperator, it was disclosed at a hearing that Mr. Massino was using one of his attorneys to pass messages to "Big Lou" Tataglione. Mr. Massino was not aware that Mr. Tataglione was cooperating with the government or that he was recording all of their conversations with the attorney. The subject attorney acted as a conduit for messages between Mr. Massino and Mr. Tataglione for almost a year. The government did not require Mr. Massino to be transferred to solitary confinement, nor did the government transfer Mr. Massino from the MDC to the "SHU" at the MCC.

As amply set forth in Mr. Basciano's initial brief, the government has historically dealt with these issues by maintaining segregation between the detainees and restricting visits by those individuals who are known to the government to be passing messages. In the instant case the government is attempting to use punitive measures in violation of the due process rights of a pretrial detainee. Bell v. Wolfish, 441 U.S. 520 (1979) The government cites Hewlett v. Holmes, 459 U.S. 460 for the proposition that the Bureau of Prisons (BOP) is allowed to maintain a detainee in administrative detention indefinitely pending trial. However, in Hewlett, the Supreme Court was dealing with a post conviction inmate who had already been sentenced to a term of imprisonment.

Secondly, the prisoner in Hewlett was alleged to have participated in a riot where serious injuries were sustained by prison staff. Lastly, the security threat to the prison had been documented by a hearing before a committee. None of the factors set forth in Hewlett are even remotely relevant to the instant matter.

Initially, as previously set forth in Mr. Basciano's Memorandum of Law, pretrial detainees retain a full slate of Constitutional rights. The Second Circuit has held that pretrial detainees must be treated differently than convicted felons for Constitutional purposes. Willis v. Artuz, 301 F.3d 65 (2d 2002) Unlike the prisoner in Hewlett, who received the benefit of an

2

administrative hearing concerning his role in the prison riot, Mr. Basciano has been denied a hearing.

Additionally, unlike the prisoner in Hewlett, who was accused of participating in a prison riot that directly impacted the security of the prison, its staff and inmates; the government's allegations as to why Mr. Basciano has been placed in administrative detention concerns the passing of messages.  If one applied the government's logic with respect to the instant matter on a case-wide basis, the administrative detention areas of both the MDC and the MCC would be overflowing with thousands of pretrial detainees accused of passing messages.

Lastly, Justice Renquist, writing for the court in Hewlett, stated that administrative segregation with an accompanying hearing was appropriate pending the completion of an internal investigation into the inmate's role in the riot. Id.  Mr. Basciano has been in administrative detention in excess of 120 days. The BOP's own internal rules require all investigations to be completed within 60 days of the inmate's placement in administrative detention. 28 C.R.F. §541.22  Mr. Basciano has never received a response from the BOP as to why he is in administrative segregation.

In Wright v. Smith, the Second Circuit held that the BOP acted unconstitutionally where confinement exceeded 67 days without a hearing. Wright v. Smith, 21 F.3d 496 (2d Cir. 1994) Bluntly stated, the government has repeatedly told your affiant that Mr. Basciano will be held in the "SHU" through trial. When administrative segregation is used as a pretext for indefinite confinement, the court must intervene to protect the rights of Mr. Basciano. United States v. Gotti, 2002 WL 31015623 (E.D.N.Y.); Bell v. Wolfish, 441 U.S. 520; United States v. Gotti, 755 F.Supp. 1159  As stated by Judge Block in United States v. Gotti,

> "The Court now determines that Gotti's continued confinement in administrative detention is "punitive" because it is not "rationally  . . . connected" to the government's stated purpose for holding him in administrative detention, and is "excessive in relation to" that purpose." United States v. Gotti, 2002 WL 31015623 (E.D.N.Y.)

In conclusion, Mr. Basciano's continued confinement in the "SHU" constitutes cruel and unusual punishment in violation of Mr. Basciano's Eighth Amendment rights. As previously stated Mr. Basciano is currently under 23-hour lockdown Monday through Friday, and 24-hour lockdown on weekends. He has been denied access to a radio. All of his meals are eaten in isolation because the meals are pushed to him through a slot in the door. The windows in his cell are blacked out so that he cannot see anything other than the walls in which he is caged. Mr. Basciano is allowed no personal telephone calls and is limited to one visit per week from his wife.

Recently, an attorney duly licensed to practice law before the Eastern District with an impeccable reputation (Mr. Dermott White), requested access to Mr. Basciano through AUSA Thomas Seigel. AUSA Seigel's response to said attorney was that unless the attorney was replacing one of Mr. Basciano's existing attorneys, *AUSA Seigel* will not allow the attorney to

visit Mr. Basciano. The government would like to have this Court believe that Mr. Basciano's administrative detention is the direct result of the BOP's investigation. This is a complete fallacy. In fact, the government is dictating the conditions of Mr. Basciano's detention to the BOP.

Mr. Basciano is attempting to defend himself in a death eligible case and he is being denied even the most basic human necessities that would enable any person to function with enough clarity to assist in his own defense. Furthermore, Mr. Basciano's administrative detention is the result of the government's misrepresentations concerning the Massino consensual recordings. This has been done for no reason other than to destroy Mr. Basciano's mental and physical faculties, rendering him unable to prepare for a trial that may cost him his life.

For all of the foregoing reasons, Mr. Basciano respectfully requests an order terminating his administrative detention, ordering his return to the general population at the MDC; and permitting the defendant to attend and participate in co-defendant meetings.

Most respectfully submitted,


BARRY LEVIN (2079)

BL/jlb
cc:     AUSA Thomas Seigel
        Mr. Alan Futerfas Esq.
        Mr. Ephraim Savitt, Esq.
        Mr. Vincent Basciano