UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                03-929 (NGG)
            - against -                                          05-0060 (NGG)


VINCENT BASCIANO, et. al.
                                    Defendant.
--------------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF VINCENT BASCIANO'S MOTION FOR DISQUALIFICATION OF A.U.S.A. GREG ANDRES

### PRELIMINARY STATEMENT

The accused herein, **Vincent Basciano**, by and through his attorneys, respectfully submits this Memorandum of Law in support of his motion to recuse and disqualify Assistant United States Attorney Greg Andres from representing the government in any capacity pertaining to the two indictments pending against Mr. Basciano.[1]

### STATEMENT OF FACTS

The history underlying the instant application is relatively uncomplicated but stark nonetheless.  There are, of course, two indictments pending against Mr. Basciano, one in which it is alleged that he solicited the commission of the murder of Assistant United States Attorney Greg

---

[1] We incorporate by reference the earlier motion to disqualify Mr. Andres, dated January 25, 2006, as well as Mr. Basciano's recent motion to recuse the district court in these matters (Attached hereto and labeled **Exhibits A** and **B** respectively are said motions).  We understand that this motion will not be considered by this Court until the motion to recuse the district court is decided.  We file this and subsequent motions as issues are presented in order to facilitate the expeditious consideration and resolution thereof immediately after the recusal issue is resolved.

Andres in November 2004.  It is clear that the government has placed sufficient credence in these allegations to submit them for consideration to a federal grand jury, and to include them as a Racketeering Act in a still-pending indictment **(Cr. No. 05 Cr. 0060(NGG))** . It is also noteworthy that the death penalty remains extant as a potential sentence for the crimes charged in the above captioned indictment, and that the government continues to submit information to Washington in support of its request concerning the potential imposition of  the death penalty.

In addition,  in or about  June 2006,  the government came into possession of a handwritten note listing the names of "Greg Andres," "Judge [sic] Nickolas Garafis," "Dominick Cicale," "Tommy Lee" and "Lou Tartaglione." In a sealed letter dated August 28, 2006, the government stated:

> [we] have received information that, during the trial of United States v. Basciano, et al., Cr. No. 03-929 (NGG), the defendant Vincent Basciano provided to another inmate at the Metropolitan Correctional Center a handwritten note, a copy of which is enclosed, and indicated to the inmate, in sum and substance, that he (Basciano) sought the murder of the listed individuals.

(Attached hereto and labeled **Exhibit C** is a copy of said letter and exhibits).

This letter was accompanied by forensic handwriting reports, the clear import of which was that Mr. Basciano had authored the "hit list."  On July 28, 2006, based upon the list, the government had Mr. Basciano placed in the Special Housing Unit of the Metropolitan Detention Center.   Thereafter at conferences conducted on August 2nd, 11th, and 28th, 2006 the defense moved to have the defendant restored to population and alternatively requested a hearing to determine whether the overly restrictive confinement was proper.   Said requests were denied.   On August 28, 2006, the government provided the court and the defense with the letter referred to above, however on

condition that the contents thereof not be disclosed to anyone pending the government's investigation of the matter.  On September 19, 2006, the government, without notice to the defense, unsealed and publicized its "murder plot" letter.[2]  The defense, which had previously provided an innocent explanation for the writing in an effort to disabuse the government of it's nefarious interpretation thereof, requested an immediate  fact-finding hearing to  ameliorate the prejudice effected upon this defendant from the government's publicizing of this letter and allegations attendant thereto.    This request as well was denied.

It was at this conference on September 20, 2006 that the defense learned that as a result of the investigation of the alleged murder plot, the government had placed Mr. Basciano in the most restrictive confinement available,  Special Administrative Measures [SAMS], a level normally reserved for terrorists, where he presently remains. This required a detailed presentation in support thereof to the Attorney General by the United States Attorney for the Eastern District of New York.

To this date, the government has refused to disclose the state and progress of its investigation of this matter. Nor has the government, so far as we know, averred that it places no real credence in the reports of this "plot." Instead, the government continues to act in a vacuum behind the wall of its "continuing investigation" while the defendant remains in punitive and, we submit, unconstitutional confinement.

As such, the state of the record at this time is that Mr. Basciano, who is eligible for imposition of the death penalty, allegedly solicited,  in 2004,  the murder of Assistant United States Attorney Greg Andres. The government appears to credit this theory sufficiently to warrant its

---

[2] The press was frenzied in its assessment of the now-public allegations. A cross-section of newspaper articles and television abstracts, is annexed hereto as **Exhibit D**.

inclusion in a RICO indictment.  Then, it is alleged,  sometime during the course of his trial in 2006, Mr. Basciano again solicited the murder of Mr. Andres.  The government has ascribed sufficient credence to this "plot" to have notified the Department of Justice, and to have placed Basciano in the highest level of restrictive confinement in the country.  Despite the specter of two separate death threats, Mr. Andres continues to represent the government and the office which is in the position to advocate for the imposition of a death sentence upon the author of two plots against his life.

## ARGUMENT

It is well-settled that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." The logical extension of this precept is that "this responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." (**ABA Model Rules Of Professional Conduct § 3.8, cmt 1**).[3]

It is worth noting that the Department of Justice has mandated certain procedures to be followed by its attorneys in cases such as this. According to **§3-2.170** of the *United States Attorneys' Manual*:

> When United States Attorneys, or their offices, become aware of an issue that could require a recusal in a criminal or civil matter or case as a result of a personal interest or professional relationship with parties involved in the matter, they must contact General Counsel's Office (GCO), EOUSA. The requirement of recusal does not arise in every instance, but only where a ***conflict of interest exists or there is***

---

[3] This unique role of the prosecutor is reiterated in Ethical Consideration (EC) 7-13 of Canon 7 of the American Bar Association (ABA) Model Code of Professional Responsibility (1982): "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."

