TS:JB
F.#2005R0060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

                                         03 CR 929 (NGG)
VINCENT BASCIANO, et al.,             05 CR 060 (NGG)

           Defendants.

- - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VINCENT BASCIANO'S
PETITION FOR HABEAS CORPUS

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York  11201

John Buretta
Amy Busa
Winston Chan
Thomas Seigel
Assistant United States Attorneys
    (Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this brief in opposition to the petition by defendant Vincent Basciano, pursuant to 28 U.S.C. § 2241, for release from Special Administrative Measures ("SAMs") and the Special Housing Unit ("SHU") of the Metropolitan Correctional Center ("MCC").

The defendant's petition should be denied.  As shown below, Basciano's conditions of confinement serve the legitimate purpose of inhibiting Basciano's demonstrated and recent efforts to send communications to obstruct justice and engage in violence.  Moreover, the conditions of confinement are reasonably related to that legitimate purpose.  Indeed, Basciano's recent conduct, and the conduct of others acting in his interest, demonstrate that no less restrictive conditions of confinement – and certainly not release into the general prison population – can possibly thwart Basciano's efforts to orchestrate acts of violence.  Accordingly, under controlling law, Basciano has not established a due process violation and, therefore, his petition should be denied.

BACKGROUND

I.   Summary of Pending Charges

On November 18, 2004, Basciano was charged in this District by superseding indictment, docketed 03 CR 929 (hereinafter the "'03 Indictment"), with, inter alia, racketeering conspiracy, including among the predicate acts the murder of Frank Santoro and the attempted murder of David Nunez. On January 26, 2005, Basciano was charged in a separate indictment, docketed 05 CR 60 (hereinafter the "'05 Indictment") with, inter alia, murder in aid of racketeering regarding the murder of Randolph Pizzolo and soliciting the murder of federal prosecutor Greg Andres.

From February to May 2006, Basciano and a codefendant were tried before the Court on the charges then pending in the '03 Indictment.  On May 9, 2006, the jury in that matter convicted Basciano of racketeering conspiracy, although the jury failed to reach a verdict on all of the charged racketeering acts.  The jury found beyond a reasonable doubt that, among other things, Basciano had attempted to murder David Nunez.

On June 29, 2006, a grand jury returned a superseding indictment in the 03 CR 929 matter.  The superseding '03 Indictment charges Basciano with a substantive racketeering count which includes, among other predicate acts, the conspiracy to murder and murder of Frank Santoro.  In April 2007, jury

-2-

selection is scheduled to commence on the '03 Indictment charges
pending against Basciano.  In April 2007, jury selection is also
scheduled to commence on the charges, including death eligible
charges, pending in the '05 Indictment.

II.  <u>SHU Placement and Imposition of SAMs</u>

On late July 2006, Basciano was placed in the SHU at
the MCC.  On September 26, 2006, the government disclosed that
the Attorney General had recommended imposition of SAMs on
Basciano.  The government noted that Basciano is required to
exhaust administrative remedies in challenging the SAMs,
consistent with well-settled law.[1]

III.  <u>The Administrative Suspension of Basciano's Visitation
Privileges</u>

On October 17, 2006, personnel at the MCC discovered a
contraband radio in Basicano's SHU cell.  According to MCC
personnel, the radio was presumably secreted by Basciano inside
other legitimate personal property transferred from his prior
cell to his new cell in the SHU.  An administrative hearing was
held on October 20, 2006 concerning this violation and, as a

---

[1] The Bureau of Prisons has advised that Basciano has
exhausted his administrative remedies regarding his July 2006
placement in the SHU, but has not exhausted his administrative
remedies regarding the imposition of SAMs.  However, because
review of both types of confinement restrictions involves
consideration of the same underlying facts supporting those
restrictions, the government takes the position that Basciano has
exhausted his administrative remedies as to both his SHU
placement and the SAMs restrictions.

result of the hearing, Basciano's social visitation privileges were suspended for a two month period.

Following the suspension, Basciano's visitation privileges were reinstituted.  Basciano had a social visit with three of his sons on January 17, 2007.  Another social visit is scheduled for January 31, 2007.

In addition, Basciano has had numerous visits with various retained and assigned counsel.  Following imposition of SAMs, the government has acted promptly to ensure counsel is fully able to consult with Basciano.[2]

IV.  Basciano's Post-Incarceration Communications Regarding Violence

As set forth below, throughout his incarceration, Basciano has sent communications concerning acts of violence.

