UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                    **MEMORANDUM & ORDER**

     v.                                              05-CR-060 (NGG)

MICHAEL MANCUSO, ANTHONY INDELICATO,
ANTHONY DONATO, ANTHONY AIELLO,

          Defendants.
-------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Defendants Michael Mancuso, Anthony Indelicato, Anthony Donato, and Anthony Aiello are charged in a seventeen-count Superseding Indictment ("the Indictment")[1] with, *inter alia*, racketeering, racketeering conspiracy, murder-in-aid-of-racketeering, murder-in-aid-of-racketeering conspiracy, assault-in-aid-of-racketeering, and extortionate collection of credit. Defendants are currently scheduled to proceed to trial on these charges in mid-September 2008. Defendants' various pre-trial motions and the Government's motion to empanel an anonymous and partially sequestered jury are now before the court.

      The court considers each of the pending motions in turn. While some of Defendants' motions are joined by all Defendants, others are joined by only some Defendants or are made individually by a single Defendant. For the sake of clarity, I will address the motions in the order

---

[1] On March 17, 2008, subsequent to briefing on the instant motions, the Government filed a ninth Superseding Indictment (S-9). However, by letter dated March 18, 2008, the Government informed the court that S-9 mistakenly omitted count seventeen, among other typographical errors, and that it would seek a tenth Superseding Indictment to correct the errors. It has not done so to date, but the errors in S-9 do not affect the court's analysis of the pending motions.

1

presented in the Government's response brief, which is responsive to all Defendants' motions. I will then address the Government's motion for a sequestered jury.

For the reasons set forth below, Defendants' motions are denied except where the court has deferred decision. The Government's motion for an anonymous and partially sequestered jury is granted.

**I.     Motions to Dismiss Counts of the Indictment**

Both Indelicato and Donato move to dismiss certain counts of the Indictment. An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (citation omitted). "An indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Id. The court must accept all factual allegations in the Indictment as true on a pre-trial motion to dismiss, and such a motion is not the appropriate vehicle to address the sufficiency of the Government's evidence. Id. at 777.

    A.     Indelicato's Motion to Dismiss Count One (Racketeering)

Indelicato contends that the racketeering count against him should be dismissed because the first racketeering act in support of that count — conspiracy to murder and murder of Frank Santoro — is not related to the affairs of the enterprise as required by 18 U.S.C. § 1962(c).[2]

---

[2] Indelicato also contends that the second racketeering act — conspiracy to murder Patrick DeFilippo — should be dismissed because conspiracy to commit murder does not constitute a "racketeering activity" within the scope of 18 U.S.C. § 1961(1)(A). He concedes, however, that this argument has been rejected by the Second Circuit. See United States v. Ruggiero, 726 F.2d 913, 919 (2d Cir. 1984).

2

(Defendant Anthony Indelicato's Memorandum in Support of Motion to Dismiss Count One of the Indictment ("Indelicato's Br.") at Unnumbered 2.) More specifically, Indelicato argues that the Government has not alleged that the Santoro murder was an approved activity of the Bonanno enterprise, but instead has alleged that it was motivated by Vincent Basciano's personal desire to protect his son from a possible kidnapping. (Id. at Unnumbered 3-4.)

      To prove racketeering under the Racketeering Influenced Corrupt Organizations Act ("RICO"), the Government must prove, among other things, a "pattern of racketeering activity" which requires a showing of "at least two acts of racketeering activity, one of which occurred after the effective date of this [statute] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). To prove a pattern of racketeering activity, "a . . . prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006) (citation omitted). The concept of relatedness requires that the predicate acts be related to one another ("horizontal" relatedness) and that they be related to the enterprise ("vertical" relatedness). Id. To show vertical relation to the RICO enterprise, the government must establish (1) that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," or (2) that "the predicate offenses are related to the activities of that enterprise." Id.

      The Indictment alleges in Count One that Indelicato, as an associate of the Bonanno family enterprise, "knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of [the Bonanno family] enterprise through a pattern of

racketeering activity . . . consisting of the racketeering acts set forth below." (S-9 at ¶ 25.) The Indictment then alleges in racketeering act two that Indelicato conspired to murder and murdered Frank Santoro. (Id. at ¶¶ 29-31.) Taking these allegations as true, as the court must, they sufficiently allege the required element that the Santoro murder was related to the affairs of the Bonanno family enterprise. Thus, the allegations satisfy the minimal requirements for the sufficiency of an indictment. See Alfonso, 143 F.3d at 776.

