UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**03-CR-929**
**05-CR-060**

VINCENT BASCIANO,

Defendant.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

This Order addresses several outstanding issues in Defendant Vincent Basciano's

("Basciano") criminal cases. (See United States v. Basciano, 03-CR-929 ("Basciano I"); United

States v. Basciano, 05-CR-060 ("Basciano II").)

I.      VISITATION ISSUES

By Sealed Order dated February 17, 2010, this court addressed Basciano's request to

expand his prison visitation and telephone privileges. (See Basciano II, Sealed Order dated Feb.

17, 2010.) In that Order[1] the court outlined the issue as follows:

> The MDC [Metropolitan Detention Center] permits Basciano one fifteen-minute
> phone call every other week and two one-hour visits with Angela Basciano and
> her children per month. In addition to these privileges, Basciano requests that his
> bi-weekly telephone calls be extended to thirty minutes and that he be permitted
> to receive an additional two-hour visit each month with Deborah Kalb and her
> minor son. Basciano further requests that the additional visit with Ms. Kalb and
> her minor son be a contact visit in the MDC's visiting room, in the presence of an
> agent from the Federal Bureau of Investigation ("FBI"). Because of scarce prison
> and FBI resources, the Government proposes that Basciano's visitation privileges
> be expanded to twice monthly, two-hour visits, alternating between Ms. Basciano
> and Ms. Kalb. The Government states that security reasons prevent the MDC
> from accommodating Basciano's request for contact visits with Ms. Kalb and her
> son in the visiting room. The Government also states that limitations with the
> MDC's computerized telephone system prevent the MDC from augmenting
> Basciano's bi-weekly telephone calls to thirty minutes.

---

[1] That Order is hereby unsealed to the extent necessary to deal with the issue currently before the court.

(Id. 1-2 (internal citations omitted).) The court directed the Government to specify, ex parte and under seal, the "security reasons" that prevent Basciano from receiving contact visits with his son and the technological limitations that prevent Basciano from placing thirty-minute phone calls. The court also directed the Government to address whether Basciano's telephone and visitation privileges would differ if he were housed in the Metropolitan Correctional Center ("MCC").

Basciano now requests that the MDC permit him three monthly visits, each shorter than two hours but totaling not more than four hours. (See Basciano II, Sealed Goltzer Ltr. dated Mar. 1, 2010.) Basciano also reiterates his request that the MDC extend his fifteen-minute phone calls to thirty minutes.[2] The Government opposes Basciano's proposal to receive three shorter visits, instead of two two-hour visits and his request to place longer phone calls. The Government has also responded to the court's request for more detailed objections to Basciano's requests. (See Basciano II, Sealed and ex parte Gov't Ltr., dated Mar. 3, 2010.)

In light of safety considerations surrounding Basciano's confinement, staffing limitations, and technological limitations of the MDC's phone system, the court declines to interfere with the Bureau of Prisons' administration of Basciano's confinement. Basciano's request for a court order augmenting his visitation and telephone privileges is denied.

## II.    MAINTAINING DOCUMENTS UNDER SEAL

In its February 17, 2010 Order, the court directed the parties to address whether their submissions and this court's orders addressing Basciano's visitation and telephone privileges should remain under seal. Basciano contends that the documents should remain under seal to

---

[2] Basciano withdraws his request for contact visits with his minor son to the extent that he could only receive those visits in the MCC's Special Housing Unit.

avoid publicity of the conditions of his confinement. (See Basciano II, Sealed Goltzer Ltr. dated Mar. 1, 2010, 3-4.) He asserts that filing these submissions on the public docket attracts media scrutiny that results in his minor son receiving unwelcomed attention. (See id.) In support of his application, Basciano cites a front-page newspaper article, printed on January 1, 2010, that discusses the conditions of his confinement, including his ability to receive visits from his minor son. (See Sealed Jasper Ltr. dated Jan. 14, 2009.)

A.    Legal Standard for Maintaining Documents Under Seal

Under the common law right of public access, the public has a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (footnotes omitted). The right is founded upon the public's interest in monitoring the judiciary's administration of justice. See United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). Because the public can only have confidence in the "conscientiousness, reasonableness, or honesty of judicial proceedings" if the documents on which judges rely are publicly available, see id., the right of public access creates a rebuttable presumption in favor of public availability. See United States v. Amodeo, 44 F.3d 141, 145-6 (2d Cir. 1995) ("Amodeo I").

Determining whether a document submitted to the court must be publicly available involves a three-step process. See Lugosch III v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006). The "court must: (1) determine that it is a judicial document; (2) determine the weight of the presumption of access attached to the specific judicial document; and (3) balance countervailing interests against the presumption of access." United States v. Madoff, 626 F. Supp. 2d 420, 424 (S.D.N.Y. 2009). "The burden of demonstrating that a document

submitted to a court should be sealed rests on the party seeking such action . . . ." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997).

B.    Application

Under this standard,[3] the court finds that documents addressing Basciano's visitation and telephone privileges must be placed on the public docket.[4] First, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." Amodeo I, 44 F.3d at 145. But documents filed with the court that are "relevant to the performance of the judicial function and useful in the judicial process" constitute judicial documents and are presumptively open to the public. See id. at 145-46. In this case, Basciano's submissions, the Government's objections, and the court's orders are judicial documents subject to the common law's presumption of access. Through his submissions, Basciano seeks to alter his rights pending trial. Basciano's requests that the court direct the MDC to alter the conditions of his pre-trial confinement are undeniably relevant to this court's judicial performance.

Because the parties' submissions are judicial documents, the court must determine how to weigh the presumption of access.

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

---

[3] There is also a qualified right of access recognized under the First Amendment. See Lugosch, 435 F.3d at 120. Because the court finds that the common law right of access requires public disclosure, it does not reach the constitutional question of whether the first amendment also mandates public access. See United States v. Tangorra, 542 F. Supp. 2d 233, 237 (E.D.N.Y. 2008).

[4] The Government's ex parte letter dated March 3, 2010, however, shall remain under seal and ex parte.

See Amodeo II, 71 F.3d at 1049. Documents that play a role in "determining litigants'

substantive rights" receive a strong presumption of access. Id. "Where statements or documents

in the middle of the continuum are at issue, the weight to be accorded to the presumption of

access must be determined by the exercise of judgment." Id. at 1049-50. For documents that

"are usually filed with the court and are generally available, the weight of the presumption is

stronger than where filing with the court is unusual or is generally under seal." Id. at 1050.

Here, the submissions at issue are entitled to a strong presumption of public access. "The

detention of criminal defendants pending trial is a quintessential exercise of a court's Article III

judicial power, and the public has a legitimate interest in monitoring a court's use of that power."

United States v. Graham, 257 F.3d 143, 154 (2d Cir. 2001) (holding that materials relied on by a

district court in making bail determinations are entitled to a strong presumption of public access).

The strong presumption of access in this case must nevertheless be balanced against

countervailing factors. See Amodeo II, 71 F.3d at 1050. While countervailing factors are case-

specific, the Court of Appeals has recognized such factors to include the privacy interests of

innocent third parties. See Gardner v. Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990). The

privacy interests of Basciano's son in this case, however, do not overcome the strong

presumption of public access. While the privacy interests of innocent third parties are entitled to

significant weight, see id. at 79-80, judicial documents entitled to a strong presumption of public

access must remain public "absent the most compelling reasons," Lugosch, 435 F.3d at 123. The

court recognizes that Basciano's minor son is undoubtedly an innocent third party. But the

countervailing force of his son's privacy interest is weakened by the fact that the public is

already aware that Basciano has a minor son and that Basciano has publicly asked the court to

facilitate visits with him. Basciano has repeatedly filed public submissions regarding the

conditions of his pre-trial confinement in the past. In those submissions, Basciano made specific reference to visitation privileges with his minor son. (See Basciano II, Defense Ltrs. dated Dec. 11, 2009 (Docket Entry # 820); Aug. 31, 2009 (Docket Entry # 772); Aug. 3, 2009 (Docket Entry # 735); May 28, 2009 (Docket Entry # 696); Oct. 27, 2008 (Docket Entry # 549).) Only after publication of the January 1, 2010 front-page newspaper article did Basciano begin to consistently offer his submissions under seal. Despite Basciano's recent efforts to keep information about his son and his visitation privileges secret, the public is already aware that Basciano has a minor son and that Basciano has asked this court for assistance regarding his visitation privileges.

Without diminishing the privacy interest that Basciano's son has in avoiding unwelcomed attention, the court cannot conceal from the public information pertaining to one of its quintessential judicial duties. Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny. The public should have the opportunity to consider and comment on any decision by this court that alters the conditions of Basciano's pretrial confinement. Accordingly, Basciano's submissions, the Government's responses, and this court's prior orders addressing visitation privileges shall be placed on the public docket. The court will stay implementation of this decision, pending receipt from the parties, within 21 days, of requests to redact any portion of their sealed submissions on this subject. Thereafter, the parties are directed to file any future submissions regarding this issue on the court's public docket.

## III. PROTECTIVE ORDER

On December 19, 2007, this court entered a Protective Order in both of Basciano's criminal cases. (See Protective Order, Basciano I, (Docket Entry # 1011); Basciano II, (Docket Entry # 379).) Specifically, the court granted the Government's request to file redacted materials, including prison staff affidavits, relating to a Bureau of Prisons investigation into allegations that Dominick Cicale tried to frame Basciano in a "bogus" prison murder plot. (Id. at 8.) The court also ordered that any information regarding the incident, including the identity of a cooperating witness, CW-1, that the Government voluntarily disclosed could not be disseminated beyond Basciano's defense team. (Id.)

The court later clarified the scope of its Protective Order by Memorandum & Order dated January 11, 2008, stating, inter alia, that "defense counsel are precluded from disclosing redacted affidavits to unauthorized parties . . . but need not file under seal documents that refer to the contents of the [prison staff] affidavits so long as such references involve only limited quotations and do not reveal the identities of the MCC staff or any cooperating witnesses." (Clarification Order, Basciano I (Docket Entry # 1017); Basciano II (Docket Entry # 387) 3.)

By sealed letter dated March 11, 2010, defense counsel request permission to refer to CW-1 by his real in name in public filings, rather than by abbreviation. (Basciano I, Sealed Bachrach Ltr. dated Mar. 11, 2010.) Defense counsel support their application with testimony that CW-1 recently gave as a Government witness in another trial concerning the bogus murder plot and suggest that CW-1's identity is no longer secret. In the proffered trial testimony, however, CW-1 did not refer to any individuals involved in the incident by name. The proffered testimony does not by itself identify the testifying witness as CW-1.

CW-1 is still in the witness security program. (See Basciano I, Sealed Gov't Ltr. dated Apr. 2, 2010.) Because disclosing his identity could put him and his family in danger, the court sees no reason to modify its previous ruling on this issue. Defense counsel's contention that their public filings and oral arguments are less effective because they must refer to CW-1 by abbreviation rather than by name is unpersuasive. The court is confident that defense counsel can effectively convey their positions and arguments to this court and the Court of Appeals by using the CW-1 abbreviation in place of CW-1's name.

Defense counsel also seek clarification of this court's Clarification Order regarding disclosure of additional materials that the Government produced to Basciano on September 15, 2009 ("9/15/09 discovery").[5] These documents relate to the Bureau of Prisons' investigation into Cicale's alleged misconduct. (See Basciano I, Bachrach Ltr. dated Oct. 21, 2009 (Docket Entry # 1115).) Defense counsel seek to clarify whether they must file these documents under seal in future submissions to this court and the Court of Appeals.

The 9/15/09 discovery consists of internal Bureau of Prisons memoranda and an inmate letter that disclose the identities of MCC staff. The court already ruled that the prison staff affidavits, which discuss the contents of the 9/15/09 discovery, are subject to the court's protective order, but that "defense counsel . . . need not file under seal documents that refer to the contents of the affidavits so long as such references involve only limited quotations and do not reveal the identities of the MCC staff or any cooperating witnesses." (Clarification Order 3.)

---

[5] Because defense counsel did not submit the 9/15/09 discovery to the court with his letter application, the court reserved decision on whether the discovery is covered by the Protective Order. The court directed appellate defense counsel to submit sealed copies of the materials to the court. (See Basciano I, Order dated Nov. 3, 2009 (Docket Entry # 1117).) In a letter dated November 10, 2009, counsel stated that he would submit the materials to the court by November 13, 2009. (See Basciano I, Bachrach Ltr., (Docket Entry # 1118).) The court has not yet received the promised materials. However, Basciano's Rule 33 motion, submitted to the court on March 24, 2010, contains a sealed exhibit identified as the 9/15/09 discovery. (See Basciano I, Mem. of Law (Docket Entry # 1125) 40 & Ex. X.) Accordingly, the court is now in a position to address defense counsel's request.

Because the 9/15/09 discovery discloses MCC staff identities, the court finds that it must also be subject to the Protective Order for the reasons stated in that order and the Clarification Order.

## IV.  REQUEST TO REVIEW SEALED DOCUMENTS

On March 3, 2006 and during Basciano's trial, the Government submitted a number of letters and packets of information to the court, ex parte and under seal, asserting that it did not believe the information contained therein was discoverable under Brady or Giglio and that it would not turn over that information to the defense unless ordered by the court.  (See Basciano I, Sealed and Ex Parte Gov't Ltr. dated Mar. 3, 2006 & Exhibits.)  By Memorandum and Order dated April 8, 2006, this court declined to engage in a wholesale review of the documents to determine whether the Government must produce them to the defense.  (See Basciano I, M&O dated Apr. 8, 2006 (Docket Entry # 554).)  The court stated that it would consider particular materials that the Government had concerns about, but noted that it would be inappropriate to review all of the Government files on an ex parte basis.

By letter dated March 9, 2010, defense counsel now ask this court to review the documents that the Government submitted to the court on March 3, 2006 and provide counsel with documents that may be considered exculpatory within the meaning of Brady and Giglio. (See Basciano I, Unger Ltr. (Docket Entry # 1120).)  The court directs the Government to respond to defense counsel's request to review the Government's documents ex parte.  The Government shall submit its response by June 1, 2010.  Defense counsel shall submit any reply by June 14, 2010.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      April 23, 2010

NICHOLAS G. GARAUFIS
United States District Judge