**George Robert Goltzer**
**Attorney At Law**
**200 West 57th Street**
**Suite 900**
**New York, NY 10019**

Tel.  (212) 608-1260
Fax (212) 980-2968
george@goltzer.com

September 1, 2010

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201
Via U.S. Mail and ECF

Re: *United States v. Vincent Basciano*; 05 Cr. 60 (NGG)

Dear Judge Garaufis:

Please accept this letter in reply to the government's August 13, 2010 response to defendant Basciano's supplemental omnibus motion of June 8, 2010.

**Introduction**

In the supplemental motion, Mr. Basciano reiterated all previously filed and undecided pre-trial motions. In addition, he supplemented  his prior motion to suppress statements and for disqualification of the Eastern District United States Attorney and staff, and moved to strike the Notice of Intent to Seek the Death Penalty.  In compliance with a subsequent Order, the defense submitted an index to all of the pending motions.

With respect to the motion to suppress statements taken from Mr. Basciano by Mr. Massino in the "bullpen" on November 23, 2004, on December 3, 2004 at a codefendant meeting, and tape recorded conversations between Mr. Massino and Mr. Basciano on two occasions in January, 2005, our prior submission and prosecutorial responses are contained in ECF documents 502, 516, 527, 576, 611, 622, 902 , and 923.  The defense does not abandon any arguments contained in the prior documents, be they factual or legal.  No arguments contained in the supplemental motion or this reply should be construed as a waiver or abandonment of prior arguments, applications, factual contentions, or the prior requests for hearings.

This reply will address the government's misunderstanding of the defense arguments and its responses to arguments it wishes we had made, rather than those actually put forth. We begin, however, with a serious factual dispute.

### Mr. Basciano and Mr. Massino Did Not Discuss the Pizzolo Homicide On November 23, 2004, As Stated in the Government's Papers

At page 3 of its August 13, 2010 response to the supplemental motion, the government stated:

> On November 23, 2004, shortly after Basciano's arrest in connection with the 03 Cr 929 case, Basciano saw Joseph Massino, who was then the official boss of the Bonano family, at the Brooklyn federal district courthouse. At that time, Basciano discussed his decision to order the murder of Randolph Pizzolo and discussed the murder of AUSA Greg Andres, the lead Basciano I prosecutor. Shortly thereafter, Randolph Pizzolo was murdered on November 30, 2004. ............

The defense contests this assertion about the alleged Pizzolo discussion, made for the first time without any declaration or record support, five and a half years into this litigation. The defense believes that the government is mistaken and has spoken in error. The notion that Mr. Basciano and Mr. Massino had such a discussion about the order to kill Pizzolo, prior to the murder, is belied by the January 3, 2005 recording. (See government transcript, ppg. 64-65, quoted in pertinent part below):

> MASSINO: No, but but you see what you just sayin' let me, if I'm wrong correct me, I see you on a Friday in a bullpen correct?

> BASCIANO: Go ahead.

> MASSINO: We talked about everything right?

> BASCIANO: Right, right, right.

> MASSINO: You never mentioned one word about Randy.

> BASCIANO: Well, you know what I I...

> MASSINO: Let me finish. That was on a Friday. The following Friday we had a co-defendant meeting that's when you tell me that yous clipped him. Why don't yous tell me that Friday? Why didn't you ask me?

> BASCIANO: (sighs)

MASSINO: Why didn't you ask me that Friday? You didn't.

BASCIANO: It was already in the works beau.

MASSINO: Yeah, but you didn't see me on a Friday.  You didn't tell me nothing.

BASCIANO: ...No, No.

\*\*\*

MASSINO: Did I see you in the bullpen?

BASCIANO: Yeah.

\*\*\*

MASSINO: Why didn't you mention about Randy to me?  You never said a word.

BASCIANO: I didn't think, well -.

Unless the prosecution retracts its statement that there was a conversation between Mr. Basciano and Mr. Massino about the order to kill before the killing, there must be a hearing to resolve the conflict.  If the prosecution does not retract the statement, we request that the government be ordered as the defense would, to provide a sworn declaration of fact with record support for this late allegation.  At the June, 2009 oral argument on the motion to suppress, I requested the right to call Mr. Massino at a hearing on the motion.  The defense still request that  we be afforded such a hearing and the right to call Mr. Massino, even if the prosecution retracts the statement about November 23, 2004 as it relates to Pizzolo.

We continue to contest the government's assertion, at page 17 of its August 13, 2010 response, that the court has definitively ruled on aspects of the motion to suppress the statements. We are still litigating and have, in earlier papers, indicated why we are not bound by the prior ruling, a ruling which said the government "may" use the statements. (Dec. 15, 2005 Order in "03 case). We take that not as a definitive ruling but, instead, reference to a hypothetical possibility in another case.

### The Government Still Ignores the Continuity of the '03  Pattern and the Attachment of the Right to Counsel on the Subject Matter of Massino's Interrogations of Basciano

Evidence of all the Basciano-Massino conversations must be suppressed, not just for the reasons stated in our prior submissions, but also for the critical reason - once again ignored by the government - that the Pizzolo, Andres and Defillipo crimes were part of the continuing pattern of racketeering through which Basciano and others had allegedly agreed to conduct the affairs of the

Bonano family.  It was to that conspiracy charge that the right to counsel had attached prior to the Massino conversations.  Since the government agent questioned Basciano in the absence of counsel about the subject matter of the conspiracy count, a count that included an agreement to conduct the enterprise through violence and murder that need not have yet been pleaded, the Sixth Amendment right to counsel was violated by the Massino interrogations.  Massino peppered his conversation with inquiries about the enterprise and pattern of racketeering when he asked Basciano what was "going on out there" and what was new with the family.  (January 3, 2005 recorded conversation).

Before the Circuit decided the double jeopardy appeal, it had earlier recognized in the RICO conspiracy context that the pattern of racketeering activity can continue beyond completion of the charged predicates.  "[W]hether a pattern is pleaded to have "consisted of" or "included" specified predicate acts, the completion of those predicates does not, as a matter of law, dictate the end of the pattern, much less the attainment or abandonment of the conspiracy's overall objective".  *United States v. Pizzonia,* 577 F.3d 455, 466 (2d Cir. 2009).   The government ignores this principal here as it did in submissions to the Circuit in the double jeopardy appeal.

The Second Circuit stated, in *United States v. Basciano,* 599 F.3d 184, 204 (2d Cir. 2010):

> Viewed in the context of these pleadings, allegations that acting boss Basciano "reported to actual boss Massino on the 2004 murder of Pizzolo and "proposed the murder of AUSA Andres, see 05 Cr. 929 (S-9) ¶¶ 17-18, 27-28, 32, appears simply to confirm these leaders' ability to continue conducting the Family's affairs through the expansive pattern of racketeering activity detailed in the 03 - cr - (S-8) indictment, not to signal that they were now employing a distinct pattern of racketeering activity dating from 2004.

In our supplemental motion, we analyzed the breadth of the alleged conspiracy, the continuous nature of the alleged pattern that underlay the conspiratorial agreement, and the attachment of the right to counsel to the subject matter of the broad conspiracy and pattern involved in the initial '03 indictment.  The government does not seem to dispute our statements. They really ignore them and allude to the rigid and inapplicable *Blockburger* test.  Of course, we have already explained why *Blockburger* does not sanction the government's misconduct in this case, since the statements elicited from Basciano involved the charged offense as well as any so-called uncharged offense.  The government fails to recognize that it had no right to question Basciano without his lawyer about the charged conspiracy, one that continued after his indictment and to which his right to counsel had already attached.  The government may always investigate; it may not use the statements at trial if the investigation violated the right to counsel.  Such is the case here.

The nature of the government's response underscores the rectitude of our position.  For if the government prevails, it will have eviscerated the Sixth Amendment right to counsel.  It will be able to send informants to question the subject of any conspiracy indictment about the subject matter of the broad conspiracy and use the statements at the trial of any substantive count because it was savvy enough to refrain from indicting for the other counts.  That result is constitutionally impermissible

for the reasons stated in our prior submissions and the government still does not address our argument in terms that really apply to the factual template of this case..

It is true that the Supreme Court, in *Texas v. Cobb,* 532 U.S. 299, rejected the notion that the Sixth Amendment right to counsel extends to crimes that are "factually related" to the charged offense. But what the government either fails to see or just ignores, is that the Pizzolo, Andres and DeFilippo crimes are not simply "factually related" to the RICO conspiracy alleged in 03 Cr 929, they are part of the charged offense to which the right to counsel had attached. That is the key distinction between Basciano's situation and Cobb's. That is why Basciano's statements, unlike Cobb's, must be suppressed.

### The Court Has the Authority to Strike the Notice of Intent
### and It Must Be Stricken

The defense has moved to strike the Notice of Intent. The government has countered that there is no legal basis to do so before the penalty phase. The government is not aware of any case striking a Notice based on a defense assertion that a government witness might commit perjury.

There should be no dispute about the Court's authority to strike specific aggravating factors as unreliable, irrelevant, unfairly prejudicial, confusing or misleading. *See, United States v. Cheever,* 423 F.Supp.2d 1181 (D. Kan. 2006); *United States v. Friend,* 92 F.Supp.2d 534, 541 (E.D.Va. 2000). In *United States v. Sampson,*, 335 F.Supp.2d 166, 199-201 (D.Mass. 2004), the Court found that although Rule 29 of the Criminal Rules of Criminal Procedure did not by its terms apply to the penalty phase of a capital case, the Court had the authority to conduct a similar analysis under the court's inherent power and the heightened reliability doctrine. This had to be done to avoid a violation of the defendant's due process rights by imposition of a death sentence upon less than sufficient evidence to prove an aggravating factor beyond a reasonable doubt.

Mr. Basciano asserts that this court has the inherent authority to strike a Notice of Intent, in whole or in part, pursuant its inherent authority and the heightened reliability doctrine to prevent a penalty phase or death penalty that cannot pass constitutional muster within the Due Process Clause of the Fifth Amendment to the United States Constitution and the prohibition against cruel and unusual punishment and the requirement of heightened reliability of fact finding under the Eighth Amendment to the United States Constitution.

Our arguments in support of striking the Notice have been fully put forth in our main submission and I will not burden the court with undue repetition. However, comment upon a few of the government's assertions is necessary.

First, this is not a case of simple trial inconsistencies to be resolved by a jury. There has been perjury by a government informant, either Cicale or CM-1. That is clear from the fact that both have testified under oath to diametrically opposed facts, and the inconsistency cannot be from lack of recall. Either Cicale attempted to frame Basciano or he did not. Either Cicale perjured himself or

the other informant did.  To the extent that any of the non-statutory aggravating factors relies on Cicale's testimony it must be stricken, lest the government be allowed to bury its collective head in the sand and consciously avoid the truth, that at least one informant used by the government in capital trials has committed perjury.  Under the heightened reliability doctrine, if it is impossible to determine the truth, the proceeding ought not be sullied with the aggravator that relies on the tainted witness.  That there are material inconsistencies involving other witnesses and other non-statutory aggravators simply intensifies the problem.

The government seems to imply that it may use the suspect witnesses for the non-statutory aggravators since they are not needed under the statute to qualify Basciano for death.  All that is needed, posits the prosecutor, is the gateway factor and one statutory aggravator.  If we are correct about the heightened reliability problem only about the non-statutory aggravators, then they, at the least, should be stricken.  For the reasons stated in our main memorandum, the heightened reliability issue permeates the entire potential penalty phase.

We hope that the government does not seriously contend that it would have sought or obtained death penalty authorization in this case without non-statutory aggravators.  They seem to confuse the narrowing and selection issues.  The non-statutory aggravators have been and will continue to be of paramount importance in death penalty proceedings, from authorization to penalty phase. Any argument to the contrary must rely on semantics and sophistry, nothing more.  Without the very non-aggravators which rely on the suspect witnesses, there would have been no death penalty authorization for Basciano and withdrawal of authorization  for Massino.

The defense has alleged that the government should not profit from its misconduct, misconduct involving alleged withholding of exculpatory evidence which misconduct contributed to the procurement of the '03 judgment, the basis for a statutory aggravator.  The government claims that the Circuit opinion affirming the "03 conviction puts our claim to rest, since none of the materials about which we complain made any difference in the procurement of the '03 crime of violence conviction.   That conviction, of course, is still not final as there is still time to apply for a *writ of certiorari.*  Even if the conviction were final, the issue of the government profiting from its own misconduct is not closed when it involves the '03 indictment.

We have just learned of Joseph Barone and moved for voluminous discovery.  We have no doubt that Barone was debriefed extensively about the Cicale crew and matters of critical importance to both the "03 and "05 indictments.  We will not speculate now.  Suffice it to say, we should be provided with the Barone materials as soon as possible to make them part of the record.  Since the government has just requested three weeks to evaluate our discovery requests, we suggest that the issue of striking the Notice be held in abeyance until discovery is resolved.  Then, most probably, the government will not be able to claim - as it does-due diligence in providing "*Brady"* in June, 2009, more than four years after Basciano was arrested.  The new revelations about Barone come over five years after arrest.

-6-

**Conclusion**

**For the Reason Set Forth Above,  Defendant's Motions Should Be Granted**

Thank you for your consideration of these matters. We remain

Respectfully,

George R. Goltzer
Richard Jasper
Ying Stafford

cc: Office of United States Attorney
    Eastern District of New York
    Via ECF

GRG/ms