UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

VINCENT BASCIANO,
               **Defendant.**
-------------------------------------------------------X

Indictment
05 Cr. 60 (NGG)

# DEFENDANT BASCIANO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO RECUSE OR DISQUALIFY THE HON. NICHOLAS G. GARAUFIS

George R. Goltzer
Richard Jasper
Ying Stafford
Attorneys for Defendant
Vincent Basciano
Office and P.O. Address
200 West 57th Street
Suite 900
New York, N.Y. 10019
Tel: (212/608-1260)
Fax: (212) 980-2968

**Preliminary Statement**

This memorandum is respectfully submitted in support of defendant Vincent Basciano's motion to recuse or disqualify the Hon. Nicholas G. Garaufis from presiding at his upcoming capital trial in the Eastern District of New York, under indictment 05 Cr. 60 (NGG).

**Statement of Facts**

A. The Garaufis letter

On April 2, 2007, the Attorney General of the United States directed that a notice of intent to seek the death penalty be filed by prosecutors in the Eastern District of New York against Vincent Basciano. On May 13, 2010, a little over three years later, the Hon. Nicholas G Garaufis wrote to the Attorney General of the United States that he should reconsider whether to seek the death penalty against Mr. Basciano. Notwithstanding the severity of crimes for which Mr. Basciano had been convicted, the court noted the prohibitive expense involved in the prosecution as well as the fact that Mr. Basciano was already serving a sentence of life without parole and had been designated to one of the most secure prison facilities in the United States. By her letter of September 28, 2010, the United States Attorney for the Eastern District of New York advised the court and parties that she had been directed by the Atty. Gen. Of the United States to continue to seek Mr. Basciano's execution. The defense seeks admission of Judge Garaufis' is letter into evidence at the possible penalty phase of his capital trial.  This motion follows on the ground that Judge Garaufis will have become a witness at the trial when the letter is admitted, in violation of Rule 605, Federal Rules of Evidence

B. The Barone Letter

In late January, 2010, Joseph Barone, a confidential informant about to stand trial for a crime allegedly committed by him while he worked for the government investigating organized crime, wrote a letter to Judge Garaufis. Mr. Barone claimed, among other things, that he was the person responsible for saving Judge Garaufis' life as well as that of an Assistant United States Attorney. (ECF Document 925).

The Basciano defense team was not provided with a copy of the letter, which was apparently filed under seal.

On June 28, 2010, Mr. Barone's defense counsel, in his Southern District case, sent the Court a letter about Mr. Barone's case and his desire to call Your Honor as a witness on behalf of Mr. Barone. Judge Garaufis was not called as a witness in that case since Southern District Judge Buchwald denied the defense application to call either the Judge or Assistant United States Attorney Andres to the stand. The Basciano defense was not provided with a copy of the defense lawyer's letter.

After defense counsel's letter was filed, Mr. Barone's status as an informant was reported in local media and seen by Basciano's lawyers, who checked Barone's Southern District docket sheets and discovered his lawyer's letter. The lawyer's letter alluded to the Barone letter and Basciano's lawyers requested that Judge Garaufis provide the defense with a copy of the Barone correspondence of January, 2010. The Barone letter was published on ECF on August 13, 2010 in response to the Basciano defense letter request of August 10, 2010. (See ECF Document 925, Court Order). The Court directed the government to respond within ten days to Basciano's requests for information about Barone.

The government requested an extension of time in which to reply, which was granted on August 23, 2010. (See ECF document 932). A week earlier, the government letter of August 12, 2010 requested denial of a pending Rule 33 motion to vacate the conviction under 03 Cr. 929 (NGG). The Rule 33 motion was denied by Judge Garaufis on August 19, 2010, before the government answered the '03 and '05 teams' requests for Barone information.

It appears that Mr. Basciano became time barred from bringing another Rule 33 application, based on new evidence, as of July 30, 2010. Mr. Basciano asserts that he was prejudiced by the delay in receiving the Barone letters and information since the delay prevented him from investigating the matter and including material information about him in his pending Rule 33 litigation and, of course, his direct appeal and future appeal from denial of the Rule 33. The defense believes that Barone's status as the "best friend" of witness Cicale and his infiltration of Cicale's crew at the time of the crimes charged, including the Pizzolo murder and other alleged crimes, resulted in the government receiving material information from Barone that both impeached Cicale and implicated him in crimes he denied under oath. Mr. Barone's testimony and the testimony of agents at Barone's trial supports our view, particularly with respect to an alleged plot to harm a member of law enforcement. Additionally, as we discussed in our earlier submissions, the Southern District prosecution team at Barone's trial admitted that Barone provided material information concerning Your Honor. This, notwithstanding the Eastern District's denial. Our discovery applications are pending as this is written, including applications for information about Barone's information about nefarious plots to allegedly harm public servants, and information about the list and the mysterious witness about whom Magistrate Levy learned. Also pending are significant motions *in limine* to determine the admissibility of the "list" at any phase of trial, by either side.

**4**

There is also the open question, posed by the Second Circuit, of the impact of the Court's list ruling upon the "ripeness" of the recusal issue previously raised and as yet undecided in the Circuit, whether the Court can preside at a trial in which his name appears on an alleged "hit list."

### RECEIPT OF THE BARONE LETTER REQUIRES RECUSAL

Upon receipt of the Barone letter, the court gained personal knowledge of a disputed evidentiary fact that is at the core of this case-a handwritten list authored by Basciano which the government contends is a "hit list.".

In prior motions, the defense has asserted the court should have granted recusal pursuant to 28 U. S. C. 455 (a) which provides "a federal judge is subject to disqualification in any proceeding in which his or her impartiality might reasonably be questioned." We now assert that the court should grant recusal pursuant to 28 U. S. C. 455 (b) (1) which provides that "a judge is also disqualified if he or she has a personal bias or prejudice either against or in favor of a party, or personal knowledge of the disputed evidentiary facts concerning the proceedings. *See also* Code of Conduct For United States Judges, Canon 3C(1)(a). Additionally, constitutional due process requires that every litigant have a fair trial before an impartial judge. *Caperton v. A.T. Massey Coal Co.* __ U.S. __, 129 S.Ct. 2252 (2009).

The circumstances of the list is, by far, one of the most hotly disputed facts in this case. Indeed, the list has spawned the majority of the litigation in both Basciano's capital and noncapital cases. Since the discovery of the list, the government has steadfastly maintained that the list authored by Basciano is in fact a "hit list."[1] The government has employed the list to place Basciano under

---

[1] During the course of Basciano's retrial, the government stated the following: "Nothing has changed in our original opposition to the original recusal motion. We set forth the same facts in essence that were before Magistrate Levy when he made his findings. We told this court about

Special Administrative Measures and to pursue the death penalty against him.[2] Moreover, the government utilized the list to designate Basciano to the United States Penitentiary Administrative Maximum Facility located in Florence, Colorado ("ADX Florence").[3] Furthermore, the government intends to rely on the list to prove that Basciano is a future danger and, therefore, that the only appropriate punishment in this case his death.

The defendant has steadfastly maintained through his attorneys, and by affidavit to the Court, that the sole intent for authoring the list was for a Santeria ritual. The defendant has requested on numerous occasions a hearing to dispute the government's allegation concerning the list, as well as a reliability hearing to determine the admissibility of the list at a potential penalty phase. Finally, the defendant has submitted a motion *in limine* to admit the list at the guilt phase of this case, to demonstrate the bad faith of the government's investigation and prosecution of Basciano.

---

the confidential informant, cooperating witness, what we believe the list was about. We also pointed out to the court that there appeared to be a couple of motives behind the creation of that list. One was a hit list and the other was if that failed, gee, maybe we'll get the judge off the case in the worst case." (Trial transcript at 194). Also, during the testimony of cooperating witness Tartaglione, the government again referred to the list as a hit list, "... these questions may well be elicited or may be designed to figure out where this witness currently lives. This witness obviously, as Your Honor knows, has been on a hit list. I do not want this elicited." (Trial transcript at 2601).

[2] The government has indicated that they will rely on the "List" to approve the following:¶ C.1. (B): Continuing Pattern of ¶ C.1. (e): Specific Threats of Violence While In Prison;¶ C.3: Obstruction of Justice; and ¶ C.5:I Participation Iin Additional Uncharged Homicides, Attempted Homicides or Other Serious Crimes of V olence. (*See* Doc. No. 528).

[3] ADX Florence houses prisoners who are deemed the most dangerous and in need of the tightest control. Taylor, Michael (December 28, 1998). *"The Last Worst Place: the isolation of Colorado's ADX prison is brutal. So are the inmates". San Francisco Chronicle.* http//www.sfgate.com/cgi-bin/article?file=/chronicle/archive/1998/12/28/MN42382.DTL

Major issues concerning this case hang in the balance while the Court considers the outstanding motions regarding list. Yet, without the defense knowing it, the court was provided with additional information that seemingly corroborated Basciano's alleged intent to have the Court, an Assistant United States Attorney and three cooperating witnesses murdered.[4] This was a disputed evidentiary fact that the defense was prevented from addressing as part of the adversary process for several months. The defense should have been given the opportunity to address the Barone letter.[5] The defense only became aware of the Barone letter as a result of news reports concerning his case. Then, it was at the request of the defendant on August 10, 2010, that the court provided the defense with a copy of that missive (See ECF Doc. No. 922). Several months had passed during which the defense could have investigated, made motions for depositions and/or made requests for documents and information from the government.[6] If the defense had not asked for the Barone letter, it is

---

[4] At this time the defense is not aware if the court notified the government about the Barone letter. The defendant respectfully requests that the Court clarify the record if the government was notified of the Barone letter prior to the defendant's request on August 10, 2010.

[5] The Model Code in Canon three (B) (7) suggests that judges must maintain the appearance of impartiality, must not appear to favor a party, and must act as an arbiter whose primary job is to judge on the facts presented to him. The Model Code states that a "(judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." See MODEL CODE Canon three (B) (7) (a). Except that "the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.) See MODEL CODE Canon 3(b)(7)(a)(ii). To the extent reasonably possible, all parties or their lawyers shall be included in communications witha judge. See MODEL CODE Canon three (B) (7) (a) cmt.

[6] Additionally, Basciano was precluded from including in his Rule 33 motion, any of the recent revelations concerning Joseph Barone and Barone's letter. Upon information and belief, Joseph Barone was the source of an FBI 302 that concerned the solicitation to kill AUSA Andres and Randolph Pizzolo. These FBI 302's were provided to the defense pursuant to *Brady* and were part of the defendant's recent Rule 33 motion.

unlikely we would have yet seen it. We would have lost the opportunity to contest the assertions in the letter that the list tended to prove that there was ever a real plot to harm the people on it or that Basciano was a part of the alleged nefarious scheme.

Defense counsel does not seek to read the judicial mind and impute any particular motive to the Court for failure to disclose the Barone letter to the defense for so long. It need not and cannot do so, for any such exercise would be wholly speculative. But we are, as we must be, troubled by the impact such a communication may have had on this Court, subtle or otherwise, whether or not the Court is actually aware of it. Defense counsel are concerned, as they must be, about any possible impact that Mr. Barone's communication has on this court's ability to fairly and neutrally decide several pending motions related to the admissibility and reliability of the list, as well as our applications for discovery concerning the government informant and the transcript of proceedings before Magistrate Levy. This unfortunate state of affairs requires recusal under both sections 455(a) and (b). Mr. Basciano, his team and the public should not have to be concerned about the impact of the Barone letter on the presiding judge in any serious criminal case, let alone a capital case.

To the extent that the Second Circuit has indicated that we must demonstrate actual bias, that statement ought not apply to the new factual template. For the Barone situation cannot be attributed to Mr. Basciano. He was not responsible for having Barone write the letter and he was not responsible for the Court not disclosing the letter. Even if the Court were somehow concerned with security issues, we respectfully urge that we should have received either a redacted letter or one under a protective order confining the contents to defense counsel, who could have conducted an independent investigation.

Even if the court did not all consider Barone's letter, recusal is still appropriate. In *Liljeberg v. Health Services Acquisition Corporation,* 486 U. S. 847 (1988), the Supreme Court held that despite the fact that the trial judge claimed that he had forgotten about his position as a trustee of a University that had an interest in the litigation, reversal was warranted. The court, noting the legislative history of the statute, stated that its purpose was to "promote public confidence in the integrity of additional judicial process." *Id* at 860-61.[7] Consequently, we assert that a reasonable person would reasonably infer that the Court's receipt and subsequent withholding of the Barone letter manifests an outward appearance of partiality. Therefore, we must respectfully request that the court grant recusal pursuant to 28 8U S C. 455 (b) (1).

**THE GARAUFIS LETTER MANDATES RECUSAL OR DISQUALIFICATION**

Vincent Basciano's proper introduction of the Garaufis letter at the possible penalty phase of his capital trial would transform judge Garaufis into a "witness" in violation of Federal Rule of Evidence 605. That rule provides that "[The judge presiding at the trial may not testify that trial is a witness. No objection need be made in order to preserve the point." If Mr. Basciano is correct, and the letter is admissible, he need not call judge Garaufis to the stand to take the oath in order that he be considered a witness within the meaning of Rule 605. A recent Seventh Circuit case is instructive.

In *United States v. Blanchard,* 540 2F. 3d 1133 (7th Cir. 2008), the prosecutor read into the trial record some comments the trial judge made during the pretrial suppression hearing

---

[7]The *Liljeberg* Court found it significant and troubling that Judge Collins' failure to timely notify the parties of critical information deprived the prejudiced party of an opportunity to use it as the basis of a post verdict motion. Ironically, Mr. Basciano has complained of finding himself in a similar situation since the untimeliness of the disclosure of the Barone letter prevented him from supplementing his post trial litigation.

9

regarding the credibility of the government witness. The appellate court reversed the conviction finding that the comments were 'judicial testimony'" in violation of Federal Rule of Evidence 605, and that the comments were prejudicial to the defendant. Significantly, the court also found that even though it was the prosecutor who read the judges suppression-hearing comments into the record at trial, 'this in no way alters our conclusion. In the presence of the jury, the trial judge acknowledged that the suppression -hearing comments were his own, insisted that the only valid objection to the comments introduction could be if they were not read 'word for word' and characterized the comments as his 'judicial testimony'. Under such circumstances, Rule 605 is violated; the rule would serve little purpose if it were violated only where judge observes all the formalities-taking of an oath, sitting in the witness chair, etc.--of an ordinary witness." 542 F.3d at 1149. *See Weinstein's Federal Evidence* 605.07- Judge Acting as Witness Although Not Formally Taking Stand. *See also United States v. Sliker,* 751 F.2d 477, 499 (2d Cir. 1984)( discussing the purpose of Rule 605 in light of advisory committee's notes.) Although a District Court may facilitate the jury's understanding of the case by questioning witnesses and explaining, summarizing, and commenting on the evidence, it is improper for the judge to add to the evidence by assuming the role of a witness. *United States v. Nickl,* 427 F.3d 1286, 1293 (10th Cir. 2005). Where a trial judge's comments are based upon his own personal knowledge of matters external to the trial, those comments may constitute impermissible judicial testimony. *See, e.g., United States v. Berber-Tinoco,* 51*0 F.3f 1083, 1091* (9th Cir. 2007)(concluding that trial judge "violated Rule 605 when he interjected his own observations" on facts which were neither in the record nor reasonably derived therefrom, but did not violate Rule 605 where he merely summed up the evidence).

Judge Garaufis' letter is his 'judicial testimony', particularly significant since it comes from a well respected jurist who presided at two of Mr. Basciano's prior trials and who, according to the government, was himself a potential victim of the accused.

## THE GARAUFIS LETTER IS PROPERLY ADMISSIBLE

The Garaufis letter to the Attorney General is a critical piece of mitigation evidence, because it specifies that serious reconsideration of subjecting Basciano to the death penalty is warranted, and the Court's view that life without parole is appropriate under the specific circumstances of the case. The Court noted that defendant had already been sentenced to life without the possibility of parole and been designated to serve that sentence at one of the most secure penal institutions in the United States. The clear import is that life without the possibility of release is appropriate under the circumstances of this case given the defendant will be placed in such a facility that will ensure he is not a danger to others while in prison.[8] The potential magnitude of the Court's letter upon the jury is heightened by the fact that the court presided over Basciano's prior trials and is purported victim of a death threat by the defendant. A jury at a potential penalty phase would most likely give great weight to a federal judge with significant knowledge of Basciano's alleged criminal activity within the Bonanno crime family. The Court's letter requesting that the Department of Justice reconsider the death penalty in this case may possibly be the single piece of evidence that spares Vincent Basciano from the ultimate punishment- death. Therefore we respectfully notify the

---

[8] A potential mitigating factor regarding this point could be stated as follows: the Bureau of Prisons is capable of fashioning conditions of confinement that will control Basciano's activities while he is in prison. Therefore Basciano does not and will not pose a threat to others, rebutting the government's case that Basciano is a future danger and thus must be executed

11

Court of our intent to introduce the letter at a potential penalty phase in this case and strenuously assert that we have a right to do so.

The letter is properly admissible. It bears repeating that the Supreme Court has concluded that the Eighth and Fourteenth Amendments require that the sentencer "not be precluded from considering, as a mitigating factor, any aspect of the defendant's character or record any of the circumstances of the offense that defendant proffers as a basis for a sentence less than death. *Lockett v. Ohio,* 438 U.S. 586, 604 (1978). Also, mitigating evidence is not limited to the pre-offense time frame. In *Skipper v. South Carolina,* 476 U.S. 1 (1986)( Court held that the defense should have been permitted to introduce such evidence even though it "would not relate specifically to petitioner's culpability for the crime committed" because "there is no question but that such inferences would be 'mitigating' in the sense that they might serve as a basis for a sentence less than death." 476 U. S. 1, 4-5 (1986). *See also Green v. Georgia,* 442 U.S. 95 (1979) (state hearsay rule could not be invoked the bar relevant mitigating evidence); *Eddings v. Oklahoma,* 55 U.S. 104 (1982) ("The sentencer... may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration"); *Tennard v. Dretke,* 542 U.S. 274 (2004); *Hitchcock v. Dugger,* 481 U.S. 393 (1987); *Penry v. Lynaugh,* 492 U.S. 302 (1989); *Penry v. Johnson,* 532 U.S. 782 (2001); *Payne v. Tennessee,* 501 U.S. 808, 822 (1991)("virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances") *Ayers v. Belmonte,* 127 S.Ct. 464, 478 (2006)(describing a jury's penalty-phase task as weighing "the finite aggravators against the potential infinite mitigators").

Furthermore, the "Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings." *United States v. Lee,* 374 F.3d 637 (8th Cir. 2004). The defendant may present "any information relevant to a mitigating factor," and "[I]nformation is admissible regardless of its admissibility under the rules governing the admission of evidence in criminal trials." *See* 18 U.S.C. 3593(c). To date, the circuits have rejected challenges to the FDPA's relaxed evidentiary standard. *See United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007)' *United States v. Fulks,* 454 F.3d 412 (4th Cir. 2006); *United States v. Lee,* 374 F.3d 63 (8th Cir. 2004); *United States v. Fell,* 360 F.3d 135 (2d Cir. 2004); *United States v. Allen,* 247 F.3d 741 (8th Cir. 2001);, vacated on other grounds, 536 U.S. 953 (2002). United States v. *Jones,* 132 F.3d 232 (5th Cir 1998). *See also United States v. Barrett,* (upholding similarly phrased standard in 21 U.S.C. 848). Thus, under the current law concerning the federal death penalty, the Garaufis letter is admissible if potential penalty phase in this case.

## CONCLUSION

### FOR THE REASONS SET FORTH ABOVE THE MOTION SHOULD BE GRANTED

          Respectfully submitted,

          George R. Goltzer
          Richard Jasper
          Ying Stafford