UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                05 CR 060 (S-9) (NGG)

VINCENT BASCIANO,

         Defendant.

- - - - - - - - - - - - - - - -X

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT VINCENT BASCIANO'S MOTION
<u>TO RECUSE OR DISQUALIFY THE HON. NICHOLAS G. GARAUFIS</u>

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Taryn A. Merkl
Jack Dennehy
Nicole M. Argentieri
Stephen E. Frank
Assistant United States Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to defendant Vincent Basciano's Motion to Recuse or Disqualify the Honorable Nicholas G. Garaufis, filed on October 8, 2010 ("Def. Br.").

This motion represents the defendant's fifth effort to obtain the recusal or disqualification of the Court in this case. Each of the prior motions has been denied.  In 2008, the Second Circuit Court of Appeals denied the defendant's petition for a writ of mandamus requiring the Court to recuse itself, see In re Basciano, 542 F.3d 950, 957 (2d Cir. 2008), and the Supreme Court last year denied the defendant's petition for a writ of certiorari, see Basciano v. United States District Court, 129 S. Ct. 1401 (2009).[1]

In his current motion, Basciano contends that the Court's failure to disclose to the defense an ex parte communication from a defendant in another case in another district until it was requested by Basciano's attorneys raises an appearance of partiality that requires recusal under 28 U.S.C.

---

[1]    Earlier this year, the Second Circuit also rejected Basciano's contention that, inter alia, the Court's failure to recuse itself from Basciano's previous racketeering prosecution violated his due process rights.  United States v. Basciano, No. 08-cr-1699, 2010 WL 2802566, at *3 (2d Cir. July 16, 2010) (summary order).  In reaching that conclusion, the Court noted that the Court's "exemplary attention to Basciano's rights throughout the trial, would not permit any objective, disinterested observer to entertain significant doubt as to whether justice was done in this case without recusal."  Id.

§§ 455(a) and (b)(1).  In addition, Basciano contends that a May 2010 letter from the Court to the United States Attorney General requesting reconsideration of the government's decision to seek the death penalty in this case would be admissible at a possible penalty phase of this trial, and therefore requires recusal under Fed. R. Evid. 605.

The government respectfully submits that the defendant's contentions are without merit and his motion should be denied.

BACKGROUND

I.   The Barone Letter

On January 30, 2009, Joseph Barone, a former cooperating witness, was charged by information filed in the Southern District of New York with use of interstate facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1958.  See United States v. Joseph Barone, et al., 09-CR-91 (NRB) (S.D.N.Y.).  Approximately one year later, in January 2010, Barone wrote a letter to the Court in this case contending, among other things, that he was "the man who is directly responsible for saving [the Court's] life, not to mention the AUSA's as well."  (1/31/10 Lett. to Hon. Nicholas G. Garaufis at 1, 05-CR-060 Docket Entry No. 925)

Barone's claim appears to constitute an attempt to take credit for disclosing to the government a handwritten list on which the defendant, Vincent Basciano, had written the names of the Court, Assistant United States Attorney Greg Andres, and three cooperating witnesses who testified in a Spring 2006 trial against Basciano on racketeering conspiracy charges (the "List"). The List was not, however, provided to the government by Barone. As documented in prior filings, Basciano gave the List to a fellow inmate at the Metropolitan Correctional Center ("MCC") in 2006.  The MCC inmate advised that Basciano gave him the List toward the end of the trial, and that Basciano told him that

-3-

Basciano sought the murder of the listed individuals.   See
Basciano v. Lindsay, Warden, Government's Mem. of Law, 07-CV-421
(NGG)(RML) at 7-8 (Docket Entry No. 2).

Testifying on his own behalf at his Southern District
trial, in July 2010, Barone claimed that he was responsible for
informing the government of the existence of the List.   He
testified as follows:

> We had heard that there was a potential
> threat against an AUSA, so basically I was
> kind of aware of it but, you know, people
> make threats all the time, you know.
> Sometimes you take them seriously, sometimes
> you don't, but it was a threat, so it was on
> my mind.  I happened to learn that the judge
> was on that hit list, the AUSA was on the hit
> list, a few witnesses were on the hit list,
> and I knew pretty much who was going to do it
> and we only had a small window of when it was
> going to happen.  So I alerted Vinnie [FBI
> Special Agent Vincent Presutti] immediately
> because there was now, I felt, something very
> serious to consider.  So we talked back and
> forth.  He immediately alerted everybody
> immediately, almost to the fact he almost
> hung up abruptly from me because I had to
> tell him it was very important, it was the
> real thing when they were getting ready to go
> and do all of this take-down or whatever it
> was.

United States v. Barone, Trial Tr. at 605-06 (July 23, 2010)
(emphasis added).

Following Barone's testimony, Basciano's defense
attorneys filed a request on August 10, 2010 asking this Court to
release a copy of Barone's January 2010 letter to the Court.   The
Barone letter was posted on ECF three days later.

-4-

II. <u>The Court's Letter to Attorney General Holder</u>

On April 2, 2007, the government filed a notice of intent to seek the death penalty against Basciano in this case. Approximately one year later, following Basciano's conviction after trial in a different case on racketeering, racketeering conspiracy and other charges, this Court sentenced Basciano to life in prison. <u>United States v. Basciano</u>, 03-CR-929 (NGG) (E.D.N.Y. March 31, 2008) (the "'03 case").

On May 13, 2010, the Court wrote a letter to Attorney General Eric H. Holder, Jr., informing the Attorney General of the life sentence and requesting that the government undertake a "candid reappraisal of whether the resources necessary for a death penalty prosecution should be devoted to this case." (5/13/10 Lett. to Attorney General at 2, 05-CR-060 Docket Entry No. 889). On September 28, 2010, the government advised the Court that the Attorney General had directed it to continue to seek the death penalty against Basciano. (9/28/10 Lett. at 1, 05-CR-060 Docket Entry No. 938).

ANALYSIS

Basciano makes two principal arguments in support of his motion for recusal.

First, he contends that the Court should have immediately disclosed to the defense the ex parte letter it received in January 2010 from Barone contending that he provided information to the government regarding the "hit list" and plot to kill the Court.  Basciano argues that the Court's failure to disclose the letter until August 2010, when the defense requested it, prejudiced Basciano's effort to obtain a retrial of his 2008 conviction, and raises at least an appearance of partiality that requires recusal.

Second, Basciano contends that the Court's May 2010 letter to Attorney General Holder requesting that the government reconsider its decision to seek the death penalty in this case would be admissible as mitigating evidence at a possible penalty phase of the trial.  Accordingly, he argues that the letter requires the Court's recusal to avoid a potential violation of Fed. R. Evid. 605.

As with each of his prior recusal motions, Basciano's contentions in this motion are without merit and the motion should be denied.

POINT ONE

THE BARONE LETTER IS IRRELEVANT AND DOES NOT REQUIRE RECUSAL

I. Legal Standard

      Section 455(a) of Title 28 of the United States Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Section 455(b)(1), in turn, specifies that one such instance requiring disqualification occurs where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  Section 455(b) thus "addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed." United States v. Bayless, 201 F.3d 116, 126 (2d Cir. 2000).

      Disqualification under Section 455 requires a showing that would cause "an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal."  United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992); accord United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003); In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001).  This analysis is made "not by considering what a straw poll of the only partly informed man-in-the-street would show[,] but by examining the record facts and the law, and then deciding whether a reasonable person

knowing and understanding all the relevant facts would recuse the judge." Bayless, 201 F.3d at 127. Claims that are "remote, contingent, indirect or speculative" do not, as a matter of law, permit recusal. Lovaglia, 954 F.2d at 815; accord Aguinda, 241 F.3d at 201.

## II.  The Barone Letter Is Irrelevant and Does Not Require Recusal Under 28 U.S.C. § 455

The Barone letter is irrelevant to these proceedings and does not give rise to grounds for recusal under Section 455.

First, contrary to Basciano's contention, the Barone letter does not provide the Court with personal knowledge of any disputed fact because the government and the defense agree that the letter is unreliable and untrue. As Basciano notes in his motion, he "has steadfastly maintained" that the list he authored containing the Court's name and the names of other individuals was not a hit list – as the government has argued – but rather a document prepared in connection with "a Santeria ritual." (Def. Br. at 6). Basciano argues that the Barone letter is at odds with his characterization, and instead "seemingly corroborate[s] Basciano's alleged intent to have the Court, an Assistant United States Attorney and three cooperating witnesses murdered." (Def. Br. at 7). Basciano further contends that the Court's failure to disclose the Barone letter earlier deprived Basciano of "the opportunity to contest the assertions in the letter." (Def. Br. at 8).

As the government has made clear in its letter to the Court of October 13, 2010, however, Barone's contention that he provided information to the government concerning the hit list and the plot to kill the Court is untrue.  Indeed, as the government noted, Barone's claims – as set forth in both his trial testimony and the letter – are "inconsistent with the contemporaneous reports regarding Barone's information and the well-documented and undisputed timing of Basciano's provision to another inmate in MCC in 2006 of the List that contained the names of Your Honor, AUSA Andres and three cooperating witnesses." (10/13/10 Lett. at 6).  The government further noted that "[o]ther than Barone's self-serving arguments and testimony and Barone's letter to Your Honor . . . there is no information in Barone's source file or elsewhere indicating that Barone provided information to the government about a threat against Your Honor or a 'hit list.'" (Id.).  Accordingly, because both the government and the defense agree that the claims in Barone's letter are untrue, there is no merit to the defense's claim that the Barone letter provided the Court with "personal knowledge of disputed evidentiary facts concerning the proceeding," as required by Section 455(b)(1).[2]

---

[2]     Even if the letter did shed light on a disputed evidentiary fact – which it does not – it is far from clear that the letter – received by the Court in the course of its official duties – constitutes the type of "extrajudicial source" that would give rise to the "personal knowledge" contemplated by

Second, Basciano does not, and cannot, contend that the Barone letter has given rise to any actual bias, as Section 455(b)(1) also requires.  Instead, he concedes that the Court disclosed the letter promptly after the defense requested it, and that the Court has made no subsequent rulings that even arguably implicate the letter or its content.  Moreover, to the extent Basciano challenges the Court's failure to disclose the letter sua sponte, he acknowledges that any effort "to read the judicial mind and impute any particular motive" to the Court's actions "would be wholly speculative."  (Def. Br. at 8).  The law is clear, however, that Section 455(b)(1) "addresses the problem of actual bias," and that claims that are "remote, contingent, indirect or speculative" do not permit recusal.  See, e.g.,

_____

Section 455(b)(1).  See, e.g., United States v. Jones, No. 99-CR-264, 2002 WL 32086511, at *3 (D. Conn. Aug. 16, 2002) ("As a general rule, the alleged bias must stem from an 'extrajudicial source' - that is, the alleged prejudice cannot derive solely from the court's rulings or statements from the bench." (citing Liteky v. United States, 510 U.S. 540, 555 (1994); United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)).  Taken to its logical extreme, Basciano's argment would mean that whenever a Court receives a letter from a third party – regardless of whether that letter is true or even plausible – the Court has been imbued with "personal knowledge" of the case and must recuse itself.  That is not, and cannot be, the law.  If a defendant's effort to change judges by plotting to kill the judge does not require recusal, then certainly a third party's letter containing uncorroborated allegations about the defendant, without more, cannot require recusal either.  Cf. United States v. Basciano, 542 F.3d 950, 957 (2d Cir. 2008) ("Requiring a judge to recuse himself because the defendant, in an attempt to change judges, has plotted or threatened to kill the judge would provide any defendant who wanted a new judge with an effective, if in some cases dreadful, method to achieve that end.").

-10-

<u>Lovaglia</u>, 954 F.2d at 815.  Accordingly, Basciano's claim under Section 455(b)(1) fails for that reason alone.[3]

Third, although Basciano expresses vague "concern" about the Barone letter's "possible impact" on the Court's "ability to fairly and neutrally decide" matters before it, he does not articulate how the letter, or the Court's failure to disclose it earlier, would lead a reasonable person to conclude that the Court "has knowledge of facts that would give him an interest in the litigation." <u>Liljeberg v. Health Sciences Acquisition Corp.</u>, 486 U.S. 847 (1988).[4]  Instead, his principal

---

[3]     The government respectfully submits that the Court should decline the defendant's invitation to disregard Second Circuit precedent and make new law by ignoring the requirement that he "demonstrate actual bias."  (Def. Br. at 8).

[4]     Although Basciano cites <u>Liljeberg</u> for the proposition that recusal is required here on the basis of an "appearance of partiality," that case is distinguishable from this one. <u>Liljeberg</u> involved a trial judge who, while serving as a university trustee, issued a decision that directly benefited the university in contemporaneous negotiations it was having with the party that prevailed in the litigation pending before that judge. The Supreme Court concluded that, even though the trial judge was apparently unaware, prior to announcing his judgment, that the university had "an active interest in the outcome of the litigation," <u>id</u>. at 857, he was obligated to recuse himself and vacate the judgment once he learned of it.  <u>Id</u>. at 860-61. <u>Liljeberg</u> thus reaffirmed that, in such circumstances, "even the appearance of partiality" is sufficient to warrant recusal under Section 455(a).  <u>See</u> <u>id</u>. at 860 ("If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.").  As noted, however, Basciano concedes that there is no evidence in this case the Court has "an

-11-

contention with respect to the letter is the conclusory assertion that its earlier disclosure <u>might</u> have assisted him in seeking a new trial in a <u>different</u> case – his prior racketeering trial before this Court.[5]  Basciano's failure to cite to the "record facts and the law" of this case in support of his claim of partiality here is telling given that both sides agree that the Barone letter is untrue, and that the Court's only action with respect to the letter was to disclose it promptly after Basciano requested it.  Accordingly, Basciano's claim under Section 455(a) must be rejected.

---

active interest in the outcome of the litigation," and he points to nothing that would lead a reasonable observer to conclude otherwise.

[5]   As noted, however, the Second Circuit has already concluded in that case that this Court paid "exemplary attention to Basciano's rights throughout the trial."  <u>See</u> <u>Basciano</u>, 2010 WL 2802566, at *3.

POINT TWO

THE COURT'S LETTER TO THE ATTORNEY GENERAL IS INADMISSIBLE AND
DOES NOT REQUIRE RECUSAL

I. <u>The Court's Letter to the Attorney General Is Not Evidence</u>

Basciano contends that the Court's May 2010 letter to Attorney General Holder is "judicial testimony" that would serve as a "critical piece of mitigation evidence" in any death penalty phase of this case "because it specifies . . . the Court's view that life without parole is appropriate under the specific circumstances of the case." (Def. Br. at 11). Basciano further argues that the Court's letter would be admissible in a penalty proceeding because the jury should not be precluded from considering "any information relevant to a mitigating factor," including "any aspect of the defendant's character or record or any of the circumstances of the offense that defendant proffers as a basis for a sentence less than death." (Def. Br. at 12-13 (<u>quoting</u> <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978)). Basciano's contentions – aside from being speculative and lacking ripeness – are incorrect because the Court's letter is not evidence and does not provide any information relevant to a mitigating factor.

First, contrary to Basciano's contention, the Court's letter is neither relevant, nor is it evidence. "Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." <u>Tennard v. Dretke</u>,

-13-

542 U.S. 274, 284-85 (2004) (citation and internal quotation
marks omitted).  The Court's letter does not logically tend to
prove or disprove any fact.  It does not reference or provide any
information about the "defendant's character or record or any of
the circumstances of the offense that the defendant proffers as a
basis for a sentence less than death."  Lockett, 438 U.S. at 604;
see also United States v. Fell, 531 F.3d 197, 219 (2d Cir. 2008)
(noting that the relaxed evidentiary standards in penalty
proceedings under the Federal Death Penalty Act "do not mean that
the defense has carte blanche to introduce any and all evidence
that it wishes") (citation and internal quotation marks omitted);
Robison v. Maynard, 829 F.2d 1501, 1504-05 (10th Cir. 1987),
overruled on other grounds, Romano v. Gibson, 239 F.3d 1156, 1169
(10th Cir. 2001) (noting that "the universe of [relevant]
evidence [admissible in a death penalty proceeding] is
circumscribed by Lockett's holding that mitigating evidence is
that which applies to either the character or record of the
defendant or to any of the circumstances of the offense").  The
letter is thus irrelevant to the issues that would properly be
before the jury in a penalty proceeding.  Indeed, admitting it
would serve only to "divert the jury's attention away from" those
relevant issues, such as "the defendant's background and record,
and the circumstances of the crime."  Booth v. Maryland, 482 U.S.
496, 505 (1987).

Second, to the extent the defense purports to offer the letter as evidence of particular statements within it – concerning, for example, Basciano's prior life sentence and the facility in which he is designated to serve it[6] – any probative value of such hearsay would be vastly outweighed by the danger of creating unfair prejudice by admitting such statements by the Court.  See 18 U.S.C. § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.").  Such evidence would, of course, be admissible in other ways, including through the testimony of experts properly qualified under the rules of evidence, who could testify, based on their training and experience, about the ability (or lack thereof) of defendants to pass dangerous messages from even the most secure federal facilities.  It would, however, be extraordinarily prejudicial to the government to

---

[6]     The letter's suggestion that Basciano has been designated to serve the entirety of his life sentence in the Administrative Maximum Facility of the Florence Federal Correctional Complex may be, as a technical matter, incorrect. In a penalty proceeding, the government expects to introduce evidence that an inmate's designation to the Administrative Maximum Facility is reviewed regularly, and inmates may be "stepped down" from that facility based on their behavior. Accordingly, Basciano could, in theory, be released from the Administrative Maximum Facility and into the general prison population as little as three years into his life sentence.

-15-

allow the defense to introduce the Court's letter as evidence for the very reason suggested in Basciano's letter:  a jury at a potential penalty phase would likely give undue weight to the perceived view – whether accurate or not – of the judge who has presided over Basciano's prior trials.

Third, to the extent the defense concedes that it would seek to offer the letter to set forth the Court's purported "view that life without parole is appropriate under the specific circumstances of the case," the letter should not be admitted because opinions about the sentence to be imposed are inadmissible in a death penalty proceeding.  See, e.g., Booth v. Maryland, 482 U.S. 496, 502-03 (1987), overruled in part, Payne v. Tennessee, 501 U.S. 808 (1991) (concluding, in the context of a victim impact statement, that the admission of such "opinions as to what conclusions the jury should draw from the evidence" is prohibited in capital cases); United States v. Brown, 441 F.3d 1330, 1351-52 (11th Cir. 2006) (noting that Booth's "prohibition against evidence of family members' opinions [about] . . . the appropriate sentence remains good law" and collecting cases).

The defendant's characterization of the letter's content is, as an initial matter, inaccurate.  At most, the letter sets forth the Court's view that "[c]urrent circumstances" – namely, Basciano's sentence to a life term in a highly secure prison – "require a candid reappraisal of whether the resources

necessary for a death penalty prosecution should be devoted to this case." (5/13/10 Lett. to Attorney General at 2). That view is irrelevant to the questions that would be before the jury in any penalty proceeding, as is the underlying issue of the cost associated with the defense of a capital case.

The Court's view of the appropriateness of the death penalty in this case is, in any event, inadmissible. In <u>Robison</u>, for example, the Tenth Circuit precluded "testimony of a family member of the victim urging the jury to reject the death penalty," notwithstanding the defendant's contention that such testimony "would have been strong evidence mitigating that sanction." <u>Robison</u>, 829 F.2d at 1504. In so doing, the court rejected the contention that "any testimony a defendant believes would make the jury less likely to return a death verdict must be allowed to satisfy the dictates of federal due process." <u>Id</u>. at 1505. The court explained:

> An individual's personal opinion of how the sentencing jury should acquit its responsibility, even though supported by reasons, relates to neither the character or record of the defendant nor to the circumstances of the offense. Such testimony, at best, would be a gossamer veil which would blur the jury's focus on the issue it must decide.
>
> Moreover, allowing any person to opine whether the death penalty should be invoked would interfere with the jury's performance of its duty to exercise the conscience of the community. Because the offense was committed not against the victim but against the

-17-

> community as a whole . . . only the
> community, speaking through the jury, has the
> right to determine what punishment should be
> administered.

Id. That logic applies with equal force here. Indeed, it would be no more appropriate to inform the jury of the Court's purported "view that life without parole is appropriate under the specific circumstances of the case," than it would be to admit the testimony of Attorney General Holder concerning the reasons why death is the only appropriate sentence for this defendant. See, e.g., United States v. Fell, 571 F.3d 264, 279 (2d Cir. 2009) (Raggi, J., concurring) ("[P]rosecutors' views on appropriate punishment would have no relevance unless prosecutors are recognized as experts who . . . have particular insight into and expertise with the needs and values of the communities in which they work. In a capital case, however, it is the jury alone that is charged with the responsibility of speaking for the community in deciding whether a particular defendant deserves to live or to die." (citation and internal quotation marks omitted)). Doing either would improperly usurp the role of the jury; doing both would "reduc[e] the trial to a contest of irrelevant opinions." Robison, 829 F.2d at 1504.

II.  <u>Even if the Court's Letter Were Admissible It Would Not</u>
     <u>Require Recusal</u>

Even if the Court's letter were admissible – which, as noted, it is not – it would not require recusal under Fed. R. Evid. 605.

First, even if the Court's letter were offered into evidence, it is the government, not Basciano, that would arguably be prejudiced by the Court's failure to recuse itself.  Indeed, as Basciano's motion suggests, his effort to avoid the death penalty would be substantially aided by the fact that it is the purported view of this Court – which "presided over Basciano's prior trials and is [the] purported victim of a death threat by the defendant" – that "life without parole is appropriate under the specific circumstances of this case." (Def. Br. at 11).  In this regard, Basciano's contention that the Court's letter is critical mitigation evidence <u>and</u> that the Court must recuse itself if that evidence is admitted illustrates the true motivation underlying this motion – like that underlying Basciano's prior recusal motions:  judge-shopping.  <u>Cf</u>. <u>Basciano</u>, 542 F.3d at 957 ("A defendant cannot be permitted to use such a plot or threat as a judge-shopping device.").

Second, even if Rule 605 were to apply – which it does not – it would not require the Court's automatic disqualification, as Basciano contends.  Rather, as the Seventh Circuit suggested in <u>United States v. Blanchard</u>, 542 F.3d 1133

-19-

(7th Cir. 2008) – a case Basciano himself cites – the Court could remedy any potential prejudice by providing a curative instruction to the jury concerning the limited purpose for which the Court's letter was admitted.  Id. at 1153.  For example, the Court could instruct the jury that it is the jury's role to determine whether the parties have proved the applicable aggravating or mitigating factors, and that the Court's letter should not be considered by the jury as dispositive of that determination or even as the Court's view concerning the proper outcome of the penalty proceeding.

<u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion to recuse or disqualify the Court is without merit and should be denied.

Dated:      Brooklyn, New York
            October 15, 2010

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

Taryn A. Merkl
Jack Dennehy
Nicole M. Argentieri
Stephen E. Frank
Assistant United States Attorneys
     (Of Counsel)