UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA

    -against-                                  05 Cr. 60 (NGG)

VINCENT BASCIANO,
               Defendant.

-------------------------------------------------------------x

## DEFENDANT BASCIANO'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S *IN LIMINE* MOTIONS

George R. Goltzer
Richard Jasper
Ying Stafford
Attorneys for Vincent Basciano
Office and Post Office Address
200 West 57th Street, Ste. 900
New York, NY `100`19
Tel. 212/608-1260
Fax: 212/980-2960

**TABLE OF CONTENTS**

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The Government's Other Crimes Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The Defense Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Legal Landscape
What is Really In Issue or Disputed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

What Is Being Corroborated? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

What Needs To Be Balanced Pursuant to Rule 403? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
A. The General Rule 403 Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
B. Analysis of Specific Evidence Proffered By the Government . . . . . . . . . . . . . . . . . . . . 11
       1. Santoro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       2. The Andres Solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       3. Other Crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

The Government Motion To Limit Cross-Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Preliminary Statement

This memorandum is respectfully submitted in opposition to the government's applications *in limine* to admit certain uncharged crimes evidence at Mr. Basciano's upcoming capital trial, and to preclude mention of verdicts of earlier proceedings and impeachment by reference to testimony at earlier trials.  For the reasons set forth below, and except for matters to which the defense consents, the Government's applications must in all respects be denied.

By this memorandum, the defense shall demonstrate that the government's proffer of uncharged  violent crimes ought be rejected.  The evidence offered  is immaterial to matters genuinely in issue.  The probative worth of the evidence is substantially outweighed by the undue prejudice to be suffered by Mr. Basciano if it is admitted.  This is particularly true in view of   Mr. Basciano's earlier and current failures to contest particular elements and aspects of the charged crimes, and the other far less prejudicial evidence available to prove the government's points.

With respect to the application to confine the defense to impeachment by reference to "other proceedings", the defense objects on the ground that he has a Sixth Amendment right to confront witnesses with the jury understanding that the earlier statements were at a trial of no less solemnity than the current trial.  The defense relies on the Second Circuit's holding in *United States v. Giovanelli,* 945 F.2d 479, 488-489 (2d Cir. 1991) (improper prohibition on defense counsel's eliciting that prior testimony had been given at prior trials rather than simply "proceedings").  The defense also asserts his Sixth Amendment rights to effective assistance of counsel and to present a defense.  The  defense has no intention of mentioning actual verdicts of earlier Basciano trials  at the upcoming guilt phase.

2

## The Government's Other Crimes Application

The Government has moved to introduce evidence of Mr. Basciano's involvement in (1) the conspiracy to murder and murder of Frank Santoro; (2) soliciting the murder of Bonanno underboss Salvatore Vitale; (3) soliciting the murder of Assistant United States Attorney Greg Andres; conspiring to kill Joseph Bonelli; (5) the extortion of vendors at the Feast of San Genaro Festival; (6) illegal gambling and loansharking; (7) the conspiracy to murder and murder of David Nunez; and (8) other crimes that Basciano committed together with cooperating witnesses, including assaults.

The government's proffer of unspecified "other crimes that Basciano committed together with cooperating witnesses, including assaults" provides less than reasonable notice of the government's intent within the meaning of Federal Rules of Evidence 404(b). It is unreasonable for the government to ask the defense to peruse thousands of pages of testimony, tape transcripts, 3500 materials and discovery to speculate over which crimes they mean to introduce. If the government intends to introduce evidence of a particular uncharged crime, they should specify it with particularity and specify the reason it is proffered.

While the defense accepts the accuracy of the Government's "Procedural History", the defense notes that evidence of the Andres solicitation was not permitted at earlier trials on the ground of undue prejudice within the meaning of F.R.Evid. 403. As a result of the Second Circuit's double jeopardy decision, the substantive RICO count is no longer charged and the predicate acts alleged that pertained to Andres, Bonelli and Lichtman are no longer part of the indictment as they are not and were never free standing substantive counts.

### The Defense Position

The defense does not object to the following at the upcoming trial:

- participation in an illegal gambling business involving policy

- loansharking

- extortion of vendors at the Feast of San Genaro Festival.

The government indicated, at pg. 4 of its Memorandum of Law:

At trial, the government seeks to offer evidence of Basciano's involvement in other uncharged crimes in order to establish the existence of the enterprise, *i.e.* the Bonanno family; the enterprise's involvement in racketeering activity; Basciano's rank and position within the Bonanno family; the Bonanno family's effect on interstate commerce; and the history and relationships between Basciano and cooperating witnesses. Just as in Basciano's prior trials, evidence of his involvement in other crimes is admissible to "complete the story of the charged crimes, demonstrate the relationships of trust and corroborate the testimony of cooperating witnesses." *United States v. Basciano,* 2006 WL 385325, at *10 (E.D.N.Y. Feb. 17, 2006)(Garaufis, J.). In addition, uncharged act evidence, namely, "threatening family members of witnesses or an associate for fear he may become a cooperating witness" may be admissible to show consciousness of guilt. *Id.* at 5.

To assist the Court in its sensitive gatekeeping function and necessary balancing of competing interest pursuant to Rules 401, 403 and 404(b), the defense wishes to make it very clear that the following will not be contested at the upcoming trial.

- The existence of the enterprise, the Bonanno crime family;

- The Bonanno crime family's involvement in racketeering activity;

- The Bonanno crime family's effect on commerce;

- Basciano's rank and position within the Bonanno family up to the time of his November 19, 2004 arrest for the charged crimes

4

For the reasons stated below, the defense objects to admission of any of the other uncharged crimes evidence enumerated by the prosecution.

Indeed, the defense never contested most of these issues at earlier trials and, if it attempted to contest them now, the government would no doubt offer the earlier judicial admissions. The defense will address the other reasons offered by the government to justify admission of the proffered evidence in later sections of this memorandum.

## The Legal Landscape

## What Is Really In Issue or Disputed?

The defense is well aware of this Court's complete familiarity with the standards applicable to the issues. Nevertheless, it is necessary to underscore a few principles, insufficiently covered in the government's submission, to preserve Mr. Basciano's record.

Although the Second Circuit's "inclusionary" approach affords broad latitude to the District Court regarding the admission of uncharged crimes evidence under Rule 404(b), this approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Figueroa,* 618 F.2d 934, 940, n.2 (2d Cir. 1980). There must be a clear connection between the prior act evidence and a disputed issue at trial. *See, United States v. Mohel,* 604 F.2d 748 (2d Cir. 1979).

*Mohel* is particularly instructive. Defendant was accused of selling narcotics to an informer. His defense at trial was that it never happened; it was a fabrication by the witness. His lawyer repeatedly told the Court that he would concede that if the act actually occurred, it would prove knowledge and intent by his client to sell narcotics. Nobody was going to argue that he thought he was selling sugar. The government was permitted to introduce a conversation of the defendant in which he admitted earlier drug dealing on the issues of intent and knowledge. The conviction was

reversed since intent and knowledge were not in issue if the jury found beyond a reasonable doubt that the defendant distributed cocaine to the government witness.  Further, the testimony was not rendered admissible because it corroborated another equally inadmissible statement by another witness on the same subject.  The Court stated (604 F.2d at 751-752):

> The applicable legal doctrines are well settled. "Other crime" evidence is not admitted to show that a defendant has a bad character or propensity to commit the crime at issue, although it may be admissible for other relevant purposes Fed. R.Evid. 404(b). See *United States v. DeVaughn,* 601 F.2d 42, 45(2d Cir. 1979); *United States v. Williams,*596 F.2d 44,50(2d Cir. 1979); *United States v. Lyles,* 593 F.2f 182, 193 (2d Cir. 1979); *United States v. Manafzadeh,* 592 F.2d 81,86 (2d Cir. 1979); *United States v. Papadakis,* 510 F.2d 287, 294 (2d Cir), Cert denied, 421 U.S. 950, 5 S.Ct. 1682, 44 L.Ed 2d 104 (1975) The evidence must be relevant to an actual issue in the case, and its probative value on that issue must not be outweighed by its unfair prejudice to the defendant. *United States v. DeVaughn,* 601 F.2d at 45,; *United States v. Williams,* 596 F.2d at 50; *United States v. Lyles,* 593 F.2d at 193; *United States v. Manafzadeh, supra,* 592 F.2d at 86, and cases collected there. See also Fed.R.Evid. 403. There is no presumption that other-crime evidence is relevant. *United States v. DeVaughn, supra,* 601 F.2d at 45; *United States v. Manfazadeh, supra,* 592 F.2d at 86. "(C)aution and judgment are called for, and a trial judge faced with an other crimes evidence problem should require the government to explain why the evidence is relevant and necessary. *United States v. O'Connor,* 580 F.2d 38, 43 (2d Cir. 1978); Quoted in *United States v. Manfazadeh, supra,* 592 F.2d at 86; *United States v. DeVaughn, supra,* 601 F.2d at 46. Otherwise, "the accused might be convicted because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged.. *United States v. Manfazadeh, supra,* 592 F.2d at 86; See also *United States v. Papakakis, supra,* 510 F.2d at 294..

With respect to the Pizzolo VICAR counts, conspiracy to murder and murder, the only real issues at the upcoming trial are  Mr. Basciano's conspiratorial and accessorial liability.  He denies that he agreed to kill Pizzolo or ordered the murder.

As with the Pizzolo counts, and in light of what  the defense has not and will not contest, the same analysis pertains to the DeFillippo VICAR conspiracy to murder count.  The issue is whether Mr. Basciano agreed with others to kill him, not whether there was an enterprise and the like. As for

6

the gun count, Mr. Basciano is not guilty of that if he is not guilty of being an accomplice to the Pizzolo VICAR murder. He was in jail when Pizzolo was shot by others.

Those are the only elements of the VICAR counts really in issue. As already indicated, the defense does not contest enterprise, the nature of the enterprise, defendant's position in the enterprise prior to his November , 2004 arrest, and the effect on interstate commerce.

To the extent the government seeks to introduce violent crimes to prove that which is not in issue, it runs afoul of Second Circuit precedent. Such proof is not necessary and substantially and unduly prejudicial.

### What Is Being Corroborated?

One of the government's rationales for the introduction is the corroboration of cooperating witnesses. Simply bolstering cooperators is insufficient justification to introduce the plethora of unduly prejudicial evidence. *United States v. Mohel,* 604 F2d *supra* at 754-755. Other crime evidence is only admissible for the purpose of corroboration if "the corroboration is direct and the matter corroborated is significant." *United States v. Williams,* 577 F.2d 188, 192 (2d Cir. 1978). The government has not even identified the specific "significant" matters involving the actual crimes charged that need to be corroborated. The government should be directed to do so before the Court considers admitting the prejudicial evidence on this vague, amorphous theory. As the proffer stands now, the government seeks to bootstrap one informer's general credibility with another's repetition of prejudicial other crime evidence which pertains, in large part, to undisputed issues. The defense requests a pre-trial hearing on the issue where the government will be put to its burden to articulate clearly the need for the prejudicial evidence, and specifically which aspects of a particular informant's testimony may properly be corroborated, and whether the corroboration is direct and the

matter corroborated significant.

Whether the matter to be corroborated is material and significant - whether it is logically as well as legally relevant, can only be determined after the defense case.

The defense request a hearing on this issue.

## What Needs to Be Balanced Pursuant to Rule 403?

### A. The General Rule 403 Analysis

The government has proffered the evidence of other uncharged crimes pursuant to Rule 404(b) in an overabundance of caution.  It has argued primarily that evidence of Basciano's involvement in uncharged crimes is really admissible as direct evidence of the charged offense, and as evidence that is inextricably intertwined with evidence of the charged offense.  *See* Government Memorandum of Law at ppg 9-14.  The government's position and cases cited in support do not obviate the need for sensitive balancing  pursuant to Rule 403. *United States v. Carneglia,* 256 F.R.D. 104 (E.D.N.Y. 2009, Weinstein, J.)

A court may exclude relevant evidence if its admission would create unfair prejudice, confuse the jury or simply constitute a waste of time. Fed. R. Evid. 403 specifically provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See, *United States v. Massino,* 546 F.3d 123 (2d Cir. 2008), cert denied, 129 S.Ct. 1928, 173 L.Ed.2d 1075 (2009) (probative value of a cooperating witness' testimony - that anyone linked to organized crime who is charged with a crime is in fact guilty of that crime - was substantially outweighed by the danger

of unfair prejudice, even though found to be harmless error); *United States v. Malpeso,* 115 F.3d 155 (2d Cir. 1997)(even if evidence that FBI agent provided law enforcement information to member of rival faction of organized crime family was relevant in prosecution of defendants for conspiracy to murder members of rival faction of crime family, it would still have been inadmissible on the ground that its relevance was far outweighed by risk of unfair prejudice because the likely effect of admitting this evidence would have been to shift the focus away from relevant evidence)' *United States v. Carneglia,* 256 F.R.D. 104, 113 (E.D.N.Y. 2009);("Careful assessment of he government's evidentiary needs and the potential for unfair prejudice to the defendant in this case led to the conclusion that exclusion of references to acid body disposal was warranted).

The "conscientious assessment" of the evidence under Rule 403 includes a determination of "whether there exists any alternative evidence with the same or greater probative value, but with a lesser threat of unfairly prejudicing the defendant, as the proffered evidence," *Carneglia, Id. at* 112.

Rule 403 applies to Mr. Basciano's situation whether the proffered evidence is offered under Rule 404(b) or as direct evidence of the crime charged. That approach was appropriately taken before Basciano I and II by this very Court. Indeed, evidence of the Andres solicitation and alleged heroine dealing were excluded pursuant to Rule 403 after the weighing of unfair prejudice versus probative value.

The Second Circuit has held that Rule 404(b) bad acts evidence must be relevant to an "actual" issue and an offer to stipulate to an issue removes it from the case. *United States v. Mohel,* 604 F.2d 748, 751 (2d. Cir. 1979). Furthermore, even in the absence of a formal offer to stipulate, defendants may remove an issue from the consideration as long as the decision not to dispute the issue is made with sufficient clarity that the trial court will be justified (a) in sustaining objection

to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging

the jury that if they find all the other elements established beyond a reasonable doubt, they can

resolve the issue against the defendant because it is not disputed. *United States v. Figueroa,* 618

F.3d 934, 932 (2d Cir. 1980).

The United States Supreme Court in *Old Chief v. United States,* 519 U.S. 172 (1977) held that

in some circumstances a court's refusal to accept a defense offer to stipulate may be an abuse of

discretion. In *Old Chief,* the government prosecuted the defendant for being a felon in possession of

a firearm in addition to using or carrying a firearm during the commission of a violent assault with

a dangerous weapon. The defendant sought to stipulate that he did have a prior felony conviction. He

was trying to avoid having the jury learn that the prior conviction was also for assault involving a gun.

The Court held that the trial court had abused its discretion under Rule 403 when it spurned his offer

to concede the essential element and admitted the full record of the judgment of the prior offense.

The Court defined the term "unfair prejudice" in Rule 403 as "the capacity" of some concededly

relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific

to the offense charged." *Old Chief,* 519 U.S. at 180.[1]

With respect to all of the evidence proffered by the prosecution, the defense objects pursuant

to Rule 403 of the Federal Rules of Criminal Procedure on the grounds that the probative value of the

evidence is substantially outweighed by the unfair prejudice to Mr. Basciano, the evidence is

cumulative, not related to matters that are truly in issue, will unduly mislead the jury or confuse the

issues, and constitute a waste of time and be cumulative. Further, introduction of the evidence will

---

[1] The *Old Chief* Court was quick to point out, however, that its holding was limited to
cases involving proof of felon status. The Second Circuit, however, seems to have long taken a
broader approach.

10

violate Mr. Basciano's right to a fair trial within the meaning of the Fifth Amendment to the United States Constitution, have a deleterious effect on his potential penalty phase to deprive him of a fair penalty phase and heightened reliability of fact finding within the meaning of both the Due Process Clause of the Fifth Amendment to the United States Constitution and the Eighth Amendment to the United States Constitution.[2]

### B.  Analysis of Specific Evidence Proffered By the Government

### 1.  Santoro

The government has proffered the Santoro conspiracy and murder as:

- Background evidence to prove the existence of the Bonanno family, which Basciano has never contested and will not contest;

- Evidence of the family's racketeering activity, which Basciano has not and will not contest;

- Evidence of Basciano's history in the family, membership and position, which will not be contested as far as the period prior to his November, 2004 arrest.

- Basciano's demonstrated capability for violence, a prerequisite for a rise to power;

- Evidence of relationship of trust between Basciano and Cicale;

- Corroboration of witness testimony;

---

[2]None of the statements contained in this Memorandum, which relates to the guilt phase, should not be taken as a waiver or abandonment of defendant's previously file and currently undecided applications to preclude evidence at  to a possible penalty phase.  The defense has moved for  a reliability hearing or balancing under the more favorable test within the meaning of 18 U.S.C. § 3593©, which does not require that the prejudice substantially outweigh the probative value.

- Evidence to complete the story of the charged crime.

The government has let slip its true motive in offering evidence of so many crimes of violence at the guilt phase, proving Basciano's character as a violent killer. The government stated, at page 21 of its memorandum of law: **"In committing the Santoro murder, Basciano demonstrated his capability for violence, a necessary prerequisite to rise to power within the Bonanno family, a violent criminal enterprise."** That is precisely what is forbidden by our precedents and rules of evidence. And there is no need to so prejudice Mr. Basciano since we do not contest any element of the VICAR counts pertaining to the existence and nature of the Bonanno family, save Mr. Basciano's commission of the charged crimes. No doubt the government will call Joseph Massino, the long standing official boss of the Bonanno/Massino family to explain his enterprise and how it worked through violence. There is no legitimate need to prove Mr. Basciano's alleged propensity for violence to prove the charged crimes.

The Santoro proof is not needed to prove the relationship with Cicale or its nature. We intend to open on the fact that Basciano and Cicale were very close and had a relationship of complete confidence and trust.

The Santoro murder does not complete the story of the charged Pizzolo and DeFillippo crimes. They are separated by nearly four years and have different alleged motives. Even according to the government's theories, Santoro was ostensibly killed for motives independent and distinct from Pizzolo's homicide. The motive for the Pizzolo killing is rather vague from the earlier trial testimony, since it changes from time to time. But concededly Cicale did all the planning of the Pizzolo killing, put the hit squad together, and created his alibi, all while Basciano was in jail. There is no signature to the crime, no unique *modus operandi.* Cicale testified that Basciano ordered the hit, but Cicale

12

cancelled it after Basciano went to prison. Then, he did it because Michael Mancuso ordered it. The jury will have to decide if Cicale is telling the truth about Basciano and if Basciano told the truth to Massino on the tapes. The Santoro murder evidence does nothing to fairly assist the jury. The probative value is minimal, the prejudice great.  The issues will be confused and time wasted by retrying Santoro when that is not necessary.

The defense requests a hearing on this issue.

## 2. The Andres Solicitation

Now that the Andres solicitation is no longer charged, it is no less prejudicial now than when this Court excluded it from Basciano I and II.

Contrary to the government's assertion, evidence of the Andres solicitation is not inextricably intertwined with the Pizzolo charge. The Massino tapes, if this Court ultimately rules them admissible, are readily subject to redaction of the Andres references.

Proof of the alleged Andres solicitation in not necessary to prove the existence of the family or that the family's hierarchy feared cooperators or wanted to protect the family. There is ample other evidence of that from the government's witnesses, Massino and Vitale at the least.

Since Basciano has not contested his position in the family, it is superfluous to introduce such prejudicial and inflammatory evidence, that he allegedly wanted to murder a prosecutor to prove that he was interested in the welfare and protection of the family. There is ample other taped evidence of Mr. Basciano's concern for the welfare and  protection of the family, particularly in the Tartaglione tapes, to prove the government's point.

Once again the government professes to offer the evidence to prove motive and intent, when they are not the real issues in the case.  Mr. Basciano avers that he did not commit the crime that

others committed for their own motives.  If the jury believes beyond a reasonable doubt that Cicale had Pizzolo killed at Basciano's insistence, motive and intent follow.  There is no need to offer this highly prejudicial evidence on the issues of motive and intent.

In all candor, we cannot deny that the government's argument in support of admission of the Bonelli murder conspiracy does have some real connection to the Pizzolo murder, if Cicale is to be believed.  This is in stark contrast to the Andres solicitation.

There is also the less prejudicial solicitation to kill feared informer Vitale that could be introduced for the same purposes, and which are discussed on the Tartaglione tapes.  So the Andres solicitation is really offered for its prejudicial effect ,an effect which is extreme and will cause the jury to convict of the crimes charged for reasons unrelated to them, the very prejudice Rule 403 was designed to prevent.   There is a major difference in the jury hearing that a defendant solicited the demise of a mob informer, as opposed to a federal prosecutor. The government understands the difference.  It can prove its point with the Vitale solicitation without causing substantially unfair prejudice to Mr. Basciano and depriving him of a fair trial and due process within the meaning of the Fifth Amendment to the United States Constitution.

A pre-trial hearing is requested on the issue.

### 3. Other Crimes

With respect to heroine, the prejudice to be suffered by Mr. Basciano substantially outweighs the probative value of the proof, as this Court previously found prior to Basciano I and II.  We ask for the same ruling now, prior to Basciano III.

As with the alleged heroine trafficking, evidence of the Colangelo and Nunez alleged murder

and attempted murder are terribly remote, twenty and twenty five years old, respectively.  Proof of those crimes does nothing to prove the Pizzolo homicide or alleged DeFillippo conspiracy, and the evidence is highly prejudicial.  The government's repeated proffers of irrelevant violent crimes highlights its need to paint Mr. Basciano as an habitual killer so the jury will convict him of the charged murder, a prosecutorial motive this Court should not permit.

No doubt the government need to paint Mr. Basciano in that light leads it to proffer an alleged solicitation to kill Cicale's girlfriend for wholly personal reasons, unrelated to the crime family. If the government witnesses are to be credited, Mr. Basciano was angry about revelations the girlfriend made to his family about embarrassing personal matters.  This is a wholly extraneous matter, highly prejudicial in that it involves an alleged solicitation to kill a presumably innocent female "civilian", not a mobster who signed on for the risks of being "in the life".  It ought not be permitted.

The defense requests a pre-trial hearing on the issues.


### The Government Motion To Limit Cross-Examination

The government has moved to preclude the defense from mentioning verdicts in prior Basciano trials and to further confine the defense cross-examination by limiting it to reference to "other proceedings" rather than prior trials.

The defense does not intend to refer to prior Basciano trial verdicts and accepts that to do so would be legally improper.

The government's application, one made without citation to any authority, under the rubric of avoiding confusion, must be denied.  Mr. Basciano contends that he has a right to impeach witnesses with the jury knowing that the prior inconsistent testimony came at "other trials",

proceedings as solemn as the current one.   Mr. Basciano asserts that to deny him this standard form

of impeachment, in this case, would deny him his United States Constitutional Sixth Amendment

rights to confrontation, effective assistance of counsel and to present a defense.   The leading case

in this area is *United States v. Giovanelli,* 945 F/2d 479 (2d Cir. 1991).

In *Giovanelli,* three men were tried federally for shooting two New York City Police

Detectives, one of whom died. Earlier, they had been through two New York State trials.  The first

trial resulted in hung juries for all three. At the second trial, the jury acquitted one man and again

deadlocked on the other two.  The defense wished to prove that major witnesses had refined and

changed their testimony from one trial to the next, and that two witnesses did not come forward until

after the first two trials.  The District Court precluded the defense lawyers from mentioning the prior

state trials and confined them to reference to "other proceedings."   All three defendants were

convicted of RICO, the jury finding the predicate acts relating to the shootings and gambling proven.

The Second Circuit vacated the violent predicate act jury findings. It found that the trial court had

abused its discretion when it unduly limited cross-examination.

The *Giovanelli* Court began by summarizing general precepts (945 supra. at 486-487):

> As an initial matter, we fully appreciate the unusual difficulties presented when a
> district judge must preside over a case in which a defendant has been previously tried.
> In particular, the judge must reckon with claims that witnesses are deliberately or
> subliminally refining their testimony in light of the prior trial. At the same time, the
> judge must be mindful that revealing the verdict of the prior trial may unfairly
> prejudice either the government or the defendant's case. Thus, in certain
> circumstances, it may well be appropriate to balance these competing concerns by
> initially precluding all references to the prior trial. *See, e.g., United States v. Jones,*
> 808 F.2d 561, 566 (7th Cir. 1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1630, 95
> L.Ed. 203 (1987).  As the trial unfolds, however, it is essential that the court provide
> counsel with sufficient latitude "to expose to the jury the facts from which the jurors,
> as the sole triers of fact and credibility, [can] appropriately draw inferences relating
> to the reliability of the witness[es]." *Davis v. Alaska,* 415 U.S. 308, 314, 94 S.Ct.

16

1105, 1111, 39 L.Ed.2d 347 (1974) In other words, the dynamics of a particular trial may require the trial judge to reverse or initially curtail a ruling that initially precluded all references to a prior trial.

In finding the abuse of discretion on the particular *Giovanelli* factual template, the Court reasoned (*Id.* at 488-489):

> Moreover, from the first day of trial, it was patently clear that the crux of the defense to the alleged predicate acts of murder and attempted murder would be that key government witnesses - especially Kathleen Burke and Butch Sullivan- had subtly refined their testimony at the various trials and proceedings. As a result, the ability to confront witnesses with their own prior statements, and to show that those statements had been made in a setting as solemn and dignified as the current trial, was of extreme importance to the defense. We believe that the defendants were entitled to demonstrate that Kathleen Burke and Butch Sullivan had not merely altered or subtly refined their testimony after "prior proceedings" but had done so after prior trials. We also believe that the defendants should have been permitted to advance the theory that two government witnesses had not simply refused to come forward during "prior proceedings" but had failed to do so during two prior trials. While the government suggests that the distinction between "trial" and "proceeding" is minimal, surely in the context of this case there was a meaningful - if not profound- difference between the two. Indeed, the use of the word "proceeding" obfuscated the precise point the defendants wished to impress upon the jury, *i.e.,* that those very witnesses had previously testified under oath in a trial before a jury and had done so in a manner subtly at odds with their present testimony. Regardless of whether the district judge found this argument persuasive, the defendants were entitled " 'to put before [the] jury evidence that might influence the determination of guilt.' " *United States v. Salerno,* 937 F.2d 797, 810 (2d Cir. 1991)(quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987). The unfair effect of the limitation of cross-examination becomes evident upon an examination of the entire trial transcript...

The simple solution, said the Court, was a simple instruction to the jury that they would hear testimony about prior trials and should not speculate about the outcome of the prior proceedings. *Id.* at 489.

The *Basciano* factual context militates against even a preliminary order to limit cross-examination to references to "prior proceeding." As in *Giovanelli,* several witnesses testified at two prior trials, were interviewed numerous times by law enforcement, generating voluminous reports,

and have contradicted themselves and other witnesses. Some witnesses have contradictions between trial testimony and reports, and some between prior trials concerning Basciano. Dominic Cicale has contradicted his testimony at the prior Basciano trials with testimony in the Southern District at the John Gotti, Jr. trial. Cicale's trial testimony in earlier Basciano trials contradicts sworn trial testimony by a defense witness, a government informer, at a criminal trial during which he was called as a prosecution witness by Eastern District prosecutors. All this is fair game during cross-examination, to demonstrate lack of witness reliability and credibility, as well as witness bias and hostility toward Basciano. The jury needs to know when a sworn inconsistency was at a prior trial as solemn as the one at which it sits in factual judgment.

As in *Giovanelli,* it is critical for Mr. Basciano to be able to demonstrate for the jury the significance, progression and timing of witnesses changing stories and testimony. That is difficult if not impossible if the defense is not able to differentiate clearly between the trials at which the witnesses testified, and their access to pre-trial discovery and each other before their respective testimony. For example, it was significant that Cicale was turned and debriefed just before the first trial, and that he forgot about an allegedly significant meeting that occurred on November 21, 2005, after he had a chance to review most if not all of the discovery before his scheduled first trial. It is the proximity to the trial of these events that is significant to the defense, and which the defense has a right to present to the jury for its consideration, whatever the prosecutor and Court may think about the efficacy of defendant's tactics. Reference to prior trials will actually be less confusing than vague references to "other proceedings" in an incomplete context.

It must be noted that this memorandum is being written before we have received all of the 3500 material pertaining to critical witnesses about the Pizzolo homicide. The disclosure of that

18

information may well further inform this argument.

Also, we have not been provided with information requested many times, information about revelations to the government from Joseph Barone about Dominic Cicale, the so-called "hit list", and further "Brady" material.   When we receive it, we expect that the information provided will strengthen our arguments that the jury will only be able to comprehend the defense and impeachment of the government investigation by reference to the context of trials and not amorphous "proceedings."

## Conclusion

## For the Reasons Stated the Government Motions Should Be Denied

Respectfully submitted,

George R. Goltzer
Richard Jasper
Ying Stafford
Attorneys for Vincent Basciano