AB:TM/SEF
F.#2005R0060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                 05 CR 060 (S-9)(NGG)

VINCENT BASCIANO,

            Defendant.

- - - - - - - - - - - - - - - -X


THE GOVERNMENT'S REPLY BRIEF IN SUPPORT OF ITS MOTION
IN LIMINE TO ADMIT CERTAIN EVIDENCE AND TO
PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL


LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


TARYN A. MERKL
JACK DENNEHY
STEPHEN E. FRANK
Assistant United States Attorneys
     (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.   The Prior Act Evidence Offered by the Government
        Should be Admitted At Trial . . . . . . . . . . . 2

        A.   Applicable Law . . . . . . . . . . . . . . . . 3

        B.   Analysis . . . . . . . . . . . . . . . . . . 6

            1.   The Defendant May Not "Stipulate" Away
               the Government's Evidence . . . . . . . . 6

            2.   The Other Crimes Evidence is Admissible
               as it is Direct Evidence of and
               Inextricably Intertwined with the
               Evidence of the Charged Offenses . . . . . 9

            3.   The Other Crimes Evidence is Admissible
               Under Rule 404(b) . . . . . . . . . . . 11

            4.   The Other Crimes Evidence is Not
               More Prejudicial Than Probative . . . . 15

            5.   The Defendant is Not Entitled to a
               Hearing . . . . . . . . . . . . . . . 17

    II.   The Defendant Should Not Be Permitted to Make
        Reference to Basciano's Other Trials, or the
        Outcome of Those Trials, During the Guilt Phase . . 19

        A.   Applicable Law . . . . . . . . . . . . . . . 19

        B.   Analysis . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 26

PRELIMINARY STATEMENT

The government respectfully submits this reply to the defendant's Memorandum in Opposition to the Government's Motion in Limine (Docket Entry No. 968) ("Def. Mem."), and in further support of the Government's Motion in Limine dated October 8, 2010. (Docket Entry No. 945) ("Gov't Mem."). In the defendant's response, the defendant argues that certain of the prior bad acts the government seeks to admit at trial should be precluded.[1] In addition, Basciano contends that he should be permitted to elicit from certain witnesses that information they provided previously was given at a trial.

For the reasons set forth herein and in the Government's Motion in Limine, the defendant's arguments should be rejected and the Government's Motion in Limine should be granted in its entirety.

---

[1] The defendant indicated in his response that he does not object to the admission of evidence at trial regarding Basciano's involvement in illegal gambling involving policy, loansharking and the extortion of vendors at the feast of San Gennaro. (Def. Mem. at 5). Later in his memorandum, however, Basciano argues that "[w]ith respect to all of the evidence proffered by the prosecution, the defense objects pursuant to Rule 403 of the Federal Rules of Criminal Procedure on the grounds that the probative value of the evidence is substantially outweighed by the unfair prejudice to Mr. Basciano . . . ." (Def. Mem. at 10-11).

1

<u>ARGUMENT</u>

I.    The Prior Act Evidence Offered by the Government
      Should be Admitted At Trial

          In his response, the defendant argues that evidence of

Basciano's prior involvement in violent acts should be excluded

(Def. Mem. at 3).  Basciano's argument is grounded on the

proposition that many of the essential elements that the

government is required to be proved at trial "will not be

contested," and that the probative value of the evidence

proffered by the government is substantially outweighed by the

danger of unfair prejudice (<u>id.</u>).

          More specifically, Basciano asserts that he will "not

contest" (a) the existence of the charged enterprise, namely, the

Bonanno organized crime family (the "Bonanno crime family");

(b) the Bonanno crime family's involvement in racketeering

activity; (c) the Bonanno crime family's effect on interstate

commerce; and (d) Basciano's rank and position in the Bonanno

crime family "up to the time of his November 19, 2004 arrest."[2]

(Def. Mem. at 4-5).  Based on these representations, the

defendant contends that the "only real issues" that will be in

dispute at trial are his conspiratorial and accessorial liability

---

          [2]    Tellingly, Basciano contends only that he will not
contest his rank as of November 19, 2004.  The Pizzolo murder
with which he is charged occurred nearly two weeks later, on
December 1, 2004.

for the Pizzolo murder and his conspiratorial liability for the DeFilippo murder conspiracy.  (Id. at 6-7).

The defendant also contends that, to the extent the government offers evidence of Basciano's involvement in uncharged crimes to corroborate the testimony of cooperating witnesses, the defendant is entitled to a pre-trial hearing at which the government would be required to "articulate clearly . . . which aspects of a particular informant's testimony may properly be corroborated, and whether the corroboration is direct and the matter corroborated significant." (Id. at 7-8).  The defendant is not entitled to such a hearing and his request should be denied.

A.   Applicable Law

As set forth in the government's opening brief, the law is clear that evidence of uncharged criminal activity that is "inextricably intertwined" with evidence of the charged crime, or that was committed in furtherance of the charged conspiracy, is admissible as direct evidence of the charged offense, including to establish the existence, organization, nature and continuity of the charged enterprise. (Gov't Mem. at 10-12).  In addition, evidence of uncharged crimes is admissible under Rule 404(b) if the evidence is relevant to an issue at trial other than the defendant's character and if its probative value is not substantially outweighed by the risk of unfair prejudice.  See,

3

e.g., United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000)
(Gov't Mem. at 14).  The Second Circuit has adopted an
"inclusionary approach" to such evidence, United States v. Mejia,
545 F.3d 179, 206 (2d Cir. 2008), and has concluded that it
should not be excluded as prejudicial so long as it "'[d]oes] not
involve conduct any more sensational or disturbing than the
crime[] with which [the defendant has been] charged,'" United
States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting
United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.
1990)).

        Notably, the Second Circuit has expressly held that "a
criminal defendant may not stipulate or admit his way out of the
full evidentiary force of the case as the government chooses to
present it."  United States v. Salameh, 152 F.3d 88, 122 (2d Cir.
1998) (quoting Old Chief v. United States, 519 U.S. 172, 187-88
(1997)) (citation omitted).  In other words, "the Government
generally has a right to present evidence of a fact that a
defendant would prefer to admit, so as to establish the 'human
significance' of the fact and 'to implicate the law's moral
underpinnings.'"  United States v. Velazquez, 246 F.3d 204, 211
(2d Cir. 2001) (quoting Old Chief, 519 U.S. at 187-88); see also
United States v. Gantzer, 810 F.2d 349, 351 (2d Cir. 1987) (a
"party is not obliged to accept an adversary's 'judicial
admission' in lieu of proving the fact . . . particularly in the

4

context of a criminal prosecution where the accused seeks to
stipulate to an element of the crime charged"); 9 Wigmore,
Evidence § 2591 at 824 (Cadbourn Rev. 1981) ("a colorless
admission by the opponent may sometimes have the effect of
depriving the party of the legitimate moral force of his
evidence").

The Supreme Court has provided a compelling rationale
for permitting parties to present all the evidence they possess,
rather than simply rely on admissions:

> Jury duty is usually unsought and sometimes
> resisted, and it may be as difficult for one
> juror suddenly to face the findings that can
> send another human being to prison, as it is
> for another to hold out conscientiously for
> acquittal.  When a juror's duty does seem
> hard, the evidentiary account of what a
> defendant has thought and done can accomplish
> what no set of abstract statements ever
> could, not just to prove a fact but to
> establish its human significance, and so to
> implicate the law's moral underpinnings and a
> juror's obligation to sit in judgment.  Thus,
> the prosecution may fairly seek to place its
> evidence before the jurors, as much to tell a
> story of guiltiness as to support an
> inference of guilt, to convince the jurors
> that a guilty verdict would be morally
> reasonable as much as to point to the
> discrete elements of a defendant's legal
> fault.
>
> But there is something even more to the
> prosecution's interest in resisting efforts
> to replace the evidence of its choice with
> admissions and stipulations, for beyond the
> power of conventional evidence to support
> allegations and give life to the moral
> underpinnings of law's claims, there lies the
> need for evidence in all its particularity to

5

> satisfy the jurors' expectations about what
> proper proof should be. . . .  A prosecutor
> who fails to produce [an essential piece of
> evidence], or some good reason for his
> failure, has something to be concerned about.
> If jurors' expectations are not satisfied,
> triers of fact may penalize the party who
> disappoints them by drawing a negative
> inference against that party.  Expectations
> may also arise in jurors' minds simply from
> the experience of a trial itself.  If
> suddenly the prosecution presents some
> occurrence . . . by announcing a stipulation
> or admission[ ] the effect may be like
> saying, "never mind what's behind the door,"
> and jurors may well wonder what they are
> being kept from knowing. . . .

Old Chief, 519 U.S. at 188 (internal quotation marks, bracketed

text, citation and footnote omitted).

    B.   Analysis

        1.   The Defendant May Not "Stipulate" Away
              the Government's Evidence

       The rationale of Old Chief applies with equal force in

this case.  Even if the defendant's contention that he does not

intend to "contest" certain elements of the charged crimes were

sufficient to remove those issues from dispute – which it is not,

for the reasons set forth below – the government must prove those

elements beyond a reasonable doubt, and the defendant "may not

stipulate or admit his way out of the full evidentiary force of

the case as the government chooses to present it."  Salameh, 152

F.3d at 122.

       As an initial matter, although the defendant contends

that he will not "contest" certain elements of the charged

crimes, he stops short of suggesting that he will affirmatively
stipulate to those elements and that any such stipulation could
be entered into evidence.  Accordingly, the defendant's proposal
would not relieve the government of its burden of proving those
elements beyond a reasonable doubt at trial.  See, e.g., United
States v. Perez, 256 Fed. Appx. 383, 385 (2d Cir. 2007) (summary
order) (affirming district court's decision to admit certain
evidence to prove that defendant's purpose in committing murder
"was to maintain or increase his position in a racketeering
enterprise," where defendant "offered not to contest this element
of the offense, but he never offered to stipulate to it, which
meant that the burden of proof on the element remained with the
government").

          Moreover, even had Basciano offered to stipulate to
certain elements of the charged crimes, this case does not
implicate the "limited circumstances" in which the government can
be required to accept such a stipulation.  See United States v.
Velazquez, 246 F.3d 204, 211 (2d Cir. 2001) (affirming admission
of autopsy photos showing extensive bruising, and testimony of 14
witnesses concerning photos, where defendant charged with
violating victim's civil rights offered to stipulate that assault
occurred).  In Old Chief itself, where the defendant was charged
with being a felon in possession of a firearm, the Supreme Court
recognized a narrow exception where the defendant offered to

stipulate that he was, in fact, a felon – a "legal status
dependent on some judgment rendered wholly independently of the
concrete events of later criminal behavior charged against him."
<u>Old Chief</u>, 519 U.S. at 190.  Here, by contrast, the dry fact of
the defendant's "legal status" is not at issue, nor are the
elements he proposes not to "contest" "independent" of the
criminal behavior with which he is charged.  Rather, the facts at
issue concern the very nature and existence of the criminal
enterprise he served, his role in that enterprise, and the types
of racketeering activities in which that enterprise engaged.
Those facts are central to the criminal behavior with which
Basciano is charged – not least because they will help prove to
the jury how Basciano sought to maintain and increase his
position in the Bonanno crime family by committing the charged
crimes.  The government is entitled to prove those facts through
the testimony of witnesses and other evidence that "tells a
colorful story with descriptive richness."  <u>Old Chief</u>, 519 U.S.
at 187.  Such evidence is necessary "as much to tell a story of
guiltiness as to support an inference of guilt, to convince the
jurors that a guilty verdict would be morally reasonable as much
as to point to the discrete elements of a defendant's legal
fault."  <u>Id.</u>  It is also necessary to "satisfy the jurors'
expectations about what proper proof should be."  <u>Id.</u>  "To
substitute for such a picture a naked admission might have the

8

effect to rob the evidence of much of its fair and legitimate weight." <u>Id.</u> (internal quotation marks and citation omitted).

Accordingly, even had Basciano offered to stipulate to certain elements and to admit such a stipulation into evidence at trial – which, as noted, he did not – such a stipulation would not provide an "adequate substitute" for the evidence the government intends to offer at trial.  <u>See</u> <u>United States v. Polouizzi</u>, 564 F.3d 142, 153 (2d Cir. 2009) (affirming admission of images and videos of child pornography, where defendant did not contest that he had received or possessed child pornography, because "[t]he specific nature and content of the images were relevant to the jury's evaluation of [defendant's] claim that he did not understand the wrongfulness of receiving and possessing those images").

     2.    The Other Crimes Evidence is Admissible as it is Direct Evidence of and Inextricably Intertwined <u>with the Evidence of the Charged Offenses</u>

Equally important is the fact that evidence of Basciano's involvement in the uncharged acts is direct evidence of, and inextricably intertwined with, evidence of the charged crimes and therefore necessary to make the narrative of those crimes comprehensible to the jury.  As set forth in the government's opening brief, an essential element that the government must prove at trial is the Bonanno crime family's involvement in racketeering activity.  The other crimes that the

9

government seeks to admit will be offered to demonstrate to the
jury the types of racketeering activity in which the Bonanno
crime family engages, and demonstrates that the Bonanno crime
family's conduct has an effect on interstate commerce.

In addition, as the government noted in its opening
brief, Basciano's admissions on the Massino Tapes concerning the
solicitation to murder AUSA Andres are inextricably intertwined
with his admissions concerning the charged Pizzolo murder.
Basciano and Massino speak of those acts in a single
conversation, at times in the same breath.  Deleting references
to the Andres solicitation would thus substantially weaken the
evidence of the Pizzolo conspiracy and risk misleading the jury
by rendering key portions of the conversation difficult to
understand.

Similarly, evidence of Basciano's involvement in the
Santoro murder is critical to understanding the evolution of his
relationship with Cicale and the reason Basciano later recruited
Cicale to oversee the Pizzolo murder.  Basciano's suggestion that
he will stipulate that "Basciano and Cicale were very close and
had a relationship of complete confidence and trust" (Def. Mem.
at 12) misses the point.  As the Santoro murder makes clear, the
relationship between Basciano and Cicale was more than simply a
trusting friendship – it was a criminal relationship, in which
Basciano and Cicale knew that they could rely on one another to

10

commit murders and other crimes in furtherance of a common
criminal enterprise, and without fear that either would expose
the other to law enforcement.  Indeed, Basciano's description of
Cicale on the Massino Tapes as a "good man" and a "loyal dog" for
whom he was prepared to "vouch" makes sense principally by
reference to the Santoro murder.  Evidence of that uncharged act
is thus bound up with the evidence of the relationship between
these co-conspirators, and of the conspiracy with which Basciano
stands charged.[3]

> 3.   The Other Crimes Evidence is Admissible
>      Under Rule 404(b)

Basciano contends that his purported intention not to
"contest" certain elements of the charged crimes should also

---

[3]      The defendant avers that the government is seeking to
admit this evidence as evidence of Basciano's "character as a
violent killer."  (Def. Mem. at 12).  As set forth in the
Government's Motion in Limine, that is not true.  The Santoro
murder is offered as direct evidence of the crimes with which
Basciano is charged, or, in the alternative, for numerous
permissible purposes under Rule 404(b).  As alleged in the
Indictment, "The members and associates of the Bonanno family
also furthered the enterprise's criminal activities by
threatening economic injury and using and threatening to use
physical violence, including murder."  Indictment ¶ 8.  In order
to prove the nature of the violent criminal enterprise at issue,
Basciano's role in the enterprise, and to demonstrate his motive
to maintain and increase his position in the enterprise by
committing the Pizzolo homicide, proof of Basciano's involvement
in other violent acts constitutes direct evidence of his
involvement in the charged enterprise.  Evidence of the Pizzolo
murder is also independently admissible under Rule 404(b) because
it is relevant to several issues at trial, and is not offered to
show the defendant's character.  See United States v. Williams,
205 F.3d 23, 33 (2d Cir. 2000).

serve to preclude the government from introducing evidence of his uncharged crimes pursuant to Fed. R. Evid. 404(b).[4]  In support of this proposition, he relies principally on <u>United States v. Mohel</u>, 604 F.2d 748 (2d Cir. 1979), a three-decade old decision involving the application of Rule 404(b) to a cocaine deal.

Basciano's reliance on <u>Mohel</u> is misplaced for several reasons.  First, <u>Mohel</u> did not involve a conspiracy, as this case does.  Courts in several circuits have concluded that evidence of uncharged crimes has increased probative value in conspiracy cases.  <u>See, e.g.</u>, <u>United States v. Manner</u>, 887 F.2d 317, 322 (D.C. Cir. 1989) (distinguishing <u>Mohel</u> on the basis that it "did not involve a conspiracy charge, which increases the probativeness of Rule 404(b) evidence" and collecting cases); <u>see</u>

---

[4]     Although Basciano purports to challenge the admission of each of the "uncharged violent crimes" offered by the government (Def. Mem. at 2), he appears to concede the admissibility of at least the Vitale and Bonelli murder conspiracies (<u>id</u>. at 14).  To the extent that Basciano also challenges evidence of his involvement in heroin trafficking, the government has not moved to introduce such evidence, and does not intend to introduce it as part of its case-in-chief.  To the extent that Basciano challenges the government's intention to offer evidence of other, as-yet unspecified crimes that he committed with cooperating witnesses, Rule 404(b) requires only that "the prosecution . . . provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."  Although the government has, in its motion, set forth the principal 404(b) evidence it seeks to introduce, the government reserves the right to offer additional evidence depending on the arguments made by defense counsel, and the facts elicited by the defense on cross-examination or introduced as part of any defense case.

also <u>United States v. Garcia</u>, 567 F.3d 721 (5th Cir. 2009); <u>United States v. Cross</u>, 308 F.3d 308, 324 (3d Cir. 2002).

Second, in <u>Mohel</u>, the defendant made an "unequivocal offer of stipulation or concession [that] serve[d] to remove intent and knowledge as issues in the case." <u>Mohel</u>, 604 F.2d at 753.  Indeed, in that case – as in <u>United States v. Figueroa</u>, 618 F.2d 934 (2d Cir. 1980), on which Basciano also relies – the defendants argued not that they thought they were dealing in something other than illegal drugs, but rather that the charged drug deals never occurred.  <u>Mohel</u>, 604 F.2d at 752-53; <u>Figueroa</u>, 618 F.2d at 940.  Here, as noted, Basciano has offered no such unequivocal concession.  Indeed, he cannot do so, because he "denies that he agreed to kill Pizzolo or ordered the murder." (Def. Mem. at 6).  Basciano thus cannot remove the issue of his motive to commit that murder from the case.  The other act evidence offered by the government is highly probative of Basciano's motive in that it demonstrates his intention to preserve and protect the Bonanno enterprise and to maintain and increase his position in it by ordering the Pizzolo murder.  Evidence of the conspiracies to murder Sal Vitale and AUSA Andres, for example, serves to prove that Basciano sought to kill individuals he believed to be informants, or who otherwise represented a threat to the Bonanno family.

13

Basciano's situation is thus closer to that presented in <u>United States v. Cottman</u>, 116 F.3d 466, 1997 WL 340344 (2d Cir. 1997) (unpublished opinion), in which the defendant, a customs inspector charged with making false statements on a union financial statement, sought to stipulate to all of the elements of the charged crime except the materiality of the false statements, and thereby to preclude other act evidence offered pursuant to Rule 404(b), including evidence that he had used union funds for personal expenses. <u>Id.</u> at *1-2.  In affirming the district court's rejection of that proposal, the Second Circuit noted that "the government was not required to accept Cottman's effort to 'stipulate . . . his way out of the full evidentiary force of the case' against him by offering to concede every element but materiality." <u>Id.</u> at *3.  It explained:

> Cottman was accused of violating technical financial disclosure laws, offenses that might lack weight or significance when considered by lay jurors, unless the government was afforded an opportunity to provide appropriate background and context by showing that what Cottman was concealing by his false statements was the fact that he had stolen the funds entrusted to his care by his union.  The effect of Cottman's Rule 404(b) motion, if granted, would have been to drain the trial of all evidence of human events, and to force the government to present a disembodied, bloodless account of what would likely be seen as a minor breach of one of myriad requirements of government bureaucracy.  Above all, it would have deprived the jury of information it needed to appreciate why the false statements were material . . . .

14

Id. at *4.  Notably, in rejecting Cottman's effort to analogize
his situation to that in Mohel and Figueroa, the Second Circuit
concluded that "Cottman sought to eliminate all evidence of the
facts, circumstances, and transactions that comprised the subject
matter of the indictment – evidence which, furthermore, was
highly relevant to the proof of the element that remained in
dispute."  Id. at *5.  Here, as in Cottman, the government should
not be required to accept Basciano's purported offer not to
"contest" elements of the charged crime other than whether he
ordered the Pizzolo murder – an act for which, as noted, his
motive remains both relevant and disputed.

      4.    The Other Crimes Evidence is Not
            More Prejudicial Than Probative

      Basciano contends that, even if the evidence he seeks
to exclude is admissible as direct evidence of the charged crimes
and as evidence that is inextricably intertwined with those
crimes, or as other act evidence pursuant to Rule 404(b), the
evidence should nonetheless be excluded as unduly prejudicial
pursuant to Rule 403.  (Def. Mem. at 8-11).

      In making this argument, Basciano concedes that
evidence of the Bonelli murder conspiracy and the Vitale murder
solicitation is admissible, effectively acknowledging that
evidence of the Bonelli conspiracy is inextricably intertwined
with evidence of the Pizzolo conspiracy, and that evidence of the
Vitale solicitation is relevant to Basciano's motive and intent

15

in ordering the Pizzolo murder.  (Def. Mem. at 14).  Basciano
offers no principled distinction between these uncharged acts and
those he seeks to exclude – principally the Santoro murder and
the conspiracy to murder AUSA Andres.  Rather, he simply asserts,
without more, that he will be prejudiced by evidence of the
Santoro conspiracy, and that "[t]here is a major difference in
the jury hearing that a defendant solicited the demise of a mob
informer, as opposed to a federal prosecutor."  (<u>Id.</u>)

        Basciano's argument is without merit.  Basciano does
not, because he cannot, argue that the Santoro murder involves
conduct "any more sensational or disturbing" than the Pizzolo
murder.  It does not.  Both crimes involved shootings, on city
streets, of fellow mob associates.  <u>See, e.g.</u>, <u>United States v.</u>
<u>Livoti</u>, 196 F.3d 322, 326 (2d Cir. 1999) (where police officer
was charged with violating victim's civil rights by placing him
in a choke hold, evidence concerning previous choking incident
was admissible because it "did not involve conduct more
inflammatory than the charged crime, and the district court gave
a careful limiting instruction"); <u>see also United States v.</u>
<u>Sanpedro</u>, 352 Fed. Appx. 482, 485 (2d Cir. 2009) (summary order)
(noting that "prejudice is informed by the crimes with which the
defendant has been charged").  Similarly, while the Andres
solicitation targeted a law enforcement official, rather than a
fellow criminal, the "major difference" between that act and the

16

Pizzolo murder is that the former was inchoate and the latter was an actual murder.  Accordingly, the Andres solicitation is no more sensational than the murder with which Basciano stands charged; it is, if anything, less so.[5]

     5.  <u>The Defendant is Not Entitled to a Hearing</u>

Basciano contends that, to the extent the government seeks to introduce evidence of other crimes to corroborate cooperating witnesses, the defense is entitled to a hearing at which the government would be required to prove "which aspects of a particular informant's testimony may properly be corroborated, and whether the corroboration is direct and the matter corroborated significant." (Def. Mem. at 8).  Basciano cites no law in support of the proposition that he is entitled to such a hearing; he is not.  Indeed, such a requirement would be inconsistent with Rule 404 itself, which provides only that the government must provide notice of the "general nature" of any other act evidence it intends to introduce.  Moreover, Basciano contends that "[w]hether the matter to be corroborated is material and significant . . . can only be determined after the

---

[5]    Basciano correctly notes that this Court precluded the government from offering evidence of the Andres murder solicitation at Basciano's prior trials.  At the time of that ruling, however, the prosecution team was led by AUSA Andres – the very individual Basciano sought permission to kill.  AUSA Andres is not part of the prosecution team at the current trial, thereby substantially reducing any potential prejudice from this evidence.

defense case." (Id.) Accordingly, a hearing is, by Basciano's
own account, unnecessary.

In any event, although the government does not rely on
corroboration as the sole basis for seeking to admit any of the
proffered other act evidence, see, e.g., United States v.
Williams, 577 F.2d 188, 192 (2d Cir. 1978) (noting that the
admission of other act evidence to corroborate accomplice
testimony "has been repeatedly approved in this circuit," and
recognizing "that the other crimes evidence in many of these
cases was admissible on grounds additional to corroboration"),
the significance and direct relevance of the corroborative
evidence the government seeks to offer here is clear, as set
forth in the government's opening brief. For example, evidence
of the Santoro murder will corroborate Cicale's expected
testimony that he and Basciano committed murders together in
furtherance of the Bonanno enterprise, and that Basciano assigned
the Pizzolo murder to him. Evidence of the Santoro murder will
also corroborate Massino's expected testimony that Basciano
admitted directly to Massino, prior to Massino and Basciano's
incarceration, that Basciano, Cicale and others had carried out
the Santoro murder, and that Basciano admitted important details
about how the murder was carried out, including the fact that
Cicale had used a handgun to try to shoot Santoro. Evidence of
the conspiracy to murder David Nunez will corroborate Cicale's

18

expected testimony that Basciano informed him of that conspiracy at least in part to explain the importance of properly planning a murder.  Evidence of the assault on Frank Porco will corroborate the testimony of Cicale and another cooperating witness that Cicale instructed the witness to commit the assault at Basciano's direction, and that Cicale later approached this witness about participating in the Pizzolo murder.  Because the significance and relevance of this evidence is thus apparent on its face, and because Basciano is in any event not entitled to a hearing that he concedes will serve no purpose (other than to provide a preview of the government's case), Basciano's request for such a hearing should be denied.

II.  The Defendant Should Not Be Permitted to Make
     Reference to Basciano's Other Trials, or the
     <u>Outcome of Those Trials, During the Guilt Phase</u>

        With respect to the government's motion to preclude references to Basciano's prior trials and other cases at trial, the defendant objects to the government's motion requiring counsel to refer to Basciano's prior trials as "proceedings."[6] (Def. Mem. at 15).

     A.   <u>Applicable Law</u>

        In support of his motion, Basciano relies exclusively on <u>United States v. Giovanelli</u>, 945 F.2d 479, 487 (2d Cir. 1991),

---

        [6]    Basciano concedes that any reference to prior Basciano trial verdicts would be legally improper.  (Def. Mem. at 15).

in which the Second Circuit held that the district court had
improperly limited cross-examination in a case where the
defendants had previously been tried twice in New York State
courts.  Despite the ultimate holding that the district court had
abused its discretion in that case, the Second Circuit's analysis
is highly instructive:

> [W]e fully appreciate the unusual
> difficulties presented when a district judge
> must preside over a case in which defendant
> has been previously tried.  In particular,
> the judge must reckon with claims that
> witnesses are deliberately or subliminally
> refining their testimony in light of the
> prior trial.  At the same time, the judge
> must be mindful that revealing the verdict of
> the prior trial may unfairly prejudice either
> the government's or the defendant's case.
> Thus, in certain instances, <u>it may well be
> appropriate to balance these competing
> concerns by initially precluding all
> references to the prior trial</u>. . . .  As the
> trial unfolds, however, it is essential that
> the court provide counsel with sufficient
> latitude "to expose to the jury the facts
> from which the jurors, as the sole triers of
> fact and credibility, [can] appropriately
> draw inferences relating to the reliability
> of the witness[es]."  In other words, the
> dynamics of a particular trial may require
> the trial judge to reverse or curtail a
> ruling that initially precluded all
> references to a prior trial.

<u>Id.</u> at 486-87 (internal citations omitted) (quoting <u>Davis v.
Alaska</u>, 415 U.S. 308, 318 (1974)) (modification in <u>Giovanelli</u>;
emphasis added).

Even where there is some arguable relevance to evidence
regarding prior trials, such evidence should not be admitted if

20

its "probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the
jury . . . ."  Fed. R. Evid. 403.  <u>See, e.g.</u>, <u>United States v.
Amato</u>, 540 F.3d 153, 165 (2d Cir. 2008) (concluding that trial
court acted within its discretion under Rule 403 in holding that
the defendant could not use cross-examination to inform the jury
about a prior mistrial); <u>United States v. Cook</u>, 776 F. Supp. 755
(S.D.N.Y. 1991) (discussing the potential prejudice to both sides
if the defendant was allowed to make "continued reference to the
prior trial for purposes unrelated to permitting [the defendant]
to confront witnesses with their own prior statements").

        Accordingly, under <u>Giovanelli</u> and its progeny, the
courts have carefully examined the probative value of evidence
regarding prior trials and weighed it against the possible
prejudice in admitting such evidence, and fashioned various
practical solutions.  For example, in <u>United States v. Douglas</u>,
the Second Circuit affirmed the district court's decision to
require witnesses to refer to the defendant's prior trial as a
"prior proceeding."  In that case, the court observed:

> [T]he district court in the present case
> avoided the <u>Giovanelli</u> trial court's unduly
> restrictive approach, which made it 'at times
> impossible to focus a witness' attention on a
> specific prior . . . statement.'"
> [<u>Giovanelli</u>, 945 F.2d at] 489.  More
> important, however, is the fact that halfway
> through the trial the district court
> expressed its willingness, at [the
> defendant's] request, to instruct the jury

21

> concerning the prior state trial and the dual
> sovereign doctrine, instructions comparable
> to those that this court suggested in
> Giovanelli.

United States v. Douglas, 336 Fed. Appx. 11, 14 (2d Cir. 2009).

See also United States v. Munoz-Mosquera, Docket No. 95-1278,
1996 WL 281591, at *2 (2d Cir. May 9, 1996) (summary order)
(rejecting the defendant's argument based on Giovanelli that the
district court erred by requiring counsel to refer to a prior
trial as a prior proceeding where it was not the "crux" of the
defense that the witnesses had "subtly refined" their testimony
at various trials and proceedings (quoting Giovanelli, 945 F.2d
at 488); "Where appropriate, a district court may prohibit direct
references to prior trials.").

In United States v. Carneglia, in order to avoid jury
confusion regarding prior trials against different defendants for
the same crimes charged against the defendant, Judge Weinstein
ruled in advance of trial that "counsel will remain free to
question any witness about statements made in connection with
prior judicial proceedings without reference to the nature of and
parties to those proceedings. If the statements were
inconsistent with present testimony and made during a trial under
oath, that fact may be elicited as bearing on credibility." No.
08-CR-76, 2009 WL 185725, at *2 (E.D.N.Y. Jan. 27, 2009) (citing
Giovanelli). Likewise, in United States v. Raposo, the district
court ruled that "[a]ny reference to the prior state trial of

22

Defendant in this proceeding shall be limited to the terms 'prior trial.'  No reference shall be made to the outcome of the prior trial, nor to the fact that the prior trial was of the defendant."  No. 98-CR-185 (DAB), 1998 WL 879723, at *7 (S.D.N.Y. Dec. 16, 1998).

To further mitigate against any potential prejudice that could inure from references to prior trials involving the trial defendant, the Giovanelli court suggested that the district court give a limiting instruction to the jurors.  See Giovanelli, 945 F.2d at 488-89.  In the context of that case, which involved prior prosecutions by the State of New York, the court suggested that the district court could instruct the jurors regarding the dual sovereignty doctrine, and that the jurors were not to speculate about the outcome of the state court trials.  Id. at 489.

B.   Analysis

Contrary to the defendant's suggestion, Giovanelli does not hold that a limitation on cross-examination and argument regarding testimony in prior trials would constitute a Sixth Amendment violation.  (Def. Mem. at 17).  Rather, Giovanelli expressly recognizes that it "may be appropriate to balance the[] competing concerns by initially precluding all references to the prior trial."  945 F.2d at 487.

23

Should the Court conclude during trial, however, based on discrepancies between the testimony of witnesses at Basicano's current trial and at prior trials in which they have testified, that a specific elicitation of the fact that the prior testimony was given at a trial would assist the jury, it may become appropriate to revisit the issue.  See, e.g., Carneglia, 2009 WL 185725, at *2.  If elicitation of such information becomes appropriate, defense counsel should be instructed not to refer to the charges or defendants in the prior trial.  See Raposo, 1998 WL 879723, at *7 ("No reference shall be made to the outcome of the prior trial, nor to the fact that the prior trial was of the defendant.").

Basciano contends that the factual context of his case "militates against even a preliminary order to limit cross-examination to references to 'prior proceedings.'" (Def. Mem. at 17).  Relying entirely on expected inconsistencies in the anticipated testimony of one cooperating witness, Basciano argues that the Court should permit potentially misleading and confusing information to be admitted at trial before the issue is ripe before the jury.  His proposal should be rejected.

Depending upon how the fact of prior trials is elicited in this case, the jury could well be left with the misleading and inaccurate impression that Basciano has already been tried with respect to the Pizzolo homicide and would inevitably speculate

24

about the underlying charges and outcome of any prior trials involving Basciano.  As the court observed in <u>Cook</u>, a jury could be tainted if led to believe that a prior jury was unable to agree on the charges at issue.  <u>Cook</u>, 776 F. Supp. at 759.  At a minimum, therefore, a limiting instruction would be required – as the <u>Giovanelli</u> court suggested – to ensure that there is no jury confusion.  Unlike <u>Giovanelli</u>, however, where the district court could have given a neutral limiting instruction regarding the dual sovereignty doctrine, an adequate limiting instruction in this case would need to explain to the jury that (a) Basciano was previously tried on different federal crimes, and (b) his present prosecution is thus not barred by the Double Jeopardy Clause.  Under these circumstances, even if instructed not to speculate about the nature of the previous charges or the outcome of Basciano's prior trials, the mere reference to the prior trials would confuse and mislead the jury and pose a substantial risk of prejudice to the government.

In accordance with <u>Giovanelli</u> and its progeny, the government thus respectfully submits that the Court should initially preclude all references to Basciano's prior trials, with the option of revisiting and modifying that ruling if required "by the dynamics" of Basciano's trial.  <u>Giovanelli</u>, 945 F.2d at 487.  In the event that it becomes necessary to elicit that prior testimony of a witness was given in a "prior trial,"

"[n]o reference [should] be made to the outcome of the prior trial, nor to the fact that the prior trial was of the defendant."  <u>Raposo</u>, 1998 WL 879723, at *7.

<u>CONCLUSION</u>

For the reasons set forth herein and in the Government's Motion <u>in Limine</u> dated October 8, 2010, the Court should grant the Government's Motion <u>in Limine</u> to admit certain evidence and to preclude references to Basciano's prior trials and cases at trial, and should deny the defendant's request for a pre-trial hearing.

Dated:    Brooklyn, New York
          November 19, 2010

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

Taryn A. Merkl
Jack Dennehy
Stephen E. Frank
Assistant United States Attorneys
     (Of Counsel)