**George Robert Goltzer**
**Attorney At Law**
**200 West 57th Street**
**Suite 900**
**New York, NY 10019**

Tel.  (212) 608-1260
Fax (212) 980-2968
george@goltzer.com

December 10, 2010

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201
**Via Facsimile**: 718/613-2546
**and ECF**

Re: *United States v. Vincent Basciano*; 05 Cr. 60 (NGG)

Dear Judge Garaufis:

Please accept  this letter as an application for an order directing an immediate  hearing, concerning the propriety of the imposition   by the Attorney General of the United States of a new Special Administrative Measures ("SAM"),  and a further order directing the government to file a bill of particulars with respect to the Attorney General's finding that "there is information that you continued issuing orders to Bonnano crime family members   while you were in federal custody."

Many of the facts surrounding Mr. Basciano's transfer to the MCC from the MDC are set forth in letter  applications from defense counsel to have Mr. Basciano immediately transferred to the MDC.  Rather than repeat t all of them, we respectfully incorporate them by reference.  *See,* letters from defense counsel dated October 27, November 15, and November 23, 2010.

By Memorandum of November 8, 2010, Mr. Basciano was advised of the imposition of a new SAM.   The pertinent opening paragraph stated:

> Pursuant to 28 C.F.R. §501.3 © Special Administrative Measures (SAM) are being
> implemented regarding your confinement. The Bureau of Prisons adopted these

special administrative conditions based on information of your proclivity for violence. Specifically, you are facing the death penalty for murder in aid of racketeering and there is information that you continued issuing orders to Bonnano crime family members while you were in federal custody. There is a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. Therefore, you are restricted to access to the mail, the media, the telephone and visitors. This SAM will commence immediately upon notice to you and will be in effect for one year, subject to my further direction.

As of September 19, 2010, the Attorney General opted not to renew the SAM. As of that time, the investigation that prompted Mr. Basciano's transfer from MDC to MCC was completed and there was, in the government's view, inadequate evidence to justify the renewal of the prior SAM, which had been predicated, in part, on the so-called "hit list." On September 23, 2010, Warden Hastings congratulated Mr. Basciano on his SAM being removed. The following week, however, Warden Hastings and MCC attorney Adam Johnson informed Mr. Basciano of the "bad news" that the government intended to renew the SAM since Mr. Basciano refused to stipulate to monitored social visits.

It is well known that authorization for capital punishment is not enough to justify placement in SHU, let alone SAM. Indeed, Ronell Wilson was placed in general population at MDC before his trial and death penalty authorized defendant Pepin was in general population in MCC. Any new information which prompted the new SAM must have post-dated the July 23, 2010 transfer to MCC and the subsequent investigation that induced the Attorney General not to renew the SAM. It further follows that if Mr. Basciano was issuing orders to Bonnano crime family members sufficient to prompt a new SAM, those orders must have originated from MCC, since the investigation of any alleged MDC improprieties resulted in a finding of only a very minor unauthorized magazine infraction.

Mr. Basciano has been held in the MCC terrorist wing, 10 South, since July 23, 2010. He has had no contact visits, not even with counsel. He was denied personal visits under the pretext of possession of a tweezer, which we have addressed earlier as having been in property storage. His limited phone calls have all been monitored. That leaves the letter that Mr. Basciano returned to Lt. Delaney as soon as he read it. We believe that the government is taking the Khafkaesque stance that it is the letter the Mr. Basciano should never have received- and that he returned- that is the predicate for the new SAM. That must logically be the case by the simple process of elimination. If it is not, the government should be directed to say that is not the case, and to specify the communications alleged so we may meaningfully respond.

The circumstances surrounding the letter are at best inexplicable. At worst they are sinister, for the government violated its own SAM when it gave the letter to Mr. Basciano. For the more than four years that Mr. Basciano has been under SAM, his incoming letters have been monitored

for two things-( a) an authorized author/sender and (b) proper content. The subject letter, received at the prison on July 27, 2010, met neither requirement. The sender was not authorized and not someone known to the defense. The content was inappropriate, involving an alleged member of the enterprise alleged in the indictment. In the more than four years under SAM, this is the first such letter given to Mr. Basciano, coincidentally just before, on the very same day, his cell wa s searched for contraband. The letter should have been given to the FBI as soon as it was read by the Bureau of Prisons, per the SAM. It should never have been held by the Bureau of Prisons and then given to Mr. Basciano as soon as the SAM was lifted. Fortunately, Mr. Basciano complained to Lt. Delaney about it and did not have to suffer the potential prejudice from having such a letter found in his cell. We are not going to concede anyone's good faith in giving him the letter. Whether Mr. Basciano was being set up by someone hostile to him is a distinct possibility, one that careful capital counsel cannot discount since the discovery of the letter in question might have been evidence of aggravation at a potential penalty phase if it had not been returned by Mr. Basciano. I am sending a copy of this letter to Attorney General Holder with our request that he appoint a special investigator, from outside the Eastern District, to investigate the suspicious circumstances surrounding the letter and its delivery to Mr. Basciano.

If it is this letter that has that has caused the new SAM, that would shock the conscience and be strong evidence of government bad faith that should not be tolerated in any case, let alone a capital case. This latest incantation of administratively enforced isolation is inhuman and impeding preparation of a capital defense in violation of the Fifth, Sixth and Eighth Amendments to the United States Constitution.

The government should be compelled to confirm or deny whether the letter that was delivered to Mr. Basciano and returned by him had any part as a predicate for his new SAM. The government should be further compelled to immediately particularize the improper communications, which the defense has no reason to believe exist, in a bill of particulars, setting forth the date and time of the communication, the nature and substance of it, to whom it was made and directed, and whether oral or in writing. We request an immediate hearing following the disclosure.

We raise this issue not just in connection with conditions of confinement. By this letter we also amend motions that are *sub judice.*

Please consider these remarks as an addendum to our motion to disqualify the Office of the United States Attorney for the Eastern District of New York. If the government has used this letter as a predicate for SAM, it demonstrates an irrational bias toward him and strengthens our argument that the office must be disqualified.

Please also consider this letter as an addendum to our applications for disclosure of arguable evidence of aggravation and for a reliability hearing on such evidence. If it clear that the government will try to use evidence that messages were allegedly passed by Mr. Basciano to crime family members as evidence of future dangerousness at a potential penalty phase. For the reasons set forth in prior applications, we must have a fair opportunity to rebut it in order to achieve

heightened reliability of fact finding within the meaning of the Eighth Amendment.

      Finally, we have received the government's letter responding to Your Honor's Order to determine whether contact visits with counsel are possible at MCC. The government confirmed that they will not occur. The government has cited a case before the Hon. John F. Keenan in the United States District Court for the Southern District of New York, *United States v. Kassir,* 2008 WL 2695307 (S.D.N.Y.) It is quite distinguishable from Mr. Basciano's situation. Mr. Kassir was charged with terrorist related offenses and held at the MCC under SAMs. He was an alleged jihadist who, among other things, was going to set up an jihadist training camp in Oregon. He had, himself, been trained to kill in camps in Afghanistan, Lebanon and Kashmir. The Grand Jury charged him with providing material support to Al-Qaeda.

      Judge Keenan found that non-contact visits with counsel, in this case, was justified and "reasonably related" to the MCC's legitimate objective of protecting institutional security. (relying on *Turner v. Safley,* 482 U.S. at 87, 96-97 [requiring that a restriction be "reasonably related" to legitimate penological objectives if it "burdens" a constitutional right]). Judge Keenan noted that during 2000 a detainee who was charged with providing material support to Al-Qaeda was part of a conspiracy to take lawyers hostage and stabbed a guard in the eye. Given what was known about Kassir and the MCC's experience with other Al-Qaeda associated inmates, it was perfectly reasonable to limit physical contact between Kassir and his attorneys. To do less, said Judge Keenan, could jeopardize the safety of the attorneys.

      It is indeed ironic that my retired partner was one of the attorneys that Mamdouh Salim attempted to take hostage. I, myself, had spent many hours with him in defense of the terrorism charges before that tragic incident. I can certainly relate to Judge Keenan's concerns about alleged Al-Qaeda members. However, it is inappropriate that the government cite that case in Mr. Basciano's situation, knowing that for years he has had contact meetings with the members of his defense team and there has not been a hint of a violent incident between Mr. Basciano and a lawyer, paralegal, investigator or prison guard. Keeping Mr. Basciano from personal contact with his defense team is not "reasonably related" to institutional security and has never been. The MCC terrorist wing was reconfigured because of the Salim incident. Mr. Basciano does not belong there and if we are given a hearing on this motion we will demonstrate that he does not even belong under any SAM.

      Thank you for your consideration of this matter. We remain

                            Respectfully,

                            George R. Goltzer
                            Richard D. Jasper
                            Ying Stafford

cc: Taryn Merkl, Esq.

Assistant U.S. Attorney
Via ECF

GRG/ms