**George Robert Goltzer**
**Attorney At Law**
**200 West 57th Street**
**Suite 900**
**New York, NY 10019**

Tel.  (212) 608-1260
Fax (212) 980-2968
george@goltzer.com

January 4, 2011

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
U.S. Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201
Via Fax: 718/613-2546
and ECF

Re: *United States v. Vincent Basciano*; 05 Cr. 0060 (NGG)

Dear Judge Garaufis:

Please accept this letter in   reply to the government's December 30, 2010 response to our December 10, 2010 application for a hearing on the efficacy of a new SAM, a bill of particulars, and restoration of contact counsel visits at the MDC.[1]

---

[1] Basciano need not exhaust his administrative remedies as required by the  Prison Litigation Reform Act ("PLRA"), since he has not brought an independent  "action", and raises the conditions of his confinement in a motion within a pending criminal case. See, *United States v. Savage,* 2010 W. L 423867 (E.D. Pennsylvania 2010) and cases cited therein. The government's reliance on *United States v. Yousef,* 320 7F 3rd 56, 165 (2d Cir. 2003) is misplaced. *Yousef* involved a post-sentencing recommendation of conditions of confinement by the district court, not conditions of pre-trial confinement during the pending criminal litigation.  *See also, United States v.  Hashmi,* 621 F. Supp. 2d. 76 (S.D.N.Y. 2008) (a motion is not an "action" to which the exhaustion of remedies doctrine applies).

1

The government continues to repeat unproven, unsubstantiated allegations based on innuendo and suspicion.  We have already addressed these issues in our several prior submissions and, for the most part, rely on those.  However, there is new matter which warrants brief comment, along with erroneous statements which must be corrected.

The supporting letter from BOP Supervisory Attorney Adam Johnson, in an effort to justify non-contact attorney visits, stated, at page 2:

> Furthermore, the non-contact setting is designed to prevent unauthorized material from being passed to SAM inmates. A large concern in Mr. Basciano's investigation by MDC Brooklyn was that he may have received unauthorized material in the course of a legal visit.  While there was not conclusive evidence to definitively link the material to a particular individual, there was also insufficient mitigating factors to affirmatively debunk that the material was received in this manner. In order to prevent the passage of unauthorized materials or contraband, limiting Mr. Basciano's legal visiting to a non-contact setting at both MCC New York and MDC Brooklyn as the most viable option.

I am advised that Mr. Basciano always had full contact attorney visits at MCC once Your Honor adopted Magistrate Levy's recommendation on that issue.  Such has always been my experience as long as I visited Mr. Basciano at MDC.  There was never any restriction on those visits; they were neither limited nor monitored in any way.  In the several years of counsel visits, there has never been a hint or suggestion that any of Basciano's several lawyers or team members did anything at all inappropriate.  MCC has since been reconfigured to prevent contact visits and the government is apparently relying on Mr. Johnson's shameless attempt to justify the non-contact visits by suggesting that counsel may have done something wrong.  Mr. Johnson is free to believe what he wishes about counsel or anyone else. We do trust that the Court will not entertain the notion that court-appointed capital counsel who have signed the SAM, would risk Mr. Basciano's life and their careers by providing him with contraband, the possession of which could be used as evidence of future dangerousness by the government at a penalty phase.  Mr. Basciano should have contact visit and nothing that he or counsel have done militates against that, notwithstanding Mr. Johnson's defamatory speculation and the government's vague claims of whispers and unsubstantiated suspicions about the sequence of

conversations between Basciano and his children.

Now the stakes are much higher than when Magistrate Levy eloquently endorsed the need for contact visits with counsel and Your Honor ordered them. Earlier, Basciano simply sought to avoid authorization. Now he is preparing for a capital trial. We have already described the difficult conditions at MCC. We may not pass documents to Basciano without the presence of Lieutenant. For the most part, lieutenants leave the visiting area just after we enter. Therefore, we may not pass documents back and forth during our hours long conversations. And conditions have deteriorated over the past weeks. There is less ventilation than ever in the tiny visiting rooms where counsel and Basciano are locked in, separated floor to ceiling by metal and glass. And the avalanche of 3500 material, including thousands of pages of documents and scores of DVD recordings goes on and will continue to go on over the next weeks before trial commences. The situation is intolerable and unjustified. Basciano should be immediately returned to the MDC where he can have full contact visits with his lawyers.

With respect to Mr. Johnson's statement, at page 2 of his submission to Ms. Merkl, that Basciano... "is currently charged with ordering another murder that occurred while he was incarcerated", he is simply wrong. It is the government's theory that Basciano ordered the Pizzolo murder before he was arrested on November 19, 2004. This court has already recognized that fact.

The government, at page 3 of its December 30, 2010 submission, stated:

> As amply documented in the government's prior submissions, Basciano has repeatedly attempted to pass improper messages from prison- including as recently as this summer, when the government learned that he had provided another inmate with contraband items, such as stamps and pornographic and other DVD's, in exchange for having messages passed out of the MDC. In addition, as previously noted, the Federal Bureau of Investigation ("FBI") Special Agents and BOP staff assigned to monitor Basciano's visits throughout the last year of the SAMS observed that Basciano appeared to be making efforts to communicate in coded language and whispers with certain visitors, including his adult sons. The FBI agents and the BOP staff also observed that Basciano and his adult sons would have discussions that appeared to start mid-stream,

i.e., with references to things that they had not discussed during that visit or prior visit. These observations cause the agents and BOP staff to question whether Basciano was succeeding in passing messages from the MDC, despite the SAMs provisions. Still more recently, after Basciano's transfer to MCC, the government learned of a handwritten letter that had been delivered to Basciano during the brief period when the SAMs were not in place, which advised Basciano of where an individual lives, and instructed Basciano to" let Fat Paulie know as soon as possible."

As the foregoing facts make clear, Basciano's contention that there was inadequate evidence to seek the reimposition of the SAMs after they were briefly lifted is without merit. Recent events simply reconfirm that the SAMs are needed-as they have been since they were first imposed-to prevent Basciano from passing criminal messages from prison.

The government's hollow argument justifying the reimposition of SAMs and the denial of attorney contact visits underscores the rectitude of the defense position that a hearing, particulars, and attorney contact visits are warranted immediately.

Most offensive is the government's use of a letter that it only learned about because Basciano returned it to the very same BOP that gave it to him. That is nothing less than Khafkaesque, as previously suggested by the defense. It is simply unfair to hold the facts surrounding that letter against Mr. Basciano.

As for code, whispering, and sequence of conversations, the government submission is simply without factual content. The government has failed to provide the substance of any alleged conversation or proof that it ever asked Basciano to refrain from discussing a particular matter. The government has submitted no reports or summaries of conversations. It simply submitted innuendo, wholly unsupported by concrete fact.

As for the allegation that as recently as the summer, the government learned that Basciano had provided another inmate with contraband, it must be underscored that if any such allegation were made against Basciano, it was never proven in any administrative proceeding, after investigation. There was never any finding that we are aware of, that Basciano engaged in such activity.

  To strengthen its argument in support of the new SAMs, the government has repeatedly conflated old litigation with new. The defense is not seeking relitigation of its previously unsuccessful attempt to have the original SAM removed. See, *Basciano v. Lindsay,* 530 F Supp. 2nd 435 (E.D.N.Y. 2010) (adopting magistrate Judge's decision in part), aff'd 2008 WL 1700442 (2d Cir. 2009), *cert. denied* 130 S.Ct. 539 (2009). The government did not have to refrain from renewing the prior SAM. That was the government's choice. Then, after Mr. Basciano declined to enter into the agreement suggested by his lawyers, the government decided to reimpose SAMs. When it did so, it failed to utilize the factors addressed in the earlier litigation. It has utilized new reasons, insufficient reasons, addressed by counsel in prior submissions. Nothing contained in the government's meager response justifies the current state of affairs. Accordingly, we renew our request that Vincent Basciano be immediately returned to the MDC, that contact visits be restored, a bill of particulars be ordered to be followed by a hearing on the propriety of SAMs.

  Thank you for your consideration of these issues. We remain

        Respectfully,


        George R. Goltzer
        Richard Jasper
        Ying Stafford

cc: Taryn Merkl, Esq,
  Assistant U.S. Attorney
  Via ECF and e-mail

GRG/ms