JB:TM
F.#2005R00060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                   05 CR 060 (S-9) (NGG)

VINCENT BASCIANO,

             Defendant.

- - - - - - - - - - - - - - - -X


MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
MOTION TO EMPANEL AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY


                       LORETTA E. LYNCH
                       United States Attorney
                       Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201


TARYN A. MERKL
JACK DENNEHY
NICOLE M. ARGENTIERI
STEPHEN E. FRANK
Assistant United States Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully moves to empanel an anonymous and partially sequestered jury for trial of this case. Specifically, the government requests that: (1) the identities of all prospective jurors — including names, addresses, and places of employment — not be revealed to either the parties or their attorneys; and (2) from the time each juror is empaneled until the conclusion of the trial, the jurors be escorted by representatives of the United States Marshals Service to and from the courthouse each day and at all times during recesses.  The defendant is a longtime member and former acting boss of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family"), a sophisticated and violent criminal enterprise with a history of jury tampering and obstruction of justice.  For the reasons set forth herein, and as this Court has previously found with respect to defendant Basciano, empaneling an anonymous and partially sequestered jury is necessary to protect the public interest and the jurors.

BACKGROUND

A.    Procedural History

As the Court is aware, on November 19, 2004, Basciano was arrested and charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One), pursuant to an indictment captioned United States v. Massino, et al., 03 CR 929 (NGG) (S-2).  (The case filed against Basciano under docket number 03 CR 929 will be referred to herein as "Basciano I.").[1]

On November 23, 2004, shortly after Basciano's arrest in connection with the 03 CR 929 case, Basciano saw Joseph Massino, who was then the official boss of the Bonanno family, at the Brooklyn federal district courthouse.  At that time, Basciano discussed the possible murder of AUSA Greg Andres, the lead Basciano I prosecutor.  Shortly thereafter, Randolph Pizzolo was murdered on November 30, 2004.  Massino subsequently consensually recorded Basciano on January 3, 2005 and January 7, 2005 (the "Massino Tapes").  See Memorandum & Order, United States v. Basciano, 03 CR 929 (E.D.N.Y. Dec. 12, 2005) at 2 n.2 (Docket Entry No. 389).

---

[1]    The factual and procedural history of this case is set forth in greater detail in the government's other filings, including the government's response to Basciano's supplemental pretrial motions, which was filed on August 13, 2010.  (05 CR 060, Docket Entry No. 923).

2

During the first recording, made on January 3, 2005, Basciano and Massino referred to their prior conversation, in which Basciano had discussed the murder of AUSA Andres:

    MASSINO:   And you want to take the prosecutor out.
               What are we gonna gain by?  What are you
               gonna gain if we take the prosecutor out?

    BASCIANO: Nothing.

    MASSINO:   What are you going to gain?

    BASCIANO: Forget about it.

(Jan. 3, 2005 Draft Tr. 12.)

Basciano and Massino also discussed Basciano's order of the murder of Randolph Pizzolo.  The following is one of those exchanges:

    BASCIANO: Randy was a fuckin' jerkoff.

    MASSINO:   Yeah, but did it warrant -- wait a minute,
               did it warrant the clip?

    BASCIANO: I tell you what, he goes into Villa Sonoma,
               drunk, with a fuckin' pistol.

    MASSINO:   So, why didn't you just chase him?

    BASCIANO: Joey C. Jo-, you want to know why?  Because
               he's a fuckin' dangerous kid that don't
               fuckin' listen.  He talks stupid.  He talks
               like a fuckin' jerkoff.  He's a fuckin'--
               He's just an annoying fuckin' kid.

(Id. 14.)

On January 26, 2005, a grand jury returned the original indictment in this case, captioned United States v. Basciano, et al., 05 CR 060 (NGG), which charged Basciano and co-defendant

3

Dominick Cicale with conspiring to murder Randolph Pizzolo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count One); murdering Pizzolo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), a capital offense (Count Two); and a related firearms charge, in violation of 18 U.S.C. § 924(c) (Count Three).  (The case filed against Basciano under docket number 05 CR 060 will be referred to herein as "Basciano II.")

        After additional superseding indictments in the 03 CR 929 case, Basciano was tried on the fifth superseding indictment in Basciano I (the "'03 S-5 Indictment") during the spring of 2006.  Prior to trial, the government filed a motion for an anonymous and partially sequestered jury.  See Mem. of Law in Support of the Government's Mot. to Empanel an Anonymous and Partially Sequestered Jury (03 CR 929, Docket Entry No. 317).  On November 17, 2005, the Court granted the government's anonymous jury motion upon reaching the following conclusions:

> I find the Government has shown that the Defendants [Basciano and Patrick DeFilippo] have a history of obstruction of justice, that the trial evidence will depict a pattern of violence that could cause a juror to reasonably fear for his or her own safety, and that media attention may jeopardize the jurors' privacy.  As a result, the public interest in a fair trial will be best served by empaneling an anonymous and partially sequestered jury.

Memorandum & Order, United States v. Basciano, 03 CR 929 (E.D.N.Y. Nov. 17, 2005) at 3 (Docket Entry No. 354).

On May 9, 2006, the jury found Basciano guilty on the racketeering conspiracy count, among others.  Because the jury could not reach a verdict as to certain of the predicate acts alleged in the '03 S-5 Indictment, Basciano was retried in June and July 2007, pursuant to a superseding indictment captioned '03 S-8 that charged Basciano with substantive racketeering.  The jury, which was anonymous and partially sequestered, returned a verdict of guilty on all counts and, as to the substantive racketeering count, found all predicate acts proven.

Currently, in Basciano II, after a number of superseding indictments and an interlocutory appeal, the defendant is charged in superseding indictment nine (the "'05 S-9 Indictment") with conspiring to murder Randolph Pizzolo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Three); murdering Pizzolo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), a capital offense (Count Four); a related firearms charge, in violation of 18 U.S.C. § 924(c) (Count Five); and conspiring to murder Patrick DeFilippo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Nine).

B.   The Bonanno Family's History of Violence and Obstruction

As set forth in the government's prior motion for an anonymous and partially sequestered jury filed in connection with Basciano I (03 CR 929, Docket Entry No. 317), which is

5

incorporated herein by reference, the Bonanno family and defendant Basciano have a long history of violence and obstruction of justice.  The numerous convictions of Bonanno family defendants in this district over the last few years demonstrate that the Bonanno family is an exceedingly violent and dangerous criminal enterprise that has flourished through the commission of countless criminal acts, including multiple murders, murder conspiracies, and attempted murders, as well as assaults, arsons, extortions, loansharking, and robberies.  See, e.g., United States v. Massino, et al., 02 CR 307 (S-20) (NGG) (convicting after jury trial Bonanno family boss Joseph Massino); United States v. Amato, et al., 03 CR 1382 (S-1) (NGG) (convicting after jury trial Bonanno family soldiers Baldassare Amato and Stephen Locurto, and Bonanno family associate Anthony Basile).  Indeed, the hallmark of membership in the Bonanno family is the oath of allegiance that requires members of the family to commit acts of violence, including murder, when called upon to do so.

It is undeniable that the future of the Bonanno family and its viability as a criminal enterprise depends on its ability to evade and obstruct law enforcement scrutiny.  To that end, the key feature of membership in La Cosa Nostra is the code of silence and loyalty to the "family" above all else.  See Massino Trial Tr. at 436-37 ("Some of the rules are, Cosa Nostra comes

before any and all loyalties, including individual's own blood
family.  You owe complete loyalty and obedience to Cosa Nostra.
You must live the code of omerta, which is basically how a man
should act.  Inherent in that is the code of silence, not to
betray your friends or Cosa Nostra.").

          In order to secure the complete obedience of its
members to these rules, the Bonanno family prescribes death as a
punishment for those of its members and associates who cooperate
with law enforcement.  For example, in September 2003, during a
Bonanno family administration meeting that was consensually
recorded by a cooperating witness, then-Bonanno family acting
consigliere Anthony Urso urged the necessity of killing
cooperating witnesses and their families as a means of preserving
the criminal enterprise:

          [Y]ou gotta throw somebody in the streets –
          this has got to stop.  Fuck it, he can do it,
          I can do it.  This is how they should have
          played, and they might have done this before,
          you turned, we wipe your family out . . . .
          [W]hy should the rats' kids be happy, where
          my kids or your kids should suffer because
          I'm away for life.  If you take one kid, I
          hate to say it, and do what you gotta do,
          they'll fuckin' think twice.

Massino Trial Tr. at 284.

          Acts of obstruction by Bonanno family members have also
been proven in testimony given during various related proceedings
in this district.  For example, juries in the Eastern District of
New York have convicted defendants for their participation in

7

actual and planned acts of violence against individuals suspected of cooperating against the Bonanno family, including the 1981 murder of Bonanno family captain Dominick Napolitano, the 1982 murder of Bonanno family soldier Anthony Mirra, the 1987 murder of Bonanno family captain Gabriel Infanti, the 1992 murder of Bonanno family associate Robert Perrino, and, as to defendant Basciano himself, the 2002 solicitation to murder Bonanno family underboss Salvatore Vitale, due to Basciano's suspicion that Vitale was a cooperating witness.

Moreover, as the government will establish at trial, in explaining the reasons for which he ordered Randolph Pizzolo to be killed, Basciano expressed his suspicion that Pizzolo was cooperating with law enforcement. Specifically, during a consensually recorded conversation, Basciano stated that Bonanno family member Michael Mancuso had told Basciano that Pizzolo was a "rat." Massino Tr. Jan. 3, 2005.

Further, the Bonanno family has attempted to obstruct court proceedings in this district. A cooperating witness has informed the government that an individual in the jury pool in the 2004 trial of Bonanno family boss Joseph Massino contacted Massino, via another member of the Bonanno family, to apprise Massino of the individual's status as a potential juror; the individual ultimately was not seated. See United States v. Urso,

No. 03 CR 1382 (NGG), 2006 WL 1210886, at *1 (E.D.N.Y. May 2, 2006).

Accordingly, this Court has ordered anonymous and partially sequestered juries in several prior Bonanno family cases, including the trials of Basciano, Massino and Amato, as well as in the trial of Basciano's co-conspirators in the murder of Randolph Pizzolo.  See United States v. Mancuso, et al., No. 05 CR 060 (NGG), 2008 WL 2884397, at *9-10 (E.D.N.Y. July 23, 2008).

C.   Specific Acts of Violence and Obstruction

Even against the backdrop of the Bonanno family's lengthy history of obstructive conduct, Basciano has demonstrated a willingness and capacity to engage in obstructive behavior, including murder, for the purposes of advancing his own interests and preserving the enterprise.

As set forth in the government's motion for an anonymous jury in Basciano I (03 CR 929, Docket Entry No. 317) and the government's response to Basciano's motion for a writ of habeas corpus filed in connection with this case (see Basciano v. Martinez, 07 CV 421, Docket Entry No. 2), substantial evidence has been established demonstrating Basciano's involvement in multiple acts of obstruction.  As discussed above, Basciano's history and conduct led this Court to previously conclude that an anonymous and partially sequestered jury was appropriate in

Basciano I.  The Court's prior findings and conclusions apply
with equal force in this case, as discussed below.

In addition, as set forth in the government's
Memorandum of Law in Opposition to Defendant Basciano's Petition
for Habeas Corpus, after the imposition of Special Administrative
Measures on Basciano, the government learned of a separate plot
in the MCC to stab a cooperating witness (the "CW") likely to
testify against Basciano.  07 CV 421, Docket Entry No. 2.

Specifically, in fall 2006, an MCC inmate approached an
individual and advised that "word came from upstairs from some
friends of 'Vinny Gorgeous' from the Basciano Family that they
will pay $5,000 to have [the CW] stabbed and fucked up."  The
inmate explained that the stabbing was to retaliate against the
CW in part for "ratting out 'Vinny Gorgeous' on a murder charge."
The inmate further stated that he would receive more instructions
at church services where inmates from all tiers are permitted to
congregate.

At approximately the same time, an MCC inmate sent a
letter threatening the CW and others:

> Let me start off by saying that [the CW] is a
> rat bastered . . . [CW] is known here as one
> of the biggest obesse eating rat in New York
> and everyone knows him by the Bronx Rat!
> [CW] is a viscious rat that has made a deal
> with the devil and the devil is the U.S.
> Government! . . . .  Let me inlighten you how
> much of a peace of shit [CW] is.  For
> starters in the past 9 months he has gone to
> court and one of those people [CW] is

10

testifying against [, CW] is trying to give
him the death penalty. . . . [CW] is out of
control and is not thinking about what his
actions might lead to, and who's life this
will afect. . . .  But he's been caught and
word is out on him. . . . It's only a matter
of time before someone reach's out and says
hello to him. . . .[2]

In a subsequent consensual recording at the MCC, an
inmate involved in the stabbing plot confirmed that the offer for
stabbing CW#2 was "five [or] ten thousand."  The CW was relocated
to protect that witness.  As discussed below, the willingness of
others to commit violence or obstructive acts on behalf of the
defendant is one of the factors the Court may consider in
determining whether to order an anonymous and partially
sequestered jury in this case.

ARGUMENT

I.   Anonymity Is a Well-Established Means of
     Ensuring the Impartiality of a Jury

The Second Circuit has long recognized that anonymous
juries are often necessary to protect the integrity of trials and
to ensure juror impartiality.  This is especially true where
jurors may be unwilling to return an impartial verdict due to
fear of retribution.  See, e.g., United States v. Amuso, 21 F.3d
1251, 1264-65 (2d Cir. 1994) (upholding the decision to empanel

_____

[2]      The grammatical and spelling mistakes in the quotation
are verbatim from the original.  Ellipses and bracketed
substitutions are included to protect the identities and safety
of certain individuals.

11

an anonymous jury in the racketeering, tax fraud, and conspiracy case against the boss of the Luchese family); United States v. Locascio, 6 F.3d 924, 946-47 (2d Cir. 1993) ("Locascio I") (upholding the decision to empanel a sequestered anonymous jury in the RICO and murder case against the boss and underboss of the Gambino family based, in part, on "the government's evidence of previous instances of jury tampering by [Gambino boss John] Gotti and his associates"); United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987) (upholding the decision to empanel an anonymous jury in the racketeering and bribery case of Colombo family member).

The Second Circuit has adopted a two-step process for determining whether to empanel an anonymous jury. A district court should first determine whether there is strong reason to believe that the jury needs protection. If there is, the court should then take reasonable precautions to minimize any prejudice that an anonymous jury might entail. See, e.g., United States v. Stewart, 590 F.3d 93, 124 (2d Cir. 2009); United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979). Within those general parameters, the decision to use an anonymous jury is left to the sound discretion of the trial court. See, e.g., Paccione, 949 F.2d at

12

1192; <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 971 (2d
Cir. 1990).

The Second Circuit has identified five factors relevant
to determining the propriety of empaneling an anonymous jury:
(1) the seriousness of the charges; (2) the dangerousness of the
defendant; (3) the defendant's ability to interfere with the
jury, either by himself or through a criminal organization of
which he is a member; (4) previous attempts to interfere with the
judicial process by the defendant or his associates; and (5) the
amount of public and media attention expected during the trial
that might expose the jurors to extraordinary pressures that
might impair their ability to be fair.  <u>See</u> <u>Thai</u>, 29 F.3d at 801;
<u>Paccione</u>, 949 F.2d at 1192-93; <u>United States v. Tutino</u>, 883 F.2d
1125, 1132 (2d Cir. 1989); <u>Persico</u>, 832 F.2d at 717.  <u>See also</u>
<u>United States v. Wong</u>, 40 F.3d 1347, 1376 (2d Cir. 1994) (court's
decision to empanel anonymous jury may be based on government's
pre-trial proffer).

A.   <u>Defendants With Ties to Organized Crime</u>

The Second Circuit has repeatedly approved the use of
anonymous juries in cases involving defendants with ties to
organized crime.  <u>See, e.g.</u>, <u>Amuso</u>, 21 F.3d at 1264-65;
<u>Locascio I</u>, 6 F.3d at 946-47; <u>United States v. Vario</u>, 943 F.2d
236, 240 (2d Cir. 1991); <u>Persico</u>, 832 F.2d at 717.  The Second
Circuit has emphasized, however, that the mere fact that a case

13

involves organized crime does not, by itself, justify use of an anonymous jury unless there is "something more." Vario, 943 F.2d at 241. "This 'something more' can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety." Id.

The charged offenses need not involve acts of violence in order to necessitate an anonymous jury. In United States v. Locascio, 357 F. Supp. 2d 558 (E.D.N.Y. 2005) ("Locascio II"), the court granted the government's motion for an anonymous and partially sequestered jury in a case involving a complex fraud scheme perpetrated by several Gambino family members and associates. In that case, the court found that "[t]he concern . . . is not that anonymity is necessary to assuage jurors' fears for their personal safety. Rather, the concern is that if jurors identities are revealed they can easily be contacted and offered bribes." Id. at 561. Thus, the court found that the seriousness of the charges coupled with "the ability of the defendants to enlist the resources of the Gambino crime family, an organization with a documented history of juror intimidation" supported anonymity and partial sequestration. Id. at 563. Moreover, there is no requirement that the defendant have a demonstrated

14

history of jury tampering to necessitate an anonymous jury.  See
United States v. Persico, 92 CR 351, 1994 WL 150837, at *1-2
(E.D.N.Y. Apr. 20, 1994) (rejecting defendants' argument that an
anonymous jury was not warranted because there was no evidence
that the defendants had personally engaged in jury tampering).
Where a defendant does have such a history, however, that alone
can warrant an anonymous jury.  Vario, 943 F.2d at 241.

Courts in this district have repeatedly empaneled
anonymous juries in organized crime cases.  See, e.g., United
States v. Antico, No. 08 CR 559 (CBA), 2010 WL 2545877 (E.D.N.Y.
June 20, 2010); United States v. Gammarano, No. 06 CR 072 (CPS),
2007 WL 2077735 (E.D.N.Y. July 18, 2007); United States v.
Persico, No. 04 CR 911 (SJ), 2006 WL 1794773 (E.D.N.Y. June 9,
2006); United States v. Urso, 03 CR 1382 (NGG), 2006 WL 1210886
(E.D.N.Y. May 2, 2006); United States v. Basciano, No. 03 CR 929
(NGG), 2005 U.S. Dist. LEXIS 42236 (E.D.N.Y. Nov. 17, 2005);
United States v. Locascio, 357 F. Supp. 2d 558 (E.D.N.Y. 2005)
(Amon, J.); United States v. Cacace, 321 F. Supp. 2d 532
(E.D.N.Y. 2004) (Johnson, J.); United States v. Bellomo, 263 F.
Supp. 2d 557 (E.D.N.Y. 2003) (Glasser, J.); United States v.
Carbonaro, 03 CR 566 (ARR) (E.D.N.Y. 2003); Gigante, 982 F. Supp.

at 150-51, aff'd, 166 F.3d 75 (2d Cir. 1999); United States v.
Malpeso, 93 CR 1365 (RJD) (E.D.N.Y. 1993).[3]

    B.   Media Coverage

       In an organized crime matter, media coverage raises two
primary concerns:  first, the danger that members and associates
of organized crime will learn identifying information about
jurors through press reports; and second, the danger that the
fear of such identification by organized crime members will
influence the jury's deliberations.  Accordingly, the Second
Circuit has concluded that pre-trial publicity is a legitimate
basis for empaneling an anonymous jury because such publicity can
"enhance the possibility that jurors' names would become public
and thus expose them to intimidation by defendants' friends or
enemies, or harassment by the public." Vario, 943 F.2d at 240
(quoting Persico, 621 F. Supp. at 878).  This, of course, is of
great concern where, as here, the trial involves a violent
criminal enterprise comprising members sworn to engage in illegal

---

     [3]    In addition, in United States v. Fortunato, 2002 WL
31946813 (E.D.N.Y. Dec. 17, 2002), the court determined that
partial anonymity was appropriate.  Thus, the court prohibited
disclosure of the jurors' first names, home addresses, and work
addresses.  Id. at *2.

conduct, including obstruction of justice, in order to preserve its existence.[4]

## II. There Is Strong Reason to Believe That the Jury Needs Protection in this Case

All five of the applicable factors support the empanelment of an anonymous jury in this case.

First, the charges against Basciano could not be more serious. The defendant, who has previously been convicted and sentenced to life in prison, now faces the death penalty. In addition, the case against Basciano is very strong – at trial, the government expects to present evidence that Basciano admitted, on tape, that he ordered Pizzolo's killing, which admission will be corroborated by multiple cooperating witnesses who are former members and associates of the Bonanno family. Under these circumstances, the defendant has a substantial incentive to obstruct justice by engaging in jury tampering. See Locascio II, 357 F. Supp. at 561 (noting that the defendants were not "young men, and the substantial prison terms and financial penalties they face provide a motive to tamper with the jury"). The gravity of the defendant's situation "create[s] significant

---

[4] Indeed, courts have ordered anonymous juries in cases with extensive media coverage, even though the defendants had no documented history of jury tampering. See, e.g., United States v. Chammies, 864 F.2d 16, 18 (3d Cir. 1988) (upholding sequestered jury in trial of Philadelphia judge accused of extortion on ground trial would generate "significant amounts of publicity" that would interfere with the jury's ability to remain impartial).

incentives to threaten jurors." <u>United States v. Gotti</u>, No. 02
CR 743 (RCC), 2004 WL 2274712, at *2 (S.D.N.Y. Oct. 7, 2004)
(empaneling anonymous jury).

<u>Second</u>, there will be evidence presented at trial
establishing that the defendant has personally committed grave
acts of violence.  His criminal history, which dates to the
1970s, includes convictions for, <u>inter alia</u>, racketeering and
racketeering conspiracy, with predicate acts of murder and
solicitation to murder a suspected cooperating witness (Sal
Vitale).  In this case, the defendant is charged with the murder
of Pizzolo in aid of racketeering and conspiring to murder
another individual in aid of racketeering.  The jury will also
hear evidence that Basciano was the acting boss of the Bonanno
family, a notoriously violent and corrupt criminal enterprise.
Accordingly, the jury will be exposed to "trial evidence [that]
will depict a pattern of violence by the defendant and his
associates such as would cause a juror to reasonably fear for his
own safety." <u>Vario</u>, 943 F.2d at 241.

<u>Third</u>, members and associates of the Bonanno family,
and others acting at their behest, have the ability to tamper
with the jury and witnesses on behalf of Basciano, and may choose
to do so due to Basciano's status as an influential member of the
Bonanno family or for pecuniary gain.  Indeed, as set forth
above, such a plot developed at the MCC during 2006.  <u>See</u>

Gammarano, 2007 WL 2077735, at *5 (personal involvement in jury tampering by defendants not necessary to empanel anonymous jury, where other members of criminal enterprise historically have sought to undermine the judicial process); see also United States v. Ochoa-Vasquez, 428 F.3d 1015, 1034 (11th Cir. 2005) ("anonymous jury may be justified even when the defendant has not attempted to interfere with the current proceedings, if he belongs to a group that has a history of interfering with other judicial proceedings"); cf. United States v. Peter Gotti, 2004 WL 2274712, at *2 (S.D.N.Y. Oct. 7, 2004) ("It is no great leap from the intimidation and murder of potential informants to jury tampering."). The members and associates of the Bonanno family have a history of violent and obstructive conduct in furtherance of the preservation of their joint criminal enterprise. At trial, the government will prove that the Bonanno family regularly engages in violent crimes such as loansharking, extortion and illegal gambling, and using and threatening to use physical violence, including murder. The government will also prove that the defendant ordered the murder of Pizzolo to "maintain[] and increase" his position as acting boss of the Bonanno family. '05 S-9 Indictment, ¶ 56. In addition, the government will present evidence that Basciano sent "messages from prison to members and associates of the Bonanno family regarding the maintenance and ongoing operation of the Bonanno

family" (id. ¶ 16), following his incarceration on November 19,
2004.  The government will also offer evidence at trial regarding
Basciano's involvement in discussions regarding killing AUSA
Andres, the lead Basciano I prosecutor.  The government will also
present evidence at trial regarding the meaning of membership in
the Bonanno family, including the necessity of committing serious
crimes, such as murder and assault, when directed by a superior.
Evidence will also be presented regarding the Bonanno family's
prohibition on cooperation with law enforcement as well as the
sanction for such cooperation, namely death.

Fourth, the defendant has previously engaged in
violence and other acts in an effort to obstruct justice as set
forth in the government's prior motion for an anonymous jury (03
CR 929, Docket Entry No. 317) and as detailed herein.  In
addition, as discussed above, others may be willing to engage in
acts of violence and obstruction on the defendant's behalf.
Accordingly, even if all the other applicable factors did not
weigh in favor of an anonymous jury – which they do - the
defendant's history of obstructive conduct and the risk of
obstruction by others would, without more, be a sufficient basis
to empanel such a jury in this case.  See Vario, 943 F.2d at 241
("a demonstrable history or likelihood of obstruction of justice
on the part of the defendant or others acting on his behalf . . .
would be sufficient in and of itself in an appropriate case to

20

warrant an anonymous jury regardless of whether the defendant was a reputed mobster or associated with a recognized organized crime family."). <u>See also</u> <u>United States v. Tutino</u>, 883 F.2d 1125, 1133 (2d Cir. 1989) (defendant's history of attempted jury tampering, coupled with the defendants' serious criminal records warranted anonymous jury).

      <u>Fifth</u>, there has already been substantial media coverage of Basciano's cases, and such attention is likely to continue as this case proceeds to trial.  The government's investigation, and the resulting charges against Basciano, have been the subject of articles in every local newspaper, including but not limited to The New York Times, New York Daily News, New York Post, Newsday and the Staten Island Advance, as well as in Gangland.  It is therefore highly likely that this case will be the subject of substantial additional coverage during the trial. As the Second Circuit has recognized, the expectation of publicity is a legitimate basis for empaneling an anonymous jury because such publicity can "enhance the possibility that jurors' names could become public and thus expose them to intimidation by a defendant's friends or enemies, or harassment by the public." <u>Vario</u>, 943 F.2d at 240 (citing <u>United States v. Persico</u>, 621 F. Supp. 842, 878 (S.D.N.Y. 1985)); <u>Barnes</u>, 604 F.2d at 141.

III. The Use of an Anonymous and Partially Sequestered
     Jury Will Not Deprive the Defendant of the
     Opportunity for Meaningful Participation in
     <u>Jury Selection or Diminish The Presumption of Innocence</u>

        Once a district court determines that there is strong
reason to believe that a jury needs protection, it may empanel an
anonymous jury provided that it takes reasonable precautions to
minimize any potential prejudice therefrom.  See <u>Thai</u>, 29 F.3d at
801; <u>Amuso</u>, 21 F.3d at 1264-65; <u>Paccione</u>, 949 F.2d at 1192;
<u>Vario</u>, 943 F.2d at 239; <u>Tutino</u>, 883 F.2d at 1132; <u>Persico</u>, 832
F.2d at 717-18; <u>United States v. Thomas</u>, 757 F.2d 1359, 1365 (2d
Cir. 1985).  A defendant has two legitimate concerns that are
potentially affected by a decision to empanel an anonymous jury:
(1) the right to make informed choices during the jury selection
process and (2) the right to be tried by jurors who are not
prejudiced by reason of their anonymity.  As explained below,
both of these concerns can be readily addressed.

     A.   Empaneling an Anonymous Jury Does Not
          Burden the Defendant's Ability to Make
          <u>Informed Choices During Jury Selection</u>

        Although a defendant has the right to a meaningful <u>voir</u>
<u>dire</u> of potential jurors, <u>see</u> <u>Rosales-Lopez v. United States</u>, 451
U.S. 182, 188 (1981), the decision as to the questions to be
asked in <u>voir</u> <u>dire</u> largely rests within the informed discretion
of the trial court.  See <u>United States v. Silva</u>, 715 F.2d 43, 50
(2d Cir. 1983) (absent a clear abuse of discretion, trial court's
ruling on questions to be asked will not be disturbed); <u>Barnes</u>,

                                22

604 F.2d at 137-40 ("As long as a defendant's substantial rights are protected by a <u>voir</u> <u>dire</u> designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal").  Indeed, as Judge Glasser has noted, "[t]he jury selection process (<u>voir</u> <u>dire</u>) is not a matter of constitutional dimension and the selection of an anonymous jury was implicitly held to be constitutional in <u>Barnes</u>."  <u>United States v. Gotti</u>, 777 F. Supp. 224, 227 (E.D.N.Y. 1991) (citation omitted).

        The information that will be kept from the parties and counsel if this motion is granted is not meaningful to the jury selection process.  Names, exact addresses, and places of employment of the prospective jurors are not necessary to an informed choice.  Information regarding the general neighborhoods in which the prospective jurors live and the general nature of their employment is sufficient.  The names of prospective jurors, to the extent they provide information about ethnicity, are not relevant to meaningful <u>voir</u> <u>dire</u>.  See <u>Georgia v. McCollum</u>, 505 U.S. 42 (1992) (prohibiting use of peremptory challenges in racially discriminatory manner by criminal defendants).  The use of juror questionnaires may further act to safeguard the defendant's rights.

B.   The Court Can Explain the Reasons for
     Anonymity and Partial Sequestration to
     Prospective Jurors in Neutral Terms That Will
     <u>Diminish the Risk of Prejudice to the Defendant</u>

Numerous courts have recognized that where anonymity is necessary, jurors can receive an instruction from the court explaining those measures in a neutral way in order to prevent the jury from drawing any negative inference.  Although the due process clause of the Fifth Amendment protects the presumption of innocence, "there is no <u>per se</u> rule that it may not be burdened."  <u>Thomas</u>, 757 F.2d at 1364; <u>see also</u> <u>United States v. Scarfo</u>, 850 F.2d 1015, 1026 (3d Cir. 1988).  Here, any potential burden is slight compared to the Court's interest in safeguarding the integrity of the judicial process and can be alleviated through a proper jury instruction.

Most commonly, courts have explained to jurors that their privacy and their identities require protection from the media and the public.  <u>See, e.g.</u>, Memorandum & Order, <u>United States v. Basciano</u>, 03 CR 929 (E.D.N.Y. Nov. 17, 2005) at 5 (Docket Entry No. 354); <u>United States v. Amato</u>, 306 Fed. Appx. 630, 2009 WL 59165, at *3 (2d Cir. Jan. 12, 2009) (summary order); <u>Thai</u>, 29 F.3d at 801; <u>Amuso</u>, 21 F.3d at 1265; <u>Tutino</u>, 883 F.2d at 1133.  In some cases, the court has explained the jury's partial anonymity by telling prospective jurors that anonymity would allow them to feel more comfortable in giving candid answers to the personal questions asked in <u>voir</u> <u>dire</u> and in the

24

jury questionnaires.  Either of those examples would provide a credible explanation to prospective jurors in this case.

As for partial sequestration, if ordered by the Court, the government proposes that the jury be told that transportation is being provided to protect their privacy and to ensure that the trial can proceed expeditiously.  This Court has previously given this explanation in cases where transportation to and from court has been provided, including in defendant Basciano's prior trials, and the 2006 trial of <u>United States v. Amato</u>, No. 03 CR 1382 (NGG) (E.D.N.Y.).  <u>See also United States v. Nelson</u>, No. 94 CR 823 (DGT) (E.D.N.Y.); <u>United States v. Orena</u>, No. 93 CR 1366 (ERK) (E.D.N.Y.); <u>United States v. Malpeso</u>, No. 93 CR 1365 (RJD) (E.D.N.Y.); <u>United States v. Cutolo</u>, No. 93 CR 1230 (EHN) (E.D.N.Y.); <u>United States v. Thai</u>, No. 91 CR 838 (CBA) (E.D.N.Y.).

CONCLUSION

For the reasons set forth above, the government respectfully submits that an anonymous and partially sequestered jury is warranted in this case.

Dated:      Brooklyn, New York
            January 9, 2011


                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


TARYN A. MERKL
JACK DENNEHY
NICOLE M. ARGENTIERI
STEPHEN E. FRANK
Assistant United States Attorneys
(Of Counsel)

26