UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA

                          -against-

**MEMORANDUM & ORDER**
**05-CR-060 (NGG)**

VINCENT BASCIANO,

                          Defendant.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On October 8, 2010, the Government moved *in limine* to admit evidence of misconduct committed by Defendant Vincent Basciano ("Basciano") and to preclude the defense from referring to previous trials during the guilt phase of his upcoming trial. (Gov't Mot. Admit Certain Evid. ("Gov't Mem.") (Docket Entry # 945).) The Government's motions are considered in turn. They are granted in part and denied in part. Because the Government's motions can be decided on the papers alone, Basciano's request for a hearing is denied.

I.     BACKGROUND

Basciano is charged in the Ninth Superseding Indictment ("S-9 Indictment" (Docket Entry # 464)) with conspiring to murder Randolph Pizzolo in aid of racketeering in November 2004, in violation of 18 U.S.C. § 1959(a)(5) (S-9 Indictment, Count Three, ¶¶ 52-54); murdering Pizzolo in aid of racketeering on November 30, 2004, in violation of 18 U.S.C. § 1959(a)(1) (S-9 Indictment, Count Four, ¶¶ 55-56); a related firearms offense, in violation of 18 U.S.C. § 924(c) (S-9 Indictment, Count Five, ¶ 57); and conspiring to murder Patrick DeFilippo in aid of racketeering, between August 2003 and November 19, 2004, in violation of 18 U.S.C.

1

§ 1959(a)(5) (S-9 Indictment, Count Nine, ¶¶ 63-64). Basciano is charged with having committed most of these crimes while serving as the "acting boss" of the Bonanno crime family, a position he allegedly held from January 20, 2004 until his arrest on November 19, 2004. (S-9 Indictment ¶¶ 12-13.)

Basciano has already been convicted, after two jury trials before this court in United States v. Basciano, No. 03-CR-929 (E.D.N.Y.), on charges stemming from his participation in the Bonanno organized crime family from 1979 through 2004. On May 9, 2006, a jury found Basciano guilty of a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), including predicate acts of illegal gambling and the attempted murder of David Nunez. (See Jury Verdict, States v. Basciano, No. 03-CR-929 (E.D.N.Y. May 9, 2006).) Under a superseding indictment, Basciano was re-tried on charges for which no verdict had been reached in the first trial. On July 31, 2007, a second jury found him guilty of substantive racketeering, including predicate acts of illegal gambling, conspiracy to distribute marijuana, solicitation to murder Salvatore Vitale and Dominick Martino, and conspiring to murder and murdering Frank Santoro. (See Jury Verdict, States v. Basciano, No. 03-CR-929 (E.D.N.Y. July 31, 2007).) The jury also convicted Basciano on three counts of illegal gambling and one count of conspiracy to distribute marijuana. (Id.)

## II.  DISCUSSION

### A.  Motion to Admit Evidence of Uncharged Acts

The Government seeks to admit evidence of several crimes allegedly committed by Basciano, but not charged in the S-9 Indictment. In particular, the Government seeks to introduce evidence of Basciano's involvement in: (1) the conspiracy to murder and the murder of Frank Santoro; (2) the solicitation of the murder of Salvatore Vitale; (3) the solicitation of the murder of Assistant United States Attorney Greg Andres; (4) the conspiracy to murder Joseph

2

Bonelli; (5) the extortion of vendors at the Feast of San Gennaro Festival; (6) illegal gambling and loansharking; (7) the conspiracy to murder and the attempted murder of Frank Nunez; and (8) the assault of Frank Porco.[1]

    1.    <u>The Applicable Law</u>

        a.    <u>18 U.S.C. § 1959</u>

The Government seeks to prove that Basciano committed the charged murder of Randolph Pizzolo and the charged conspiracies to murder Pizzolo and Patrick DeFilippo "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a) (the violent crimes in aid of racketeering statute, or "VICAR"). Thus, the Government must prove, in addition to the charged murder and conspiracies to murder themselves: (1) the existence of an "enterprise" engaged in "racketeering activity,"[2] (2) that Basciano had some position within the enterprise, and (3) that Basciano committed the charged murder and conspiracies to murder in order to "maintain or increase" that position. <u>See</u> <u>United States v. Concepcion</u>, 983 F.2d 369, 381 (2d Cir. 1992). "[T]he motive requirement is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." <u>United States v. Payne</u>, 591 F.3d 46, 63 (2d Cir. 2010).

---

[1] The Government also states that it may seek to admit evidence of other unspecified uncharged crimes committed by Basciano. (Gov't Mem. at 36-37; Gov't Reply (Docket Entry # 974) at 12 n.4.) The court will rule on such evidence if and when the Government seeks to admit it.

[2] The statute defines "enterprise" as "any partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). "Racketeering activity" is defined, under 18 U.S.C. § 1959(b)(1), as the commission of any of the crimes enumerated in 18 U.S.C. § 1961.

b. Permissible Purposes of Uncharged Crime Evidence

i. Non-404(b) Purposes

Evidence of uncharged crimes or misconduct is admissible, subject to the limitations imposed by Federal Rule of Evidence 403, discussed *infra*, in order to prove the existence and nature of the charged enterprise – here, the Bonanno crime family – its involvement in racketeering activity, and its effect on interstate commerce. See United States v. Mejia, 545 F.3d 179, 206 (2d Cir. 2008); United States v. Baez, 349 F.3d 90, 93 (2d Cir. 2003). Such evidence, since it directly proves an element of the charged crime, is not considered "prior act evidence" under Federal Rule of Evidence 404(b). See Mejia, 545 F.3d at 206.

Other acts evidence that shows the defendant's participation, position, or role in the charged enterprise is also admissible as direct evidence of the charged crime, and does not fall under the aegis of Rule 404(b). See United States v. Wong, 40 F.3d 1347, 1378 (2d Cir. 1994); United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994).

Evidence of uncharged acts is also admissible, outside of the strictures of Rule 404(b), where such acts "arose out of the same transaction or series of transactions as the charged offense," *i.e.*, conduct "inextricably intertwined with the evidence regarding the charged offense." United States v. Gonzalez, 110 F.3d 936, 943 (2d Cir. 1997). Accordingly, in conspiracy cases, any act "that is alleged to have been done in furtherance of the alleged conspiracy" is considered "part of the very act charged." United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) (internal quotation marks and alterations omitted).

ii. Admissibility Under Rule 404(b)

Under Federal Rule of Evidence 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be

> admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

The Second Circuit has adopted an "inclusive" approach to Rule 404(b). United States v. Stevens, 83 F.3d 60, 68 (2d Cir. 1998). Accordingly, evidence of other acts may be admitted for "any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice." United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998) (internal citation and quotation marks omitted). Rule 404(b)'s list of permissible purposes for the admission of other act evidence is "non-exhaustive." United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). Before other act evidence may be admitted under Rule 404(b), the court must consider whether it is offered for a proper purpose, whether it is relevant to a disputed issue, and whether its probative value is substantially outweighed by its possible prejudicial effect. See United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003). Furthermore, if such evidence is admitted, the court must administer an appropriate limiting instruction if one is requested. See id.; United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992).

The court has reviewed the Government's proposed bases for the admission of other acts evidence under Rule 404(b), some of which the court finds to be overbroad or to rely impermissibly on a theory of criminal propensity. However, the court finds that the following justifications for the admission of other acts evidence are applicable in this case.

Other acts evidence is admissible under Rule 404(b) to "complete the story of the crimes charged," to "help explain to the jury how the illegal relationship between the participants in the crime developed," United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000), or to explain "the mutual trust that existed between coconspirators," United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993). Other acts evidence is also admissible to corroborate other testimony, to the

extent the Government demonstrates that "the corroboration is direct and the matter corroborated is significant."  United States v. Everett, 825 F.2d 658, 660 (2d Cir.1987).

    c.  Rule 403

Under Federal Rule of Evidence 403, relevant evidence – whether admitted under Rule 404(b) or otherwise – "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997).  Evidence is commonly considered prejudicial if it tends "unfairly to excite emotions against the defendant." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  Accordingly, evidence that is more "inflammatory," "sensational," or "disturbing" than the conduct charged is likely to be found unfairly prejudicial.  United States v. Mercado, 573 F.3d 138, 145 (2d Cir. 2009); United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992); see also United States v. Williams, 585 F.3d 703, 708 (2d Cir. 2009) (the Government should not be permitted to introduce into evidence "unsavory details which go beyond what is necessary to make the point").

 "Evidence that tends to prove a character trait of a defendant is admissible if it is offered for another, proper purpose."  United States v. Salameh, 152 F.3d 88, 123 (2d Cir. 1998). However, evidence of uncharged acts is unfairly prejudicial if its probative value is substantially outweighed by its tendency to imply "bad character" that the jury might take "as raising the odds that [the defendant] did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)."  Old Chief, 519 U.S. at 180.

6

In conducting the required Rule 403 balancing, the court should "evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well." Id. at 182. It is within the court's discretion to exclude proposed evidence if alternative evidence has "substantially the same or greater" probative value but a lower risk of prejudice. Id. at 182-83. This is because "what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Id. at 184; see also United States v. McCallum, 584 F.3d 471, 477 (2d Cir. 2009) ("'[T]he availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence.'") (quoting 2 Weinstein, Federal Evidence § 404.21 (Joseph M. McLaughlin ed., Mathew Bender & Co. 2009)). However, the court must also take into account "the offering party's need for evidentiary richness and narrative integrity in presenting a case," and "the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in." Old Chief, 519 U.S. at 183.

A party's concession is "pertinent to the court's discretion to exclude evidence on the point conceded" under Rule 403. Id. at 184. Where a party does not contest a point, evidence supporting that point offered by the opposing party is less probative, and its admission implicates the Rule 403 consideration of "waste of time." Id. However, a criminal defendant may not use stipulations or offers not to contest in order to deprive the Government of "the full evidentiary force of [its] case," and the Government must be permitted to tell "a colorful story with descriptive richness." Id. at 186-87. Most importantly, the Government must be permitted to tell "a continuous story" and present a "coherent narrative," without "gap[s] in the story" caused by the defendant's strategic stipulations. Id. at 190-92; see also Williams, 585 F.3d at 707-08 (in

7

finding that other acts evidence was inadmissible, noting that the absence of such evidence "would not have left any gaps in the Government's case, nor have left the jury wondering about missing pieces of the story"); United States v. Pepin, 514 F.3d 193, 208 (2d Cir. 2008) (court should not force prosecution to "disjoint and abbreviate" its presentation of the case).

In his opposition brief, Basciano states that, at trial, he will "not be contesting" the existence of the enterprise, namely the Bonanno crime family; nor will he contest the Bonanno family's involvement in racketeering activity, its effect on interstate commerce, or his own rank and position within the family up through the time of his arrest on November 19, 2004. (Basciano Mem. Opp. Gov't Mot. ("Basciano Resp.") (Docket Entry # 968) at 4.)

As to the existence of the Bonanno crime family, its general involvement in racketeering activity, and its effect on interstate commerce, the court will take Basciano's concessions to be "unequivocal," such that the court will be "justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed." Figueroa, 618 F.2d at 942. In addition, the Government can easily rely on direct testimony from cooperating witnesses regarding the existence of the Bonanno family, its involvement in racketeering activity, and its effect on interstate commerce, rather than using evidence of Basciano's other crimes to establish these points. Accordingly, the Government will not be permitted to offer evidence of Basciano's uncharged crimes to prove the existence of the racketeering enterprise. In light of the Government's ability to offer alternative proof in presenting a "continuous" and "coherent" narrative, the prejudicial value of other acts evidence, if offered only on this point, would substantially outweigh its probative value. Compare United States v. Mejia, 545 F.3d 179, 206

8

(2d Cir. 2008) (in VICAR case, where "the existence of a racketeering enterprise *is at issue*, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible" to prove the existence of the criminal enterprise) (emphasis added). The court will hold Basciano to his proffer that he concedes the existence of the Bonanno organized crime family.

In contrast, the court finds that the Government should be given the opportunity to present at least some evidence of other crimes to prove Basciano's rank and position in the Bonanno family. Even were Basciano to stipulate that, as the Government alleges, he had attained the position of "acting boss" by the time of his arrest, such a label would not convey to the jury what being "acting boss" actually entailed or how Basciano carried out his duties. In order to present to the jury a coherent story of how Basciano, through the charged crimes, sought to "maintain or increase" his position as a leader in the Bonanno crime family, the Government must be permitted to present evidence to the jury of some of the prior crimes that Basciano, in exercising his authority as such a leader, participated in or directed.

d. Relevance

For other acts evidence to be considered relevant under Federal Rule of Evidence 401, the Government must show that a jury could "'reasonably conclude that the act occurred and that the defendant was the actor.'" United States v. Gilan, 967 F.2d 776, 780 (2d Cir. 1992) (quoting Huddleston v. United States, 485 U.S. 681, 689 (1988)). This does not require the Government to prove Basciano's involvement in the alleged other acts by a preponderance of the evidence. Huddleston, 485 U.S. at 690. Nonetheless, the court must determine whether the jury "could reasonable find" such involvement by a preponderance of the evidence. Id. Therefore, in this

9

pretrial stage, the court requires at least some proof that an act was committed and that Basciano had a role in that act.

### 2. The Crimes Relating to Santoro, Vitale, Bonelli, and Porco

The Government seeks to admit evidence that Basciano conspired to murder and murdered Frank Santoro (Gov't Mem. at 18-21); that Basciano solicited the murder of Bonanno family underboss Salvatore Vitale (id. at 21-23); that Basciano ordered the murder of Joseph Bonelli, an associate in the Genovese crime family (id. at 30-32); and that Basciano directed Bonanno family members to assault Frank Porco (id. at 37-38).

The Government alleges that, in February 2001, Basciano shot Santoro, while accompanied by Dominick Cicale and others. (Id. at 18.) Cicale has previously testified that Basciano recruited him to participate in the Santoro murder and that Basciano shot Santoro. (Id.) A Bonanno family captain, Nicholas Pisciotti, previously testified that one of the other participants in the Santoro murder told him about it, and that the murder had been a "test" to determine whether Cicale should be admitted into the Bonanno family. (Id. at 19.) The Government expects to present the testimony of then-boss Joseph Massino that Basciano told him about the Santoro murder, and that Basciano and Cicale had been the shooters. (Id. at 18.) The jury at Basciano's July 2007 trial, in convicting Basciano of substantive racketeering, found that the Government had proved, as a predicate act, Basciano's responsibility for the conspiracy to murder and murder of Santoro. (See Jury Verdict, States v. Basciano, No. 03-CR-929 (E.D.N.Y. July 31, 2007).)

As to the Vitale murder solicitation, the Government alleges that, in January 2003, Basciano asked Massino for permission to kill Vitale, who Basciano feared would become a cooperating witness. (Gov't Mem. at 21.) The Government plans to offer tape recordings made

10

by cooperating witness James Tartaglione, in which Basciano admits that he asked Massino for permission to kill Vitale, but that Massino refused. (Id. at 22.) The Government also plans to offer Massino's testimony to the same effect, as well as Cicale's testimony that Basciano asked Cicale to participate in the murder of Vitale. (Id. at 22-23.) As with the Santoro murder and conspiracy to murder, the jury at Basciano's July 2007 trial found that the Government had proved, as a predicate act to the racketeering count, that Basciano had solicited Vitale's murder. (See Jury Verdict, States v. Basciano, No. 03-CR-929 (E.D.N.Y. July 31, 2007).)

As to Bonelli, the Government alleges that, in the fall of 2004, Basciano decided to have him killed for disrespecting a Bonanno family member, that he first assigned the killing to Joseph Cammarano Jr., but then gave the assignment to Cicale. (Gov't Mem. at 30.) The Government further alleges that the Bonelli plot was tied with the charged murder of Pizzolo, which Basciano also assigned to Cicale. (Id.) The Government expects to present Cicale's testimony, as well as that of another cooperating witness, that the plan was for Pizzolo to murder Bonelli, after which Pizzolo would himself be killed. (Id.) The Government also expects to offer into evidence a conversation recorded by Massino, in which Basciano discusses ordering Cammarano to kill Bonelli and expresses displeasure with Pizzolo's behavior. (Id. at 30-31.)

As to Porco, the Government proffers that Cicale and another cooperating witness are expected to testify that, in 2003 or 2004, Basciano directed Cicale and others to assault Frank Porco, in connection with a dispute relating to a gambling operation. (Id. at 37-38.) The Government further states that Cicale will testify that Basciano told him to involve particular Bonanno associates in the assault to see how they would handle themselves. (Id. at 37.)

The evidence relating to Santoro, Vitale, Bonelli, and Porco is admissible as non-404(b) evidence that directly proves an element of the charged crimes, namely Basciano's role in the

11

Bonanno family. In particular, the evidence demonstrates Basciano's position of authority in the Bonanno family in the same years as, or the years immediately preceding, the commission of the charged crimes. The Vitale murder solicitation in particular demonstrates that Basciano saw it as his role to eliminate potential cooperators, a role which Basciano allegedly played in ordering the charged Pizzolo murder – the Government proffers a transcript of a recording made by Massino in which Basciano said he heard Pizzolo was a "rat." (Id. at 23.) Furthermore, evidence of the Bonelli plot is inextricably tied with the charged conspiracy to kill Pizzolo, and is admissible on that basis, regardless of Rule 404(b): Basciano allegedly assigned Cicale the Pizzolo and Bonelli murders in the fall of 2004, and Cicale allegedly planned to carry out his assignment by having Pizzolo kill Bonelli, only to be subsequently killed himself. (Gov't Mem. at 30.)

The evidence is also admissible under Rule 404(b), since it "completes the story" of the charged crimes by illustrating Basciano's relationship of trust with Cicale, who, the Government alleges, participated in shooting Santoro and was assigned the killings of Vitale, Bonelli, and Pizzolo, and the Porco assault. Further, because the Bonelli and Pizzolo plots were allegedly intertwined, evidence of the Bonelli plot that does not directly touch on the Pizzolo plot is nevertheless admissible, since evidence as to the former will corroborate evidence as to the latter.

The Santoro, Vitale, Bonelli, and Porco evidence therefore highly probative, and the probativeness of the evidence is not substantially outweighed by its potential for unfair prejudice. Thus, the admission of the evidence does not violate Rule 403. To mitigate any potential prejudice, the court, if requested to do so, will instruct the jury with regards to the proper use of this evidence. Furthermore, given that Basciano is already charged with one murder and two conspiracies to murder, the Santoro, Vitale, Bonelli, and Porco evidence is not more inflammatory or disturbing than the charged conduct.

12

### 3. The Solicitation to Murder AUSA Andres

The Government seeks to admit evidence that Basciano solicited the murder of Assistant United States Attorney ("AUSA") Greg Andres. (Gov't Mem. at 24-30.) The Government alleges that, on November 23, 2004 – after his arrest – Basciano met with Massino in a courthouse "bullpen" and asked for permission to murder AUSA Andres, who was the lead prosecutor in then-pending cases against both Basciano and Massino. (Id. at 24; S-9 Indictment ¶ 17.) The Government proffers the transcript of a January 3, 2005 conversation Massino had with Basciano, in which Massino refers to their previous conversation in the "bullpen" and to Basciano's having said he wanted to "take the prosecutor out"; Massino then tells Basciano not to go forward with the plot. (Gov't Mem. at 24-26.) The Government also proffers the transcript of a January 7, 2005 conversation, in which Basciano assures Massino that he told no one else about his request to kill "the prosecutor." (Id. at 26-28.) The Government also intends to offer testimony by Generoso Barbieri, who will state that, while the two were incarcerated, Basciano told Barbieri that he knew where to find AUSA Andres and that he had a crew of capable enforcers, which Barbieri interpreted to mean that Basciano intended to kill Andres. (Id. at 28.)

Evidence of the plan to kill Andres is admissible as direct evidence of the charged crimes, outside of Rule 404(b), because it demonstrates Basciano's continued position and role within the Bonanno family after his arrest. Significantly, Basciano states only that he will concede his role and position in the enterprise up until the time of his arrest. (Basciano Resp. at 4.) In particular, the Government may permissibly offer the Andres evidence to demonstrate that Basciano, after he was arrested – that is, at the same time that the charged conspiracy to kill Pizzolo continued, culminating in Pizzolo's murder (S-9 Indictment ¶¶ 54, 56) – still held a

13

position in the Bonanno family that, Basciano believed, entitled him to order murders outside the prison, and that involved asking Massino to approve of such murders.

In its order on the Government's motion to introduce evidence of uncharged acts prior to Basciano's May 2006 trial, the court found that evidence of the Andres plot was inadmissible as unfairly prejudicial under Rule 403. See Basciano I, 2006 WL 385325, at *8-9. However, this case is distinguishable from Basciano's previous one, in which Andres was the lead prosecutor. There, the court was particularly concerned that the jury would be "unfairly prejudiced if it is informed that Basciano solicited the murder of the prosecutor in this case, a man they will see each day of trial." Id. at *8. That concern is not present here.

The court, in its previous decision, also found that, "even without such identification, the prejudice caused by allegations that a defendant threatened a federal government official is too substantial for the evidence to be admitted." Id. While the potential for prejudice continues to be high in this case, the Rule 403 balancing comes out differently. In his prior case, Basciano was charged for committing racketeering acts prior to his November 2004 arrest, including not only murders, but also loansharking and illegal gambling. See United States v. Basciano, 599 F.3d 184, 190-91 (2d Cir. 2010) (discussing prior trials). In that context, the marginal probative value of the Andres evidence was minimal, and thus substantially outweighed by its potential for prejudice, as uncharged evidence of several other murder plots, as well as acts of loansharking and illegal gambling, was also to be admitted. See Basciano I, 2006 WL 385325, at *10. In this case, in contrast, evidence of Basciano's plan to kill Andres is the only uncharged acts evidence the Government seeks to admit that corroborates its theory that, even after his arrest, Basciano continued to hold a role in the Bonanno family that involved planning murders. In order to prove Basciano's continued role in the family after his arrest, the Government must introduce evidence

14

of the actions Basciano took in order to carry out that role. The Andres evidence demonstrates the contours of Basciano's continuing post-arrest role in a way that no other proffered evidence can. In short, the Andres evidence is uniquely probative, and the court, in its instructions, will mitigate its potential for unfair prejudice. Thus, the probative value of the Andres evidence is not substantially outweighed, under Rule 403, by the possibility of prejudice.

        4.        <u>Extortion and Loansharking</u>

The Government seeks to admit evidence that, from 2003 until the time of his arrest, Basciano collected the Bonanno family share from extorting vendors at the annual Feast of San Gennaro Festival in Little Italy, and that he divided that share with Massino. (Gov't Mem. at 32-34.) The Government proffers a transcript of a recorded conversation in which Basciano discusses this role. (<u>Id.</u> at 32 n.11.) The Government also seeks to admit testimony of cooperating witnesses to the effect that, from the late 1970s until the time of his arrest, Basciano operated an illegal gambling business, and that, in the 1990s, Basciano participated in loansharking, both in cooperation with several other Bonanno family members, including Cicale. (<u>Id.</u> at 34-35.) Basciano "does not object" to this evidence being admitted. (Basciano Resp. at 4.) This evidence is admissible, both under Rule 404(b) and otherwise, because it demonstrates Basciano's evolving role in the Bonanno family and the development of relationships of trust between Basciano and co-conspirators, including Cicale. Since this evidence is significantly less inflammatory than the charged crimes, it is not unfairly prejudicial.

        5.        <u>The Plot to Murder David Nunez</u>

The Government seeks to admit evidence that, on November 14, 1985, Basciano and others attempted to murder David Nunez as a result of a dispute. (Gov't Mem. at 36.) Since the

potential for prejudice of this evidence far outweighs its marginal probative value as to the charged crimes, the court finds that it is not admissible at the guilt phase.

**B.     Motion to Preclude References to Prior Trials**

The Government seeks an order requiring defense counsel to be precluded at trial from referring to Basciano's prior trials or to trials in which cooperating witnesses testified. (Gov't Mem. at 39-41.) The Government argues that the defense may not make reference to the verdicts in these trials (id. at 39-40), and Basciano concedes this point (Basciano Resp. at 15). However, the Government also argues that, in seeking to impeach prosecution witnesses with statements made at prior trials, the defense should be required to refer to such trials as "proceedings," without identifying the defendants. (Gov't Mem. at 41.)

In response, Basciano cites United States v. Giovanelli, 945 F.2d 479 (2d Cir. 1991), in which the Second Circuit held that it was an abuse of discretion, in violation of the defendants' Sixth Amendment right to confrontation, for the district court to preclude all references to prior trials and to limit the defense to referring to those trials as "proceedings." Id. at 488. The holding was based on the court's finding that the "crux" of the defense case was that government witnesses had "subtly refined their testimony at the various trials and proceedings," and that, therefore, the defense should have been able to demonstrate to the jury that the witnesses' prior statements had been "made in a setting as solemn and dignified as the current trial," that is, that the witnesses had "testified under oath in a trial before a jury." Id. Basciano asserts that, as in Giovanelli, the defense will rely in large part on impeaching Government witnesses by pointing out inconsistencies in the witnesses' statements over the course of previous trials. (Basciano Resp. at 17-18.)

The defense must be permitted to elicit facts relevant to the jury's assessment of the reliability of Government witnesses. In particular, the defense must be permitted to demonstrate, to the extent they have established a proper basis, that cooperating witnesses have changed their story in order to please, or obtain benefits from, the Government. See Davis v. Alaska, 415 U.S. 308 (1974). Therefore, if a Government witness gives testimony at trial that is inconsistent with testimony that witness has previously given under oath, defense counsel will be permitted to impeach by confronting the witness with those previous statements. As per the Second Circuit's ruling in Giovanelli, defense counsel will be permitted to elicit that the previous statements were made at a trial, under oath, in front of a judge, and to a jury. However, in order to avoid prejudicing either side and any undue speculation by the jury, defense counsel shall not elicit or refer to the identities of the defendants in these trials, the charges therein, or the trials' verdicts.

### III. CONCLUSION

The court GRANTS the Government's motion to introduce evidence of the murder of Frank Santoro, the conspiracies to murder Santoro and Joseph Bonelli, the solicitations to murder Salvatore Vitale and AUSA Greg Andres, the assault on Frank Porco, the extortion of vendors at the Feast of San Gennaro Festival, and illegal gambling and loansharking. However, the court DENIES the Government's motion to introduce evidence of the conspiracy to murder and the attempted murder of Frank Nunez. The court also DENIES the Government's motion to require defense counsel to refer to prior trials as "proceedings." However, defense counsel shall be limited as set forth above.

SO ORDERED.

Dated: Brooklyn, New York  
      January 12, 2011

/S/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge