UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

**MEMORANDUM & ORDER
05-CR-060 (NGG)**

VINCENT BASCIANO,

                        Defendant.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On January 14, 2011, the Government filed a motion *in limine* seeking to admit evidence of uncharged criminal conduct at the guilt phase of the upcoming trial of Defendant Vincent Basciano ("Basciano"). (See Motion *in Limine* (Docket Entry # 1023) ("Gov't Motion").) The Government's motion is granted. However, in light of facts that came to light at a February 3, 2011 hearing held to resolve issues raised by the Government's motion, the court reconsiders its January 12, 2011 order on the Government's previous motion to admit uncharged criminal conduct. (See Order on Motion *in Limine* (Docket Entry # 1019) ("January 12 Order").) Familiarity with the January 12 Order is assumed. The court has determined that, contrary to its prior order, the Government will not be permitted to admit evidence regarding Basciano's alleged solicitation of the murder of Assistant United States Attorney Greg Andres.

**I.    BACKGROUND**

    **A.    The Government's First Motion to Admit Uncharged Acts Evidence**

On January 12, 2011, the court issued an order granting in part and denying in part the Government's first motion *in limine* to admit, under Federal Rule of Evidence 404(b) and otherwise, evidence of prior criminal acts committed by Basciano. (See January 12 Order.) At

1

the time of the January 12 Order, the operative indictment was the ninth superseding indictment. (See "S-9 Indictment" (Docket Entry # 464).) The S-9 Indictment charged Basciano with conspiring to murder Randolph Pizzolo in aid of racketeering between November 1 and November 30, 2004 (id. ¶¶ 52-54); murdering Pizzolo in aid of racketeering on November 30, 2004 (id. ¶¶ 55-56); a related weapons charge (id. ¶ 57); and conspiring to murder Patrick DeFilippo in aid of racketeering, between August 2003 and November 19, 2004 (id. ¶¶ 63-64). November 19, 2004 is the date on which Basciano was arrested on previous charges; he was in jail from that date until, and beyond, the time of Pizzolo's murder. (Id. ¶¶ 13, 15-23.)

Among the prior criminal acts the court held admissible in its prior order was Basciano's alleged solicitation of the murder of Assistant United States Attorney Greg Andres. (January 12 Order at 13-15.) In particular, the Government sought to admit evidence that Basciano met with Bonanno crime family boss Joseph Massino on November 23, 2004 – after Basciano's arrest – and asked Massino for permission to kill Andres; that Massino, in a subsequent, January 3, 2005 conversation, told Basciano not to go forward with his plan to kill Andres; and that, in a third conversation on January 7, 2005, Basciano told Massino that no one else knew of his request to kill Andres. (Id. at 13.) In addition, the Government sought to introduce the testimony of cooperating witness Generoso Barbieri, who would testify that, while he and Basciano were incarcerated together, Basciano told Barbieri that he knew where to find Andres and had a crew of capable enforcers at the ready. (Id.)

The court held that the Andres evidence was admissible as direct evidence of Basciano's role in the Bonanno organized crime family. (Id. at 13-15.) The court reached this conclusion, despite the potential for prejudice, because it found the Andres evidence to be the only other acts evidence the Government sought to admit that demonstrated that Basciano "held a position in the

Bonanno family that, Basciano believed, entitled him to order murders outside the prison, and that involved asking Massino to approve of such murders." (Id. at 13-14.) In so ruling, the court assumed, based upon the language in the indictment, that the Government intended to present evidence at trial that Basciano participated in the charged crimes – the conspiracy to murder, and the murder of, Randolph Pizzolo, in aid of racketeering, and the weapons charge – in part *after* the time of his arrest and detention.

### B. The Instant Motion

On January 13, 2011, the Government filed an eleventh superseding indictment, which is now operative. (See "S-11 Indictment" (Docket Entry # 1024).) The S-11 Indictment includes no charge relating to the alleged conspiracy to murder DeFilippo. However, the Government now seeks to admit evidence of the DeFilippo conspiracy because such evidence, the Government argues, demonstrates Basciano's position in the Bonanno crime family, as well as his motive, "at or about the time" of the charged Pizzolo murder. (See Gov't Motion at 5-6.)

In support of its argument, the Government refers to the transcript of a recorded January 3, 2005 conversation between Basciano and Massino. (Id. at 4-5.) According to this transcript, Massino told Basciano he knew Basciano thought DeFilippo "was gonna become a rat" and that Basciano therefore "now" wanted to "clip" DeFilippo, presumably meaning kill him. (Id. at 4.) Massino then told Basciano that he, Massino, would not allow this, saying, "I need facts, not opinions." (Id.) In response, Basciano said that DeFilippo "is a problem to you and me because he's gonna rally around and we gonna have a problem." (Id. at 5.) The Government describes this January 3, 2005 exchange as "the DeFilippo murder solicitation." (Id.)

On February 3, 2011, the court held a hearing in order to resolve two issues relevant to its decision as to the Andres and DeFilippo evidence: (1) whether or not the Government plans to

3

offer evidence at trial that Basciano took action with relation to the Pizzolo murder after his November 19, 2004 arrest; and (2) whether the DeFilippo evidence and the Andres evidence are cumulative, such that the more prejudicial Andres evidence would no longer properly be admissible.

At the hearing, the Government made clear that it did not expect to offer any direct evidence that Basciano, after his arrest, was actively involved in the Pizzolo murder. Instead, the Government stated that it expected to prove, based on the testimony of Generoso Barbieri, who had been in jail with Basciano, that Basciano "continued to stay abreast of the progress of the conspiracy," in particular by checking the newspaper every day for news of Pizzolo's murder. (Hearing Tr. at 5-6.) In addition, according to the Government, after Pizzolo was killed, Dominick Cicale sent a note to Basciano to tell him the murder had been carried out. (Id. at 6.) As discussed in the court's previous order, the Government alleges that Basciano had tasked Cicale with carrying out the charged Pizzolo murder, along with several other murders Basciano planned. (January 12 Order at 11-12.)

The court asked whether there was evidence of any more "proactive" post-arrest involvement on Basciano's part. In response, the Government stated that Barbieri would testify that Basciano only started to check the papers for news of Pizzolo's killing after Basciano had had a meeting in prison, with someone whose identity the Government was not aware of. (Hearing Tr. at 6-7.) The Government stated that it also planned to offer Cicale's testimony that, after Basciano's arrest, Michael Mancuso "reaffirmed" the order to kill Pizzolo. (Id. at 7.) From these pieces of evidence, the Government argued, the jury could infer that Basciano, presumably during the meeting with the unidentified individual, relayed a message to Mancuso indicating that the Pizzolo murder should go forward. (Id. at 7-8, 10-11.) However, the Government

4

acknowledged, "we don't have specific evidence that Mr. Basciano gave a specific order." (Id. at 7.) Moreover, the Government, when asked by the court whether it believed Basciano's *pre-arrest* involvement in the Pizzolo murder plot was sufficient to convict, responded affirmatively. (Id. at 16.)

As to the plot to kill DeFilippo, the Government averred that it began in August 2003, and was motivated by Basciano's belief that DeFilippo had decided to cooperate with the Government. (Id. at 3, 8.) The plot allegedly involved Basciano, prior to his arrest, sending notes, through a lawyer, to Massino, while Massino was incarcerated. (Id. at 3, 8-9.) The recorded January 2005 conversation, in which Massino referred to Basciano's desire to "clip" DeFilippo, referred back to these communications. (Id. at 3-4.) Furthermore, the Government stated that it expected Cicale to testify that Basciano, prior to his arrest, solicited Cicale's involvement in the DeFilippo murder. (Id. at 4, 8.) The Government argued that the DeFilippo evidence was admissible since it demonstrated Basciano's effort, prior to his arrest, to "consolidate his power" as acting boss of the family by eliminating rivals. (Id. at 9-10.) Furthermore, the DeFilippo evidence – in particular, evidence of the notes passed between Basciano and Massino before Basciano's arrest – "demonstrates the ability of organized crime figures to continue to run their enterprises and to continue to be involved in criminal activity, despite being incarcerated." (Id. at 10.)

The Andres murder solicitation, in contrast to the DeFilippo plot, occurred only after Basciano's arrest. (Id. at 4, 8.) The Government argued that the Andres evidence should be admitted since it shows that Basciano, after his arrest, continued to try "to protect the family from perceived threats" and believed he was "entitled . . . to continue to engage in crime and order violence." (Id. at 9, 11.)

5

## II. DISCUSSION

### A. Admissibility of the DeFilippo Evidence

As discussed in the January 12 Order, evidence of uncharged criminal conduct may be admissible, in a murder in aid of racketeering case such as this one, to prove the defendant's role in the charged criminal enterprise. (See January 12 Order at 4-5.) Such evidence is also admissible under Federal Rule of Evidence 404(b) to explain the development of relationships of trust between co-conspirators. (Id. at 5.)

The DeFilippo evidence is admissible. Like the evidence of the plots to kill Frank Santoro, Salvatore Vitale, and Joseph Bonelli, and to assault Frank Porco, which the court previously found admissible (see January 12 Order at 10-12), the DeFilippo evidence illustrates Basciano's role in the Bonanno family in the years leading up to the Pizzolo murder. This role allegedly involved punishing individuals who threatened the interests of Bonanno family members (as in the Santoro murder and the Porco assault) and eliminating suspected "rats" (as in the Vitale, Bonelli, and DeFilippo plots). Furthermore, Basciano's January 2005 conversation with Massino regarding his continuing desire to kill DeFilippo shows that Basciano sought to maintain his role in the family after his arrest.

The DeFilippo evidence – again, like the Santoro, Vitale, Bonelli, and Porco evidence – also illustrates the relationship between Basciano and Cicale, who Basciano allegedly first "tested" as a shooter at the time of the Santoro murder (see id. at 10) and who Basciano thereafter allegedly assigned the tasks of assaulting Porco and killing Vitale, Bonelli, and DeFilippo. The DeFilippo evidence is therefore admissible under Rule 404(b).

The probative value of the DeFilippo evidence is not outweighed by its potential for prejudice, under Federal Rule of Evidence 403, since the DeFilippo murder plot (which was not

carried out) is not more shocking than the actual murder of Pizzolo. Nor is the DeFilippo evidence cumulative, even when viewed along with the Santoro, Vitale, Bonelli, and Porco evidence. The evidence of these alleged prior criminal acts, taken together, demonstrates Basciano's developing position of power in the Bonanno family and his continually increasing trust in Cicale as an enforcer.

### B. Admissibility of the Andres Evidence

The Government acknowledged at the hearing that it is only aware of very limited circumstantial evidence that Basciano, after his arrest, took an active role in directing the Pizzolo killing. Further, the Government stated that it believed it could prove Basciano's guilt based entirely on his pre-arrest conduct. It is therefore clear that Basciano's continuing role in the Bonanno family after the time of his arrest is of only peripheral importance to the Government's case. Indeed, any such continuing role is sufficiently demonstrated by Basciano's January 2005 conversation with Massino regarding DeFilippo.

In light of these facts, the Andres evidence is simply insufficiently probative, relative to its high potential for prejudice, to be admitted. If the Government uncovers further evidence that Basciano in fact took an active role in the Pizzolo murder after his arrest, the Government is free to move the court to reconsider this ruling. The court may also reconsider its ruling, on the Government's motion, if defense counsel "open the door" to the Andres evidence by themselves raising issues relating to the Andres solicitation or to Basciano's role in the Bonanno crime family after his arrest.

## III. CONCLUSION

The court GRANTS the Government's motion *in limine* to admit evidence of Basciano's alleged involvement in a conspiracy to kill Patrick DeFilippo. However, the court, reversing its

earlier ruling, DENIES the Government's motion *in limine* to admit evidence of Basciano's alleged solicitation to murder Assistant United States Attorney Greg Andres.

SO ORDERED.

Dated: Brooklyn, New York
  February 4, 2011

/S/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge