UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

VINCENT BASCIANO,

                      Defendant.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**05-CR-060 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Defendant Vincent Basciano ("Basciano") has moved for dismissal of the indictment arguing that the Speedy Trial Act and the constitutional right to a speedy trial were violated. (Def.'s Mem. in Support of Motion to Dismiss for Violations of the Constitutional Right to a Speedy Trial and the Speedy Trial Act ("Def. Mem") (Docket Entry # 1026).) Basciano further contends that these violations require the court to dismiss the indictment with prejudice. (Id. at 12.) The court denies Basciano's motion for the reasons set forth below.

**I.   BACKGROUND**

      At the outset of this case the court designated it as complex for the purpose of the Speedy Trial Act and excluded time until trial. In Basciano's initial appearance on January 31, 2005, the Government stated, "Judge, the other issue, I assume there is no problem designating it a complex matter because it's death penalty eligible . . . for speedy trial purposes." (January 31, 2005 Tr. at 16.) Benjamin Brafmin, Basciano's attorney at the time, then said that "this is at our request." (Id.) The court than stated that "[a]t the request of the defense, I designate the case as complex for Speedy Trial Act purposes until further notice." (Id. at 17.) Defense counsel replied, "[t]hank you, your Honor." (Id.) With this ruling that the case is properly designated as

1

complex "until further notice," it was the understanding of the court that time was excluded for Speedy Trial Act purposes—due to the fact that the case was death-penalty eligible, with an already complex procedural history—until the commencement of trial, unless the factual circumstances demanding such a designation ceased to exist or the parties requested that the court reconsider.  The parties were on notice of the nature, duration, and general justification for the court's exclusion of time under the Speedy Trial Act.

At the time this court designated this case as complex for the purpose of excluding time, the complexity of the case was readily apparent.  Basciano was charged with murder and conspiracy to murder in aid of racketeering and a related firearms charge—facing the possibility of the death penalty.  (Indictment (Docket Entry # 1).)  Basciano was already under indictment in a separate case before this court United States v. Basciano, 03-CR-929 (NGG) (E.D.N.Y.), which included a substantive racketeering charge with murder and attempted murder predicates.  Basciano was already charged with one co-defendant, Dominick Cicale, and the court was aware that additional defendants and additional charges were likely.

As the case developed, the increasing complexity was apparent.  In fact, on March 30, 2005, the Government returned the first of eleven superseding indictments in the case, which added Anthony Aiello as a defendant in Basciano's case.  ("S-1 Indictment" (Docket Entry # 22).)  On June 23, 2005, the Government returned a second superseding indictment, both adding a fourth defendant as well as additional charges, including a substantive racketeering charge.  ("S-2 Indictment" (Docket Entry # 65).)  On November 2, 2005, the government returned a third superseding indictment that included six defendants and fifteen criminal counts.  ("S-3 Indictment" (Docket Entry # 108).)  On April 2, 2007, the Government returned its notice of

intent to seek the death penalty against Vincent Basciano. (Docket Entry # 248.) This history shows that the complexity of the case never decreased.

From the beginning of the case, the court put the parties on notice that time was being excluded pursuant to the Speedy Trial Act due to the complexity of the case. As addressed above, the court first designated the case complex for the purposes of excluding time under the Speedy Trial Act on January 31, 2005, at Basciano's arraignment. (January 31, 2005 Tr. at 16.) On March 1, 2005, the court stated on the record that Basciano is charged with "a death eligible set of charges, so we don't have a Speedy Trial Act issue here." (March 1, 2005 Tr. at 14.) Basciano's attorney, Allen Feuterfas, did not object or notify the court that the case should no longer be designated complex. On November 3, 2005, at the arraignment for the S-3 Indictment, once all Defendants to the case were present, the court reiterated that the case had been deemed complex for the purpose of the Speedy Trial Act and that time was being excluded. From the point at which the case was found to be complex for the purpose of excluding time under the Speedy Trial Act, the court ensured that the complex designation remained appropriate and that the parties were on notice that time was being excluded.

Until this motion was filed less than four weeks before jury selection is to begin, Basciano's attorneys have never in the nearly six-year history of this case notified the court that the factual circumstances have changed such that a complex designation was no longer required. To the contrary, Basciano's attorneys have regularly represented that they need additional time in order to prepare for motion practice and trial. The court provides here but a few of the many examples of Basciano's counsel's representations to the court that the case is extremely complex and that preparing Basciano's defense will require substantially extended time. For example, in June of 2009, in arguing that the court should continue to approve a *fourth* court-appointed

3

attorney to represent Basciano, George Goltzer, one of Basciano's attorneys, said that Basciano is,

> right when he expresses concern about my ability to get ready for the trial by October. He's also correct when he asks me to tell the Court that when we spend a week or two preparing to spend a day arguing motions, it takes away from my ability to sit down and go over with him the preparation of cross-examination of someone like Joe Massino and my re-reading of a ten thousand page trial transcript. It puts the team and Mr. Basciano at a terrible disadvantage, particularly when there are motions *in limine* to be addressed, significant motions *in limine* to be addressed, discrete jury instructions and the like. So there is a very real need to have Ms. Smith continue on the case so that I, who have been in the case since February 25th for better or for worse, can be freed up to concentrate on the trial of an extraordinarily complex capital case, as well as going through what now appears to be another ten thousand pages of documents that are in a closet, judge. . . . I'm doing my best to be ready. I've cleared the decks, and I'm working on this case full-time . . . .

(June 26, 2009 Tr. at 165-66.)

Similarly, on March 25, 2010, Richard Jasper, another Basciano attorney, represented that the defense needed until January 2011 to prepare for trial:

> Judge, I think in light of everything that has been said by Mr. Goltzer and by Mr. Bachrach, given the fact that Mr. Basciano is facing the ultimate sanction, the January trial date is definitely a trial date that we have considered and I think at the very least January gives us an opportunity to prepare to fulfill our obligations under the ABA guidelines for the performance of counsel in capital cases and under <u>Witkins (ph.) versus Smith</u> there's no question about it. So many of the issues we have discussed also impact the penalty phase, and, so, it is absolutely critical that we have the time to work out the various appellate issues and the trial issues because they will all have an impact . . . .

(March 25, 2010 Tr. at 12-13.)

George Goltzer went on to say,

> I hope that nothing that has been said by either the defense or the government would be construed by the Court as trying to put any time pressure on the Court. We understand fully the severity of the issues and the time necessary and you will never hear from defense that you need to decide quicker rather than later.

(March 25, 2010 Tr. at 16.)  The court replied that, "irrespective of what you all think, I still have an obligation to act promptly and efficiently to the extent that it complies with the interest of justice. . . .  The interest of justice is paramount and we're all on the same page."  (Id. at 17.)

Since the court's initial designation of this case as complex, Basciano has been tried—and found guilty—twice in another case before this court and sentenced to life in prison; he has changed lawyers numerous times at his own request;[1] and he has made countless motions (including five motions to recuse this court, several motions challenging the conditions of his confinement, dozens of pretrial motions,[2] and numerous motions concerning discovery

---

[1] During oral argument on June 26, 2009, the court recounted the long history of Basciano's attorneys:
> On March 22nd, 2005, Barry Levin, who was handling the other case, was retained in this case, and Mr. Savitt was appointed learned counsel. On December 5th, 2006, the defendant terminated Mr. Levin and hired James Kousouros. On October 17th, 2007, the defendant terminated Mr. Kousouros and requested the Court to appoint counsel, which the Court did making Mr. Savitt primary counsel and appointing Mr. Jasper as learned counsel. On August 6th, 2008, Mr. Savitt was relieved, and Mr. Stern was appointed. On February 25th, 2009, Mr. Stern was relieved, and Mr. Goltzer was appointed.

(June 26, 2009 Tr. at 167.)

[2] For example, in the court's January 12, 2011 Memorandum and Order (Docket Entry # 1018), the court considered and ruled on the following submissions, many of which were filed by Basciano: Def.'s Mem. in Support of Basciano's Motions to Dismiss the Aggravating Factors Noticed by the Gov't and to Preclude the Gov't from Seeking the Death Penalty ("Def. Death Penalty Mem.") (Docket Entry # 311); Def.'s Mem. in Support of Motion to Suppress the "Massino" Tapes and to Dismiss the Indictment ("Def.'s Massino Suppression Motion") (Docket Entry # 502); Def.'s Reply Mem. in Support of Motions to Suppress ("Def.'s Massino Suppression Reply")  (Docket Entry # 527); Def.'s Mem. in Support of Motion to Supplement Motion to Suppress ("Def. Suppression Supp. Motion Mem.") (Docket Entry # 576); Def.'s Motion for Material Witness Orders and Warrants of Jan. 11, 2009 (Docket Entry # 601); Affirmation of Lawrence Mark Stern of Jan. 11, 2009 ("Stern Aff.") (Docket Entry # 601); Def.'s Mem. in Support of Def.'s Motion for Material Witness Orders and Warrants of Jan. 11, 2009 ("Def. Witness Mem.") (Docket Entry # 601); Def.'s Letter of Jan. 30, 2009 ("Def.'s Massino Reply Letter") (Docket Entry # 622); Def.'s Mem. in Support of Pretrial Motions ("Def. Pretrial Mem.") (Docket Entry # 631); Def.'s Letter of May, 19, 2009 (Docket Entry # 689); Def.'s Reply Mem. in Support of Pretrial Motions ("Def. Pretrial Reply") (Docket Entry # 694); Def.'s Letter of May 31, 2009 (Docket Entry # 702); Transcript of Oral Argument on June 26, 2009 ("Arg. Tr."); Def.'s Letter of July 13, 2009 (Docket Entry # 726); Attorney's Supporting Declaration of Aug. 19, 2009 ("Goltzer Reyes Decl.") (Docket Entry # 770); Def.'s Mem. in Support of His Motion to Compel Immunity for D. Reyes ("Def. Reyes Immunity Motion") (Docket Entry # 770); Def.'s Letter of Sept. 16, 2009 (Docket Entry # 785); Def.'s Supplemental Mem. in Support of Pretrial Motions ("Def. Supp. Pretrial Mem.") (Docket Entry # 907-2); Reply Mem. in Support of Pretrial Motions ("Def. Supp. Pretrial Reply") (Docket Entry # 934.); Def.'s Letter in Opp. to the Gov't's Letter Regarding Def.'s Request to be Transferred to the MDC (Docket Entry # 971); Def.'s Letter Motion that Vincent Basciano be Immediately Returned to MDC (Docket Entry # 973); Def.'s Letter Addendum to Motion for Transfer (Docket Entry # 975); Def.'s Letter in Further Support of an Order Directing the Def. be Transferred Back to the MDC ("Def. Nov. 29, 2010 Letter") (Docket Entry # 976); Def.'s Motion to Compel Vacatur of SAM, Hearing, and Bill of Particulars ("Def. Vacatur Motion") (Docket Entry # 979); Def.'s Letter of December 28, 2010 (Docket Entry # 1009); Def.'s Reply to Motion to Compel (Docket Entry # 1015); Def's Letter of Jan. 10, 2011 (not yet filed on ECF); Gov't's Mem. in Opp. to Def.'s Motion to Suppress the "Massino Tapes" and Dismiss the Indictment ("Gov. Massino Suppression Opp.") (Docket Entry # 516); (Gov't's Letter of Sept. 22,

disputes). At the time Basciano filed this speedy trial motion, the case docket contained over 1025 electronic filings. Yet at no time did Defendant or his counsel raise speedy trial concerns.

That this case never ceased to be complex is also demonstrated by the fact that Basciano's court appointed counsel have worked constantly in preparing for his defense. The trial has not yet commenced and the court has already approved defense counsel payments of nearly three million dollars ($ 3,000,000). His court appointed attorneys have reported working the following number of hours: Ying Stafford worked 6,210 hours; Richard Jasper worked 6,005 hours; Jane Simkin Smith worked 2,078 hours; Ephraim Savitt worked 1,863 hours; George Goltzer worked 3,228 hours; Lawrence Stern worked 326 hours. In total, defense counsel in this case have already spent not fewer than 19,710 hours representing Basciano, an amount equivalent to 2,464 eight-hour work days. The court has approved over $800,000 in non-attorney expenses, including travel, paralegal services, investigators, and other experts. The extraordinary amount of time, resources, and money spent preparing Basciano's defense demonstrates the extraordinary complexity of this case and the extraordinary efforts required to mount Basciano's defense in this death penalty case.

Nonetheless, the court has also ensured that a realistic trial date was always on the horizon. While this order does not provide a comprehensive account of the many times a trial date has been set, the following history is instructive. On June 8, 2006, the court set trial to

---

2008 ("Voluntary Disclosure") (Docket Entry # 528); Gov't's Letter of Jan. 23, 2009 ("Massino Opp. Letter") (Docket Entry # 611); Gov't's Letter of Feb. 19, 2009 ("Particulars Production") (Docket Entry # 639); Gov't's Mem. in Opp. to Def.'s Pretrial Motions ("Gov. Pretrial Opp.") (Docket Entry # 668)); Gov't's Letter of June 29, 2009 (Docket Entry # 715); Gov't's Mem. in Opp. to Supplemental Pretrial Motions ("Gov. Supp. Pretrial Opp.") (Docket Entry # 923); Gov't's Motion *In Limine* to Admit Certain Evidence and to Preclude Certain Evidence and Arguments at Trial ("Gov. *In Limine*") (Docket Entry # 945); Gov't's Letter in Response to the Def.'s Letter Application Directing Basciano's Transfer to MDC (Docket Entry # 967); Gov't's Letter Regarding the MCC's Legal Visiting Conditions (Docket Entry # 978); Gov't's Response to Motion to Compel (Docket Entry # 1012); Gov't's Letter of Jan. 5, 2011 (Docket Entry # 1013).

begin on April 16, 2007. (Docket Entry # 194.) In an Order of October 23, 2007, the court granted a joint motion for a severed trial made by Basciano and his co-defendants, and the court set jury selection to begin in this case on May 6, 2008. (Docket Entry # 336 at 17.) On May 26, 2009, the court denied Defense counsel's request to postpone the trial until 2010. However, on June 4, 2009, the court granted a continuance in order to avoid "dual jurisdiction" between this court and the Court of Appeals, while a double jeopardy ruling was on interlocutory appeal. (Order of June 4, 2009 (Docket Entry # 708) at 1, 3.) Once the Second Circuit decided the appeal on March 23, 2010, see United States v. Basciano, 599 F.3d 184 (2d Cir. 2010), the court immediately scheduled trial to begin in January 2011. (March 25, 2010 Tr. at 12-13.) Throughout the entire history of the case, during which Basciano was twice tried in another case, the court has always ensured that trial date is set and attempted to move the case to trial.

## II.     DISCUSSION

### A.     Speedy Trial Act Exclusions

The Speedy Trial Act provides "'the trial of a defendant charged in an information or indictment . . . shall commence within seventy days . . . from the date the defendant has appeared before a judicial officer of the court in which such charge is pending.' Absent exclusions, if the trial does not begin within this 70-day period, the indictment must be dismissed." United States v. Breen, 243 F.3d 591, 594 (2d Cir. 2001) (quoting 18 U.S.C. § 3161(c)). "[T]he Act's time limit serves dual purposes: it protects "the defendant from undue delay in his or her trial and [ ] benefit[s] society by ensuring a quick resolution of criminal trials." Id.

"A trial court is vested with broad discretion to grant a speedy trial exclusion when in its view the case's complexity makes it necessary to grant counsel additional time to prepare in order to ensure a fair trial." United States v. Astra Motor Cars, 352 F.Supp.2d 367, 369

(E.D.N.Y. 2005) (citing <u>Breen</u>, 243 F.3d 591 (2d Cir. 2001); <u>United States v. Gambino</u>, 59 F.3d 353 (2d Cir.1995)).  The Speedy Trial Act provides that,

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).  In deciding whether a case is complex under 18 U.S.C. § 3161(h)(7)(B)(ii), a court may consider, among other factors, whether "due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."  Another provision, 18 U.S.C. § 3161(h)(7)(B)(iv) permits exclusion where "the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv)

> As the Second Circuit has held,
>
> The Act plainly contemplates that the district judge must determine before granting the continuance that society's interest in meeting the "ends of justice" outweighs the interest of the defendant and of society in achieving speedy trial. . . .  Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.  Nevertheless, it

>is reasonably well settled that the required findings *need not be placed on the record at the same time that the continuance is granted*.

United States v. Tunnessen, 763 F.2d 74, 77 (2d Cir. 1985) (emphasis added).

In Breen, the Second Circuit rejected the argument that the Speedy Trial Act had been violated because the district judge did not mention "the words 'ends of justice' and by failing to explicitly perform the requisite balancing between the 'ends of justice served by the granting of such continuance' and 'the best interests of the public and the defendant in a speedy trial.'" 243 F.3d at 597 (quoting 18 U.S.C. § 3161(h)(8)(A)). The Court found the Speedy Trial Act was not violated because "the parties and their counsel all understood from the May 25 colloquy fixing the trial date in open court that the judge was concerned over speedy trial considerations, that the time until trial was being excluded and that various interests, including the needs of counsel for more time to prepare, were being balanced against the concern over delay." Breen, 243 F.3d at 597. The court stressed that,

>whenever possible the district court should make the findings required by § 3161(h)(8)(A) at the time it grants the continuance. A contemporaneous finding on the record aids appellate review and also puts the parties on notice that the speedy trial clock has been stopped. But a trial is neither a game nor an obstacle course; failure to utter the magic words "ends-of-justice" at the time of ordering the continuance is not necessarily fatal. In short, we are convinced by the record that in granting the continuance on May 25, the trial court considered the factors indicated in § 3161(h)(8) and performed the required balancing of interests.

Id. (internal citation and quotation marks omitted).

Recent Supreme Court precedent suggests the ends of justice findings need not be made on the record at the time the court grants the continuance. As the Supreme Court has held,

>[a]lthough the Act is clear that the findings must be made, *if only in the judge's mind*, before granting the continuance (the continuance can only be "granted ... on the basis of [the court's] findings"), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the

9

record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).

Zedner v. United States, 547 U.S. 489, 506-07 (2006) (emphasis added). It follows from Zedner that a district court's findings may be set forth in the court's ruling on a defendant's motion to dismiss under § 3162(a)(2). It would be an unreasonable reading of Zedner to require a court to set forth its reasoning on the record *before* ruling on the motion to dismiss but to permit a court to set forth its reasoning on the record *after* the Defendant has made a motion to dismiss under § 3162(a)(2). See, e.g., United States v. McNealy, 625 F.3d 858, 863 (5th Cir. 2010) (finding that where a district court emphasized "that the following findings were made 'in the judge's mind, before granting the continuance,' and are here made part of the record" and then the court set forth specific findings in an order denying a motion to dismiss under the Speedy Trial Act, "[t]his was sufficient to satisfy the requirements of § 3161(h)(7)(A).")

Here, Basciano states that "[a]t a minimum, 360 days of the delay are not excludable under any provision of 18 U.S.C. § 3161(h)." (Def. Mem. at 2.) He lists date ranges in which he claims time was not properly excluded but provides no explanation of why those specific dates were not excluded. Furthermore, Basciano's memorandum inexplicably makes no mention of the fact that the court designated this case a complex for the purpose of the Speedy Trial Act from the beginning of this case.[3] (January 31, 2005 Tr. at 16.) Consequently, it is questionable whether Basciano has even met his "burden of proof of supporting" his motion to dismiss. 18 U.S.C. § 3162(a)(2).

The court is "vested with broad discretion" to delay the start of trial when necessary "to grant counsel further time to prepare in order to ensure a fair trial." See United States v. Gambino, 59 F.3d 353, 357 (2d Cir. 1995). As set out above, when the court designated the case

---

[3] Basciano first mentioned the fact that this case had been designated as complex under the Speedy Trial Act in his Reply Memorandum. (Docket Entry # 1035.)

as complex on January 31, 2005, the court was aware that Basciano was charged with a death-penalty-eligible crime, which would require extensive preparation; that Basciano was facing serious and complex charges in a separate case, which would only increase the procedural complexity of this case; and that the case already involved one co-defendant and others were likely to be added.  The court found that given the fact that this case was death eligible—let alone the additional factors adding to its complexity—the ends of justice required Basciano's counsel be given the additional time necessary to adequately prepare Basciano's defense.  Basciano's rights to effective assistance of counsel and his due process rights to a fair trial clearly outweighed the interests of Basciano and the public in a speedy trial.  At the time the complex-case designation was made and time was excluded from the speedy trial clock, the ends of justice required such an exclusion and it was apparent that the parties were on ample notice of that fact.

The record makes clear that throughout the case, the court continually monitored whether the case continued to require the exclusion of time due to its complexity.  Furthermore the record makes clear that such an exclusion was required, and defense counsel repeatedly made representations to the court that the case continued to be properly designated as complex for the purpose of excluding time and that additional time to prepare was required in order to ensure that Basciano would be effectively represented in his death penalty trial.

The exclusion for complexity was, as required, "limited in time."  Gambino, 59 F.3d at 358.  The court always set reasonable trials dates, and when adjournments have been granted, it was always "reasonably related to the actual needs of the case," id., namely the need of defense counsel to be permitted additional time in order to adequately prepare Basciano's defense in a death penalty case; the need to work through the complex procedural posture of the case—with

multiple interlocutory appeals and two other related trials; and the need to resolve extensive discovery and pretrial motions.

Accordingly, the court acted within its discretion in designating Basciano's case as complex on January 31, 2005. Due to this proper designation, time was excluded from that date until trial, for which jury selection is set to commence on February 15, 2011. For the reasons set out here, the court correctly excluded time in this case because "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

### B.    Judicial Estoppel

Even assuming *arguendo* that the more than 70 days in this case were not properly excludable under the Speedy Trial Act, Basciano would not be permitted to assert this violation under principles of judicial estoppel.

The Second Circuit has long recognized that there may be circumstances in which a criminal defendant would be estopped from asserting a violation of speedy trial rights if the defendant is the cause of or is complicit in the delay. See United States v. Gambino, 59 F.3d 353, 359-60 (2d Cir. 1995). The Supreme Court in Zedner rejected the application of the doctrine of judicial estoppel under the facts of that case, but it did not foreclose the application of judicial estoppel to speedy trial claims altogether. 547 U.S. at 504-05.

Judicial estoppel applies "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Zedner, 547 U.S. at 504 (internal citations and quotations omitted). Though judicial estoppel is an equitable doctrine, the

following factors inform a court's decision as to whether judicial estoppel should be applied in a particular case:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Zedner, 547 U.S. at 504 (internal citations and quotations and alterations omitted).

The court in Zedner reasoned that judicial estoppel did not apply where a defendant had represented at a status conference that a continuance was needed to gather evidence because "the position that petitioner took then was not 'clearly inconsistent' with the position that he now takes in seeking dismissal of the indictment." Zedner, 547 U.S. at 505. The court reasoned that,

> Nothing in the discussion at the conference suggests that the question presented by the defense continuance request was viewed as anything other than a case-management question that lay entirely within the scope of the District Court's discretion. Under these circumstances, the best understanding of the position taken by petitioner's attorney at the January 31 status conference is that granting the requested continuance would represent a sound exercise of the trial judge's discretion in managing its calendar. This position was not "clearly inconsistent" with petitioner's later position that the continuance was not permissible under the terms of the Act.

Id. at 505-06. The Court noted, however, that "[t]his would be a different case if petitioner had succeeded in persuading the District Court at the January 31 status conference that the factual predicate for a statutorily authorized exclusion of delay could be established." Id. at 505.

The Second Circuit has stated that it reads Zedner "to say that a defendant is estopped by virtue of obtaining a continuance only if notice is taken of the Speedy Trial Act." United States v. Oberoi, 547 F.3d 436, 445 (2d Cir. 2008) (rev'd on other grounds). In Oberoi, the court held that since at the time of granting the continuance, the Speedy Trial Act was,

> simply disregarded—there was no notice taken of the 'ends of justice' or any other possible ground for an exclusion of time. As a result, Oberoi's earlier

13

>position (ignoring the Speedy Trial Act) is not 'clearly inconsistent' with his later position (invoking the Speedy Trial Act). Under these circumstances, Oberoi is not judicially estopped from challenging the pre-indictment delay under the Speedy Trial Act, even if that delay was attributable to his counsel's request for an adjournment.

Oberoi, 547 F.3d at 445.

In the present case the Speedy Trial Act was not disregarded. Rather, the court noted on the record, at the beginning of the case, that the case was designated as complex and time was excluded for the purposes of the Speedy Trial Act. In fact the request that the case be designated as complex, was made at the request of Defendant. Thus, the case was designated as complex and time was excluded in part because the defense represented that the demands of mounting Basciano's defense required such a designation for purposes of the Speedy Trial Act.

Furthermore, as detailed above, once the case was designated as complex and time was being excluded under the Speedy Trial Act, defense counsel repeatedly made factual representations that, due to the complexity of the case and the demands of preparing Basciano's defense, additional time was required. It is largely because of these representations that the court deemed it appropriate throughout the history of this case to find that the case should continue to be designated as complex, that time should continue to be excluded, and that additional postponements of trial were justified in the interest of justice. Accordingly, because defense counsel previously and repeatedly asserted that the facts of the case were such that exclusion of time under the Speedy Trial Act was appropriate, Basciano is now estopped from arguing the contrary—that the exclusion of time resulting from the complex designation was not justified.

**D. Constitutional Speedy Trial Violation**

Basciano's argument that his constitutional rights to a speedy trial were violated in this case is frivolous and does not merit in-depth consideration. Courts consider four factors "in

14

determining whether there has been a deprivation of [a criminal] defendant's constitutional right to a speedy trial . . . :(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) the prejudice to the defendant." United States v. Vasquez, 918 F.2d 329, 337-38 (2d Cir. 1990) (citing Barker v. Wingo, 407 U.S. 514, 530-33 (1972)).

Basciano is essentially rehashing his double jeopardy arguments in contending that "[j]ustice was served by [his 2003] prosecution" in which he was sentenced to life in prison. (Def. Mem. at 12.) Furthermore, as this court has previously found,

> Basciano fails to provide any support for his claim that the Government has proceeded with a deliberate strategy of delay, let alone one pursued for an improper purpose. Indeed, this court has presided over this case for several years and observes that there has not been any delay on the part of the Government that could give rise to an inference of strategic manipulation. Basciano has been responsible for a significant portion of the delay in bringing this case to trial. Furthermore, Basciano has failed to establish that his right to a fair trial has been prejudiced by the Government's delay.

(Pretrial Order of January 12, 2011 (Docket Entry # 1018) at 18-19.)

Basciano's attempt to blame this court for causing delay by not deciding pretrial motions sooner is disingenuous and frivolous. (Def. Mem. at 11 ("for over 18 months, he was waiting for the court's rulings on his various motions to dismiss").) Oral argument on the extensive and largely meritless pretrial motions Basciano refers to occurred on June 26, 2009. However, as addressed above, on June 4, 2009, to avoid "dual jurisdiction" between this court and the Court of Appeals, the court granted Basciano's continuance request and postponed the trial until "no sooner than 30 days after a decision by the Second Circuit in the pending appeal." (June 4 Order at 1, 3.) On March 25, 2010, two days after the Second Circuit decision was issued, the court held a status conference at which the parties and the court set trial to start in January 2011. Thus, the court decided the pretrial motions within the trial schedule requested by the parties, causing no delay.

15

Basciano further ignores the many instances in which he acted to slow the court's rulings. As addressed above, on March 25, 2010, George Goltzer told the court "[w]e understand fully the severity of the issues and the time necessary and you will never hear from defense that you need to decide quicker rather than later." (March 25, 2010 Tr. at 16.) On March 26, 2010, the parties set a schedule for briefing the revised omnibus defense motions which were to be fully briefed on August 13, 2010. (See Docket Entry # 873.) Until the court's pretrial memorandum was issued on January 12, 2011 (Docket Entry # 1018), Basciano submitted numerous letters supplementing his pretrial motions. On September 30, 2010, Basciano sent the court a letter requesting that the court "refrain from ruling on the pending motions in Basciano's case, while the defense prepares a motion to recuse the Court." (Docket Entry # 942.) The recusal motion was fully briefed on October 18, 2010. The court denied Defendant's fifth motion for recusal on November 11, 2010. (Docket Entry # 964.)

While the six-year delay is certainly a substantial delay in the abstract, under the facts of the case, this delay does not rise to the level of a constitutional violation. This delay was almost entirely caused by Basciano. The delay was granted by the court in order to protect Basciano's ability to be represented effectively in his death penalty trial. Furthermore, Basciano has failed to show that any prejudice caused by the delay is not counterbalanced or outweighed by benefit from the delay. Consequently, Defendant's assertion that his constitutional right to a speedy trial has been violated is meritless.

## III.  CONCLUSION

Defense counsel's failure to note that this case was designated as complex and time was excluded under the Speedy Trial Act and to address the legal consequences of such a designation is alarming. Further, defense counsel's omission of the fact they repeatedly requested extensions

16

of time and delays of trial in order to adequately prepare Basciano's defense in this serious and complex case is troubling and misleading.

    For the reasons set forth above, Basciano's motion to dismiss the indictment on speedy trial grounds is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       February 11, 2011

      /S/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge