# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 9, 2011

<u>**BY EMAIL**</u>
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: <u>United States v. Vincent Basciano</u>
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with <u>voir</u> <u>dire</u> of prospective jurors 102, 120 - 147.  We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

**Juror 102**

Q. 18

Q.40b(c).  Juror indicates he was disappointed in the outcome of the OJ Simpson trial, and if you are rich or famous you may avoid just punishment. Please follow up.

Q. 42  Juror indicates never was a victim of a crime but it was reported to police.  Please inquire

Q. 63.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **2** of **15**

Q. 66, 123.  Juror indicates some language difficulties.

Q. 74.

Q. 83.

Q. 85, 86.  Juror indicates he can't give an opinion without the facts.  Please inquire as to the circumstances under which the juror would find life without possibility of release a sufficiently harsh sentence for an intentional, deliberate murder in which self-defense, accident, or diminished capacity played no part.

Q. 87. Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also, inquire whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q. 93.  Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder.

Q. 94.  Please inquire for what crimes the juror believes life without possibility of release would be appropriate deliberate, intentional murder.

Q. 97. Juror doesn't understand the question. Please follow-up

Q. 100.

Q. 101. Not answered.

Q. 102.

Q. 110(b).


**Juror 120**

Q.18. Answer is illegible

Q. 38.

Q. 56. Juror read about the Mafia, watched the Sopranos and Growing up Gotti. Please inquire what knowledge of or opinions about organized crime she might have gained as a result

Q.85, 87.  Please ask juror what she thinks about a sentence of life without possibility of release for someone who commits a deliberate, planned, intentional murder.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **3** of **15**

Q.86. Not answered.

Q.93. Please ask juror whether he could impose a sentence of life without possibility of release for someone who intentionally killed someone, was convicted of a previous murder, who is serving a life sentence now, and who sought the murders of a federal prosecutor and a cooperating witness.

Q.105. Not answered

Q.113. Not answered

Q. 114. Please ask juror if she could consider a life sentence for a convicted murderer who presents a future danger to others while incarcerated.

Q. 118.

**Juror 121**

Q.65

Q.85, 86.  Please ask juror what types of circumstances she would find appropriate for a life sentence for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q87.  Please inquire whether juror could consider a life sentence for someone committing an intentional, deliberate murder where there is no self-defense, accident, or heat of passion.  Please also ask the juror to explain her statement "…if other person was no choir boy…"

Q.94, 105. Please ask juror if other than self-defense, heat of passion or accident, whether she could consider a sentence of life without possibility of release.  Please inquire what other circumstances might influence her to vote for a life sentence.

Q. 95.

Q. 102.

Q.106.

Q. 107.

Q110(b).

Q.114. Please ask juror if she could consider a life sentence for a convicted murderer who presents a future danger to others while incarcerated.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **4** of **15**

## Juror 122

Q.16, 56(f).  Please inquire about jurors perceptions about the presence and behavior of members of organized crime families in Staten Island.

Q. 35. Juror indicates she cannot be fair and impartial due to media exposure. Please inquire how juror thinks this will affect her jury service in this case.

Q.42

Q43(d).

Q.53. Juror indicates the defendant "looks guilty."  She indicates she is unsure if her perception would change during the trial.

Q. 63

Q. 65.  Please inquire about juror's neighbors who practice Santeria.

Q.85.  Please ask juror when she thinks the  death penalty would be the appropriate punishment for someone convicted of an intentional murder and when life without possibility of release would be appropriate.

Q. 86.   Please ask juror about her ability to consider a life sentence for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q. 87, 107, 110(b).  Please inquire why juror believes jail life is "too cushy."

Q. 92. Please reassure this juror that no one expects this decision to be easy.

Q. 93. Please inquire about the conditions under which juror believes "there is no other option" but death.

Q.95. Please inquire if juror believes it would be appropriate to sentence someone to death who is already serving a life sentence.

Q.95a, 104, 114, 115, 116, 117, 118. Please ask juror if given all of those circumstances, she would be willing to impose a sentence of life without possibility of release.

Q. 106.

## Juror 123

Hon. Nicholas G. Garaufis
March 9, 2011
Page **5** of **15**

Q. 25(a).

Q.56.  Juror read about the Mafia, watched the Sopranos. Please inquire what knowledge of or opinions about organized crime he might have gained as a result.

Q.85.  Please ask juror to clarify.

Q.93.  Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder.

Q. 94.  Please inquire for what crimes the juror believes life without possibility of release would be appropriate deliberate, intentional murder

Q.105.  Please inquire when a  juror would consider a life sentence to be sufficient for someone committing an intentional, deliberate murder where there is no self-defense, accident, or heat of passion.

Q. 106.

Q. 110(b).

Q. 113-118. Please ask juror whether he could impose a sentence of life without possibility of release for someone convicted of a previous murder, who is serving a life sentence now, and who sought the murders of a federal prosecutor and a cooperating witness. Please ask the juror whether he could impose a sentence of life without possibility of release for someone who was shown to present a future danger to others, is currently serving a life sentence, and was previously convicted of intentional murder.

**Juror 126**

Q. 1, 18, 25.  Juror indicates a hardship.  He writes he is an auditor for Medicaid abuse for NY State and has a backlog of audits more than a year old. Juror identifies the office for which he works (Office of Medicaid Inspector General), perhaps this affects anonymity.

Q.16. Juror indicates that Bensonhurst would be "better off without any organized crime influence." Please ask juror to elaborate.

Q. 23, 24.  Juror indicates his wife is a civilian aide for the NYPD.  Also please ask him whether he would tend to give more credence to the testimony of law enforcement as a result of this connection, as well as his own position.

Q. 38 (c), (d).  Juror indicates he was a grand juror in 2004, and also that he doesn't know if there is anything about that service that would affect impartiality.

Q. 42.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **6** of **15**

Q.53, 58, 66, 73  Juror indicates he is biased against organized crime figures, and writes in Q. 84 that he would "consider organized crime figures to be already guilty."

Q. 56(f). Juror indicates he knows the Sopranos was realistic because "they do kill each other off…"  Please ask juror if this would make it difficult for him to accept the presumption of innocence and the burden of proof.

Q.63.

Q65.

Q.71. Not answered.

Q.85.  Please ask juror whether he could impose a sentence of  life without possibility of release for someone who intentionally killed someone, was convicted of a previous murder, who is serving a life sentence now, and who sought the murders of a federal prosecutor and a cooperating witness.

Q.86, 87, 101.  Please ask juror how he would know whether the person convicted of intentional murder had remorse if he did not testify.

Q, 88. 90.  Please ask juror if that is a religious belief, and if "the punishment should fit the crime" in every case of intentional murder.

Q. 89.  Juror indicates he became in favor of the death penalty because of "so much murder and crime on the news," Please ask him to elaborate.

Q. 93. Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder.

Q. 94.  Please inquire for what crimes the juror believes life without possibility of release would be appropriate deliberate, intentional murder.

Q. 96, 101.

Q.106.

Q.117, 118.

**Juror 132**

Q. 38. Please inquire if this was a capital case and whether there were any allegations of organized crime involvement.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **7** of **15**

Q.56. Juror has been exposed to numerous movies and tv programs about organized crime, and indicated *The Sopranos* realistically portrayed "camaraderie, vindictiveness and loyalty." Please ask her to elaborate.

Q. 57. Juror indicates a friend is a retired detective who used to investigate organized crime and that "friends of friends in certain restaurants" have such ties. Please follow up.

Q.63.

Q. 85. Please ask juror when she thinks the death penalty would be appropriate for a deliberate, intentional murder and when life without possibility of release would be.

Q. 86, 102, 105. Please ask juror about her ability to consider a life sentence for someone who committed an intentional, deliberate murder, when the circumstances preclude self-defense, accident and diminished capacity.

Q87, 107. Please follow up regarding her beliefs about the public paying for life without possibility of release.

Q.90 Please ask juror about her ability to consider a life sentence for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q.106.

Q.110(b). Please ask juror to clarify regarding "depending on the prison, it would be a hardship." Please ask if prison conditions would make a difference to her decision regarding sentencing.

**Juror 133**

Q.85. Please ask juror when he thinks the death penalty would be appropriate for a deliberate, intentional murder and when life without possibility of release would be.

Q.86a, 87, 95, 98. Juror indicates intentional murder "deserves death," and "it depends on the circumstances." Please inquire if that he supports the death penalty in every case of intentional murder. Please ask if he could impose a life sentence when there are no extenuating circumstances such as accident, self defense, heat of passion or insanity. Please also ask what other circumstances, if any, the juror is thinking of.

Q. 88. Juror indicates an "eye for an eye" means "you get what you deserve." Please inquire if he means the death penalty.

Q.90. Not answered.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **8** of **15**

Q.93, 94.  Please ask juror to explain his answers.

Q. 113-118 Please inquire as to whether she believes life without possibility of release could be a sufficient punishment for someone who: had been previously convicted of intentional murder; planned and premeditated a murder;  was shown to present a future danger to others; sought the murder of a federal prosecutor; sought the murder of a cooperating witness and was already serving a life sentence.

**Juror 135**

Q1. Juror has indicated a hardship because he is in the midst of a 7 month training to become a LIRR electrician and needs to complete the program.

Q.24, 25.  Juror indicates he resigned from the Port Authority Police Academy in 2005. Please follow up.  Juror indicates many law enforcement connections.  Juror further indicates (25c) that he does not "think the police would have any reason to lie."  Please inquire if the thinks the police could make a mistake.

Q.29. Please follow up regarding juror's lobbying efforts.

Q.30, 40(a)-(d).  Juror indicates he cannot be fair because he feels "lawyers are about money and frivolous lawsuits."  Juror indicates he does not believe what lawyers have to say. He further indicates criminal defense lawyers "try to get off a criminal even when suspect is caught red handed."

Q. 35. Juror indicates thinks he has read about this case in *Newsday* and cannot be fair and impartial.

Q. 43(a). Juror indicates difficulty being fair and impartial because he doesn't "think the police would arrest someone for no reason." Juror indicates he is not sure he can his feelings aside.

Q51. 52 (c), (d), 77(b). Juror indicates case sounds familiar and he believes defendant is "probably guilty."  Juror indicates there is "no reason for the police to lie."  Juror also expresses the belief that the defendant is "probably guilty as charged (Q52(d)).

Q56.  Please ask juror if his belief in the accuracy of the portrayal of organized crime would make it difficult for him to accept the presumption of innocence and the burden of proof.

Q.58, 66, 73. Juror indicates an inability to be fair because he wants "nothing to do with a trial involving organized crime."

Q. 63. Juror indicates he is unsure whether he could be fair as a result of reading about the 127 alleged members of organized crime.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **9** of **15**

Q. 85, 105. Please inquire about the circumstances under which the juror would favor a penalty of life without possibility of release for an intentional, deliberate murder when there is no accident, self-defense, heat of passion or insanity.

Q. 85 (c), 86, 97, 88, 93, 100.  Juror indicates his strength of opinion favoring the death penalty is a "10," and that the death penalty is the right punishment for an intentional murder, and that intentional killing should result in death penalty.  Please ask juror if a sentence of life without possibility of release ever would be appropriate for intentional murder.

Q 105.

Q.109. Juror indicates he is not sure whether he or family or friends has ever supported a pro-death penalty organization.

Q. 113-118. Juror indicates he is unable to consider a sentence of life without possibility of release.

**Juror 136**

Q24.  Please ask juror whether he would tend to give more credence to the testimony of law enforcement.

Q.39a.  Juror indicated he filed a complaint against someone for criminal mischief.

Q.66, 73  Juror indicates nervousness sitting on a case like this.

Q. 85.  Please ask juror if he has had any thoughts on the death penalty since filling out the questionnaire.  Please ask juror when he thinks the  death penalty would be the appropriate punishment for someone convicted of an intentional murder and when life without possibility of release would be appropriate

Q. 86(a).  Juror indicates he cannot decide about a death penalty.  Please ask him to explain.

Q.93.  Please ask juror about his ability to consider the death penalty  for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q.95.

Q.99

Q. 101, 102, 119(c). 121(c).  Please ask juror if he could ever consider imposing a sentence of death under any circumstances.

Q. 103

Hon. Nicholas G. Garaufis
March 9, 2011
Page **10** of **15**

Q. 106.

Q.111-112. Not answered.

Q. 113.  Please ask juror to explain.

**Juror 139**

Q.16.

Q. 24. 25.  Please ask juror whether he would tend to give more credence to the testimony of law enforcement.

Q. 57.  Please ask juror what impressions he may have formed about organized crime.

Q. 85.  Please inquire as to when the juror believes the death penalty is the only proper sentence.

Q. 86, 87. Please ask juror if this is his belief regarding every intentional murder when there is no accident, self-defense,  heat of passion or insanity.

Q.90.  Not answered.

Q.92. Please ask juror what he means by "the crime was so violent."

Q. 93-94. Please ask juror his thoughts on the death penalty for someone who committed an intentional, deliberate murder, and who is already serving life for another intentional murder, and who also sought to have murdered a federal prosecutor and a cooperating witness.

Q. 95-96 Not answered.

Q. 99. 105 Please inquire whether juror would find it difficult to vote for life without possibility of release whenever a defendant is convicted of more than one intentional murder.

Q. 102(b). Please ask juror if that is in every case of intentional murder.

Q.103

Q.106.

Q.107(a). Please ask juror if his feelings would compel him to vote for the death penalty for every intentional, deliberate murder.

Q. 110(b). Please ask juror what he means by "they killed someone? is how and the right punishment." (*sic*)

Hon. Nicholas G. Garaufis
March 9, 2011
Page **11** of **15**

Q. 113-118.  Please inquire as to whether he believes life without possibility of release could be a sufficient punishment for someone who: had been previously convicted of intentional murder; planned and premeditated a murder;  was shown to present a future danger to others; sought the murder of a federal prosecutor; sought the murder of a cooperating witness and was already serving a life sentence.

**Juror 141**

Q. 16.  Please ask juror what her experiences growing up near organized crime might affect her jury service in this case.

Q.30

Q.38.  Please ascertain whether there were any allegations of organized crime involvement.

Q.40(d). Please ask juror to explain her views on criminal defense attorneys.

Q.42(a)-(e), 61.  Juror indicates that her cousin's murder, in which the perpetrator was never found, would make it difficult to be fair.  She indicates that "those with more resources get their murder's solved while the have nots never get answers."

Q.46(a), (b), (c), (f).  Please ask juror to clarify.

Q.56  Please ask juror if her belief in the accuracy of the portrayal of organized crime  would make it difficult for her to accept the presumption of innocence and the burden of proof.  Please ask her about her acquaintance with the Gotti children.

Q.64  Please ask juror if she could consider the death penalty under any circumstances.

Q. 65

Q.66  Juror indicates fear of organized crime families may affect fairness.

Q.78

Q. 85

Q.86 Please ask juror to clarify what she means by "it will depend on the motive." Please ask juror about her ability to consider the death penalty  for someone who committed an intentional, deliberate murder, when the circumstances preclude self-defense, accident and diminished capacity.

Q.91

Hon. Nicholas G. Garaufis
March 9, 2011
Page **12** of **15**

Q.93

Q. 94, 95, 116 Please ask juror whether she could consider the death penalty for someone she was convinced beyond a reasonable doubt was guilty of intentional murder when that person was already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q. 114.  Please ask juror if she could consider a life sentence for someone who she believed presented a future danger to others while in prison.

Q.122

Attachment B: Juror circled the Parkside.

**Juror 144**

Q.30

Q. 40(b). Please ask juror to explain.

Q.56  Please ask juror what he means by "nobody ever got caught."

Q.61(a)-(d).  Juror indicates a friend/classmate was murdered.

Q.85, 86, 93, 94. Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder. Please inquire for what crimes the juror believes life without possibility of release would be appropriate deliberate, intentional murder.

Q. 87 Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q. 95  Please inquire as to the circumstances under which the  juror would find life without possibility of release a sufficiently harsh sentence for an intentional, deliberate murder in which self-defense, accident, or diminished capacity played no part.

Q. 98  Please ask juror what he means by "the factors," and please explain the different burdens of proof and weighing process regarding aggravating and mitigating factors.

Q.106

Q. 115, 118.  Please inquire whether juror could consider a sentence of life without possibility of release under these scenarios.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **13** of **15**

**Juror 145**

Q. 16, 35  Please ask juror if familiarity with an alleged organized crime neighborhood would affect his view of this case or if he has learned anything about organized crime as a result.

Q. 18  Juror appears to have included the name of his company, Media 8 Entertainment.

Q. 25(b).

Q. 30

Q. 40(c).

Q. 65

Q.80 Not answered.

Q. 85(b).

Q. 86. Please inquire whether the juror could consider  the death penalty for an intentional, deliberate murder when there is no accident, self-defense, heat of passion or insanity.

 Q.91.  Juror indicates he could not impose the death penalty if he didn't think it warranted.

Q. 93  Juror indicates the death penalty is appropriate in extreme cases, "tbd." Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder.

Q. 94  Please ask juror about his ability to consider a life sentence for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q.103

Q. 106.

Q. 113-118.  Please inquire as to whether he believes life without possibility of release could be a sufficient punishment for someone who: had been previously convicted of intentional murder; planned and premeditated a murder;  was shown to present a future danger to others; sought the murder of a federal prosecutor; sought the murder of a cooperating witness and was already serving a life sentence.

Q. 123.  Juror believes his work on high profile media project may bring unwanted attention.

Hon. Nicholas G. Garaufis
March 9, 2011
Page **14** of **15**

## Juror 146

Q.16. Juror indicates he felt unwelcome in an organized crime neighborhood.

Q. 24.

Q. 30

Q. 40   Juror indicates the trials of OJ Simpson and the Gottis were "bizzare."

Q. 56(f),(r).  Please ask juror what he means, regarding *The Sopranos*, that series was realistic "very matter of fact double lives."  Please ask juror what he means, "violence seems as accurate as dialog."

Q. 65.

Q. 85.  Juror indicates the belief that NY has the death penalty.

Q. 85(d). Please inquire what juror means, and to whom he is referring,  by "I've felt less affection for those who too often find themselves in positions where they can be charged..guilt by assoc."

Q. 87  Please ask juror whether he could consider a life sentence for someone who committed an intentional, deliberate murder, who is already serving life for another intentional murder, and who also sought to have killed a federal prosecutor and a cooperating witness.

Q. 88.  Please ask juror if he believes society has an obligation to take a life in a situation where there has been an intentional, deliberate murder when there is no accident, self-defense, heat of passion or insanity.

Q. 90. 102(b)  Please ask juror, when he states if you commit an intentional murder you "forfeit your right to life," that this is every instance of intentional murder.

Q. 98, 99, 105, 107(a), (b), 110(b), 113, 118  Please ask juror he believes life without possibility of release could be an appropriate penalty for someone who has committed more than one intentional murder.

Q. 103

## Juror 147

Q. 26  For what type of business was the juror a security officer?

Q. 42

Hon. Nicholas G. Garaufis
March 9, 2011
Page **15** of **15**

Q. 47  How is that person doing now?

Q. 85-87.  What types of intentional murders does the juror think are best for the death penalty, and which for life without possibility of release?

Q. 86.  What does juror mean by "allow it," regarding the death penalty for intentional murder?

Q.90.  Has juror thought more about the death penalty since filling out the questionnaire and thus more able to explain his views?

Q.93.  What types of cases would be the exceptions to the death penalty?

Q.95.  What does juror mean "no matter, I would have to weigh in my thoughts, what led to the end result."


Respectfully Submitted,

_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:    All Counsel (By Email)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 10, 2011

**BY EMAIL**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective jurors 168 - 184.  We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

**Juror 168**

Q.1.Please inquire of the jurors' hardship.

Q.27.

Q.93. Please inquire of the juror as to what kinds of cases warrant the death penalty.

Q.94. Please ask the juror what kinds of cases warrant a sentence of life in prison without the possibility of release.

Hon. Nicholas G. Garaufis
March 10, 2011
Page **2** of **8**

**Juror 172**

Potential Language Problem

Q.30.

Q.85. Left blank

Q.90, 91. Left blank

Q.96. Please clarify.

Q.98. Please clarify.

Q.104.

Q.106.

Q.110.

Q.112.

Q.113, 115, 116, 118. Please clarify.

**Juror 173**

Q.93. Please ask the juror what cases warrant the death penalty.

**Juror 175**

Q.38.

Q.61.

Q.91. Please advise the juror that decision on punishment will be after the defendant is found guilty.

Q.93. Please ask the juror under what circumstances the death penalty would be appropriate.

Q.107.

Q.110.

Q.111. Please inquire.And ask the juror if he would be able to put his beliefs aside and follow the Court's instructions in accordance with his oath as a juror in this case.

Hon. Nicholas G. Garaufis
March 10, 2011
Page **3** of **8**

Circled Metropolitan Correctional Center and Metropolitan Detention Center

**Juror 176**

Potential Hardship.Please inquire.

Q.38.

Q.41.

Q.43.

Q.46.

Q.54. Anonymity issue?

Q.65.

Q.85. Juror indicated "I think punishment should fit the crime." Please ask juror if she would take into account life without the possibility of release for a person already serving a life sentence and convicted of a planned and premeditated murder.

Q.86. Juror indicated "murder is murder no matter what" and "If you take someone's life yours should be taken." Please inquire.

Q.87.

Q.88.

Q.89. Please explain that this case does not involve self-defense, accident, mistake or mental impairment.

Q.90. Ask juror to explain "Because there have been too many killings and it is out of control."

Q.92. Ask juror to explain "depends on the crime committed – it it's cold blooded murder why not?"

Q. 93. Juror indicated they support the death penalty in all cases where someone has been murdered.

Q.94. Juror indicated not able to consider mitigating factors.

Q.96.

Hon. Nicholas G. Garaufis
March 10, 2011
Page **4** of **8**

Q.98. "Murder is murder regardless." Please ask juror to explain.

Q.99.

Q.100.

Q.102(b)

Q.105, 106, 107, 110, 112.

Q.114 & 115. "A federal prosecutor or not he is still a human being."

Q.116.

**Juror 178**

Hardship - Mother-in-law is very ill with stomach cancer

Q.24

Q.38.

Q.85. Juror indicated "an eye for eye and a tooth for a tooth." Please have the juror explain.

Q.86. Juror indicated "only someone who intentionally commits murder should receive the death penalty." Please have the juror explain.

Q.87.

Q.90

Q.98.

Q.99.

Q.102.

Q.104.

Q.107.

Q.114.

**Juror 180**

Hon. Nicholas G. Garaufis
March 10, 2011
Page **5** of **8**

Q.16

Q.24

Q.25

Q.35

Q.38

Q.40

Q.42

Q.51

Q.53

Q.66

Q.104 Juror indicated "I believe the death penalty is appropriate for intentionally taking someone's life." Please ask the juror if they take into account life without possibility release for an intentional and deliberate murder for a person who has been previously convicted for an intentional murder.

Q.107.

Q.121.

**Juror 182**

Potential Hardship.

Q.30.

Q.38.

Q.39

Q.46.

Q.85(b) Please ask juror if they take into account the death penalty for a person previously serving a life sentence for a planned and premeditated murder and found to lack remorse.

Hon. Nicholas G. Garaufis
March 10, 2011
Page **6** of **8**

Q.93. Please ask the juror if they can consider the death penalty for a person previously serving a life sentence for a planned and premeditated murder and also sought the murder of a federal law enforcement official.

**Juror 183**

Potential Hardship

Q.39.

Q.46.

Q.86. Juror indicates "Not sure."

Q.90. Left blank

Q.95. Left blank

Q.97. Juror indicates "Not sure."

Q.98.

Q.99.

Q.100.

Q.102.

Q.107.

Q.110.

Q.113-118.

**Juror 184**

Q. 24.  Who is in law enforcement?  Would you be more likely to believe a member of law enforcement over a lay witness?

Q. 26

Q 30.

Q. 43  Why will it be difficult to set aside opinions and beliefs?

Hon. Nicholas G. Garaufis
March 10, 2011
Page **7** of **8**

Q.47  How are friends with substance abuse problems? Juror indicates it "might be difficult to set aside emotional pain associated with my friends' substance abuse."

Q. 85, 86. Would juror always impose the death penalty for intentional murder? Juror indicates a "life sentence behind bars is a waste of taxpayers' money."

Q. 88.  Why does juror believe in an eye for an eye?

Q. 91  Would juror decide case by putting himself in the "family of the dead?"

Q. 93   What type of intentional murder would be an exception to the death penalty?

Q. 94. Juror has stated death penalty should always be imposed yet indicates support of life without possibility of release in all cases. Is the juror thinking of life without possibility of release for deliberate planned murder?

Q.95  Would juror be able  to consider a life sentence for someone who is already serving a life sentence for murder, if both murders were found to be planned and deliberate?   What if he learned that the defendant had tried to have a federal prosecutor murdered?

Q. 95(b). What type of information would juror want to hear about the defendant to help decide which punishment would be appropriate?

Q98. If the juror found the defendant guilty of an intentional murder, would there be anything he would want to hear from the defense?

Q.99  When would a life sentence be appropriate?

Q. 102  Is a life sentence the first penalty the juror would consider, or would he start with the death penalty?

Q. 105  Why does juror indicate he could consider life without possibility of release if he also believes everyone who commits murder should receive the death penalty?

Q. 110(b).   On what does juror base his opinion that life without possibility of release is "not harsh at all?"


Respectfully Submitted,


_____/s/_____
Richard Jasper

Hon. Nicholas G. Garaufis
March 10, 2011
Page **8** of **8**

George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:      All Counsel (By Email)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 12, 2011

**BY EMAIL**
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective jurors 149, 173-218. We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

**Juror 149**

Q. 40 (a), (b).

Q. 85, 93. Please inquire for what crimes the juror believes the death penalty would be appropriate for a deliberate, intentional murder. Please inquire for what crimes the juror believes life without possibility of release would be appropriate for a deliberate, intentional murder.

Q.86(a), 90, 92. Please ask juror if he has given further thought to the death penalty since filling out the questionnaire.

Hon. Nicholas G. Garaufis
March 12, 2011
Page **2** of **14**

Q. 87   Please inquire as to the circumstances under which the  juror would find life without possibility of release a sufficiently harsh sentence for an intentional, deliberate murder in which self-defense, accident, or diminished capacity played no part.

Q. 94.  Juror has indicated in Q. 93 that the death penalty is inappropriate in most cases. He has also indicated in this question that he is opposed to life without possibility of release with very few exceptions because "life in prison does not rehabilitate."  Please ask juror to consider when he thinks a death penalty would be appropriate.

Q. 102. Can you accept the death penalty as the more harsh punishment?

Q. 105.  Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder. Also, please ask whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q. 113-118 Please inquire as to whether he believes life without possibility of release could be a sufficient punishment for someone who: had been previously convicted of intentional murder; planned and premeditated a murder;  was shown to present a future danger to others; sought the murder of a federal prosecutor; sought the murder of a cooperating witness and was already serving a life sentence.

Q. 123. Juror indicates he believes there is corruption behind bars.


**Juror 173**

Q.93. Please ask the juror what cases warrant the death penalty.

**Juror 185**

Q. 1. Juror has indicated a hardship because of 11 year old daughter.

Q. 17.  Will graduate studies be a distraction?

Q. 18

Q24(b).

Q. 39

Q. 43(c).  How will feeling that Caucasians get preferential treatment affect her jury service with a white defendant?

Q. 46(b).

Hon. Nicholas G. Garaufis
March 12, 2011
Page **3** of **14**

Q. 85.  What does juror mean, "every crime should be treated fairly?"

Q. 86.  What does juror think intentional murder means?

Q. 93-94, 102.  When is life without possibility of release appropriate?  What would you want to know about the defendant?

Q.95(a).

Q106.

Q. 107

Q. 110(b).

Q. 113. Could juror consider life without possibility of release for a convicted murderer currently serving life?

**Juror 186**

Q.85  What does juror mean, " If the crime and punishment agree…I'm all for it."

Q.86  Is there a difference in the juror's mind between "facing the death penalty" and receiving it as a sentence?

Q.87, 88, 89, 90.  Does this mean juror is unable to consider life?

Q.93.  If the juror decided that the defendant meant to commit murder, and "the situation" was that there was no self-defense, accident, heat of passion, or insanity, could the juror consider a life sentence?

Q. 95. Does juror understand there is a difference in burdens of proof regarding aggravating and mitigating factors?

Q.98.  When would a sentence of life without possibility of release be appropriate for an intentional murder?

Q.100. What does she mean, "not really sure about the question?"

Q. 105. Juror seems to be saying the exception to the death penalty is self-defense.

Q. 110(b).  What is juror basing this opinion on?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **4** of **14**

Q. Q113, 114, 117, 117.  If juror learned that other persons, equally culpable, were not facing the death penalty, would she consider a sentence of life without possibility of release?

**Juror 188**

Q. 24.  Given spouse's years of service in the 83rd Precinct NYPD, would she be more inclined to believe a member of law enforcement over a lay witness?

Q.37, 39, 42, 44, 45, 47.

Q.56(f).  What does she mean, re *The Sopra*nos, "the way they treat their 'family' members?

Q. 65

Q.85.  Does the juror feel there should also be an automatic death sentence for someone  who unsuccessfully tried to have killed a member of  law enforcement?

Q.86.  Does juror believe someone who has killed more than one person should get life?

Q.87.  Please explain.

Q.88.  Juror writes:  "family member's child was killed and got a slap on the wrist" - please ask her to explain.  In Q. 104 juror indicates her belief in an eye for an eye is religiously based.  How does this affect her view that it is God who decides?

Q. 89.

Q.92.

Q. 94. If there was no accident, self-defense, insanity or heat of passion, does juror believe death penalty the only sentence?

Q.95. What does juror mean "circumstances" regarding aggravators and "evidence" regarding mitigators?

Q. 98.  Juror indicates she would not find it difficult to vote for life for intentional murder but writes "they planned to do murder, they should not be given life."  Which is  her view?

Q. 102, 105.  Please ask juror to explain "depends on how serious it was" and "depends on what they did" in the context of the penalty phase in this case.

Q.106.

Q.107(a).

Hon. Nicholas G. Garaufis
March 12, 2011
Page **5** of **14**

Q.110(b).

Q.112

Q.113-118.  Does juror truly believe she could consider a life sentence under these conditions?

**Juror 189**

Q.114, 117, 118.  Juror indicates future dangerousness, defendant's current life sentence and prior murder conviction make her unable to consider a life sentence.

Q.16. Juror indicates she is familiar with an organized crime neighborhood because she was a parole officer.  What does he mean?

Q.17.  Is juror retired and unemployed - looking for work?

Q. 25(a).  Cousin in NYPD.

Q.38.  Was she on a grand jury?

Q.39(a).

Q57.  What impressions have these experiences given her about organized crime?

Q.61

Q.63.

Q.67.  What happened when her photo-ID was stolen and wanted posters made?  Was the perpetrator caught?  What impact has that experience had on her?

Q. 85.  What does she mean, death penalty appropriate under "very serious conditions."

Q. 87. When does she think a life sentence might be appropriate for an intentional murder?

Q.90 Does juror believe that a convicted murderer can be "removed" by  a life sentence as well as by the death penalty?

Q. 93-94.  Juror indicates she supports death penalty in some cases, "inappropriate" in most.  She feels the same way about life without possibility of release.  If she believed the defendant had been proved guilty beyond a reasonable doubt, and there was no self-defense, accident, heat of passion or insanity, when would a life sentence be appropriate?  (She doesn't appear to understand intentional murder. She indicates in Q. 95(b) that self-defense might be a mitigating factor.)

Hon. Nicholas G. Garaufis
March 12, 2011
Page **6** of **14**

Q.96.

Q.98. When would life without possibility of release be appropriate?

Q. 102. If the evidence was that the defendant willfully and intentionally committed murder, what would the juror want to know about the defendant to decide whether the death penalty or life without possibility of release was the best punishment?

Q.103.

Q.110(b).  What does she mean, "the Judgement [*sic*] comes from authority."

Q.119. What does juror mean, "if I understood the issues better."

**Juror 190**

Q.113.  Juror clearly indicates a planned and premeditated murder would require the death penalty.   Q.114, he indicates "I would not consider a life sentence, if he already was proven guilty."  Q. 116. Juror indicates he could not consider life without possibility of release.  Q.117 Juror writes, "what justice would the new decisions make, if they were already in jail for the rest of their life?" Q. 118. Juror writes, "Already convicted and still murdering.  It appears that there is no rehabilitating of this person."

Q.37.  Can the juror not answer because he can't think of anyone or because he doesn't care to answer?

Q.40(b).  What punishment does he think Mr. Madoff should have received?

Q.63.  What was juror's reaction when he heard about the arrests?

Q.85.  What does he believe are the "most serious crimes" deserving of the death penalty?

Q.86    Is "eye for an eye justice" the death penalty?

Q. 87. Does juror believe the death penalty is appropriate in every case of intentional murder?

Q.93, 95.  As the juror indicates he believes "people and circumstances are not concrete. There is always the possibility of an exception once all facts are known." What kind of a scenario is he thinking of?

Q.98. Juror indicates death penalty if murder was intentional.   Does he understand that intentional, willful murder is the only kind of murder at issue in this case?  And, if yes, is he interested in learning about the defendant's childhood or background in deciding whether life without possibility of release might be appropriate?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **7** of **14**

Q. 102-103.  Again, if it is a willful, planned murder, what circumstances does he mean?

Q.107, 110(b).  Given juror's feelings about tax money spent on "room and board" for a life sentence, when would a life sentence be appropriate given a conviction of deliberate murder?

**Juror 192**

Q1.  Juror indicates financial hardship, sole breadwinner. Daughter's communion is Saturday May 7.  Juror's daughter's appendix being removed 3/16.

Q. 16.  Referencing presence of organized crime in Staten Island, what does juror mean, "I mind my own business."

Q. 24  Juror has applied for NYPD and Port Authority Police.  Are these applications pending? Would juror believe law enforcement over a lay witness?

Q. 28.  What does juror mean, re being fair and impartial, "in the military you are guilty until proven innocent." If juror learned this in the military, what were the circumstances?  How would it affect his jury service in this case?

Q.41(b). What does he mean, "sometimes I get prejudice."

Q. 66.  Juror indicates he might not be fair, "what if there is a leak of who the jurors are. My family could be in jeopardy."

Q. 85, 90.  When juror writes that he "encourages" the death penalty because of overcrowding and expense to tax payers, is that in every case of deliberate willful murder?

Q. 85(c). Why rated self a "10?"

Q. 86, 88.  Juror indicates intentional murder "should be also murdered." And that an eye for an eye should be applied for "anything intentional."  Are there any exceptions?

Q. 94, 100, When does he believe life without possibility of release is appropriate for an intentional murder having nothing to do with accident, self-defense, heat of passion or insanity?

Q.98.  What does juror mean, "if the evidence is overwhelming with criminal intentions or activity then I guess it can be hard."

Q102(b). What does he mean, "depends on the crimes?"

Q. 106.

Hon. Nicholas G. Garaufis
March 12, 2011
Page **8** of **14**

Q107.  If a defendant is convicted of more than one murder and is already serving life, would the cost to tax payers lead you to believe the death penalty is the only appropriate penalty?

Q. 110(b).

Q.116.  Juror writes, "that means he doesn't believe in the law and he is definitely guilty of his crimes."  Does he mean that he could not support a life sentence because he doesn't believe in the law, or because he is guilty?

Q. 122

Attachment B: Casablanca Restaurant.

**Juror 193**.

Q. 17, 19.  Juror indicates he is self-employed in maintenance, but also that he is employed in city government (Q.25(b))  Does he have two jobs?  If he is working two jobs and going to school, is he going to be able to concentrate on jury?

Q.18.  When is juror in school?

Q. 24.  Juror has many law enforcement associations. Would juror believe law enforcement over a lay witness?  His daughter works in the Miami DA's office.  Is this an anonymity issue?

Q.27.   One    of    his    children    is    a    court    clerk,    is    that    in    NYC?

Q.30. Who is a lawyer?

Q.42.

Q.44.

Q.61.  Brother was murdered, does he know any of the circumstances?

Q. 85. What are the juror's views on the death penalty?

Q. 86

Q. 87.  Is that in every case of intentional murder?

Q. 93-94, 102.  Juror indicates mental illness is the only circumstance under which an intentional murder should be punished by life without possibility of release.  Does he believe every "cold blooded" murder deserves death penalty?

Q. 95, 98.  Does juror mean evidence of mental illness?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **9** of **14**

Q. 99.  If the defendant were convicted  of a second murder, what might he want to consider about the defendant's background to decide if life without possibility of release could be appropriate?

Q.105, 110(b).  Juror indicates self-defense would be an exception to an automatic death penalty. If there is no self-defense, accident, heat of passion or insanity, could the juror consider a life verdict?

Q.113-118.  Given what juror has said in response to other questions, could he seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

Attachment B: MDC related to work.

**Juror 198**

Q.30

Q. 47

Q. 56 (q).

Q. 85, 86, 99.  Juror indicates the hope that the convict will reform over time, but if there are no feelings of remorse and would continue to murder again, maybe death penalty will be justified. If the juror learned that the defendant was already serving a life sentence of another murder, could he consider a life verdict?

Q.93.  How would juror determine whether defendant was remorseful if he did not testify?

Q.102(b). What are the circumstances that you indicated might cause you to always vote for the death penalty?

Q.106

Q. 116.  Juror seemed uncertain about considering life in this situation.

Q. 118.  Is there anything the defense could present that would allow the juror to consider a life sentence?

**Juror 202**

Q.30.  Juror indicated hard to be fair because "Money decides who is going to walk." What does he  mean?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **10** of **14**

Q.45-46, 67.   Juror indicates found guilty of a crime he didn't commit. 3 asterisks seem to indicate he wrote more but not on the questionnaire.  Ex-girlfriend charged him with assault.

Q. 72(b).

Q. 85.  Has juror given any more thought to the death penalty?

Q. 86.  Juror indicates "depends on the situation."  What are juror's thoughts on the death penalty for someone who willfully and intentionally murdered someone?

Q. 87 not answered.

Q. 90 not answered.

Q. 93-94 Juror "undecided."

Q. 95

Q.97-100. Now that he has had time to think about the death penalty, what are his views?

Q.102.

Q. 106.

Q.107 (b).  Not answered.

Q.110.  What does "situational" mean.

Q. 111-112

Q. 113-118.  Could he seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

**Juror 206**

Q. 30.  Son is lawyer or law student.

Q.56(q).  Why "no comment" re Godfather?

Q.85, 86.  When juror writes that death penalty is a reasonable measure for those found guilty of murder, does he mean in every case?

Q. 87, 98, 110(b).  Can you consider death penalty as the harsher penalty?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **11** of **14**

Q.90  What have you learned in the past that gave you these views?

Q93, 94. What do you mean, "if the case is strong?"

Q.95

Q.102, 105.  What does he mean "based on the facts"

Q.103

Q. 113-118.  Could he seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

**Juror 207**

Q26. Juror seems to have indicated that she works for the Life Center of LI. "We counsel and help homeless, single moms."

Q.42 Son was jumped at 18.  Was he injured?

Q. 56(q). Can't read her answer.

Q. 85.  When she says death penalty "could apply,"  and "if someone takes someone else's life on purpose, they  might…give their own," what would affect her decision about punishment?

Q87. What kind of evidence would she be looking for?

Q.88

Q.92.  When would the death penalty be the appropriate sentence for a willful, intentional murder?

Q.94. If there is sufficient evidence that the murder was in cold blood - and the defendant was already serving time for another cold blooded murder, could she support a life sentence?

Q. 95, 97, 102, 105.  What circumstances?

Q. 96.  Juror indicates she will hold "both sides equal."

Q. 113-118.  If the murder was in cold blood, could she seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **12** of **14**

## Juror 213

Q.110(b). Life without possibility of release is harsh enough if "it's an accident." If it was not an accident, or self-defense, or insanity, but a cold blooded, willful murder, could you consider a life sentence?

Q.13, 14. Does juror live in Queens or Nassau?

Q.30.

Q. 86.

Q.87. Is that in every case?

Q. 88.

Q.90. What do you mean 'it's in our own society guideline."

Q. 93. If you were convinced the person was guilty, would you always vote for the death penalty?

Q.95

Q. 102, 105 If the person were found guilty of a cold blooded intentional murder, and there was no self-defense, accident, heat of passion or insanity, when would life be an appropriate verdict?

Q.103.

Q. 113-118. If the murder was in cold blood, could he seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

## Juror 216

Q.1. Juror indicates financial hardship.

Q.42(a).

Q. 46(a).

Q.47(a).

Q.85. When would a life sentence be appropriate for an intentional cold blooded murder and when would the death penalty be?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **13** of **14**

Q.85(c). Why a "10"?

Q.86.  Juror believes it is justifiable, is that every case?

Q.87. Why does she believe it is only appropriate sentence?

Q. 88.  Is that every case of intentional murder?

Q. 90.  Does believing "we should [not] continue to pay money to keep convicted killers alive," mean juror would be unable to consider a penalty of life without possibility of release?

Q. 93, 94.  What would be an example of an intentional murder where death would not be the appropriate verdict?

Q.95

Q.99, 102.  Would that be every case of intentional murder where the defendant had been convicted of a prior murder?

Q.103

Q.105.  Why is that?

Q.106

Q. 107(a).  When juror says it "angers" her to work so hard to pay "for these people with my tax dollars," would those feelings affect her decision in a case where the defendant was already serving a life term for a different murder?

Q.110.  Is that in every case?

Q.113-118.  Juror's previous answers seem to contradict her stated ability to vote for life in these situations. Please follow up.

**Juror 218**

Q.1.  Juror indicates financial hardship (however her husband is employed and she indicates their income is over $150k.

Q. 25(a).  Is this a state or federal institution?

Q.30

Q.42(a). Cousin killed by a gang member, was someone arrested and prosecuted?  When was this? Was it a capital case (if it went to trial)?

Hon. Nicholas G. Garaufis
March 12, 2011
Page **14** of **14**


Q.44-45(b). Not answered

Q.47(a).

Q. 85.  Why a "5?"

Q.86-87. Not answered

Q.90.  Not answered

Q. 92.

Q.93.  Juror indicates she is opposed with few exceptions. What are the exceptions?

Q.106

<div style="margin-left:45%">

Respectfully Submitted,


_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

</div>

cc:      All Counsel (By Email)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 16, 2011

**BY EMAIL**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective jurors on March 17th , 2011.  We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

**Juror 246**

Q.38

Q.47 If juror were to  learn that defendant had been involved in drug trafficking, would that affect his ability to be fair?

Q.56f  Please ask juror to read his answer (illegible)

Q.61

Q.72b

Hon. Nicholas G. Garaufis
March 16, 2011
Page **2** of **15**

Q.87  Does juror believe death penalty the only appropriate sentence?

Q.93-94  Juror is opposed to both penalties with few exceptions.  Please ask him what punishment he favors.

Q. 102  Juror has written very little. Please ask him to say more about his views on punishment.

Q.106

Q.107b

Q. 113 Not answered

Q.114 Juror indicates an inability to vote for life.  Please ask him his views.

Q.119c.

**Juror 247**

Q.39, 42  Juror or family member  testified

Q.72c  Would juror assume defendant was guilty if he did not testify?

Q.85  Is juror's main concern the release of a person serving life without possibility of release?

Q. 86, 87, 93 Juror indicates self defense or accident would be exceptions.  If juror learned the intentional murder had no elements of  self defense, accident, heat of passion and insanity, could he consider a life verdict??

Q.90  Would the juror consider that someone currently serving life without possibility of release and who has already been convicted of one intentional murder has no hope of rehabilitation and therefore the death penalty is the only possible penalty?  Also whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q.92, 98  Juror indicates he knows how strongly he would feel if he were the victim.  Is he able to view the penalty phase based on what is presented in court and not on thinking of how the victim or his family would feel?

Q.95 ab  What does juror mean about "could be…two killers here," and "we don't know that the person killed was a regular law abiding citizen."  Would that make a difference to the juror?

Q102

Hon. Nicholas G. Garaufis
March 16, 2011
Page **3** of **15**

Q 103.

Q106

Q. 108c

Q.110 a  Juror indicates a belief that life without possibility of release includes parole.

Q,110b  What would juror want to know, and what would it depend on?

Q. 114, 116, 117  If juror were convinced the defendant would never be released, would it make a difference to his views?

Q. 115  If the prosecutor were not "dirty," would he be able to consider life without possibility of release?

Q.118  What about the case would it depend on?

Q23  Does juror understand that he cannot discuss the case with his wife?

Q.85  Please follow up and also ask how his brother's friend's case might affect his jury service here.

Q. 86, 98  When does the juror think a death penalty might not be justified?  What kinds of circumstances would he want to learn about?

Q.93  What types of intentional murders deserve the death penalty?

Q. 95  What would the juror like to know about the defendant to help him make his decision?

Q.108c

**Juror 248**

Q23  Does juror understand that he cannot discuss the case with his wife?

Q.85  Please follow up and also ask how his brother's friend's case might affect his jury service here.

Q. 86, 98  When does the juror think a death penalty might not be justified?  What kinds of circumstances would he want to learn about?

Q.93  What types of intentional murders deserve the death penalty?

Q. 95  What would the juror like to know about the defendant to help him make his decision?

Hon. Nicholas G. Garaufis
March 16, 2011
Page **4** of **15**

Q.108c

**Juror 249**

Q.31

Q. 46, 57

Q.58, 66  Juror worries about his family. Will this affect his jury service?

Q. 74

Q. 85 Please explain what is meant by "if the punishment fits the crime."

Q. 86  When might a life sentence be appropriate?

Q.87  Would the expense of prison be the primary reason for voting for the death penalty?

Q 88. Death penalty in every case?

Q.93  Does juror feel death penalty appropriate for every defendant convicted of intentional murder?

Q 94  What types of crimes is juror referring to that would require a life sentence?

Q. 98

Q. 102  If juror learned the intentional murder had no elements of  self defense, accident, heat of passion and insanity, could he consider a life verdict?

Q. 105  How would juror determine the appropriate sentence?

Q.107a  When juror says "if the crime is severe enough, if proven, the individual should pay for the crime," is he talking about the death penalty?

Q.110b  How would this belief affect his verdict?

Q.112 don't need to hear

Q.113-118 Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Hon. Nicholas G. Garaufis
March 16, 2011
Page **5** of **15**

**Juror 250**

Q. 4.  Juror indicates he suffers from back and knee pain as well as nervousness "about certain matters." Please inquire.

Q.18, 46e.  Is juror in a state or federal facility?

Q.35 What does juror mean, "I could manipulate or emotion for the matter in the case to be fair."

Q.40 What does juror mean, "we all know that crime has been committed but evidence and argument make more difficult?"

Q.66

Q. 85 Does juror believe everyone convicted of intentional murder should receive the death penalty?

Q. 85c  Why a "10?"

Q.86  Please ask juror to explain his answer.  Part of it is illegible.

Q. 87 Please ask juror to explain.

Q. 89

Q. 90 Does juror believe if convicted beyond a reasonable doubt, the defendant should always get the death penalty?

Q.93  Are there any exceptions for a deliberate murder where there is no self defense, no accident, no heat of passion and no insanity?

Q. 95, 102  What does juror mean, "depending on defendant attitude."  Is juror concerned about a wrongful conviction?

Q  105  Does juror mean that a convicted murderer could receive a life verdict so he "should suffer mentally?"

Q.107  Is juror concerned about future dangerousness?

Q.110

Q.112 not answered.

Q.113, 114  Please ask juror to explain.

Hon. Nicholas G. Garaufis
March 16, 2011
Page **6** of **15**

Q. 115-118 Juror's previous answers seem to contradict his stated ability to vote for life in these situations. Please follow up.

Q.119  What about the Gambino family?

**Juror 254**

Q.24  Who applied as VT State Trooper?

Q 85. What crimes does she think are heinous?

Q. 86, 87, 95  What circumstances does she want to hear about?  What does she mean, 'fit crime to time"?

Q. 90 Please ask the juror whether she could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also whether she could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q.93 Does juror endorse death penalty for every intentional premeditated murder?

Q. 94.  When does she support life without possibility of release and when the death penalty?

Q.96  Does she understand the burden of proof?

Q102.  If there is no self defense, no accident, no heat of passion and no insanity, can juror consider a life verdict?

Q. 106

Q.113-118  Now that juror understands what intentional murder is, how would she answer these questions?
Juror 255

Q.18

Q. 38

Q.85  Juror indicates he believes death penalty is mandatory and has no opinion about it, has he thought about the death penalty since filling out the questionnaire?

Q.90  What does he mean, "it doesn't bother me?"

Q.92

Hon. Nicholas G. Garaufis
March 16, 2011
Page **7** of **15**

Q.93, 98, 105  When does juror believe life without possibility of release  appropriate for a willful, deliberate murder where there is no self defense, no accident, no heat of passion and no insanity?

Q.95

Q.110b  What does juror mean, "if that is the only sentencing instead of death penalty?

Q 113-118  Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

**Juror 256**

Q. 38

Q.56f

Q. 61 When was brother in law murdered?

Q. 63  What was your reaction?

Q,. 85, 86  Does juror believe the death penalty is appropriate for every intentional murder?

Q. 85d.  How did Viet Nam form his views on the death penalty?

Q. 87   If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release??

Q.90  What does juror mean, "some people are slime?"

Q. 93, 94  When does juror think life without possibility of release appropriate and when the death penalty?

Q. 102  Which are the hideous crimes?

Q.110 What does juror mean, "accidental and premeditated are reasons?"

Q.113-118 Please ask the juror whether he could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder.  Also whether he could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

**Juror 257**

Hon. Nicholas G. Garaufis
March 16, 2011
Page **8** of **15**

Q.102

Q.25

Q. 40 a  Colleague was juror on Astor case, would that affect her service?

Q.49  Partner may know the AUSAs, would that make a difference?

Q.86  Please ask juror: Even though you don't favor the death penalty, if you listened to the evidence and decided that the death penalty was the right punishment under the law and the facts could you follow the law and vote for the death penalty?

**Juror 258**

Q. 12, 25b  Would there be hardship in caring for elderly grandmother?  Someone "receiving guardianship over an incapacitated elder."

Q, 37a.  Juror has indicated she watches "Judge Judy" several times a week and also admires her. What is it about Judge Judy that attracts her?

Q40d. Juror indicates she morally "cannot fathom defending someone who undoubtedly committed a crime to the extent that they are allowed to be freed and repeat their offenses."  How does this view affect her service in this case, where the defendant is already serving life without possibility of release for another murder?

Q.41b.

Q, 43c, Why does juror believe Jews receive preferential treatment?

Q. 51bii.  Juror believes defendant must have "done something to be charged of such great offenses and it must have been serious if the death penalty is being sought."  Knowing that the defendant is already serving life for another murder, could the juror consider the defendant to be innocent until the government proves him guilty beyond a reasonable doubt?

Q.52 d.  Please explain.

Q.56  What headstones with organized crime names is the juror referring to?

Q.57

Q. 75  Juror has indicated she cannot follow the law regarding considering each crime separately. Why is this?

Hon. Nicholas G. Garaufis
March 16, 2011
Page **9** of **15**

Q.77b.  Juror indicates she would automatically believe law enforcement and likely doubt the word of civilians. Why is this?  How hard would it be for her to set these opinions aside?

Q.84 Juror writes she is more likely to "believe someone I can identify or sympathize with, regardless of the evidence."  How will juror put those views aside?

Q. 85  When juror states under certain circumstances, some people don't deserve to continue breathing and consuming resources. If the circumstances are that the defendant is already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered, could she consider a life sentence?

Q.86  How many murders would be required for a death penalty?

Q. 91  What types of circumstances is the juror considering, in a case where there is no self defense, no accident, no heat of passion and no insanity?

Q.93  What types of cold blooded murder would she think appropriate for a sentence of life without possibility of release?

Q.95  What would she want to know about the defendant to help her decide?

Q.98

Q.102

Q.110b.  What does juror mean, they shouldn't have the right to roam free?

Q.114, 116, 118.  What type of evidence would juror want, and what would she want to know about the defendant if she were convinced that these circumstances were true?

**Juror 258**

Q. 12, 25b  Would there be hardship in caring for elderly grandmother?  Someone "receiving guardianship over an incapacitated elder."

Q, 37a.  Juror has indicated she watches "Judge Judy" several times a week and also admires her. What is it about Judge Judy that attracts her?

Q40d. Juror indicates she morally "cannot fathom defending someone who undoubtedly committed a crime to the extent that they are allowed to be freed and repeat their offenses." How does this view affect her service in this case, where the defendant is already serving life without possibility of release for another murder?

Q.41b.

Hon. Nicholas G. Garaufis
March 16, 2011
Page **10** of **15**

Q, 43c, Why does juror believe Jews receive preferential treatment?

Q. 51bii.  Juror believes defendant must have "done something to be charged of such great offenses and it must have been serious if the death penalty is being sought."  Knowing that the defendant is already serving life for another murder, could the juror consider the defendant to be innocent until the government proves him guilty beyond a reasonable doubt?

Q.52 d.  Please explain.

Q.56  What headstones with organized crime names is the juror referring to?

Q.57

Q. 75  Juror has indicated she cannot follow the law regarding considering each crime separately.  Why is this?

Q.77b.  Juror indicates she would automatically believe law enforcement and likely doubt the word of civilians. Why is this?  How hard would it be for her to set these opinions aside?

Q.84 Juror writes she is more likely to "believe someone I can identify or sympathize with, regardless of the evidence."  How will juror put those views aside?

Q. 85  When juror states under certain circumstances, some people don't deserve to continue breathing and consuming resources. If the circumstances are that the defendant is already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered, could she consider a life sentence?

Q.86  How many murders would be required for a death penalty?

Q. 91  What types of circumstances is the juror considering, in a case where there is no self defense, no accident, no heat of passion and no insanity?

Q.93  What types of cold blooded murder would she think appropriate for a sentence of life without possibility of release?

Q.95  What would she want to know about the defendant to help her decide?

Q.98

Q.102

Q.110b.  What does juror mean, they shouldn't have the right to roam free?

Q.114, 116, 118.  What type of evidence would juror want, and what would she want to know about the defendant if she were convinced that these circumstances were true?

Hon. Nicholas G. Garaufis
March 16, 2011
Page **11** of **15**

**Juror 264**

Q.24

Q.85 If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.86 Not answered

Q.87  Does juror believe that someone who is already serving a life sentence for murder can be rehabilitated?

Q.93-95  What would juror want to know to help him decide the appropriate punishment?
Q.99  Could the juror consider a life sentence for a second murder?

Q.104 not answered.

Q.107

Q. 115

Q,116, 117 118  In these situations would juror always vote for the death penalty?

Juror 266

Q.16  What does juror believe would happen if he "antagonized" the alleged Mafia neighbor?
Q.42

Q.63  What was juror's reaction?

Q.85 What crimes does juror believe are suitable for the death penalty?

Q.86, 95b  If the case involves a coldblooded intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.92

Q.94  Could she seriously consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

Q.105  What might juror want to know about the defendant in considering a sentence of life without possibility of release?

Hon. Nicholas G. Garaufis
March 16, 2011
Page **12** of **15**

Q.113-118  Given what juror has said about a "pattern of business like murder," could she realistically consider a life sentence for an organized crime figure if she found all of the aggravators cited here to be true?

Juror 268

Q1. Juror indicates son's wife is expecting 2nd child March 1 and she is expected in MA to babysit.

Q.4  Juror indicates hearing loss.

Q.24  Someone in FBI and NYPD, please inquire.  Husband was in law enforcement, would juror believe law enforcement over a lay witness?

Q.29  Juror belongs or belonged to gun control organization. Will that affect her in this case?

Q.30

Q.42  Juror's family harassed by threatening phone calls for a number of years, please inquire.

Q.56f. What does juror mean, "the nasty nature of a crime family," and will that affect her jury service in a case involving organized crime?

Q.57

Q. 85  Which crimes does juror believe are appropriate for the death penalty?

Q86-87 If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.93-94 When does juror think life without possibility of release appropriate and which cases require the death penalty?

Q.102  Notwithstanding her willingness to follow the law, given that it is an individual, personal decision, could she realistically consider a life sentence if the defendant was already serving life for another murder and had tried to have a federal prosecutor and a cooperating witness murdered?

Q.104  What does juror mean by "nature of the crime"?

Juror 272

Q. 64, 87, 91,  82, 93, 95, 102 Juror indicates she cannot decide if a man should live or die.  It appears her concern is convicting the innocent. If juror heard the case and listened to the evidence, and decided defendant was guilty beyond a reasonable doubt, after listening to the

Hon. Nicholas G. Garaufis
March 16, 2011
Page **13** of **15**

evidence in the penalty phase, if she decided that the death penalty was the right punishment under the law and the facts could she follow the law and vote for the death penalty?

Q.101  Juror indicates she could consider the death penalty.

Q.17

Q.40 What does juror mean, "do the crime do the time?"

Q.85  If juror heard the case and listened to the evidence, and decided defendant was guilty beyond a reasonable doubt, could he impose the death penalty?

Q. 106

Juror 275

Q.85, 86, 87  Please ask juror: Even though you don't favor the death penalty, if you listened to the evidence and decided that the death penalty was the right punishment under the law and the facts could you follow the law and vote for the death penalty?

Q.101, 102 Juror indicates she could consider death penalty, and maybe would always vote for life.  Could she really consider the death penalty if she thought it was the right sentence despite her views?

Q.113  Not answered.

Q.18

Q.40abc  not answered.

Q.42

Q.56  What interested her in *Growing Up Gotti*?

Q.65

Juror 282

Q.18  Is juror looking for work?

Q.37  Does juror's listing of her high school create a problem with anonymity?

Q.38

Hon. Nicholas G. Garaufis
March 16, 2011
Page **14** of **15**

Q.40b

Q.85  What other types of murder besides killing a child does juror think are heinous enough to warrant the death penalty?

Q.86, 90   Please ask juror: Even though you don't favor the death penalty, if you listened to the evidence and decided that the death penalty was the right punishment under the law and the facts could you follow the law and vote for the death penalty?

Q.92 When does juror think life without possibility of release appropriate and which cases require the death penalty?

Q. 93  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for the death penalty?

Q.95   Please ask the juror whether she could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder, and who had tried to have a federal prosecutor and a cooperating witness murdered. Also whether she could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Q.102  If defendant didn't testify, how would the juror decide if there was any remorse?

Q.105 What mitigating factors would the juror be interested in hearing about?

Parkside diner

Juror 286

Q.41

Q.85  What crimes does juror think deserve the death penalty?  Why did juror circle "10"?

Q. 86  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.87  If juror learned that the crime was committed as part of an organized crime activity, could she consider a life sentence?

Q. 90 Please ask the juror whether she could consider a sentence of life for someone currently serving life without possibility of release and who has already been convicted of one intentional murder, and who had tried to have a federal prosecutor and a cooperating witness murdered. Also whether she could consider life without possibility of release if there was a possibility that a person would pose a future danger to others while in prison.

Hon. Nicholas G. Garaufis
March 16, 2011
Page **15** of **15**

Juror 286

Q.25a

Q.42

Q.44

Q.67

Q.85  What does juror mean, "there must be an equal penalty for one's actions?"

Q. 90, 95, 101, 105 Juror indicates self-defense would be an exception to the death penalty.  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?  When does juror think life without possibility of release appropriate and which cases require the death penalty?

Q.93  If juror learned that the defendant was already serving a life sentence for a different murder, would she be able to consider a life sentence?

Q.95, 101 If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.104  Juror believes Bible supports the death penalty.  Would she rely on the biblical teaching in making her decision?

Q.107  Defendant is already serving life, how would that affect juror's concern about paying for repeat offenders?

Q.113-118  Could the juror consider a life sentence?

Respectfully Submitted,

_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:     All Counsel (By Email)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 24, 2011

**BY EMAIL**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective jurors on March 28, 2011.  We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

**Juror 505**

Q.39

Q.74

Q.86  What is juror suggesting when he says "let him die by his own sword?"

Q.87  What does juror mean, if he still has some value, "let's keep him around a bit longer."

Hon. Nicholas G. Garaufis
March 24, 2011
Page **2** of **17**

Q.90  When juror says if a person unjustly takes a life they should have theirs taken, does he mean the death penalty?

Q.93 Please ask juror to explain.

Q.98  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q. 102  Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?

Q.114  Could juror consider a life verdict if he believed the defendant posed a future danger to the prison community?

**Juror 506**

Q.37  Juror mentions Dr.Larone who is at Weiss Cornell Medical Center in NYC.  Has she risked anonymity with this?

Q.43

Q.86  What does juror mean, "Sorry. You should think twice before you did it."

Q.87  Please ask juror to explain her answer.

Q.92. Does juror believe defendant's lawyers select the jury?

Q. 93  When does juror think a sentence of life without possibility of release is appropriate for an intentional, premeditated murder where there is no self defense, no accident, no heat of passion and no insanity?

Q.98 Does juror understand there are two choices and she makes her own personal decision based on the facts and the law?

Q. 105  Could she consider life without possibility of release  for someone who is already serving a life sentence for another murder?

Q.110(a)(b).

**Juror 509**

Q.4  Juror indicates a medical condition.

Hon. Nicholas G. Garaufis
March 24, 2011
Page **3** of **17**

Q.72b

Q.74

Q.85  What does juror mean, Why waste my tax dollar if in the end, death penalty is imposed.?

Q.86  When juror says defendant should be punished, what punishment does he mean?

Q.87  Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?  If juror believed the defendant received a fair trial, and voted to convict him of intentional murder, could he consider a life sentence?

Q.88  What does juror mean, "sometimes I think it is possible?"

Q.89  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q. 92.  Does juror think he can make this decision?

Q.93  What does juror mean, "take a look at the Simpson trial?"

Q.95  What would juror want to know about the defendant to help him decide the appropriate punishment?

Q.99

Q.102  Does juror think someone already convicted of one murder and allegedly involved in numerous others is a habitual killer never deserving of a life sentence?

Q.106

Q.l07

Q.110a

Q.114  Could juror consider a life verdict if he believed the defendant posed a future danger to the prison community?

Q.115

Q.116

Hon. Nicholas G. Garaufis
March 24, 2011
Page **4** of **17**

Q.118

**Juror 510**

Q.24, 25 Father and brother in law enforcement.

Q.30

Q.57  Juror indicates organized crime presence in community.

Q.85  What does juror think are the serious cases requiring the death penalty?

Q.86  Does juror believe in an eye for an eye in every case of deliberate murder?

Q.87  Does juror's concern for the cost of incarceration make it extremely difficult  for him to consider a sentence of life without possibility of release?

Q.90, 93   If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.92  What does juror mean, it will be a difficult but necessary decision?

Q.95  How would juror know if defendant was remorseful?

Q.99

Q.107

Q.113 If it would be difficult for juror to vote for life, if there was more than one murder, as she indicated in Q99, why is it not difficult for her to consider life when defendant is already serving a life sentence for a previous murder?

**Juror 512**

Q.17  Juror is disabled and unable to work.  Juror also indicated in Q.5 that he is taking Depakote (which is a seizure medication also used for bipolar disorder), Zyprexa (a medication used to treat schizophrenia), Paxil (an anti-depressant), Remeron (another anti depressant), and Klonopin (an anti-seizure medication also used to control panic attacks), although he has not indicated a difficulty in serving as a juror.

Q.85  If juror were convinced of a defendant's guilt in an intentional premeditated murder, could he consider a life sentence?

Hon. Nicholas G. Garaufis
March 24, 2011
Page **5** of **17**

Q.86   If juror learned a defendant was a member of an organized crime family and murdered another alleged member of organized crime, would that affect his decision?

Q.87 If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.98   Would juror be able to consider a sentence of life without possibility of release if defendant had unsuccessfully tried to murder a member of law enforcement?

Q.106

Q. 113-118   Could he consider life without possibility of release  for someone who is already serving a life sentence for another premeditated murder?

**Juror 513**

Q.17   Juror indicates she works part time and is a student. Will juror be going to school during the trial?

Q.39  Was this a fellow student? When was she being followed?

Q.85, 105  Could juror consider a sentence of life without possibility of release if there were no self defense, no accident, no heat of passion and no insanity?

Q.87   Does juror believe a sentence of life without possibility of release would be "getting away" with murder?

Q.92  When juror says it will be an easy decision if defendant is proved guilty beyond a reasonable doubt, what decision is she thinking of?

Q.93  If the defendant is found guilty, can juror consider a life sentence?

Q.94  What does juror mean, "in between decisions?"

Q.98  What type of premeditated intentional murder would juror feel is not severe enough for the death penalty?

Q.99

Q.100  Does juror think someone already convicted of one murder and allegedly involved in numerous others is a multiple murderer never deserving of a life sentence?

Q.102 Does juror consider premeditated intentional murder a harsh crime?

Hon. Nicholas G. Garaufis
March 24, 2011
Page **6** of **17**

Q.110ab. Could juror consider a life verdict even though she considers such punishment to be generous?

Q.113-118   113 If it would be difficult for juror to vote for life, if there was more than one murder, as she indicated in Q99, why is it not difficult for her to consider life when defendant is already serving a life sentence for a previous murder?
Juror 514
Q.4 Juror indicates back problems.

Q.85   Does juror believe a life verdict would ever be appropriate for someone who has killed and there is no self defense, no accident, no heat of passion and no insanity?

Q.86 What does juror mean "as soon as possible?"

Q.87 Does juror believe death penalty only appropriate sentence?

Q.88 Are there any exceptions to his believe that "whoever killed has to be killed?"

Q.92

Q.93

Q.98, 99   Juror has indicated if  a person kills they should be killed.  Does he believe a life verdict is appropriate for someone who has committed 2 premeditated murders?

Q.101  Juror indicates he believes in an eye for an eye.  Could the juror ever vote for a life sentence?

Q.105

Q.106

Q 110b.   Juror indicates life without possibility of release is a sufficiently harsh punishment, but then writes, "I think whoever kill should be killed."  What does juror believe?

Q.112

Q.115, 116.

**Juror 515**

Q.16  Juror indicates presence of organized crime in the community.

Q.40

Hon. Nicholas G. Garaufis
March 24, 2011
Page **7** of **17**

Q.45b  When was juror questioned?

Q. 56o  What does juror enjoy about "mob movies?"

Q.85a   Has juror formed an opinion about the death penalty since filling out a questionnaire?

Q.86-87, 89, 90, 91, 93-94, 98, 99, 106, 110 Not answered.

Q.92.

Q. 95

Q.102

Q.105  What would juror want to know about the defendant to decide?

Q.113-118   Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?

**Juror 516**

Q.24  Who is NYPD detective?

Q.25  Where is person in Corrections?

Q.30  What type of law does daughter practice?

Q.37  Does naming Lakeram Singh risk anonymity?

Q.73, 74, 75 Not answered.

Q.79, 80, 81 not answered.

Q.85   What does juror mean by "deserve" the death penalty? When does someone deserve it?

Q.87, 89, 93  If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

Q.95 Why does jury say he cannot consider mitigation because "this is widely debated."

Hon. Nicholas G. Garaufis
March 24, 2011
Page **8** of **17**

Q.98 What does he mean, I will follow the law?

Q.105 Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?

Q.106

Q.110  When would the death penalty be appropriate?

Q.113-118  Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?

**Juror 522**

Q.1  Juror indicates his reading is not 100%.

Q.10  Juror indicates his ethnic background: "I was a kinchen helper and I was in adverting."

Q.22  Juror indicates he completed "IDP" in high school.

Q.25 Juror indicates he has been on Medicaid and SSI.

**Juror 523**

Q. 38c

Q.79, 80, 81 Not answered.

Q.85c, 86, 87  Not answered.

Q.90  Please ask juror: Even though you don't favor the death penalty, if you listened to the evidence and decided that the death penalty was the right punishment under the law and the facts could you follow the law and vote for the death penalty?

**Juror 525**

Q.1  Juror indicates she will be out of town from 4/7 to 4/11.

Q.25  Has juror risked anonymity by saying her former employer was NYC Admin for Children's Services until 1/2010 and she is a social worker who works with children and Q46 Family Court proceedings are part of her work?

Q.39  What happened when birth mother threatened to kill juror?

Hon. Nicholas G. Garaufis
March 24, 2011
Page **9** of **17**

Q.84  If juror convicted a defendant and was convinced that he would be a future danger to others while in prison, could she consider a death sentence?

Q.91  Juror indicates she would perform her duties if called. Does this mean that if she heard the evidence and decided that the death penalty was the right punishment under the law and the facts she could follow the law and vote for the death penalty?

Q.93  For which kind of cases does she support the death penalty?

Q.102b  Juror indicates she would have to consider all options prior to considering death. Please ask juror if she considered all options, and felt the death penalty was the most appropriate option, could she vote for it?

**Juror 416**

Q.24

Q.38.

Q.41

Q.42.

Q.44

Q.46.

Q.47.

Q.54.

Q.57.

Q.85.  Please ask the juror in what "cases" does she think the death penalty is warranted.

Q.86.  Please the juror what circumstances would lead her to vote for the death penalty for an intentional murder.

Q.87. Please ask the juror what circumstances would lead her to vote for a life sentence for an intentional murder.

Q.105. Please ask the juror what are the extenuating circumstances.

Q.110(b).

Hon. Nicholas G. Garaufis
March 24, 2011
Page **10** of **17**

**Juror 527**

Q.1 Juror has plans to be away in April.

Q.4  Juror indicates a possible vision problem.

Q.35  Juror indicates she will see what the two sides are saying "and you know what is fair."

Q. 40  Juror indicates she works nights.  Does she plan to continue working while on jury duty?

Q.67  Someone has been falsely accused of selling drugs.

Q.85  "If you kill and you are guilty you must get the death penalty."  Does juror believe this is the law, or is it a preference?

Q.85d.  Juror indicates it is her belief that they have to get the death penalty. Are there any exceptions once she knows there is no self defense, no accident, no heat of passion and no insanity?

Q.86  Juror indicates you must die for it, could she consider a life verdict?

Q.87  Juror writes, "you kill you must die for what you done,"  Why does she believe this?

Q.88  Juror indicates a belief in an eye for an eye, saying "you do it you pay for what you done." Could she consider a person paying by spending life in prison?
Q.92

Q93-94  Juror supports death penalty and life without possibility of release in every case where someone has been murdered. Please ask her to explain.

Q.95 Why can't juror consider aggravating and mitigating factors?

Q.98-100,  Juror indicates an ability to vote for life, however in Q102 and Q105  she again writes she would always choose death "if you kill someone."

Q.103  Why will juror not respect the views of other jurors?

Q.106

Q.110b

Hon. Nicholas G. Garaufis
March 24, 2011
Page **11** of **17**

Q.113-118  Juror indicates she consider life in these conditions.  Given her strong pro death penalty views, why is this?  Please read her the questions and see if she has the same answers.

**Juror 531**

Q1.  Juror indicates 2 young children under three for whom he provides finances for their daycare.  He also has travel commitments in April and May for work.

Q.25  Juror indicates someone works for NYC Dept of Corrections, and someone has "business and professional relationships with the federal, state and local government.

Q.29  Juror indicates he or someone has participate in lobbying type groups related to environment, law enforcement, traffic and safety control and alcohol

Q.31 Someone owns a gun "for work purpose."

Q.42  Someone has been a victim of theft.

Q.46  Juror indicates he was charged with crime relating to "alcohol and drug related incidents as well as menacing."  Juror further indicates someone spent several years in prison.  In addition he has visited prison for work and educational purposes.

Q.47  He indicates a close friend or relative treated for opiate addiction, friend had contact with probation officer.

Q.56 Juror indicates he watched "Gangland TV show," and movies called, "Eastern Promises," and "My  Blue Heaven."

Q. 59  Juror indicates a friend was murdered.

Q.86

Q.87  When he say "deliberately killing another person is punishable to a death sentence under the laws of the federal government" does he mean that he believes the defendant should get the death penalty or is he simple stating a fact?

Q.90  When juror says "I have a strong conviction for our laws," does he mean the death penalty should always be applied?

Q.92  Juror appears to have more feelings about this.

Q.93-94  Juror indicates he supports both penalties for every case. What does he mean?

Hon. Nicholas G. Garaufis
March 24, 2011
Page **12** of **17**

Q.95  What does juror mean, "the defendant should have the opportunity to be heard in Court?"

Q.107

Q.110b

**Juror 532**

Q.42  Juror indicates her daughter was robbed at gunpoint in an elevator.  Her daughter testified.

Q.46d  Juror's brother has been incarcerated for drugs.

Q.86  Juror writes, " Intentionally. Very hard to describe my views. Sometimes the crime fits the punishment."  Please ask her to try and describe those views.

Q.87  Please confirm that juror actually meant life *without* possibility of release.

Q.88 Juror indicated "yes" and "no." Please ask her when those apply.

Q.90  Juror writes, "some people is so bad sometimes there is no other."   Please ask her to explain.

Q.93, 98  Which cases call for the death penalty?

Q.95  It is not clear that juror understands mitigation.

Q.106

Q.110b

**Juror 534**

Q.1  Juror indicates work hardship, "no one else in my group has the expertise to perform my work functions."

Q.30  Juror has close friend who is an attorney.

Q.41  Juror experienced racial prejudice while living in Baltimore.

Q.42. Father's dry cleaning store robbed several times.

Q.72c.  Juror states she would prefer to hear from defendant, "if silent would seem like he's hiding something (guilt!)

Hon. Nicholas G. Garaufis
March 24, 2011
Page **13** of **17**

Q.85

Q.86, 87, 105  What circumstances is juror thinking about?  Does she understand there is no self defense, no accident, no heat of passion and no insanity?

Q.92

Q.94

Q.98 What does juror mean by, "my views on death penalty would not impact my vote for life sentence".

Q.102

Q.114

**Juror 537**

Q 2.  Juror indicates language difficulties.  Please follow up.

Q 35.  Juror indicates he cannot be impartial as a result of his exposure to media.  He states "government must stop the crime using all legal possibilities."  Please follow up.

Q 43a.  Juror indicates he has opinions of law enforcement that would make it difficult for him to evaluate the evidence fairly.  He states "I believe that if person brought to court, there many reasons for htat, and should be plead guilty."  Please follow up.

Q 58.  Juror indicates that the nature of the charges would interfere with his ability to be fair, stating "defendant must be plead guilty for those charges."  Please follow up.

Q 64a.  Juror indicates he has beliefs that might make him unable to render a "guilty" verdict.  He states "I believe  that only professionals like judge, detectives, etc must decide guilty or not, but not 12 jurors.  Of course based on prooves."  Please follow up.

Q 68.  Juror indicates, in regards to his qualifications as a juror, that he is "afraid to miss understand any explanations from both sides."  Please follow up.

Q 77.  Juror indicates he will give more credence to law enforcement witess testimony, stating "the officers know the situation better and theirs information should weight more."  Please follow up.

Q 85.  In expressing his views on the death penalty, juror only states "there should be death sentencing for such as crimes."  Please follow up.

Q 86.  Juror did not answer.

Hon. Nicholas G. Garaufis
March 24, 2011
Page **14** of **17**

Q 92.  Juror indicates he cannot make the moral decision of whether a defendant should live or die, stating "I don't think I can deside guilty or not, specially for death penalty." Please follow up.

**Juror 538**

Q 85.  In describing his views on the death penalty, the juror states "yes, I am personal agree that apply for  death penalty."  Please inquire.

Q 86a.  In describing his views on the death penalty for someone found guilty of intentional murder, the juror states "they always death penalty in China."  Please follow up.

Q 90. Juror indicates he hates the death penalty.  Please follow up.

Q 92.  Juror indicates he cannot make the moral decision on whether a defendant should live or die, stating "I am always hate defendant."  Please follow up.

**Juror 539**

Q 4.  Juror indicates he has a medical condition that would make it difficult for him to serve as a juror in this case, and that he is on painkillers such as Percocet.  Please follow up.

Q 24.  Juror indicates he, his friend, or family member is retired NYPD officer.  Please follow up.

Q 85a.  Please inquire of some crimes the juror believes may warrant the death penalty.
Q 107.  Regarding the cost of incarceration to taxpayers, the juror states he is concerned because "It's a financial burden to society as a whole.  It doesn not justify the death penalty in all cases."  Please follow up.

Q 110.  Juror indicates he believes that life imprisonment without parole is a sufficiently harsh sentence "if that's what the law dictates."  Please inquire what the juror's personal opinion is on the issue, not what the law dictates.

Q 112.  Juror indicates it is not up to the jury to decide how "expert" expert testimony is during trial.  "The only real experts are those who are doing the time."  Please follow up.

**Juror 544**

Q 1.  Juror indicates  hardship.  Please follow up.

Q 39.  Juror indicates he has filed a complaint with the police.  Please follow up.



Hon. Nicholas G. Garaufis
March 24, 2011
Page **15** of **17**

Q 47a.  Juror indicates his brother and cousin have been treated for substance abuse.  Please follow up.

Q 85.

Q 86.

Q 87.

Q 92.

Q 98.  Please follow up and make sure the juror understands that the charges in this case involve deliberate and intentional murder.

Q 105.  Please inquire what circumstances surrounding a murder would sway this juror to vote for life without possibility of release.

Q 114, 118.  Juror indicates she will not be able to consider a sentence of life without possibility of release.  Please follow up.

**Juror 545**

Q 38.  Juror indicates he has served as a juror on two previous cases.  Please follow up.

Q 46.  Juror indicates he/family member/or friend was charged with selling methadone and received a conditional discharge.  Please follow up.

Q 47.  Juror indicates he/family member/or friend has had a heroin addiction in the past.  Please follow up.

Q 85.  Juror indicates he believes the death penalty "is for murders and killers" because he believes "in the death penalty and it's the law."  Please follow up and make sure the juror understands that the death penalty is a personal and moral decision each juror must make for himself/herself.

Q 87.  Juror indicates the death penalty is NOT the only appropriate sentence for a deliberate and intentional murder, stating "once again, you intended to kill that person."  Please follow up.

Q 92.  Juror indicates "if everybody agrees for the death penalty, it should be."  Please follow up and make sure the juror understands that the death penalty is a personal and moral decision each juror must make for himself/herself.

Hon. Nicholas G. Garaufis
March 24, 2011
Page **16** of **17**

Q 94.  Juror indicates he maybe has "exceptions to the rule of life without parole or release."  Please follow up and ask what the juror considers to be "exceptions."

Q 95a.  Juror indicates he will consider aggravating factors "only if the penalty is not fit the case if their strong mitigating factors."  Please follow up.

Q 95b.  Juror indicates he will consider mitigating factors, stating "all jurors would have to agree on it."  Please follow up.

Q 110b.

**Juror 546**

Q 1.  Juror indicates hardship.  Please follow up.

Q 24.  Juror indicates she/family member/or close friend worked in the Nassau County PD for 20 years.  Please follow up.

Q 39.  Juror indicates she has filed an order of protection against her ex-husband, which prevents her ability to b an impartial juror on this case.  Please follow up.

Q 46a.  Juror indicates her stepson was involved in a murder of an infant child.  Please follow up.

Q 46f.  Juror indicates the circumstances surrounding her stepson's case would make it difficult for her to be impartial on this case.  Please follow up.

Q 68.  Juror indicates TRAVEL PLANS during the week of easter.  Please follow up.

Q 85.  Juror indicates she is against the death penalty. Please follow up.
Q 91.  Juror indicates her views on the death penalty would interfere with her ability to perform as a juror, because "no one should take the responsibility of putting someone to death."

Q 93.  Juror indicates she is opposed to the death penalty in every possible case.  Please inquire as to whether there are any circumstances that would make her vote for the death penalty.

**Juror 547**

Q 85.  Regarding her views on the death penalty, juror states "if it is needed then so be it but only for the most serious of crimes."  "I feel if you can take a life you really don't need or want yours."

Q 86a.  Juror indicates "he needs to be taught a lesson."  Please follow up.

Hon. Nicholas G. Garaufis
March 24, 2011
Page **17** of **17**

Q 87.  Juror indicates the death penalty is the only appropriate sentence for a defendant found guilty of intentional murder.  "Get it over with he's staying in there any way." Please follow up.

Q 90.  Juror indicates she feels the way she does about the death penalty because "I don't know I guess I see so many guilty people get set free and do it all over again."

Q 93, 94.  Juror indicates she will always vote for the death penalty and life without possibility of release for murders.  Please follow up.

Q 95.  Juror indicates she does not understand questions regarding aggravating and mitigating factors.  Please follow up.

Q 98.  Juror indicates she would not find it difficult to vote for a life sentence for someone convicted of certain kinds of intentional murder. She states "if your guilty your guilty."  Please follow up.

Q 107a.  Juror indicates that the cost of housing an inmate for life is a concern to her, stating "just end it already if there gonna die anyway."  Please follow up.

Sincerely,

_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:      All Counsel (By EMAIL)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

March 30, 2011

**BY EMAIL**
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective jurors on March 31th, 2011.  We respectfully request with regard to the prospective Jurors the Court inquire into the questions listed, and pose to the particular Juror the follow-up questions as proposed by the defense.

Juror 664

Q. 18

Q. 61 - Juror indicated that his step-brother and uncle were murdered in Russia as a result of anti-semitism.  Please inquire.
Q. 69-70

Q. 85

Q. 86

Hon. Nicholas G. Garaufis
March 30, 2011
Page **2** of **11**

Q. 90 – Left blank

Q. 91

Q. 92

Q. 93

Q. 95

Q. 101

Q. 102

Juror 665
Q. 18 - Juror indicated that she is a Licensed Practical Nurse. Please follow up as to the juror's employment.

Q. 39, 44

Q. 58

Q. 66

Q. 115

Juror 666

Q. 4 - Juror indicated that he suffers from back problems and neuropathy.  Please inquire as to whether these conditions would affect his ability to serve as a juror.

Q. 38

Q. 57 -   Please follow up regarding potential ties to organized crime.

Q. 85 - Juror indicated that he favors the use of the death penalty if the defendant's guilt is established without a doubt.  Please follow up as to whether the juror could consider life for a planned and premeditated murder.

Q. 86

Q. 87

Q. 103

Hon. Nicholas G. Garaufis
March 30, 2011
Page **3** of **11**

Juror 670
Q. 16 - Juror indicated that he is familiar with an organized crime presence in Throgs Neck. Please follow up.

Q. 38

Q. 39

Q. 44

Q. 46

Q. 86

Juror 671

Q. 1 - Juror indicated that it may be a problem for her to be away from work for four to six weeks.

Q. 16 - Juror indicated that she is familiar with an organized crime presence in Howard Beach. Please inquire.

Q. 18 - Juror may have an anonymity issue she provided information regarding her employment.

Q. 42

Q. 46

Q. 85.

Q.87

Q.99

Juror 677

Q. 1 – Potential Hardship.

Q. 16 - Juror indicated that she is familiar with organized crime in Carroll Gardens.  Please follow up.

Q. 30

Q. 42

Hon. Nicholas G. Garaufis
March 30, 2011
Page **4** of **11**

Q. 46

Q. 53

Q. 57

Q. 64

Q. 74

Q. 82

Q. 86 - Please ask the Juror if they could consider a life sentence for a person convicted of a planned and premeditated murder and was found to have a history of violence.

Q. 91

Q. 92

Q. 96

Q.106

Q. 108

Juror 678

Q.85

Q.87

Q. 98

Q.99

Q. 108

Q.105


Juror 682

Q. 1 - Juror indicated that he needs surgery.  Please follow up.

Q. 16

Hon. Nicholas G. Garaufis
March 30, 2011
Page **5** of **11**

Q. 92

Juror 688

Q. 29

Q. 31

Q. 38

Juror 695

Q. 37(d)

Q. 40

Q. 85

Q. 86

Q. 93

Q. 95

Juror 697

Q. 18

Q. 38

Q.86

Q.87

Q.105

Q.106.

Q. 107

Q.113-118

Juror 699
Q. 16 - Juror was employed by John Gotti, Jr. Please follow up.

Hon. Nicholas G. Garaufis
March 30, 2011
Page **6** of **11**

Q. 39

Q. 42

Q. 44

Q. 46

Q. 47

Q. 57

Q. 61

Q. 67

Q.85

Q.87

Q.99

Q. 102

Q. 103

Q. 108

Juror 703

Q. 38

Q. 42

Q. 44 - Juror indicated that his girlfriend is under indictment in the Southern District of New York. Please follow up.

Q. 57 - Please follow up.

Juror 704

Q. 1 - Juror indicated multiple hardships.  Please follow up.

Q. 85

Hon. Nicholas G. Garaufis
March 30, 2011
Page **7** of **11**

Q. 86

Q. 87

Q. 92

Juror 705

Q. 1

Q. 30

Q. 42

Q. 46, 57 - Juror indicated ties with incarcerated on organized-crime.  Please followup.

Q. 58

Q. 61

Q. 66

Q. 85

Q.92

Q. 117

Juror 706

Q. 38

Q. 39

Q. 42

Q. 44

Q. 46

Q. 68

Q. 95 - Juror indicated that she could not consider mitigating factors.

Q. 106

Hon. Nicholas G. Garaufis
March 30, 2011
Page **8** of **11**

Q. 107

Q. 117

Q. 122

Q. 123

Juror 707

Q. 1

Q. 42

Q. 45

Q. 53 - Juror indicated a prejudice against the defendant because he would always be in "the family."  Please follow up.

Q. 61

Q. 62

Q. 67

Q. 71

Q. 79

Q. 85

Q. 86

Q. 87

Q. 114

Q. 115

Q. 116

Q. 117

Q. 118

Hon. Nicholas G. Garaufis
March 30, 2011
Page **9** of **11**

Juror 712

Q. 1

Q. 16 - Juror indicated that the area of Staten Island that he lives in is "connected."  Please inquire.

Q. 35

Q. 43

Q. 46

Q. 58

Q. 85

Q.87

Q. 91

Q.99

Q. 105

Q. 109

Juror 715

Q. 16

Q. 38

Q. 40

Q. 42

Q. 86

Q. 92

Juror 716

Q. 1

Hon. Nicholas G. Garaufis
March 30, 2011
Page **10** of **11**

Q. 51 - Juror indicated that the defendant is "straight out of central casting for organized crime." Please follow up.

Q. 72

Q. 86

Q. 92

Q.93

Q. 96

Q.99

Q.106

Juror 717

Q. 1

Q. 42

Q. 46

Q. 85

Q.87

Q.99

Q.106

Q. 110

Juror 718
Q. 1

Q. 4

Q. 53

Q. 85

Q. 90

Hon. Nicholas G. Garaufis
March 30, 2011
Page **11** of **11**

Q. 92

Q. 96

Q. 104

Q. 106

Q. 124

<div style="text-align:right">

Respectfully Submitted,
_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

</div>

cc:      All Counsel (By Email)

# RICHARD JASPER

**Attorney at Law**
276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

April 4th, 2011

**BY EMAIL**
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective on

April 5th, 2011.  We respectfully request with regard to the prospective Jurors the Court

inquire into the questions listed, and pose to the particular Juror the follow-up questions

as proposed by the defense.

**Juror 435**

Q.24.

Q.38.

Q.42.

Q.43.

Q.46.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **2** of **13**

Q.51. Juror indicated "I read on Monday that he was removed from Court due to an outburst." Please inquire.

Q.87. Please ask the juror if she would always vote for the death penalty for a person found guilty beyond a reasonable doubt for a planned and pre-meditated murder.

Q.96.

Q.105. Juror indicated "some murders are committed in self-defense." Please inquire.

Q.110.

Q.121. Juror indicated "defendant was removed from the Court due to an outburst with the Judge." Please follow-up.

**Juror 486**

Q.85  What thoughts has he had about the death penalty  since filling out the questionnaire?

Q.86 Not answered

Q.87 What would he want to know about the defendant to determine if a life verdict would be more appropriate?

Q93-94.  Juror indicates he supports both penalties for every case. What does he mean?

Q.95  Not answered.

Q.98, 99  Juror indicated in Q.98 that if the person was guilty of intentional murder he would have difficulty voting for a life verdict.   Why does the juror believe he could consider a life verdict for someone guilty of two intentional murders?

Q.106

Q.113  Could he consider life without possibility of release  for someone who is already serving a life sentence for another murder?

**Juror 506**

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **3** of **13**

Q.37  Juror mentions Dr.Larone who is at Weiss Cornell Medical Center in NYC.  Has she risked anonymity with this?

Q.43

Q.86  What does juror mean, "Sorry. You should think twice before you did it."

Q.87  Please ask juror to explain her answer.

Q.92. Does juror believe defendant's lawyers select the jury?

Q. 93  When does juror think a sentence of life without possibility of release is appropriate for an intentional, premeditated murder where there is no self defense, no accident, no heat of passion and no insanity?

Q.98 Does juror understand there are two choices and she makes her own personal decision based on the facts and the law?

Q. 105  Could she consider life without possibility of release  for someone who is already serving a life sentence for another murder?

Q.110ab.

**Juror 752**

Q22.  Juror indicates he is a substance abuse counselor.  Please inquire if the juror can be fair and impartial if evidence involving drugs was presented at trial.

Q85. Juror indicates that life imprisonment is very costly, and he believes "if someone murders another individual, I feel they should receive the death penalty."  Please follow up.

Q86.

Q87.  Juror indicates he believes life imprisonment is costly, and that he "questions" the rehabilitative aspect of the prison system.    Please follow up.

Q93.  Juror indicates "I cannot say every case in murder should impose death penalty. " Please inquire as to the kinds of murder that the juror finds would warrant the death penalty.

Q94.  Juror indicates that life without parole is "costly, however for petty, small things it may be appropriate."  Please follow up.

Q95.   Juror indicated both YES and NO regarding consideration of aggravating and mitigating factors.  He also states it "depends what evidence is presented and what the factors are and how/what WE feel should happen."  Please inquire as to what the juror meant when he checked YES and NO regarding penalty phase factors, and whether or not the juror understands that imposing the death penalty is an individual moral decision.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **4** of **13**

Q98. Juror indicates he would vote for life imprisonment if the "jury as a whole feel life imprisonment is more appropriate than death…" Please inquire whether or not the juror understands that imposing the death penalty is an individual moral decision.

Q100. Please inquire whether or not the juror understands that imposing the death penalty is an individual moral decision.

Q101. Juror indicates there are circumstances that would make impossible his consideration of the government's arguments seeking a death sentence. Please follow up.

Q107. Juror is concerned about the cost to taxpayers for housing an inmate for life. Please follow up.

Q110a. Juror believes it is possible that the defendant could still be released on parole if given a sentence of life without possibility of parole. Please follow up.

Q110b. Juror indicates he does not believe that life without the possibility of release is a sufficiently harsh sentence for a person found guilty of murder. Please follow up.

Q114.

Q115.

**Juror 761**

Q85. Juror indicates "I believe the death penalty is lawful and that citizens are aware of this and should be mindful of it." Please inquire as to what the juror means by this.

Q87. Juror indicates that that the death penalty is "appropriate only in extreme cases." Please inquire as to what the juror believes are extreme cases.

Q105. Juror indicates she does not believe everyone who commits murder should receive the death penalty because "the intent is key." Please follow up.

Q118. Please inquire whether the juror would consider the sentence of life without parole on this case if the evidence showed the defendant was previously convicted of intentional murder.

Attachment B: Juror circled Parkside Diner and Piccolo Venezia Restaurant. Please follow up.

**Juror 765**

Q1. Juror indicates he has a hardship due to "self-employment." Please follow up.

Q38d. Juror indicates he may not be fair and impartial because he is "very nervous." Please follow up.

Q39b. Juror indicates he may not be fair and impartial because he is "pro law enforcement." Please follow up.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **5** of **13**

Q43a.  Juror indicates he has opinions about law enforcement that will make it difficult to be fair and impartial.  He states "They all take part in keeping America safe."  Please follow up.

Q52c.  Juror indicates again that he is "in favor of law enforcement."  Please follow up.

Q54b.  Juror indicates it may be difficult for him to render a fair verdict based solely on the evidence because he "might have seen him personally."  Please follow up.

Q87.  Juror indicates that death is the only appropriate penalty for an intentional murder.  Please follow up.

Q88.  Juror indicates that the adage "an eye for an eye" is only appropriate "only on certain cases involving criminal in killing of law enforcement."  Please follow up.

Q92.  Juror indicates he can make the moral decision regarding the penalty.  "If defendant has killed someone during his criminal enterprise the punishment fits the crime."  Please follow up.

**Juror 769**

Q24.  Juror indicates he has previously taken the Suffolk County Police Exam and will be taking it again in June.  Please follow up.

Q86.  Juror indicates he is not sure if he would be comfortable sending someone to death.  Please follow up.

Q92.  Juror indicates he has morals, and he can make a moral decision.  Please follow up.

Q93.  Juror indicates he supports the death penalty in some cases.  Please inquire as to some types of murders that would lead him to vote for the death penalty.

**Juror 771**

Q24.  Juror indicates she worked as a summer intern for the EDNY in 1998 in the Federal Probation Department.  Please follow up.

Q42.  Juror indicates his second cousin was murdered in a drug deal gone bad.  Please follow up.

Q57.  Juror indicates she knows of people with ties to organized crime.  Please follow up.

Q61.  Juror indicates the sentence for the person convicted of murdering her cousin was too light.  Please follow up.

Q85.

Q86a.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **6** of **13**

Q87.  Juror indicates that death is the only appropriate penalty for an intentional murder. She states "some might consider life in prison worse than death."  Please follow up.

Q88.  Juror indicates she believes in the adage of "an eye for an eye."  Please follow up.

Q93.  Juror indicates she supports the death penalty, with few exceptions, for murder. She states "I believe the death penalty is appropriate for particularly heinous crimes. However there are many heinous crimes where the death penalty is not an option, which is a shame."  Please follow up.

**Juror 773**

Q24.  Juror indicates he has numerous ties to law enforcement agencies.   Juror also indicates he worked in West Point from 2009-2010 as an educational aide.  Please follow up.

Q25c.  Juror indicates he will probably side with law enforcement in this type of case. Please follow up.

Q57.  Juror indicates he knows people who have ties to organized crime.  Please follow up.

Q62.  Juror states "because of my experience with the US government, as well as that of my family and friends, I would probably be more sympathetic with the government."  Please follow up.

Q85.

Q93. Juror indicates he supports the death penalty in some cases for murder, stating that it should be considered in extreme cases, where guilt is certain.   Please inquire for what kinds of cases the juror would impose the death penalty.

Q105.  Juror indicates that there are circumstances around a murder that may warrant a lesser penalty than death.  Please inquire as to what some of these circumstances are for the juror.

Q115.  Juror indicates he will be unable to consider a life sentence if evidence showed the defendant sought the murder of a federal prosecutor.  He states "the defendant could be just as dangerous in jail."  Please follow up.

Q116. Juror indicates he will be unable to consider a life sentence if evidence showed the defendant sought the murder of a cooperating witness. He states "the defendant could be just as dangerous in jail.  This kind of activity threatens the entire legal system."  Please follow up.

**Juror 777**

Q46b.  Juror indicates he was charged with a crime.  Please follow up.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **7** of **13**

Q85.

Q86.   Juror indicates he believes in "eye for eye for Murder 1."  Please inquire as to whether there are any kinds of murder where he would consider life without parole.

Q93, 94.  Juror indicates he is opposed, with few exceptions, to the death penalty and life without parole in cases where someone has been murdered.  Please follow up.

Q95.   Juror indicates he will not consider aggravating or mitigating factors.   Please follow up.

Q104.   Juror indicates his catholic faith doesn't believe in the death penalty, but he is "half and half on this subject."  Please follow up.

**Juror 783**

Q26a.  Juror indicates he has taken "Business Law 101."  However, he had indicated in Q22 that his highest level of education was a GED.  Please follow up.

Q40d.  Juror indicates he believes "the higher paid lawyer most usually wins."  Please follow up.

Q85a.   Juror indicates "depending on the nature and brutality of the crime the death penalty is an advisable punishment."   "The brutality of the crime should be used as an indicator for the punishment."  Please follow up.

Q93. Juror indicates he supports the death penalty in some cases for murder, stating that it "should be taken seriously and not all cases justify for it."  Please inquire as to the kinds of murders that the juror finds to warrant the death penalty.

Q117.

Q118.

**Juror 784**

Q46b, 67.  Juror indicates his "wife tried to scare [his] son once and the police showed up." Please follow up.

Q85.  Juror indicates that he believes the death penalty is just "if applied fairly."  "I feel that it is morally correct only if all evidence justifies this decision.  I believe it should be applied only in the most extreme cases."  Please follow up and inquire as to what the juror considers to be "extreme cases."

Q89.  Juror indicates he once held a different view on the death penalty.  Please follow up.

Q93.  Juror indicates he supports the death penalty in some cases.  Please follow up.

Q98.  Juror indicates he believes in mitigating circumstances.  Please follow up.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **8** of **13**

Q114.  Juror indicates he will be unable to consider a life sentence if evidence showed a defendant presented a future danger to others.  Please follow up.

Q115. Juror indicates he will be unable to consider a life sentence if evidence showed a defendant sought the murder of a federal prosecutor.  Please follow up.

Q116. Juror indicates he will be unable to consider a life sentence if evidence showed a defendant sought the murder of a cooperating witness.  Please follow up.

**Juror 785**

Q46.  Juror indicates he served time in prison while serving in the military.  Please follow up.

Q86.  In describing his views on the death penalty, juror indicates "God have mercy on his soul because that "victim" had family too!"  Please follow up.

Q87.  Juror indicates that the Oklahoma Bomber is "death penalty material to him."  Please inquire if there are other examples of murders where he would impose the death penalty.

Q105.  Juror indicates he does not believe everyone who commits murder should receive the death penalty, "because it could've been self-defense etc. etc."  Please inquire if the juror would be able to consider the death penalty for intentional and deliberate murder.

**Juror 798**

Q47a.  Juror indicates a friend was treated for substance abuse.  Please follow up.

Q85.  Juror wrote "some crimes I feel require the death penalty, like for killing another human being – according to crime."  Please follow up.

Q86a.  Juror indicates "a person who deliberately murders someone should be put to death."  Please follow up.

Q89.  Juror indicates she once held a different view on the death penalty.  Please follow up.

Q95a.  Juror indicates she won't consider aggravating factors, stating "murder in the first requires death murder in the second, maybe death – base on intentions."  Please follow up.

Q118.  Please inquire if the juror would be able to consider the sentence of life for cases where a defendant was previously convicted of intentional murder.

**Juror 799**

Q24.  Juror indicates her cousin was in the NYPD 2 years ago.  Please inquire how close the juror was to her cousin and if this would affect her ability to be fair on this case.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **9** of **13**

Q35.  Juror indicates "I dislike being in a gang/organized crime situation.  I feel they are a threat to society."  Please follow up.

Q37.  Juror indicates she least admires "African Americans, Hispanics, and (illegible)."  Please follow up.

Q38d. Juror indicates she can't be impartial as a juror because "though chosen as a juror I still feel impartial feelings for African American, Hispanics, since I hear news about them every night on committing crime, rape, etc."  Please follow up.

Q40d.  Regarding her views on criminal defense lawyers, juror indicates she doesn't "understand why there would be defendant's lawyer for people who committed crimes."  Please follow up and inquire if the juror believes that an indictment is not evidence and whether the juror understands that a defendant is innocent until proven guilty.

Q42e.  Juror indicates she was harassed by a gang in school.  Please follow up.

Q43a.  Juror indicates a strong bias towards the NYPD.  Please follow up.

Q43b.  Juror indicates she believes blacks and Hispanics do not receive fair treatment from police but states she agrees with it.  Please follow up.

Q46.  Juror indicates her cousin was in a gang and involved in drug trafficking.  Please follow up.

Q85.

Q86.

Q87.  Juror indicates death penalty is the only appropriate sentence for intentional murder.  Please follow up.

Q113.

Q118.

Q122.  Juror indicates she can't be fair due to charges of organized crime.  Please follow up.

**Juror 800**

Q52d.  Juror indicates "From what I heard today, I don't believe in organized crime."  Please follow up.

Q57.  Juror indicates a friend's cousin was in prison for years now and she believes this person is "working for the witness protection."  Please follow up.

Q85.  Juror indicates "I do not believe in murdering a person.  If you take a life that to me is a good way of pay-back."  Please follow up.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **10** of **13**

Q87.  Juror indicates that death is the only appropriate penalty for an intentional murder.  Please follow up.

Q92.  Juror indicates "If the jury agrees we could all make a decision."  Please inquire if the juror understands that the penalty is an individual and moral decision that the juror must decide for herself.

Q99.  Juror indicates she would find it difficult to vote for a life sentence for someone convicted of more than one deliberate murder.  Please follow up.

Q118.

**Juror 804**

Q5. Juror is on numerous medications.  Please inquire if any of these would affect her ability to serve as a juror on this case.

Q68.  Juror indicates her boyfriend was murdered.  Please follow up.

Q90.  Juror indicates "I feel if the crime is bad enough the death penalty should be the answer."  Please inquire what kinds of crimes the juror finds to warrant the death penalty.

Q93.  Please inquire if the juror would vote for the death penalty for all instances of deliberate murder.

Q95.  Juror indicates she will not consider mitigating evidence.  Please follow up.

Q117. Please inquire if the juror would be able to consider the sentence of life for cases where a defendant is already serving a life sentence.

Q118.  Please inquire if the juror would be able to consider the sentence of life for cases where a defendant was previously convicted of intentional murder.

**Juror 807**

Q1. Juror indicates she has a hardship.  Please follow up.

Q4.  Juror indicates she has a medical condition that would make it difficult to serve on the jury.

Q85.

Q86.

Q87. Juror indicates that death is the only appropriate penalty for an intentional murder.  But she also wrote "I believe they should get life in prison no possibility of release.  Please follow up.

Q92.  Juror indicates she can make the moral decision, stating "If I believe that a person is guilty on all charges – then yes sentence him to death."  Please follow up.

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **11** of **13**

Q93, 94.  Juror indicates she supports the death penalty and life without parole in all cases where someone has been murdered.  Please follow up.

Q99.  Juror indicates she would find it difficult to vote for a life sentence for someone convicted of more than one deliberate murder.  Please follow up.

Q102.  Juror indicates she would always choose life without parole over the death penalty.  Please follow up.

Q107.  Juror indicates she is concerned about the cost of housing an inmate for life.  She states "they should make those inmates work for their housing and food make them pay."  Please follow up.

**Juror 808**

Q24.  Juror indicates she has applied to the NYPD and US Marshall Service in the last few years.  Please follow up.

Q26.  Juror indicates she has taken numerous courses related to criminal justice and has also indicated she is a student in criminology in Q22.  Please follow up.

Q42a.  The juror indicates her father beat her mother when she was younger.  Please follow up.

Q85.  Juror indicates she is "prolife" but also indicates she believes "the punishment should fit the crime."  "I believe everyone should live without the possibility of parole, if the punishment fits the crime."  Please follow up.

Q86a.  Juror indicates "I'm not a fan of the death penalty, but as I mentioned before if the death penalty fits the crime then I would probably recommend it."  Please follow up.

Q87.  Juror indicated both yes and no.  Please follow up.

Q89.  Juror indicates "Before my class I also thought to keep them imprisoned so that we can learn from them."  Please follow up.

Q93.  Juror indicates she supports the death penalty in some cases involving murder.  Please inquire as to the kinds of cases that would lead her to vote for the death penalty.

Q104.  Juror indicates "I also believe that if the person cannot be rehabilitated then I can lean towards the death penalty."  Please follow up.

**Juror 811**

Q.16

Q.24.

Q.38

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **12** of **13**

Q.85. Juror indicated "the death penalty should exist as deterrent. Society must have a code of law to follow…Evil must have concrete consequences fear of the extreme can deter some actions." Please follow up.

Q.87. Juror indicated "purposefully killing is a threat to a peaceful society. Life imprisonment is possible under extenuating circumstances." Please ask the juror what are the "extenuating circumstances."

Q.90. Juror indicated "some people who are evil." Please ask the Juror to explain.

Q.92. Juror indicated "I deeply believe in God…How God judges the soul has nothing to do with how society rules." Please ask the Juror to explain.

Q.99. Juror indicated an inability to vote for life for someone convicted of more than one deliberate murder. Please follow up

Q.106.

Q.107. Juror indicated "why waste time, space and money." Please follow up

Q.110b. Juror indicated "again It's cases to case." Please follow up

**Juror 813**

Q.24.

Q.30.

Q.31.

Q.38.

Q.40d.

Q.41.

Q.42.

Q.43.

Q.93. Juror indicated "individual is a complete unrepentant monster who was fully cognizant of their actions then yes I could support it." Please follow up.

Q.98. What kinds of intentional murder would the death penalty be appropriate.

**Juror 819**

Hon. Nicholas G. Garaufis
April 4th, 2011
Page **13** of **13**

Q.25.

Q.27

Q.38.

Q.54.

Q.85. Juror indicated "no views."  Please ask the Juror what are his views on the death penalty.

Q.86. Juror indicated "nothing mitigates intentional murder." Please follow up.

Q.92. Juror indicated "as a juror the decision made is based on the evidence and not from a moral perspective." Please ask the Juror to explain.

Q.93. Juror indicated "cases where reaction is well thought out versus on instantaneous reaction on where the individual impaired." Please follow up.

Q.106.

Respectfully Submitted,

_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:      All Counsel (By EMAIL)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669

April 5th, 2011

**BY EMAIL**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

     This letter is respectfully submitted to supplement our previous letter regarding prospective Jurors 894 – 949 to be questioned on Thursday April 7th, 2011.

**Juror 952**

Q.25.

Q.38.

Q.61.

Q.85. Juror indicates "the death penalty should only apply in cases of extreme callous circumstances. If someone has no regard for the life of another and callously takes another's life they can be held accountable." Please follow up.

Q.86. Juror indicates "they should not be allowed to participate in society either by imprisonment or death." Please follow up.

Q.87. Please ask the Juror when a life sentence would be appropriate.

Hon. Nicholas G. Garaufis
April 5th, 2011
Page **2** of **3**

Q.90. Please ask Juror if a person was found guilty of an intentional and premeditated murder and proven to be a future danger if she could seriously consider a life sentence.

Q.94. Please follow up.

Q.104. Please ask the Juror to explain her remarks.

Q.110b. Juror indicated "it would depend on the circumstance – age- mental condition etc." Please follow up.

## Juror 960

Q.24.

Q.38.

Q.46.

Q.87. Juror indicates "they should be punish severely." Please ask the Juror to explain her contradictory answer.

Q.92.

Q.105

Q.110b.


## Juror 969

Q.38.

Q.41.

Q.43.

Q.61.

Q.85. Juror indicates "if a person found guilty with the intent to kill that individual should get the death penalty." Please follow up.

Q.86. Juror indicates "if found guilty then the person should get the death penalty." Please follow up.

Q.87. Juror indicates "the guilty person took someone's will to live."

Hon. Nicholas G. Garaufis
April 5th, 2011
Page **3** of **3**

Q.88.

Q.89.Juror indicates "I feel minors charged with murder should not get the death penalty."

Q.90. Juror indicates "Sadly some kids breed and trained to kill others." Please follow up.

Q.99.

Q.107.


Respectfully Submitted,

_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:      All Counsel (By EMAIL)

# RICHARD JASPER

**Attorney at Law**

276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax (212) 689-0669


April 7th, 2011

**BY EMAIL**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201


Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

This letter is respectfully submitted in connection with voir dire of prospective

Jurors 972 - 993.  We respectfully request with regard to the prospective Jurors the Court

inquire into the questions listed, and pose to the particular Juror the follow-up questions

as proposed by the defense.

**Juror 972**

24. Someone works at Brooklyn NYPD.

85. Juror believes death penalty is a deterrent, would he always vote for the death
penalty "to prevent the possible future death of innocent people?"  In 85d, does he
believe death penalty is appropriate for every guilty murderer since 9/11?

87.

88. Does juror believe someone should have their hand chopped off?

Hon. Nicholas G. Garaufis
April 7th, 2011
Page **2** of **7**

93, 105. Juror indicates self defense is the only exception. Please follow up.

95. What type of special circumstances?

98, 99.

102.

103. What does juror mean, "in most cases?"

107.

110a

114.

115.

116.

**Juror 974**

46e.

63.

85. Please ask juror to expand on his answer. If the case involves an intentional murder, with no self defense, no accident, no heat of passion and no insanity, could juror vote for a sentence of life without possibility of release?

86, 88. Is that every case?

87. Not answered.

90. Can life without possibility of release also be "justice?"

93, 94. Please ask juror to expand on his answer.

106.

107

110a.

**Juror 975**

Hon. Nicholas G. Garaufis
April 7th, 2011
Page **3** of **7**

51b.  Has he remembered anything about what he read?

85.

87.  If proved beyond a reasonable doubt, would juror always vote for the death penalty?

94.  Other than self defense, when does juror believe a life verdict is appropriate?

102. Would he always go with the death penalty?

103. Why would he not listen to the other jurors?

105.

110b.

**Juror 975**

Q16. Juror indicates he lives in Howard Beach Queens, where there is organized crime presence.  Please follow up.

Q40d.  Juror indicates he has opinions about criminal defense lawyers and their role within the criminal justice system.  Please follow up.

Q51b.  Juror indicates he may have read an article about the defendant.  Please follow up.

Q56s.  Juror indicates he went online to sites about organized crime to research the characters from Good Fellas.  Please follow up.

Q85.

Q87.

Q93.  Please inquire if there are any types of murders for which the juror would always impose the death penalty.

Q99.  Please inquire if the juror would have difficulty voting for a life sentence for someone convicted of more than one deliberate murder.

Q102.

Hon. Nicholas G. Garaufis
April 7th , 2011
Page **4** of **7**

Q103.  Juror indicates he will not respect the views of other jurors.  Please follow up.

Q105.

**Juror 976**

Q1. Juror identifies his son and the date of his murder.  It is a pending case.

**Juror 977**

Q1. Juror indicates he has a worker's compensation case on April 6, 2011. Please follow up.

Q24.  Juror indicates his father was a retired police officer in Manhattan in 1985.  Please follow up.

Q25.  Juror indicates his father is a federal court security officer in Manhattan.  Please follow up.

Q26.  Juror indicates he has done security work in the past, but not at this time.  Please follow up.

Q56.  Juror indicates he has seen "The Sopranos" once or twice, and he does not believe the series is realistic.  He states "It looked to barbareick.  I don't like all the curseing an swareing."  Please follow up.

Q85.  Juror indicates "The bible teaches that the wages of sin are death."  "Murder is a sin and  the wages of sin are death."  Please follow up.

Q86.  Juror indicates "Like I mentioned already, the wages of sin are death say it the Lord."  Please follow up.

Q87.  Juror indicates Yes and No.  "Life in prison is only prolonging some one's misery."  Please follow up.

Q92.

Q93, 94.  Juror indicates "In a case of self defense there should be no death penalty."  "Self defence is the only exception."  Please follow up.

Q95a.  Juror indicates "sometime life in prison is worse than death.  Your only prolonging some one's pain."  Please follow up.

Q98.

Q99.

Hon. Nicholas G. Garaufis
April 7th , 2011
Page **5** of **7**

Q110b.  Juror indicates he does not believe life imprisonment is sufficiently harsh.  "You play you pay."  Please follow up.

Juror 978

Q41.  Juror indicates she has been a victim of racial discrimination.  Please follow up.

Q47a.  Juror indicates the teenage son of a close friend was in rehab last fall.  Please follow up.

Q85.

Q87.  Juror indicates "the death penalty is most appropriate for horrible crimes, ie. mass killings, serial murders."  Please follow up.

Q89.

Q93.  Juror indicates she supports the death penalty in some cases, stating "motives and circumstances of the crime need to be considered."  Please follow up.

Q98.

**Juror 990**

Q42, 46.  Juror indicates her younger son accidentally hit someone with a car, and her older son took him back to the scene of the crime.  Please follow up.

Q85.

Q86.

Q87.  Juror indicates "kill or be killed – police don't go to kill intentionally."  Please follow up.

Q93, 94.  Juror indicates she supports the death penalty and life imprisonment for murder cases.  Please follow up.

Q99.  Please inquire if the juror would find it difficult to vote for a life sentence for someone convicted of more than one deliberate murder.

**Juror 991**

Q40d.  Juror indicates she wonders if criminal defense attorneys truly believe their clients are always innocent.  Please follow up.

Q47a.  Juror indicates her best friend's brother was treated for a drug abuse problem.

Hon. Nicholas G. Garaufis
April 7ᵗʰ , 2011
Page **6** of **7**

Q85.

Q86.  Juror indicates if a person is found guilty of intentional murder, "I feel they would then qualify for the death penalty."  Please follow up.

Q87.  Juror indicates "I feel that life imprisonment is a fair punishment as well."  Please follow up.

Q93.  Juror indicates she supports the death penalty in some cases "depending on the case and how severe the crime that has been committed is."  Please follow up.

Q118.  Juror indicates "if the defendant has already been convicted of intentional murder I would feel the life sentence would not be the correct punishment."  Please follow up.

**Juror 992**

Q46.  Juror indicates a family member or friend was charged for selling drugs.  Please follow up.

Q85.

Q86.

Q87.  Juror believes the death penalty is the only appropriate sentence for intentional murder.  Please follow up.

Q90.  Juror indicates the death penalty is "a way to keep a society clean."  Please follow up.

Q93.  Please inquire if there are any exceptions to his view to impose the death penalty for intentional murder.

Q98.  Juror indicates "depending the way murder was committed."  Please follow up.

**Juror 993**

Q46.  Juror indicates her uncle  was charged with child molestation.  Please follow up.

Q85.

Q86.

Q90.  Juror indicates "some crimes may be bad enough to warrant the death penalty. (based on evidence and the severity of the crime.)"  Please inquire what types of murders the juror believes warrants the death penalty.

Hon. Nicholas G. Garaufis
April 7th , 2011
Page **7** of **7**

Q99.  Please inquire if the juror would find it difficult to vote for the death
penalty for someone convicted of more than one deliberate murder.


Respectfully Submitted,


_____/s/_____
Richard Jasper
George Goltzer
Ying Stafford
*Attorneys for Vincent Basciano*

cc:      All Counsel (By EMAIL)