**George Robert Goltzer**
**Attorney At Law**
**200 West 57th Street**
**Suite 900**
**New York, NY 10019**

Tel.  (212) 608-1260
Fax (212) 980-2968
george@goltzer.com

April 27, 2011

**BY ECF & HAND**
Hon. Nicholas G. Garaufis
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Vincent Basciano
05 Cr. 60 (S-9) (NGG)

Dear Judge Garaufis:

We respectfully submit this memorandum in opposition to the Government's proposed request to charge pursuant to Pinkerton v. United States, 328 U.S. (1946). Although, we do not oppose the Government's request that the Court instruct the jury on the required elements of federal charges in this case, with reference to the state law elements as definitional provisions.

The Government contends that with regard to the propriety of whether to instruct the jury concerning Pinkerton, the Second Circuit has held district courts are not required to instruct the jury on state law in this context. We disagree.  The Government provided the Court with the analysis by the Second Circuit in United States v. Carillo, 229 F. 3d

Hon. Nicholas G. Garaufis
April 27th, 2011
Page **2** of **6**

177 (2d Cir. 2000). As the Government advised the Court of the "best practice" in charging the jury on state law elements, that same analysis, is equally applicable in the context of a Pinkerton charge.  Unlike what the Government has indicated in their submission, a Pinkerton charge is not in the nature of state procedural or evidentiary law. The holding in Carillo reflects the Circuits' retreat from the two cases provided by the Government United States v. Diaz, 176 F 3d 52 (2d Cir. 1999) and United States v. Tse, 135 F. 3d 200 (2d Cir. 1998). In Carillo the Court clarified their prior holdings regarding instructing the jury on elements of the offense.

> We concluded that the prior acquittal did not bar the RICO prosecution because RICO's reference to "any act or threat . . . which is chargeable under State law," 18 U.S.C. § 1961(1)(A), "merely describes the type of generic conduct which will serve as a RICO predicate and satisfy RICO's pattern requirement." Id. at 1564. In other words, the phrase "chargeable under State law" does not require that the particular underlying conduct at issue could have been charged under state law, only that such conduct be chargeable as a general matter; i.e., that such conduct is criminal under state law. Id. at 1564-65. We based our decision in Coonan on our prior holding that "'Congress did not intend to incorporate the various states' procedural and evidentiary rules into the RICO statute.'" Id. at 1564 (quoting United States v. Paone, 782 F.2d 386, 393 (2d Cir. 1986)); see also id. ("'[State] rules governing double jeopardy and consecutive sentencing do not affect the generic definition of the crime . . . . Instead, they are essentially procedural rules governing prosecutions for all crimes in [the state].'") (quoting United States v. Friedman, 854 F.2d 535, 565 (2d Cir. 1988)).
>
> Likewise, the government cites Orena, where we held that despite New York law's inclusion of "an overt act" on the part of one conspirator as an element of the crime of conspiracy, neither a RICO indictment relying on conspiracy to murder as a predicate racketeering act nor a VICAR indictment alleging conspiracy to murder needed to allege specifically that overt acts had been committed in

Hon. Nicholas G. Garaufis
April 27th, 2011
Page **3** of **6**

> furtherance of the conspiracy. See Orena, 32 F.3d at 713-14. There, we stated that "only a 'generic definition' of an underlying state crime is required in a RICO indictment, as distinguished from 'the elements of the penal codes of the various states where acts of racketeering occurred.'" Id. at 714 (quoting Bagaric, 706 F.2d at 62).
>
> The Coonan and Orena authorities do not support the government's argument. **Refusal to incorporate state procedural and evidentiary requirements has no logical bearing on the issue whether in a federal RICO prosecution the government must prove the elements of the state law offense that serves as a predicate racketeering act.** Further, the proposition that the indictment need not recite all elements of the state law offense constituting a racketeering act does not, without further explanation, lead to the conclusion that the government is excused from proving those elements. The rule of Orena regarding what an indictment must contain is not unusual or in any way peculiar to RICO indictments. Carillo at 182-184.

Moreover, the Carillo Court stated:

> We recognize that we stated in Diaz that in applying VICAR to a conspiracy to assault, that "the government [was] not required to prove an 'overt act' under Connecticut law." Diaz, 176 F.3d at 96. **We have serious doubts, however, whether that assertion can stand the test of time.** As an initial matter, this statement in Diaz was an extension of Bagaric. The Bagaric panel carefully noted that the case would have been different if the defendants had complained "that the racketeering act is not prohibited at all under state law." Bagaric, 706 F.2d at 63. **Moreover, both the text of RICO and VICAR demand that predicate acts constitute state law crimes. RICO includes in its definition of prohibited racketeering activity only acts prohibited by enumerated federal statutes or "any act or threat involving murder, kidnapping, [etc.] . . . which is chargeable under State law and punishable by imprisonment for more than one year."** 18 U.S.C. § 1961(1) (emphasis added). Likewise, VICAR includes in its prohibition only enumerated acts that are "in violation of the laws of any State or the United States," or the "attempt[] or conspiracy" to so act (in

> violation of state or federal law). 18 U.S.C. § 1959(a) (emphasis added). Those statutes therefore seem to require of a predicate act based on state law that the act include the essential elements of the state crime. It is difficult to square the assertion in Diaz with the RICO and VICAR statutes. Id at 186.

Under New York State law, Pinkerton liability does not exist. The New York Court of Appeals in People v. McGee, 49 N.Y.2d 48 (1979) specifically addressed why Pinkerton liability is not in the nature of procedural or evidentiary law. The Mcgee Court refused to adopt Pinkerton because, Pinkerton liability goes to the elements or substantive nature of the offenses as defined by the legislature, rather than procedural or evidentiary means for proving the crime. The Court stated:

> In rejecting the notion that one's status as a conspirator standing alone is sufficient to support a conviction for a substantive offense committed by a coconspirator, it is noted that the Legislature has defined the conduct that will render a person criminally responsible for the act of another. Conspicuously absent from section 20.00 of the Penal Law is reference to one who conspires to commit an offense. That omission cannot be supplied by construction. Conduct that will support a conviction for conspiracy will not perforce give rise to accessorial liability (compare Penal Law, s 105.05, with s 20.00). True, a conspirator's conduct in many instances will suffice to establish liability as an accomplice, but the concepts are, in reality, analytically distinct. To permit mere guilt of conspiracy to establish the defendant's guilt of the substantive crime without any evidence of further action on the part of the defendant, would be to expand the basis of accomplice liability beyond the legislative design. Mcgee at 57-58.

The analysis provided in Mcgee is precisely the concern articulated in Carillo. Therefore we submit Mcgee is extremely instructive regarding the appropriateness of a Pinkerton charge in this case. The Carillo Court the provided following cautionary illustration:

Hon. Nicholas G. Garaufis
April 27th, 2011
Page **5** of **6**

> Assume a defendant charged with a RICO violation based on a predicate racketeering act of murder. (1) If the evidence showed only that the victim was killed by a gun held by the defendant, without any evidence that the defendant intended to harm or threaten the victim or to fire the gun, it seems clear enough that the defendant could not be properly found guilty of the murder. The evidence would be insufficient to show murder; we would think that a RICO conviction necessarily predicated on a finding of murder in such circumstances would have to be vacated. (2) It would be no different if the evidence included testimony to the effect that the defendant acted with intent to kill, but the jury rejected that evidence. Suppose, for example, the jury found the predicate act of murder but answered an interrogatory to the effect that the defendant fired the gun accidentally without intent to menace the victim. Once again, we doubt the conviction could stand because the defendant's actions, *according to the jury's findings*, would not constitute murder. (3) Assume as a third hypothetical: the evidence includes testimony that could support the requisite state of mind; the defendant contests it and asserts he acted in self-defense; the jury is instructed simply to find whether the defendant committed the offense of "murder," but is not instructed as to the requisite state of mind or the law respecting self-defense; the jury finds that the defendant committed the predicate act of murder and is guilty on the RICO charge. There would be no way for the reviewing court to know whether the jury had found facts constituting murder. Affirming such a conviction would be seriously problematic because the defendant's actions, as found by the jury, might not constitute murder. An appellate court would have no way of knowing what the jury found the defendant's state of mind to be. Carillo at 184.

The same concern is at issue in this case. The Government will be permitted to an instruction regarding aiding and abetting that is a proper and sufficient charged in this case. On the other hand, the Government's request for dual instructions on Pinkerton and aiding and abetting, is highly objectionable. Giving dual instructions heightens chances for conviction by resorting to vastly different theories leading to highly prejudicial

Hon. Nicholas G. Garaufis
April 27th, 2011
Page **6** of **6**

confusion on the part of the jurors. Should the Government's request be granted, we would also request a special jury verdict to ensure unanimity as to the two separate theories of secondary liability. The Government's request for dual instructions is especially objectionable in this case, because of Government's reliance on circumstantial evidence regarding the conspiracy. Where evidence is insufficient for a conspiracy conviction, conviction of any substantive counts based on a Pinkerton theory cannot be sustained United States v Awan, 966 F. 2d 1415, 1433-34 (11th Cir. 1990). The Government has maintained that there is no direct evidence to date that Basciano issued an order from prison to kill Pizzolo.

> That's right. The defendant orders the murder of Randy Pizzolo and then was arrested on other charges. But the defendant was so powerful, so feared, that while he was in jail, his most trusted associates followed his orders, and carried out the murder of Randy Pizzolo. (Govt. Open. Trial Transcript at 4586).

And, the defense will admit the plea allocution of Michael Mancuso indicating that he plead guilty to the conspiracy to murder Pizzolo. Thus, the request to charge the jury regarding Pinkerton liability is highly problematic in this case especially where the vicarious liability can result in the defendant's conviction on the capital offense. Consequently, we respectfully request that the Pinkerton charge as proposed by the Government be denied.

                                              Respectfully submitted,

                                              _____/s/_____
                                              George Goltzer
                                              Richard Jasper
                                              Ying Stafford
                                              *Attorneys for Vincent Basciano*