> *an appearance of a conflict of interest or loss of impartiality.*
>
> A United States Attorney who becomes aware of circumstances that might necessitate a recusal of himself/herself or of the entire office, should promptly notify GCO, EOUSA, at (202) 514-4024 to discuss whether a recusal is required. If recusal is appropriate, the USAO will submit a written recusal request memorandum to GCO. GCO will then coordinate the recusal action, obtain necessary approvals for the recusal, and assist the office in arranging for a transfer of responsibility to another office, including any designations of attorneys as a Special Attorney or Special Assistant to the Attorney General (see USAM 3-2.300) pursuant to 28 U.S.C. Sec. 515. See USAP 3-2.170.001 (M).

(emphasis added)[4]

The language of the provision is telling; it requires a reasoned assessment not only in instances of **actual** conflicts, but where there is an "**appearance** of a conflict . . . or loss of partiality." In the instant case, Mr. Andres is charged with the continued investigation and prosecution of Vincent Basciano, who has allegedly twice sought to have him murdered.  His responsibilities include the fair and just presentation of evidence of a criminal enterprise whose titular head twice allegedly  designated him as a putative murder victim. Viewed objectively, it is impossible to avoid the appearance or reasonable inference of partiality.

In **Young v. United States**, 481 U.S. 787, 814, 107 S. Ct. 2124 (1987),  the Court delineated the rigid code to which we hold prosecuting attorneys:

> Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced

---

[4] We are unaware as to whether such  notification was made by Mr. Andres or his office, either in 2005 and/or 2006, and what assessment the GCO made of these discrete death threats against a government prosecutor.

immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, *we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice.*

(Emphasis added).

In instances such as these, where a defendant makes an objectively credible allegation of a prosecutor's conflict of interest, or raises the specter of the appearance of partiality, the court must undertake a careful balancing of interests. **United States v. Whitaker**, 268 F.3d 184, 194-95 (3d Cir. 2001); **United States v. Vega**, 317 F. Supp.2d 599, 603 (D. Virgin Islands, 2004). The court must consider the government's right to prosecute matters through counsel of its choice against the weighty factors of the defendant's right to a trial free from *even the appearance* of improper prosecutorial motives, and the court's paramount interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system. **Vega**, 371 F. Supp.2d at 603.

It is difficult to fathom a reasonable view of these circumstances that negates the appearance of partiality on the part of Mr. Andres.[5]  The most fundamental tenet of the attorney's ethical

---

[5]The fact that Mr. Andres is not the prosecutor assigned to the indictment in which Mr. Basciano is charged with the solicitation to murder Mr. Andres does not vitiate the need for disqualification.  The fact remains that Mr. Andres is in a supervisory position in the United States Attorney's Office charged with the duty to oversee those who are prosecuting the case. In addition thereto, Mr. Andres has played an integral role in the prosecutions of the Bonanno family over the past several years and has cultivated nearly all of the cooperating witnesses who will testify against Mr. Basciano in both cases.  Indeed it was Mr. Andres who prosecuted and then signed up as a cooperator the very witness upon whose testimony the government will rely in presenting the murder solicitation charge for which Mr. Andres is the alleged victim.  That these cooperators feel beholden to this prosecutor cannot be ignored.

Additionally, there can be no dispute as to the overlap in the two indictments.  While Mr. Andres is the not going to present the evidence in the trial of Indictment 05-0060, in the trial of Indictment 03-929 the government sought and was permitted to introduce extensive evidence of the murder of Randolph Pizzolo, the crime alleged in the second indictment for which the death penalty can be imposed.  Indeed the government sought to admit the murder solicitation charge

mandate is that he must avoid "the appearance of impropriety."**Code of Professional Responsibility, EC 7-13.**  As the Second Department observed in **People v. Gentile**, 127 A.D.2d 686; 689, 511 N.Y.S.2d 901 (1987):

> The role of the public prosecutor is not merely to convict but to ***foster the trust of the public in the criminal justice system***. In fulfilling that function it is essential that a prosecutor ***avoid even the appearance of impropriety*** (Code of Professional Responsibility EC 7-13; Canon 9; see, also, ABA Project on Standards for Criminal Justice, The Prosecution and The Defense Function, Part I [1.2] [(a)], [(b)].[6]

There simply is no objective view, articulated fairly and reasonably, which comfortably assuages the concerns that arise from having Mr. Andres operate both as victim and prosecutor.

## CONCLUSION

Wherefore, based upon the foregoing it is respectfully requested that this motion be granted

---

related to Mr. Andres pursuant to **FRE § 404(b)** in the trial of Indictment 03-929.  The "wall" erected to distance Mr. Andres from the second indictment is, by necessity, riddled with windows through which he must look and reach while properly discharging his responsibilities in the trial and now re-trial of Indictment 03-929.

[6] By operation of statute, Assistant United States Attorneys are governed by the ethical rules and precedent extant within the jurisdiction in which they prosecute cases.  28 U.S.C.§ 530B, "Ethical standards for attorneys for the Government," provides, inter alia,

(a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State . . .

(c) As used in this section, the term attorney for the Government' includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

in its entirety, and for such other and further relief as this court may deem necessary and proper.

Dated:          Kew Gardens, New York
                October 20, 2006


                                        Respectfully Submitted,


                                        JAMES KOUSOUROS
                                        STEPHANIE CARVLIN
                                        YING STAFFORD
                                        *Attorneys for Vincent Basciano*

cc:     John Buretta
        Amy Busa
        Thomas Siegel
        Winston Chan
        Greg Andres
        Assistant United States Attorneys

        Vincent Basciano