A.  Basciano's Post-Incarceration Authorization to Murder Michael Mancuso

Upon his incarceration in late 2004, Basciano began sending messages through various conduits to continue to commit crime, including authorizing murder.  This has been demonstrated through trial testimony subject to cross-examination by counsel for Basciano.

---

[2] The government understands that a private investigator working for defense counsel also recently sought to visit Basciano.  Access was denied because the government had not at that time received an affirmation from the investigator that he would abide by the SAMs.  The government subsequently received such an affirmation, and immediately communicated to the MCC that the investigator has provided the appropriate affirmation.

-4-

Specifically, at the Spring 2006 trial of Basciano, cooperating witness Dominick Cicale testified that, after Basciano's incarceration, Basciano used various individuals to continue to conduct crime family business.  Among the matters Basciano sent messages concerning was a dispute between Bonanno Captain Dominick Cicale (now incarcerated and a cooperating witness) and new Bonanno acting boss Michael Mancuso (now incarcerated and charged with the murder of Randolph Pizzolo). During those communications, Basciano sent a message from prison to Cicale authorizing Cicale to kill Mancuso:

> Q:   Did you ever seek permission to kill Michael Mancuso?
>
> A:   Yes, I did.
>
> Q:   Who did you ask for permission to kill Michael Mancuso?
>
> A:   Vincent Basciano.
>
> Q:   Where was Mr. Basciano at the time?
>
> A:   MDC Brooklyn.
>
> Q:   How did you communicate with him?
>
> A:   Through Tommy Lee.
>
> Q:   Were you communicating with him through anyone else at this time?
>
> A:   Yes, also his son, Mr. Basciano's son, Vincent, Jr., and Angela Basciano.
>
> Q:   Did you get permission to kill Michael Mancuso.
>
> A:   Yes, I did.

-5-

Q:   What specific message did you get from
     Mr. Basciano?

A:   I told him, I sent a message with
     Vincent Basciano, Jr. and Tommy Lee that
     I feel like a sitting duck out here.
     Things are heating up with Michael and
     myself.  Michael's not accepting the
     messages.  He's only accepting the money
     messages.  I hold him Louie Electric is
     bumped up.  I'm not straightening Joey
     Gambina out.  There's a lot of friction
     out here.  I feel like a sitting duck
     with Michael.

Q:   Did Mr. Basciano send a message back to
     you?

A:   Yes, he did.

Q:   How?

A:   Through his son and Tommy Lee.

Q:   What message did you get back?

A:   Don't be a duck, do it.  If you feel
     threatened, do what you have to do.

Q:   What did you understand that to mean?

A:   If I felt threatened, I had the
     permission to kill Michael Mancuso.

(Basciano Trial Transcript at 5844-45).[3]

---

[3]   See also Basciano Trial Transcript at 6882-83 (testimony
of cooperating witness Tommy Lee that, after Cicale sent word
through Lee to Basciano in prison that Mancuso was "giving
Dominick a hard time," Basciano sent a message from prison
through Lee to Cicale that "Dominick shouldn't back down to
anyone.").

B.   <u>Basciano's Stated Desire to Harm AUSA Andres</u>

Basciano has also conveyed from prison other messages whose express purpose was to obstruct justice, including discussion of the murder of the lead federal prosecutor on the '03 Indictment, AUSA Greg Andres.  As noted above, Basciano is charged in the '05 Indictment with, among other things, soliciting the murder of AUSA Andres.  Part of the evidence underlying this charge is the consensual recording in January 2005 of Basciano by former Bonanno family boss Joseph Massino.  During the recordings, Basciano and Massino discuss the prospect of murdering AUSA Andres.

As detailed below, despite already facing the extremely serious charge of soliciting the murder of a federal prosecutor and a death penalty eligible murder charge, Basciano has continued to pass communications to others while in prison conveying Basciano's animosity toward, and a stated desire to harm and/or kill, AUSA Andres.

1.   <u>The List</u>

On June 30, 2006, the government learned from an inmate at the MCC ("CW#1") that Basciano gave CW#1 a piece of paper on which Basciano had written the names of the presiding judge, the lead prosecutor and three cooperating witnesses who testified in Basciano's Spring 2006 trial (the "List").  CW#1 advised that Basciano gave the inmate the List toward the end of the trial.

In that same meeting, Basciano told CW#1 that Basciano sought the murder of the listed individuals.

Basciano's counsel has proffered various innocuous explanations for the List.  Initially, it was claimed that Basciano gave the List to an inmate named Reginald White, allegedly for a spirtual ritual.  In Basciano's current petition, it is asserted that other individuals named Carlos Reyes and Anderson Pena received the List and allegedly are attempting to frame Basciano.  (See Basciano Petition ¶¶ 34-39).

In fact, based on the government's investigation, none of the individuals identified by Basciano as an alleged recipient of the List was a recipient.  Nor, to the government's knowledge, were any of the individuals Basciano identifies privy to Basciano's communication to CW#1 that Basciano sought the murder of the individuals on the List.  In other words, Basciano's shifting explanations do not have any credence, and only further undermine Basciano's claim that the List served the purpose of a spiritual ritual.

> 2.  Basciano's June 18, 2006 Call Regarding AUSA Andres

By any objective measure, Basciano's animus toward AUSA Andres – and desire to have AUSA Andres harmed - has continued since the time Basciano created the List.  On June 18, 2006, Basciano again expressed his animosity toward AUSA Andres, this time in a prison call to his paramour, Debra Kalb.  During the

call, Basciano informed Kalb that AUSA Andres is "a little fuckin' prick" who "thinks he's god," and ended by telling Kalb that AUSA Andres is "a dangerous kid."

The government considers Basciano's communication to Kalb a very serious matter.  Basciano used the exact same phrase – a "dangerous kid" – on January 3, 2005 to justify the November 2004 murder of Bonanno associate Randolph Pizzolo.  Specifically, during Joseph Massino's consensual recording of Basciano on that date, Basciano told Massino that Basciano had ordered Pizzolo's murder in part "because he's a fuckin' dangerous kid".  In other words, according to Basciano's own past usage of that phrase, Basciano means it to refer to murder.

Thus, Basciano's disparaging statements about AUSA Andres in the June 18, 2006 call, together with Basciano's description of AUSA Andres as a "dangerous kid" – a phrase Basciano had used in the recent past to justify murder – and Basciano's past discussion with Joseph Massino about murdering AUSA Andres, are reasonably interpreted as an effort by Basciano to convey to Kalb Basciano's on-going belief that AUSA Andres should be harmed.  Kalb could, in turn, convey Basciano's message to any of Basciano's crime family members and associates – criminals who have not hesitated in the past to employ sophisticated means to assault and/or murder others to obstruct justice.

-9-

3.   Basciano's January 17, 2007 Statements Regarding
     AUSA Andres

Basciano again expressed his animosity toward AUSA

Andres as recently as last week.  On January 17, 2007, Basciano

was permitted his first social visit since the imposition of

SAMs.[4]  Basciano met with three of his sons.  During the visit,

Basciano advised his sons, among other things, that AUSA Andres

is "sharp" but an "ego maniac."  These comments are troubling in

variety of ways, given the context that (1) Basciano knows he has

been charged with soliciting the murder of AUSA Andres,

(2) Basciano knows SAMs were instituted and that this occurred at

a time after discovery of the List naming AUSA Andres and others,

(3) under the SAMs (as well as under pre-SAMs restrictions

instituted by this Court), Basciano is precluded from

communicating with another of his sons, Vincent Basciano, Jr.,

due to Basciano's demonstrated use of that son to convey messages

about crime family matters, and (4) one of the sons with whom

Basciano met on January 17 discussed during the meeting

participating in a bar fight the night before, and another of the

sons discussed his own pending state charges, including an

obstruction-related assault.

_____

[4] As noted above, Basciano's social visits were suspended
for a two month period after SAMs were instituted as a result of
a contraband incident.

V.   <u>The Plot to Obstruct Justice by Stabbing a Cooperating</u>
     <u>Witness</u>

          In addition, despite imposition of SAMs on Basciano,
the government has also learned of a separate – very recent –
plot in the MCC to stab another cooperating witness ("CW#2")
likely to testify against Basciano at an upcoming trial regarding
a murder charge.

          Specifically, in fall 2006, an MCC inmate approached an
individual and advised that "word came from upstairs from some
friends of 'Vinny Gorgeous' from the Basciano Family that they
will pay $5,000 to have [CW#2] stabbed and fucked up."  The
inmate explained that the stabbing was to retaliate against CW#2
in part for "ratting out 'Vinny Gorgeous' on a murder charge."
The inmate further stated that he would receive more instructions
at church services where inmates from all tiers are permitted to
congregate.

          At approximately the same time, an MCC inmate sent a
letter threatening CW#2 and others:

          Let me start off by saying that [CW#2] is a
          rat bastered . . .  [CW#2] is known here as
          one of the biggest obesse eating rat in New
          York and everyone knows him by the Bronx Rat!
          [CW#2] is a viscious rat that has made a deal
          with the devil and the devil is the U.S.
          Government! . . . .  Let me inlighten you how
          much of a peace of shit [CW#2] is.  For
          starters in the past 9 months he has gone to
          court and one of those people [CW#2] is
          testifying againest [, CW#2] is trying to
          give him the death penalty. . . .  [CW#2] is
          out of control and is not thinking about what

                              -11-

> his actions might lead to, and who's life
> this will afect. . . . But he's been caught
> and word is out on him. . . . It's only a
> matter of time before someone reach's out and
> says hello to him. . . .[5]

In a subsequent consensual recording at the MCC, an inmate involved in the stabbing plot confirmed that the offer for stabbing CW#2 was "five [or] ten thousand."

CW#2 was relocated to protect that witness.

---

[5] The grammatical and spelling mistakes in the quotation are verbatim from the original. Elipses and bracketed substitutions are included to protect the identities and safety of certain individuals.

-12-

ANALYSIS

POINT ONE

BASCIANO'S RECUSAL MOTION IS WITHOUT MERIT

I.   Legal Standard

          This Court has previously set forth the appropriate

standard under Bell v. Wolfish, 441 U.S. 520 (1979) for reviewing

Basciano's conditions of confinement by means of a habeas corpus

petition:

> In effect, the Wolfish court announced a two part test:
> '[F]irst, the court must determine if the condition is
> specifically imposed for the purposes of punishment or for a
> legitimate governmental purpose, secondly, if evidence of
> punishment is lacking, this court must determine if the
> restriction is 'reasonably related' to a legitimate
> objection or constitutes an exaggerated response.  If a
> reasonable relationship can be established, punishment is
> not present and the Due Process clause is not violated.

United States v. Basciano, 369 F.Supp.2d 344, 350 (E.D.N.Y.

2005).  As demonstrated below, the conditions of confinement of

Basciano were imposed for a legitimate governmental purpose, and

are reasonably related to that legitimate purpose.  Accordingly,

Basciano's petition should be denied.[6]

_____

[6] Basciano claims in his submission, as he has repeatedly
claimed to the Court at prior status conferences, that he is
entitled to an "evidentiary hearing" in which the government must
produce additional evidence justifying his conditions of
confinement.  (Basciano Memo. at 36).  That claim is specious.
Basciano cites no authority, nor is the government aware of any,
requiring an evidentiary hearing in this situation.  By contrast,
Basciano asserts elsewhere in his submission that there need only
be "some evidence in the record" justifying the conditions of
confinement with no requirement of a hearing.  (Id. at 32).  The
government has, by way of evidence set forth herein and also

-13-

II.  <u>The Conditions Serve a Legitimate Purpose</u>

There is no evidence, nor could there be, that the SHU placement or SAMs were imposed on Basciano for punitive purposes. Rather, the restrictions have been imposed for the legitimate purpose of preventing the substantial threat that Basciano will issue a communication resulting in harm to others inside or outside prison.

There is ample evidence supporting that purpose.  As an initial matter, this Court has already found that the government was pursuing a legitimate government purpose when it first placed Basciano in the SHU in January 2005, given Basciano's position at the helm of the violent criminal enterprise known as the Bonanno organized crime family:

> The government's stated objective is clearly
> legitimate.  The Bonanno crime family has
> been proven at a trial before me to be a
> violent criminal enterprise with longstanding
> ties to drug trafficking, extortion, labor
> corruption, illegal gambling, smuggling,
> witness tampering and other illegal
> activities.  The leadership of that family
> has not hesitated to order murders to
> consolidate its own hold on power, to protect

_____

evidence previously submitted to the Court in addressing
Basciano's recusal motion, provided ample evidence justifying
Basciano's conditions of confinement.  Given that no legal basis
exists for Basciano's request for an evidentiary hearing, as he
essentially concedes, his repeated requests for such a hearing
appear to be simply an attempt to identify (or confirm the
identity) of cooperating witnesses so that Basciano may commit
additional acts of obstruction, or at least an attempt at a
double opportunity to cross-examine witnesses the government may
call to testify against Basciano at his upcoming trials.

> the organization's profits, or to avoid
> prosecution by government authorities.  In
> short, the Bonanno crime family has sown
> extensive misery, corruption and death in
> this District and elsewhere.  Accordingly,
> the government's goal of hampering its
> operations by preventing its alleged chief
> from communicating with other members of the
> family about the organization's criminal
> activities is indisputably legitimate.

See Basciano, 369 F.Supp.2d at 351.

Since that time, the combination of relevant facts justifying Basciano's current conditions of confinement has become much more stark.  Two additional trials involving the Bonanno organized crime family have occurred, including a trial of Basciano.  The testimony and other evidence admitted at those trials provide substantial additional proof of (1) the murderous nature of that enterprise, (2) Basciano's leadership of the enterprise – a fact Basciano conceded at his Spring 2006 trial, (3) Basciano's own specific violent acts and proclivities, including, among others, Basciano's shotgunning to death of Frank Santoro and proof beyond a reasonable doubt of Basciano's attempted murder of David Nunez, and (4) Basciano's routine passing and receiving of messages about crime while in prison, including messages authorizing the murder of a high-ranking Bonanno family member, Michael Mancuso.

In addition, as detailed above, Basciano has referenced through various communications – through the List, through a phone call and through a social visit - his hostility toward and

-15-

expressed desire to harm AUSA Andres.  Communications of this sort have occurred as recently as last week, even with imposition of SAMs.

Finally, there has been an active effort to obstruct justice by attempting to stab a cooperating witness slated to testify against Basciano – again, even after imposition of SAMs.

In sum, Basciano's conditions of confinement plainly serve a legitimate government purpose.

III. <u>The Conditions Are Reasonably Related to the Legitimate Purpose of Inhibiting Basciano's Ability to Harm Others</u>

The conditions of Basciano's confinement are also reasonably related to the purpose of inhibiting Basciano's ability to harm others outside and inside prison.  Indeed, given the structure of the federal prison system, the government is aware of no conditions of confinement short of those now imposed that could possibly impede the demonstrated efforts of Basciano and others acting in his interest to obstruct justice through assault and/or murder.

Thus, the situation now is substantially more serious than the Court confronted when Basciano was first placed in the SHU in January 2005.  The Court found that Basciano's placement in the SHU was not then reasonably related to the threat Basciano had at the time been demonstrated to pose because there had been no showing then "that Basciano was engaged in planning acts of violence while in pre-trial detention" or engaged in other

-16-

"discrete criminal planning or conduct."  Basciano, 369 F.Supp.2d at 351.  Now, by contrast, there is ample demonstration that Basciano and others seeking to protect his criminal interests have made repeated communications whose express purpose is to engage in such conduct.

Notably, the Second Circuit has affirmed similar conditions of confinement – limiting a defendant's contacts to "prison employees, defense counsel and five approved individuals" – even where a defendant was "not alleged to have made any illegal communications from prison," because such restrictions serve "the regulatory purpose of preventing" the defendant "from communicating with his unconfined co-conspirators."  United States v. El-Hage, 213 F.3d 74, 82 (2d Cir. 2000).  Here, Basciano's restrictions are at least as appropriate as in El-Hage.  Basciano, a leader of a violent criminal organization with a long history of sophisticated acts of murder and obstruction, and others acting in his interest, have made recent, serious, illegal communications in prison whose stated purpose involves injuring or murdering individuals, including to obstruct justice.  The evidence of this includes, among other things: (1) trial testimony, subject to cross-examination by counsel for Basciano, establishing that Basciano has communicated from prison about an assortment of criminal acts of the Bonanno family, ranging from the more routine methods of

crime family illegal money earning to authorizing murder, (2) the List, concededly written in Basciano's own handwriting, (3) Basciano's own voice and statements on a telephone call to his paramour, (4) Basciano's own voice and statements as witnessed recently by an FBI agent, and (5) the written and recorded statements of others acting in the interest of Basciano to stab a cooperating witness.

The Bonanno crime family and the other crime families that together form La Cosa Nostra indisputably have the resources to try to follow through on the meaning of those communications in ways designed to avoid law enforcement detection.  Given this combination of facts, Basciano's proposed alternative – release to the general population – is, as the Second Circuit found in El-Hage, "unacceptable."  Id.

Accordingly, as demonstrated above, in these circumstances Basciano's due process rights have not been violated, and his petition should be denied.

<u>CONCLUSION</u>

For the reasons stated above, the Court should deny
Basciano's petition.

Dated:      Brooklyn, New York
            January 25, 2007

                                    Respectfully submitted,

                                    ROSLYNN R. MAUSKOPF
                                    United States Attorney
                                    Eastern District of New York
                                    One Pierrepont Plaza
                                    Brooklyn, New York 11201

John Buretta
Amy Busa
Winston Chan
Thomas Seigel
Assistant United States Attorneys
      (Of Counsel)