Indelicato's argument that dismissal is required because the murder was motivated at least in part by Basciano's personal animus and because it was unsanctioned by the enterprise is unavailing. First, the court may not attempt to predict or assess, at the pre-trial stage, what the Government's evidence regarding the Santoro murder's relatedness to the Bonanno family enterprise will be in this case. See United States v. Dellacroce, 625 F.Supp. 1387, 1390 (E.D.N.Y. 1986) (government need not prove until trial that defendants' racketeering acts were done in the conduct of the affairs of the enterprise); see also United States v. Pisani, 590 F. Supp. 1326, 1333 (S.D.N.Y. 1984) ("If the indictment is sufficient on its face, that is, if it alleges each of the necessary elements of the offense charged, then it is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.") (citation and internal quotation marks omitted). Second, in this Circuit, a conclusion that the Santoro murder was unsanctioned by the enterprise and performed to pursue an individual's own agenda does not preclude a conclusion that the act was "related" to the enterprise. See Unites States v. Locascio, 6 F.3d 924, 943 (2d Cir. 1993) ("[U]nder the law of this Circuit, it is not determinative that the defendant committed the crime to further his own agenda, if indeed he was only able to commit the crime by virtue of his position within the enterprise.").

4

Accordingly, Indelicato's motion to dismiss count one of the Indictment is denied.

B.    Donato's Motion to Dismiss Counts Six through Eight

Counts Six through Eight charge Donato with conspiring to murder and murdering Frank Santoro in aid of racketeering, specifically "for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family," in violation of 18 U.S.C. § 1959(a)(5). Donato argues that "there is no evidence (and that the government will be unable to show) that the alleged murder had been so-motivated or even had any linkage to racketeering activity." (Defendant Anthony Donato's Memorandum of Law in Support of His and His Co-Defendants' Motions ("Donato's Br.") at 2.) Donato's argument is predicated on his view that the evidence offered by the Government against Vincent Basciano in prior trials failed to establish that the Santoro murder plot was based upon § 1959 purposes and that, as a result, no jury could "infer properly" in this case that Donato's alleged involvement was motivated by such purposes. (Id. at 3-7.)

Donato, like Indelicato, asks the court to assess the sufficiency of the Government's evidence well before any evidence against Donato has been presented. The court declines to do so. Even assuming, *arguendo*, that evidence of the Santoro murder presented in prior trials against Basciano was insufficient to establish § 1959 purposes, the fact has no bearing on whether the Government will be able to establish those purposes with respect to Donato and the Santoro murder in this case. Donato's reliance on United States v. Thai is unavailing because the court's conclusion that the evidence against the defendant was insufficient to support a § 1959 purpose was based upon a post-trial assessment of the evidence that had been presented at trial. 29 F.3d 785, 819 (2d Cir. 1994). It was not a pre-trial assessment based upon evidence presented

5

against other defendants in previous trials.

Accordingly, Donato's motion to dismiss Counts Six through Eight of the indictment based upon the Government's purported inability to prove a § 1959 purpose is denied.

## II.     Discovery and Disclosure Motions

### A.     Mancuso's Discovery Requests

Insofar as Mancuso requests discovery pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Government is correct that Brady is not a means for Defendants to obtain discovery. See Gray v. Netherland, 518 U.S. 152, 168 (1996) ("There is no general constitutional right to discovery in a criminal case, and Brady," which addressed only exculpatory evidence, "did not create one.") (quoting Weatherford v. Bursey, 429 U.S. 545, 559 (1977)). Furthermore, the Government states that it has disclosed all Brady material of which it is aware. The court has no reason to disbelieve this representation, notwithstanding Mancuso's inflammatory protestations to the contrary.

Mancuso also requests wide-ranging discovery pursuant to Fed. R. Crim. P. 16, including, but not limited to, additional information about the so-called Cicale bogus murder plot. Mancuso's non-Cicale-related requests are denied because Mancuso has failed even to attempt to make the required *prima facie* showing that the material he requests is "material" to preparing his defense. See United States v. Maniktala, 934 F.2d 25, 28 (2d. Cir. 1991). Mancuso's mere assertions that the government should provide him with the requested materials are insufficient to meet that burden.[3]  See United States v. Persico, 447 F. Supp. 2d 213, 217-18 (E.D.N.Y. 2006).

---

[3] Typical of Mancuso's sweeping requests is his request for "[a]ny evidence that any prospective government witness is biased, prejudiced or has a motive to be biased or prejudiced against the defendant for any reason." (Mancuso Br. at 25.)

As for the Cicale-related material, the Government has disclosed to all Defendants the details of the allegations against Cicale; the name of the witness who made the allegations and contact information for his attorney; affidavits prepared by prison employees during an internal investigation into the matter; and the results of the Government's investigation into the matter, namely that Cicale denies the allegations. Moreover, the Government has stated in its brief and at oral argument that it has nothing further to produce with respect to the Cicale incident. The additional information Mancuso requests, such as the names of inmates who purportedly claim that Cicale also approached them about the alleged murder plot, would be cumulative at best. Should Mancuso wish to impeach Cicale with respect to the alleged murder plot, he has ample information with which to do so.

  B.  <u>Mancuso and Indelicato's Motion for Rule 404(b) Notice</u>

At oral argument, the Government stated that it will provide Fed. R. Evid. 404(b) notice four or five weeks prior to trial. The court concludes that this time frame satisfies the "reasonable notice" standard of Rule 404(b). <u>See</u> <u>United States v. Vilar</u>, 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008) (noting that Rule 404(b) does not define "reasonable notice," but instead leaves it to the sound discretion of the district court; noting that notice is typically provided no more than two or three weeks prior to trial, but requiring 60 days given likely challenges to admissibility of the evidence).

  C.  <u>Mancuso and Indelicato's Motion for Notice of Rule 807 Evidence</u>

In its brief, the Government states that it does not intend at this time to present any evidence pursuant to Fed. R. Evid. 807 and that it will notify defense counsel promptly should that intention change. Accordingly, this motion is denied as moot, without prejudice to refiling

7

should the need arise.

        D.      <u>Mancuso's Request for a Bill of Particulars as to Counts Three through Five</u>

In Counts Three through Five of the Superseding Indictment, Mancuso is charged with conspiracy to murder Randolph Pizzolo in aid of racketeering (Count Three), murder of Randolph Pizzolo in aid of racketeering (Count Four), and using, carrying, and possessing a firearm during and in relation to a crime of violence (Count Five). (S-9 ¶¶ 52-57.) Count Three alleges that Mancuso conspired with Basciano and Aiello in or about and between November 2004 and November 30, 2004 to murder Pizzolo. (<u>Id.</u> at ¶ 54.) Count Four alleges that on or about November 30, 2004, Mancuso, Basciano, and Aiello murdered Pizzolo. (<u>Id.</u> at ¶ 56.) Count Five alleges that on November 30, 2004, Mancuso used and carried a firearm during and in relation to Counts Three and Four. (<u>Id.</u> at ¶ 57.)

An indictment need set forth only a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. Pro. 7(c). A bill of particulars is warranted "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999). An indictment "may" be supplemented with a bill of particulars if the indictment is "insufficient to permit the preparation of an adequate defense." <u>United States v. Rigas</u>, 490 F.3d 208, 237 (2d Cir. 2007) ("A bill of particulars enabl[es a] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.") (citation and internal quotation marks omitted). A district judge has the discretion to deny a bill of particulars if the information the defendant seeks is provided in the indictment or in some acceptable alternate form. <u>United States v. Barnes</u>, 158 F.3d 662, 665 (2d

Cir. 1998). Finally, a bill of particulars may not be used by the defense as a discovery tool to obtain evidentiary detail. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Persico, 447 F. Supp. 2d 213, 216 (E.D.N.Y. 2006).

Mancuso requests thirty-six separate particulars, arguing that they are warranted because "[n]either the charge in the [Indictment] nor any other information provided by the government in the instant action furnish the specifics which are essential for the preparation and planning of the defense." (Memorandum of Law in Support of Michael Mancuso's Pretrial Motions ("Mancuso Br.") at 9; Affirmation in Support of Michael Mancuso's Pretrial Motions at 4-7.) The Government responds that a bill of particulars is not warranted because the Indictment identifies the dates of the alleged offenses and the name of the victim and because to date the Government has provided Mancuso with (1) detailed evidence in its February 16, 2006 detention memorandum showing that Mancuso ordered Pizzolo's murder, (2) Rule 16 disclosures regarding the Pizzolo murder, including Pizzolo's autopsy, photographs, telephone records, sporting event tickets, video recordings, E-Z pass records, Pizzolo's life insurance application, and copies of consensual recordings in which the murder and its participants are discussed, and (3) § 3500 material, including FBI 302s and transcripts of testimony detailing the circumstances of the Pizzolo murder and Mancuso's role in it. (Gov. Br. at 28-29.) Finally, a July 16, 2008 letter from the Government to all defense counsel lists numerous additional discovery material the Government has made available to the defense, at least some of which pertains to Mancuso.

The court declines to address each of Mancuso's thirty-six requested particulars. The information contained in the Indictment, including the date of the Pizzolo murder and the names of alleged co-conspirators; the information in the Government's February 16, 2006 detention

memorandum, including consensual recordings suggesting that Mancuso ordered the Pizzolo murder; the discovery thus far disclosed to Mancuso, including physical evidence from the murder scene; and testimony from prior trials regarding the Pizzolo murder are sufficient to put Mancuso on notice of the specific acts of which he is accused and to allow preparation of an adequate defense.  See Torres, 901 F.2d at 234 (2d Cir. 1990) (upholding trial court's denial of a motion for a bill of particulars where the defendant had been informed in considerable detail of the charges against him during discovery); United States v. Gammarano, No. CR-06-0072 (CPS), 2007 WL 2077735, *9-12 (E.D.N.Y. July 18, 2007) (denying defendant's request for a bill of particulars where the Government had produced audio recordings related to a certain racketeering acts, video surveillance of the defendant, transcripts of defendant's prior guilty pleas, prison records, and other testimony from earlier trials which described many of the charges alleged in the indictment).  Furthermore, many of Mancuso's requests are for details of the Government's evidence (see e.g. Affirmation at 5, Requests n-t), which are outside the proper scope of a bill of particulars.  Thus, a bill of particulars is not warranted and the motion is denied.

    E.    <u>Expert Witness John Carillo</u>

Donato argues that the Government's disclosures with respect to organized crime expert John Carillo are insufficient.  However, at oral argument Donato's counsel withdrew the motion and proposed that he be permitted to make an appropriate motion *in limine* to narrow the scope of Carillo's testimony and to renew his challenge to the sufficiency of the Government's disclosures at that time, if necessary.  The Government did not object.  The motion is therefore deemed withdrawn subject to renewal prior to trial.

**III.   Other Motions**

   A.   Mancuso's Motion for Severance

Mancuso contends that he is both improperly joined with his co-defendants and that there is a misjoinder of counts in the Indictment under Rule 8 of the Federal Rules of Criminal Procedure. (Mancuso Mem. at 1-2.) Specifically, Mancuso maintains that the RICO and RICO conspiracy counts, neither of which include Mancuso, provide the only "connective tissue" for the other substantive crimes and defendants in the Indictment. Mancuso argues that his alleged membership in the Bonanno family is not sufficient, without more, to connect him to the crimes alleged against his co-defendants. (Id. at 4-7.)

Although Mancuso claims to challenge both joinder of defendants and joinder of offenses, his argument focuses solely on joinder of defendants under Rule 8(b). Rule 8(a) permits joinder of multiple offenses against a single defendant "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). There can be no serious argument that the three counts against Mancuso, all of which relate to the Pizzolo murder, are improperly joined under Rule 8(a). See United States v. Amato, 15 F.3d 230, 236 (2d Cir. 1994) ("Joinder [of offenses] is proper where the same evidence may be used to prove each count."). In any event, as Mancuso notes, the issue of joinder is properly considered under Rule 8(b) where it involves both multiple defendants and multiple offenses. United States v. Attanasio, 870 F.2d 809, 814 (2d Cir. 1989) ("Where, as here, the joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied.")

Rule 8(b) allows joinder of two or more defendants "if they are alleged to have

11

participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Second Circuit construes the "same series of acts or transactions" language of Rule 8(b) to mean that "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (citation and internal quotation marks omitted). The court applies a "commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." Id. (citation and internal quotation marks omitted).

In United States v. Cervone, the Second Circuit held that joinder was proper where the defendant was the only defendant charged in the two counts naming him, was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and was not charged jointly in any count in the indictment with a defendant named in the RICO count. 907 F.2d 332, 341 (2d Cir. 1990); accord United States v. Rastelli, 653 F. Supp. 1034, 1041 (E.D.N.Y. 1986). Notwithstanding the defendant's "somewhat tenuous" connection to his codefendants, joinder was proper because the counts concerned common defendants and a common scheme. Id.

Under Cervone and the plain language of Rule 8, the fact that Mancuso is not charged in any counts with Donato and Indelicato is of no independent significance. See Fed. R. Crim. P. 8(b) ("All defendants need not be charged in each count."). Furthermore, courts in this Circuit routinely have held that a defendant charged only in the counts separately charging the predicate racketeering acts, but not in the racketeering counts themselves, may be properly joined with

12

codefendants who were allegedly involved in the same conspiracy. See, e.g., United States v. Galietti, No. 06 CR 161 (EBB), 2007 WL 3231694, *3 (D. Conn. October 31, 2007) ("[D]efendants who are charged only in the counts separately charging the predicate racketeering acts, and who are not charged in the racketeering counts, are properly joined under Rule 8."); United States v. Gotti, No. 02 CR 743 (RCC), 2004 WL 602689 * 3-4 (S.D.N.Y. March 26, 2004) (noting that the Second Circuit has held "on more than one occasion that joinder is proper under Rule 8(b) when a defendant in a RICO indictment is charged only with the predicate acts as independent offenses and not with violating the RICO statute).[4]

In addition, Mancuso is charged jointly with Aiello in Counts Three and Four of the Indictment, who in turn plays a prominent role in the RICO and RICO conspiracy counts and in additional substantive counts. Thus, Mancuso's and Aiello's alleged participation in the Pizzolo murder is clearly "unified by some substantial identity of facts or participants." See United States v. Columbo, 418 F. Supp. 2d 385 (S.D.N.Y. 2005) (holding that joinder was proper where a defendant who was named in only three of twenty-seven counts of the Indictment was charged with two defendants who figured "prominently" in the rest of the indictment and there were "important links" between defendant and his codefendants). Finally, the significant factual overlap between the allegations against Mancuso and Aiello as to particular counts and as to all

---

[4] At oral argument, counsel for Mancuso referred the court to the Second Circuit's decision in United States v. Salameh, 152 F.3d 88, 115-116 (2d Cir. 1998) in support of his argument that joinder in this case is prejudicial to Mancuso. Salameh is inapposite, however, because it considered whether the district court erred in denying a pre-trial severance motion pursuant to Fed. R. Crim. P. 14 rather than the separate question of whether joinder was proper under Rule 8. See Rittweger, 524 F.3d 178-79 ("The question of whether [Defendants] faced prejudice – or were in fact prejudiced – by joinder under Rule 8(b) presents the altogether separate inquiry of whether the trial of these defendants should have been severed under Rule 14.") Mancuso does not argue that he should be severed pursuant to Rule 14.

Defendants by virtue of their alleged participation as members in the Bonanno family enterprise, will produce sufficient efficiencies at trial to warrant joinder. See Rittweger, 524 F.3d 171.

Mancuso's motion for severance is denied.

### B. Motion for Additional Peremptory Challenges

Defendants have moved for additional peremptory challenges, but at oral argument indicated a desire to defer decision on this motion until *voir dire*. The Government does not object. Accordingly, the court defers decision on the motion, and Defendants may renew the motion at or during *voir dire* should they so desire.[5]

### IV. Government's Motion for a Partially Sequestered Jury

The Government moves to empanel an anonymous and partially sequestered jury, requesting that (a) the identities of all prospective jurors, including names, addresses, and places of employment, not be revealed to either the parties or their attorneys; (b) the seated jurors be escorted by representatives of the United States Marshals Service to and from the courthouse each day, and at all times during recesses; and (c) the seated jurors be sequestered within the courthouse during the lunch break for the entirety of the trial and deliberations. The Government argues that Defendants' history of violent activity, their ability to interfere improperly with the judicial process, and the likely publicity their trial will attract all warrant an anonymous and semi-sequestered jury. The Defendants object, arguing that it would unfairly prejudice them and

---

[5] Indelicato has moved to preserve his right to file a motion to suppress certain statements he made to Nicholas Pisciotti about the Santoro murder. Should he wish to make such a motion, the court will consider it in accordance with the agreed upon motion-in-limine schedule.

is not necessary on the facts of this case.[6]

### A. **Applicable Law**

It is well settled that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007) (citation and internal quotation marks omitted). A court may order the empaneling of an anonymous jury upon "(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006) (citation omitted). In reaching its conclusion, a district court must "balance the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against [the jury's] interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Quinones, 511 F.3d at 295.

The Second Circuit has identified certain factors for the court to consider in this balancing, including (1) the dangerousness of the defendant as demonstrated by the seriousness of the charged crimes and the defendant's criminal history, see United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); (2) whether the defendant or his associates have engaged in past attempts to interfere with the judicial process, for example through jury tampering and

---

[6] Mancuso's counsel submitted the brief in response to the Government's motion, which all Defendants have joined. (Defendant Michael Mancuso's Memorandum of Law in Opposition to Government's Motion to Empanel an Anonymous and Partially Sequestered Jury ("Def. Jury Br.") at 1 n.1.) The court will construe the arguments advanced therein as applicable to all Defendants except in those instances in which it is clear that the argument applies only to Mancuso.

threatening or killing witnesses, see e.g., Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192; (3) whether the defendant has access to means to harm the jury, see e.g., United States v. Melendez, 743 F. Supp. 134, 137 (E.D.N.Y. 1990); United States v. Coonan, 664 F. Supp. 861, 862 (S.D.N.Y. 1987); and (4) whether the trial is likely to attract media attention, as may be illustrated by the nature and degree of pretrial publicity, see e.g., Paccione, 949 F. 2d at 1192; United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991).

The decision whether or not to empanel an anonymous and sequestered jury is left to the district court's discretion. Quinones, 511 F.3d at 295.

    B.    **Discussion**

        1.    Need to Protect the Jury

As noted in earlier sections of this M&O, Defendants are charged with extraordinarily serious and violent crimes in this case, including racketeering, racketeering conspiracy, and numerous predicate acts and other substantive counts of murder and assault. The Indictment also alleges that Defendants are longstanding and high-ranking members of the Bonanno crime family — Mancuso for a time was acting boss, Indelicato was a captain, and Aiello and Donato were soldiers. Furthermore, the Indictment details the recourse to violence that is a hallmark of the Bonanno crime family and about which this court has heard testimony in numerous prior proceedings involving the Bonanno family. See e.g., United States v. Massino, 03-CR-929; United States v. Amato, 03-CR-1382. As a result, there is a reasonable expectation that the trial evidence will depict a pattern of violence that would cause a juror to reasonably fear for his own safety. See Vario, 943 F.2d at 241.

In addition, the Bonanno family's willingness to interfere with the judicial process,

particularly by perpetrating violence against cooperating witnesses, is well-documented. (See Gov. Br. at 7 listing past convictions for murders involving Government cooperators.) See United States v. Wong, 40 F.3d 1347, 1376-77 (2d Cir.1994) (noting that organization's "demonstrated willingness" to obstruct justice by intimidating and killing cooperating witnesses supported empaneling an anonymous jury). Mancuso's repeated argument that the existing Defendants have never been accused of obstructing justice is unavailing. First, obstruction of justice, while important to the court's decision, is only one factor in determining whether the jury needs protection. Second, the fact that Defendants' associates have a history of obstructing justice and tampering with witnesses, particularly combined with Defendants' high-ranking positions in the Bonanno family and concomitant ability to "reach out" to members of that family, weigh in favor of juror anonymity whether or not these Defendants have personally participated in jury tampering or obstruction of justice. Finally, the Government has recorded conversations in which Mancuso suggests that Randolph Pizzolo was suspected of being a "rat." (Gov. Br. at 22.) If Pizzolo's murder was based, even in part, on his suspected cooperation with the Government, it implicates Mancuso himself in obstruction of justice.

Finally, this case has received significant media attention, both as to these Defendants and as to Defendant Basciano, who has been severed from the Defendants but who will be tried on some of the same charges. The court notes that members of the press were present at oral argument on these motions and anticipates that press interest in the case will increase prior to and during the trial.

Accordingly, I find that maintaining the anonymity of the members of the jury and sequestering the jury as they travel to and from the courthouse and during recesses is necessary to

17

adequately protect them.

### 2. Reasonable Precautions

Despite the fact that an anonymous jury is warranted in this case, I take most seriously Defendants' constitutional rights to a fair trial and an impartial jury. See United States v. Bellomo, 263 F.Supp.2d 557, 559 (E.D.N.Y. 2003) (it is important "that a balance be struck between the government's interest in the integrity of the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence"). To implement a fair balance between the Government's and Defendants' interests, reasonable precautions must be taken to minimize any potential prejudice, particularly with respect to Defendants' right to a meaningful *voir dire* and Defendants' right to maintain a presumption of innocence. See United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994).

As to a meaningful *voir dire*, the court will provide to each potential juror an extensive questionnaire, developed in consultation with government and defense counsel. All specific identifying pedigree information will be removed from the questionnaire and placed in safekeeping with the Clerk of Court. Neither the parties nor their counsel will have access to this protected information. Each prospective juror will be questioned in person by the court, in an individually sequestered setting, after consultation with counsel, to uncover any potential bias. Through the questionnaire and the individual questioning, the parties will be apprised of all relevant information concerning each potential juror, despite the fact that the name, address, and place of employment of jurors will not be disclosed. This process will ensure that Defendants have a meaningful opportunity to conduct *voir dire* and make informed choices during jury selection. See United States v. Barnes, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a

defendant's substantial rights are protected by a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.")

In order to protect Defendants from being tried by a jury that is prejudiced as to the guilt or violent nature of Defendants, prospective jurors will be given a neutral explanation for the security measures. I will instruct the prospective jurors that the reason for their anonymity and partial sequestration is to maintain their personal privacy and their ability to render a fair verdict in light of the media and public attention that this trial is likely to receive. I will also instruct the jurors that transportation is being provided to protect their privacy and to ensure a timely start to each day of what promises to be a long trial.[7] I find that these explanations are plausible, appropriate, and nonprejudicial. See United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).

---

[7] At oral argument, counsel for Donato expressed the reasonable view that these neutral explanations may wear thin over the course of a long trial and that an astute juror may begin to suspect that the precautions are a result, in reality, of the dangerousness of the Defendants. In view of these concerns, counsel made the following suggestion in the event that I found partial sequestration necessary. Following *voir dire*, the court would seat eighteen members of the jury pool to sit and hear evidence throughout trial, but would not at that time choose which twelve of those jurors would ultimately be chosen for deliberations. At the close of evidence and argument on the eve of jury deliberations, the court would then randomly choose twelve of the eighteen to deliberate and the other six would be dismissed. The jury would then be sequestered only during deliberations rather than during the entire trial on the theory that jury tampering would be less likely if no one knew which of the twelve jurors would ultimately be seated. In counsel's view, this approach would significantly lessen the potential prejudice to Defendants in comparison to daily transportation by the United States Marshal Service throughout trial.

     The court is not aware of, and counsel did not provide, authority for this apparently novel approach to jury sequestration. I have considered the proposal and decline to adopt it for this trial. Among other things, I am not as hopeful as counsel that such an approach would discourage jury tampering. Indeed, someone intent on tampering with a juror may simply try to reach even more jurors in hopes of getting to one who is ultimately empaneled for deliberations.

**III.     Conclusion**

For the foregoing reasons, Defendants' motions, except those on which the court has deferred decision or allowed Defendants to withdraw, are denied. The Government's motion for an anonymous and partially sequestered jury is granted.

SO ORDERED.

|  |  |
|---|---|
| Dated: July 23, 2008<br>Brooklyn, N.Y. | s/ Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge |