UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,

     - against-                                 05 CR 060 (S-12) (NGG)

VINCENT BASCIANO,

                  Defendant.

------------------------------------------------------x


**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO THE GOVERNMENT'S INTRODUCTION OF
CERTAIN UNCHARGED ACTS OF VIOLENCE
AND THE LAW REGARDING THE STANDARD OF
<u>REVIEW OF UNCHARGED PENALTY PHASE EVIDENCE</u>**

Richard Jasper
Ying Stafford
George Goltzer
*Attorneys for the defendant*

## PRELIMINARY STATEMENT

This memorandum is respectfully submitted in opposition to the Government's motion to admit certain specified acts of uncharged conduct and to address the Court's Order dated, January 12, 2011 (Doc. No. 1018 at 83).

## INTRODUCTION

The Government has indicated they intend to introduce certain acts of uncharged violence to prove the non-statutory aggravating factors of future dangerousness of the defendant, obstruction of justice and participation in additional uncharged homicides, attempted homicides, and other serious crimes of violence. The defense maintains that the following uncharged acts of violence should not be admitted at the penalty phase.

- Murder of Anthony Colangelo, Sr.

- Queens Club Murder

- Solicitation and Conspiracy to Assault and Murder Dominick Martino

- Conspiracy to Murder/Solicitation to Murder Patrick Defillipo

- Conspiracy to Murder Salvatore Vitale

- Solicitation to Murder Lynette Ayuso

- Solicitation to Murder the Parents of Joseph D'amico

- Solicitation to Murder Frank Coppa, Jr. and Joseph Lino

- Conspiracy and Solicitation to Murder AUSA Andres

In the January 12th, 2011, Order, the Court requested, in the event a penalty phase becomes necessary, the parties submit memoranda briefing this Court on: (1) "the applicable standard of review for the court to apply in determining the reliability of the evidence"; (2) "the standard of review to be applied by the jury to the uncharged

conduct"; and (3) "how this standard depends upon the aggravating factor to which it will be applied".  We address the issues raised by the Court infra.

## ARGUMENT

I.   Admissibility of Uncharged Acts of Violence

"Courts have 'substantial responsibility and considerable discretion in determining whether a proposed non-statutory aggravating factor is appropriate to submit to the jury . . . . [T]he government may only present non-statutory aggravating factors if they are relevant and reliable," not "overbroad or vague," and "an aggravating factor in the first place."  1Leonard B. Sand, et al., Modern Federal Jury Instructions — Criminal, Inst. 9A-16, Comment (2008), quoting United States v. Davis, 912 F. Supp. 938, 941 (E.D. La. 1996). In a number of cases, courts have excluded or disapproved the admission of certain prior crimes, either as independent nonstatutory aggravators or as support for future dangerousness, on the ground that the crimes were not sufficiently probative because they were too trivial, too remote, or incapable of repetition in a prison setting. See United States v. Johnson, 136 F. Supp. 2d 553, 562 (W.D. Va. 2001).  (Court strikes, as irrelevant, aggravating factor of defendant's "criminal livelihood"). The court in United States v. Jacques, 2011 U.S. Dist. LEXIS 48540 (Dist. of Vermont) (2011), succinctly outlined the relevant standard for evaluating aggravating factors.

> First, an aggravating factor may not be Unconstitutionally vague. That is to say, an aggravating Factor must have some "common-sense core of meaning. That criminal juries should be capable of understanding." Tuilaepa v. California, 512U.S.967, 973,114S.Ct.2630, 129 L.Ed.2d 750 (1994) (quoting Jurek, 428 U.S. at 279).
>
> Second, an aggravating factor may not be overly broad. It must serve a narrowing function, in [*58] that it "may not apply to every defendant convicted of [the underlying

3

capital offense]." Tuilaepa, 512 U.S. at 972. Specifically, an "aggravating factor must make [the] defendant's conduct 'worse or more heinous' "than that of other defendants charged with capital crimes. Williams, 2004 U.S.Dist.LEXIS 25644, at * 60 (quoting States v. Perez, No. 02 Cr.7, 2004 U.S. Dist. LEXIS 7500, at * 12 (D.Conn.Apr.29,2004)).

Third, an aggravating factor must be "particularly relevant to the sentencing decision." Gregg, 428 U.S. at 192. The requirement of particular relevance means that an aggravating factor must help the jury to distinguish "those who deserve capital punishment from those who do not." Arave v. Creech, 507 U.S. 463,474, 113 S.Ct. 1534, 123L.Ed.2d188 (1993); see also Fell, 372 F.Supp.2d at 763 ("Aggravating factors in death penalty cases must be 'particularly relevant to the sentencing decision, 'not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person.").

Fourth, an aggravating factor must meet the "heightened standard of reliability" that the Supreme Court" has demanded [of] fact finding procedures" in capital cases. Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct.2595, 91 L.Ed.2d 335 (1986); [*59] see United States v. Friend, 92 F.Supp.2d 534, 541(E.D.Va.2000).

Fifth, an aggravating factor may not be put before the jury if it is impermissibly duplicative of another aggravating factor. United States v.McCullah,76 F.3d 1087,1111-12 (10thCir.1996) (noting that "double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally"); see also United States v. Bin Laden, 126 F.Supp.2d 290, 298 (S.D.N.Y.2001).

Jacques, 2011 U.S. Dist. Lexis 48540 at 57- 60. Accordingly, the defense avers that certain uncharged acts of violence proffered by Government do not meet the articulated standards and therefore should be precluded from the penalty phase.

a.      The Applicable Standard of Review for Admissibility of Evidence
        is - "Heightened Reliability"

Relatedly, while not an express limitation on aggravating factors, Section3593(c)
of the FDPA provides that "information relevant to an aggravating factor...may be
excluded if its probative value is outweighed by the danger of creating unfair prejudice,
confusing the issues, or misleading the jury." 18 U.S.C.§ 3593(c). See <u>United States v.
Pep</u>in, 514 F.3d 193,204 (2dCir.2008) (While"[i]t is true...that...'the Supreme Court
has...made [it] clear that in order to achieve [the required] 'heightened reliability [] '[in the
penalty phase of a capital case], more evidence, not less, should be admitted  on the
presence or absence of aggravating and mitigating factors[,]' it hardly follows from that
general observation that relevant evidence is always permitted. <u>Id</u> at 60-61. Acceptance
of that reasoning would eviscerate the trial court's ability to exclude unduly prejudicial
material from the penalty hearing in as much as any decision to exclude necessarily
means less evidence, not more." (<u>quoting Fell I</u>, 360F.3dat143 (citing <u>Gregg</u>, 428 U.S. at
203-04))).

When discussing the admissibility of evidence during the penalty phase of capital
trials, it is widely understood that the Federal Rules of Evidence do not apply and instead
give way to the rules promulgated under the Federal Death Penalty Act ("FDPA"), 18
U.S.C. §§ 3591, <u>et</u> <u>seq</u>. <u>See</u> <u>United States v. Fell</u>, 360 F.3d 135, 145-46 (2d Cir. 2004).
Thus, one principal difference between capital and non-capital trials is the standard
applied to determining probative value versus prejudicial effect: in a non-capital case
Fed.R.Evid. 403 is applied, whereas in a capital case 18 U.S.C. § 3593(c) is applied.  <u>See</u>

United States v. Tavares, Docket No. 04 Cr. 156 (JBW), 2006 WL 1875339 (EDNY July 5, 2006).

Rule 403 of the Federal Rules of Evidence permits exclusion of evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" (emphasis added).  On the other hand, 18 U.S.C. § 3593(c) permits the exclusion of evidence when its "probative value is [merely] outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and deletes the limitation permitted in consideration of "undue delay, waste of time, or needless presentation of cumulative evidence."  As a result, Section 3593(c) is actually more stringent than Fed.R.Evid. 403, "Title 18's FDPA thus raises the bar for admission of prejudicial evidence."  Tavares, 2006 WL 1875339, at *17-*18 (emphasis added).

Notably, while the Supreme Court has held that "[v]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances," Tennard v. Dretke, 124 S.Ct. 2562, 2570 (2004), a trial court's primary concern with respect to aggravating evidence is whether the "probative value is outweighed by the danger of prejudice."  United States v. Sampson, 335 F.Supp.2d 166, 177 (D.Mass. 2004).

As this Court is aware, "unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability." United States v. Beckford, 964 F.Supp. 993-999-1000 (E.D.Va. 1997) (emphasis added). Thus, before the 3593(c) balancing test can be applied, this Court must establish if the

6

proffered aggravating evidence is "relevant [and] reliable." United States v. Jones, 132 F.3d 232, 241 (5th Cir. 1998).

And as this Court recognized, the question is not simply one of "reliability" but rather "heightened reliability". See This Court's Order, dated, January 12, 2011 (Document 1018), at 78-79. See also United States v. Friend, 92 F.Supp.2d 534, 538 (E.D.Va. 2000) ("heightened reliability" is the touchstone of capital sentencing "because the sentence of death is final, and therefore qualitatively different from other punishments"); Ford v. Wainwright, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that fact finding procedures aspire to a heightened standard of reliability…. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different."), citing, Spaziano v. Florida, 468 U.S. 447, 456 (1984); Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

So what exactly does "heightened reliability" denote? The defense contends "reliable is synonymous with accurate." United States v. Davis, 912 F.Supp. 938, 948 (E.D.La. 1996). Clearly then "heightened reliability" must contain significant confidence in the accuracy of the allegations, and the very nature of the term implies that it must be a higher degree of confidence than required for the admission of evidence during the guilt phase of the trial.

The Supreme Court has long held that the reasonable doubt standard requires the Government to "convinc[e] a proper fact finder" of the defendant's "guilt with utmost certainty". In re Winship, 397 U.S. 358, 364 (1970) (emphasis added). Therefore, it seems appropriate that before the jury should be permitted to consider claims of

uncharged criminal conduct, the Court should first satisfy itself with at least "utmost certainty" that the prior uncharged crimes in fact occurred and that each was in fact committed by the defendant.  See also United States v. Corley, 348 F.Supp.2d 970, 973 (N.D.Ind. 2004).

In Corley, the court had the benefit of the parties having jointly urged the court to assess the reliability of the evidence by considering whether any reasonable jury could find the defendant guilty of the prior unadjudicated conduct beyond a reasonable doubt. Corley, 348 F.Supp.2d at 973.  Here, we – that is, the defendant and his counsel – respectfully submit that such a standard is appropriate for the potential penalty phase of Basciano's capital trial.

Notably, the "need for a greater degree of reliability is particularly acute" when the evidence at issue relates to crimes allegedly committed by defendants for "which they have not in fact been convicted."  Davis, 912 F.Supp. at 948.  This distinction should not be minimized.  It is not simply that Basciano has never been given the opportunity to defend himself against the allegations of murder, attempted murder, murder solicitations, and conspiracies to murder, but rather that he has never been given such opportunity before a jury that has not been exposed to the capital crimes to which he is presently facing.

II.     Specific Acts of Violence

a.      Murder of Anthony Colangelo, Sr.

The Government intends to introduce evidence of Basciano's purported participation in the murder of Anthony Colangelo, Sr. - a murder that occurred in 1987. The defense objects on several grounds, the first is, the murder was committed more than

8

20 years prior. Thus, it is too remote, and therefore has little, if any relevance, upon a 2011 sentencing determination. United States v. Sablan, 2008 WL 700172 at *3-6 (D. Colo. Mar. 13, 2008). (Excluding, in support of future dangerousness government evidence of an aggravated assault conviction from 20 years ago), see also United States v. Brown, 2008 WL 4965152, at * 6 (S.D. Ind. Nov. 18, 2008). (Striking nonstatutory aggravating factor where conviction was more than 10 years old). Also, the Government's proffer fails to meet any standard of reliability, and thus fall, far short of the heightened reliability standard of a capital case. The facts presented by the Government are barely circumstantial. There is no actual connection to Basciano and the murder. Any connection that may be inferred is entirely speculative. The Government engages in extreme speculation by inferring Basciano committed the murder, because he visited Colangelo, Sr. in prison, or allegedly took control of Colangelo's numbers business and stopped providing the proceeds to Colangelo's girlfriend, Ann Caruncho. The Government cited the following testimony in support of their assertion.

> Q How did he die?
> A He was murdered.
> Q When was he murdered?
> A 1987.
> Q How long after your father got out of jail was he murdered?
> A Within a few months.
> Q Sir, who ran your father's Joker Poker and numbers business after your father was murdered?
> A Vincent Basciano and Anthony Donato.
> Q Was there a wake for your father?
> A Yes.
> Q Did the defendant come to the wake?
> A Yes. (United States v Basciano, 03 Cr. 929 (S-6) at 3005)

The proffered testimony does not indicate that Basciano stopped providing proceeds to Ms. Caruncho. In fact, Ms. Caruncho previously testified that Basciano provided her with money after Colangelo, Sr. died.

> Q.   After Mr. Colangelo died, in relation to the gambling business, did you continue to receive money from Mr. Basciano?
> A.   Yes, I did.
> Q.   How much money did you continue to receive?
> A.   He would send me money to pay the rent on the store. He would send me $1,000 sometimes every week and sometimes every two weeks. (United States v. Basciano, 03 Cr. 929 (S-6) at 8091-92).

Ms. Caruncho also testified that Basciano gave her $25,000.

> Q.   At any point in time -- you mentioned you had two daughters. At any point in time did Mr. Basciano give you money for your daughter's wedding.
> A.   Yes, he did.
> Q.   How much did he give you?
> A.   He gave me $25,000.
> Q.   Why did you go to Mr. Basciano?
> A.   Because my husband died and I had no money to pay for the wedding and I asked him for the money and he gave it to me.
> Q.   Did you ever repay Mr. Basciano?
> A.   No, I did not. (United States v. Basciano, 03 Cr. 929 (S-6) at 8086-87).

In addition, the Government proposes to introduce double hearsay statements as proof of the Colangelo murder, through the testimony of Anthony Colangelo, Jr. Specifically, that Ms. Caruncho told Colangelo, Jr. about a conversation she had with Colangelo, Sr., prior to his death. In sum and substance - there was some trouble, but not to worry because he [Colangelo, Sr.] had the "kids" with him. (See Govt. Brief at 5).   The introduction of any statements made by Ms. Caruncho would clearly violate Basciano's right to confrontation. Ms. Caruncho has not previously testified to this particular conversation

with Colangelo, Sr. prior to his death, and therefore the defense was not afforded the opportunity to cross-examine Ms. Caruncho. See United States v. Webster, 162 F.3d 308, 320-321 (5th Cir. 1998).  (Evidence of unadjudicated offenses was sufficiently reliable where it was based on first-hand observation, defense had opportunity to confront witnesses, defense had advance notice of the evidence, and several of the incidents were corroborated). Furthermore, the Government proposes to introduce Mr. Caruncho's previous testimony, because she died and is no longer available to testify.  The defense opposes the introduction of Ms. Caruncho's testimony, because previous counsel did not have the same objective in cross-examining Ms. Caruncho.   Undoubtedly, the motives for cross-examining Ms. Caruncho at Basciano prior non-capital trials, are dramatically different than the penalty phase of Basciano's capital trial, thus her testimony should be precluded.

    b. Queens Club Murder

   The Government plans to introduce evidence of the Queens club murder. Again, the underlying facts of the Queens club murder do not meet the standard of heightened reliability. The facts proposed by the Government are premised entirely on the statements by cooperating witnesses. Furthermore, the alleged incident is based upon past recollection of alleged conversations over 15 years ago.  For instance, Massino recalls the conversation occurred in the late-nineties. Yet, Tartaglione remembers the conversation happened in the mid-nineties and was not even a part of the conversation but happened to overhear certain statements. Nonetheless, both Massino and Tartaglione, rely upon details of the murder that are related through Patrick Defillipo and are thus, a violation of Basciano's right to confrontation.   These alleged co-conspirator statements lack any

11

circumstantial guarantees of trustworthiness. At a minimum, the evidence relied upon during any potential penalty phase should not contain hearsay, nor have the potential to violate the defendant's Sixth Amendment right to confrontation. See United States v. Mills, 446 F.Supp.2d 1115, 1126-35 (C.D.Cal. 2006); Crawford v. Washington, 541 U.S. 36 (2004); Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2007); see also United States v. Taveras, 585 F.Supp.2d 327, 340 (EDNY 2008) (applying Crawford to the penalty selection phase of a Federal death penalty trial); Corley, 348 F.Supp.2d at 977-79 (holding that hearsay testimony from law enforcement officers was inadequate to permit the court to determine whether the evidence of defendant's unadjudicated criminal conduct was sufficiently reliable for the jury to consider during the penalty phase).

The Government also proposes to introduce admissions by Basciano to Cicale and Massino, regarding the Queens club murder. To begin with, Cicale's proposed testimony is not clearly related to the Queens club murder. Cicale apparently recalls Basciano told Cicale, that Basciano participated in the murder of an "individual" with Michael Mancuso, Johnny Joe Spirito, and Anthony Frascone. Basciano does not identify the individual in any manner, nor does Basciano state where the particular murder occurred i.e. in a social club or in Queens, for that matter. Thus, Cicale's proffered testimony is irrelevant, unreliable and would only serve, to confuse and mislead the jury. Notably, Cicale did not previously testify to this statement by Basciano.

Furthermore, Basciano's alleged confessions or admissions to Massino and Cicale without corroboration are not reliable. Under New York Law confessions or admissions are not reliable without corpus delicti, and therefore should not be permitted, to be considered by a jury at the penalty phase of a capital trial.

12

> A person may not be convicted of any offense solely upon
> evidence of a confession or admission made by him
> without additional proof that the offense charged has been
> committed. <u>See</u> N.Y. CPL. LAW § 60.50 – evidence;
> statements of defendants; corroboration.

The purpose of § 60.50 the requirement of evidence of <u>corpus</u> <u>delicti</u> apart from confession is to avert danger that the crime may be confessed when there was in fact no such crime. <u>People v. Reade</u>, 1963, 13 N.Y.2d 42, 241 N.Y.S.2d 829, 191 N.E.2d 891. <u>see</u> also, <u>People v. Anderson</u>, 1981, 80 A.D.2d 33, 437 N.Y.S.2d 985. The same legal principles of § 60.50 should be applied in evaluating the Government's proposed evidence, of Basciano's participation in a murder, of an unknown individual, in an unknown location, and premised entirely on innuendo.

c.   <u>Basciano's Solicitations to Murder Generally</u>

The defense asserts that the solicitations and conspiracies to murder cited in the Government's memorandum are not admissible because, the alleged victims were not ultimately killed, and therefore are not serious enough relative to the capital offense. In particular, the solicitations and conspiracies to murder Dominick Martino, Salvatore Vitale, and Patrick Defillipo, though concededly reliable, are not sufficiently "death worthy" and do not serve to prove that Basciano is worse or more heinous. Thus, those particular solicitations should be precluded because they are not sufficiently relevant and are duplicative. <u>See</u> <u>United States v. Gilbert</u>, 120 F. Supp. 2d 147, 153-154 (D. Mass. 2000). (Allegations that defendant scalded young, mentally retarded boy with hot bath water while she was his nurse and that she assaulted her husband with kitchen knife during divorce without injuring him were not serious enough relative to the capital offense to be considered as aggravating factors). <u>United States v. Friend</u>, 92 F. Supp. 2d

534, 542-545 (E.D. Va. 2000). (Striking aggravating factor that defendant discussed killing a potential witness after the murder.  The court found the factor not sufficiently relevant and reliable to weigh in favor of a death sentence). <u>United States v. Peoples</u>, 74 F. Supp. 2d 930, 933-934 (W.D. Mo. 1999). (Prior burglary conviction did not involve a crime sufficiently serious to serve as a nonstatutory aggravating factor). <u>United States v. Cuff</u>, 38 F. Supp. 2d 282, 288-289 (S.D.N.Y. 1999). (Striking nonstatutory aggravating factor that defendant used gun in committing the homicides.  "[U]se of a firearm does not, in any rational sense, make a homicide worse, whether one looks at it from the standpoint of the crime, the victim or the perpetrator."). <u>United States v. Davis</u>, 912 F. Supp. 938, 945-946 (E.D. La. 1996).  (In assessing non-statutory aggravating factor that defendant, a police officer, assisted others in commission of crimes, did not rise to necessary level of severity or relevancy.) <u>United States v. Diaz</u>, 2007 WL 656831, at *19 (N.D. Cal. 2007).  (For prior unadjudicated conduct to be relevant in aggravation, it must be criminal and serious in nature).

With regard to the solicitation and conspiracy to murder AUSA Andres, although arguably relevant and potentially reliable, it is undoubtedly prejudicial.  We oppose any evidence of the solicitation and conspiracy to murder AUSA Andres, because it would inflame the jury, and prejudice the jury at the most critical phase of the case.  The defense would also note, that the Government for the first time has alleged Basciano conspired to kill AUSA Andres, however, they have provided no proof of the conspiracy.  The defense submits that the Government be required to offer proof of the details, that Basciano conspired to murder AUSA Andres prior to the Court's ruling on admissibility.

e.      Solicitation to Murder Lynette Ayuso

The solicitation to murder Lynette Ayuso is exceptionally problematic. This particular solicitation to murder would only serve to inflame the jury, and therefore has little probative value.   The solicitation to murder Cicale's girlfriend does not in any way further the Government's proof that Basciano is a future danger.  The solicitation was not related to the enterprise. And, involved the alleged plot kill an innocent civilian for apparently personal reasons. Courts have excluded evidence of the defendant's prior misconduct that, because of its nature or it is not relevant to gauging the likelihood the defendant would engage in violence in a federal penitentiary: United States v. Pepin, 514 F.3d 193, 206 (2d Cir. 2008).   (On government's interlocutory appeal, holding that district court did not abuse discretion in excluding aggravating evidence that defendant had physically and sexually abused a child, offered to prove future dangerousness.  The district court found evidence had little if any relevance at sentencing). See also United States v. Hargrove, 2005 WL 2122310, *6-8 (D. Kan. 2005) (prior to introducing any evidence of future dangerousness, government would have to proffer the evidence and demonstrate why it would support a finding of future dangerousness in prison). One district court did exclude evidence of four unadjudicated murders attributed to the defendant because its prejudicial impact outweighed its probative value.  The underlying facts of the crimes were inflammatory, the crimes were based on fact patterns similar to the capital charge, and the evidence for them came primarily from accomplices and cooperators.  United States v. Gonzalez, 2004 WL 1920492, at * 7-8 (D. Conn. Aug. 17, 2004).   See also United States v. Rodriguez, 2006 WL 487117, at * 3-5 (D. N.D. Feb.

28, 2006) (prohibiting government from presenting aggravating evidence about prior sexual assault and kidnapping for which defendant was tried and acquitted in state court).

        f.      <u>Solicitation to Murder the Parents of Joseph D'amico, Joseph Lino and the Frank Coppa, Jr.</u>

The Government has indicated that the solicitation to murder the parents of Joseph D'amico should be admissible at the penalty phase. The Government's evidence regarding these solicitations simply does not meet the threshold of heightened reliability. The Government proffered that Massino will testify "in approximately 2004 prior Basciano's arrest, Basciano requested permission from Massino to murder the parents of Joseph D'amico." (See Govt. Brief at 14).  However, the Government did not provide proof of any kind specifying when or who relayed the message/request from Basciano, to Massino, while Massino was incarcerated.   Nor did the Government provide the Court with any evidence of the substance of Basciano's alleged request to kill Joseph D'amico's parents, other than Massino's proffered testimony - that Basciano had observed D'amico's parents "eating in a restaurant in Little Italy. . . ."  (See Govt. Brief at 14).  Furthermore, the Government did not provide any indication of when, or who, relayed the message/request from Massino to Basciano, denying Basciano's requested permission to kill D'amico's parents.

Similarly, the Government's proffered evidence regarding Basciano's alleged solicitation to murder Frank Coppa, Jr. and Joseph Lino is wholly unreliable. The Government indicates that Massino will testify Basciano sent a message through Tommy Lee, that Basciano wanted to kill Coppa's son and Lino's son. Yet, the Government does not offer any information regarding the substance of the request to kill Coppa, Jr. and

Joseph Lino. Nor, does the Government proffer any time period in connection with the solicitations to murder the children of Frank Coppa and Frank Lino. Although, the Government indicates that the message was passed through, Lee to Massino, it is in contradiction to the evidence previously presented at Basciano's prior trials. According to Tommy Lee's 3500 material, Lee informed the Government on June 28th, 2005, that Basciano stated the "kids of Lino & Coppa should not pay for the sins of the father. . . Called they always show." (See 3500 TL-18).   Additionally, Lee testified at Basciano's previous trial, Basciano never told Lee that Basciano wanted any harm to come to the kids of Frank Lino and Frank Coppa.

> Q Well, you testified on direct that Mr. Basciano held these late night meetings after he had become the acting boss?
> A That's what he told me. I wasn't present at any of them.
> Q He also told you, did he not, that the kids of Frank Lino and Frank Coppa should not pay for the sins of their father; is that correct?
> A Yes.
> Q He told you that everyone should leave them alone, correct?
> A I don't recall him saying that.
> Q He didn't want any harm to come to them, correct?
> A He never told me he wanted any harm to come to them.
> Q Not that he wanted harm. He did not want any harm?
> A He never told me that he wanted any harm to come to them. (United States v Basciano, 03 Cr. 929 (S-6) at 6939-40).

III.   "Beyond a Reasonable Doubt" –  Is the Standard of Review to be applied by the Jury

This Court ruled that it "will require the Government to prove the specific uncharged crimes unanimously and beyond a reasonable doubt, rather than only requiring this standard of proof for the Non-Statutory Aggravating Factor generally."  Order, dated, January 12th, 2011, (Document No. 1018), at 80, citing, United States v. Gilbert, 120

F.Supp.2d 147, 152 n.2 (D.Mass. 2000) ("The Government will have to prove the commission of such crimes beyond a reasonable doubt."); United States v. Cooper, 91 F. Supp. 2d 90, 108 (D.D.C. 2000).  We believe this Court's holding was correct and should not be wavered from.

The defense maintains the requirement that statutory and non-statutory aggravating factors may only be found by a jury beyond a reasonable doubt, is a statutory requirement codified in the Federal Death Penalty Act.  Specifically, 18 U.S.C. § 3593(c) provides, in relevant part, "The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt" (emphasis added). See also Ring v. Arizona, 536 U.S. 584, 600 (2002) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."), citing, Jones v. United States, 526 U.S. 227, at 243, n.6 (1999); United States v. Mills, supra, 446 F.Supp.2d 1115, 1126-35 (C.D.Cal. 2006) (discussing evolution of beyond a reasonable doubt standard as applied to prior unadjudicated conduct); United States v. Umana, 707 F.Supp.2d 621, 631 (W.D.N.C. 2010) ("non-statutory aggravating factors alleging uncharged criminal conduct do not violate the Constitution so long as the jury is properly instructed that it must find such conduct unanimously and beyond a reasonable doubt") (emphasis added and citations omitted).

IV.   The "Beyond a Reasonable Doubt" Standard should not be Impacted by the Aggravating factor to which it will be Applied

This Court has also asked that the parties weigh in on whether the "beyond a reasonable doubt" standard required by 18 U.S.C. § 3593(c) is impacted by the fact that the Government intends to rely upon Basciano's prior unadjudicated conduct as one of several aspects of its allegation of "future dangerousness" (see Notice of Intent to Seek the Death Penalty, dated, May 7, 2007 [hereinafter, "Basciano Death Notice"], at § C[1][b] [Continuing Pattern of Violence]) as well as one or more stand-alone factors (see Basciano Death Notice, at §§ C[3] [Obstruction of Justice], C[5] [Participation in Additional Uncharged Homicides, Attempted Homicides or Other Serious Crimes of Violence]).  We respectfully submit that the standard of proof that must be applied by the jury is not affected by which aggravating factor is under consideration.

Clearly, there can be no question that "beyond a reasonable doubt" is the only standard that may be applied with respect to the stand-alone non-statutory aggravating factors listed at Sections C(3) and C(5) of Basciano's Death Notice.  See 18 U.S.C. § 3593(c).  Thus, we can only assume that this Court's inquiry is whether that standard is to be applied to each individual component of the non-statutory aggravating factor alleging future dangerousness (see Basciano Death Notice, at § C[1][b]).  Once again, although very few cases directly address this issue, we respectfully submit that the answer is nonetheless clear.

Case law on the purpose of the reasonable doubt standard at trial confirms the unacceptability of diluting such burden at sentencing, particularly during the penalty phase of a capital trial.  "The reasonable-doubt standard … is a prime instrument for reducing the risk of convictions resting on factual error."  In re Winship, supra, 397 U.S. 358, 363 (1970).  Similarly, the Supreme Court has long held that in charging jurors on

the standard of "beyond a reasonable doubt", courts should "impress[] upon" the jury "the need to reach a subjective state of near certitude of the guilt of the accused." Victor v. Nebraska, 511 U.S. 1, 15 (1994), quoting, Jackson v. Virginia, 443 U.S. 307, 315 (1979).

It stands to reason then, that when Congress specifically chose to apply the stringent "beyond a reasonable doubt" standard to all aggravating factors, both statutory and non-statutory, it did so to ensure, as much as reasonably possible, that no death sentence would rest on factual error. To conclude otherwise, would hold the Government at the penalty phase to a lesser burden than at the guilt phase, which surely cannot be what was intended in the many cases that have referenced the "heightened reliability" required to sentence an individual to death. See, e.g., Ford v. Wainwright, 477 U.S. 399, 410-11 (1986); Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (plurality opinion).

While the Supreme Court has never been required to adjudicate whether a lesser standard is applicable to the individual components of a multi-component aggravating factor such as future dangerousness, and to our knowledge no circuit court has directly addressed the issue either, within the Second Circuit we are aware of one case to address this question: United States v. Kee, Docket No. 98 Cr. 778 (DLC), 2000 WL 863119 (SDNY June 27, 2000). In Kee, the court, ruled that "each specific criminal act to be considered by the jury in connection with" an aggravating factor that included multiple components "must be proven beyond a reasonable doubt," and "[t]he jury's decision must be unanimous with respect to each act considered." Kee, 2000 WL 863119, at *7.

Similarly, in the Eastern District of Virginia, the court explained that "to make sure that the requisite indicia of reliability are met, the Court will instruct the jurors that

they must conclude beyond a reasonable doubt that each of these [prior unadjudicated crimes] occurred in determining whether [the defendant] was engaged in a pattern of criminal activity [i.e., the non-statutory aggravating factor to which such evidence was sought to be employed]."  United States v. Cineros, 363 F.Supp.2d 827, 839 (E.D.Va. 2005).  The court then concluded that "it will instruct the jury that it must find each instance of unadjudicated conduct by a reasonable doubt to consider it in determining whether Mr. Cisneros exhibits a pattern of criminal activity."  Cineros, 363 F.Supp.2d at 839.

We respectfully submit that it would be inconsistent, counter-intuitive, and prejudicially confusing to instruct the jury that it was required to find, beyond a reasonable doubt, that Basciano posed a future danger, while at the same time instructing the jury that each individual act alleged to establish his future dangerousness could be found by employing a lesser burden of proof.

As such, we submit that the standard of review that the jury should be required to employ with respect to Basciano's prior unadjudicated conduct should be unaffected by whether the conduct is examined in a multi-component aggravating factor such as "future dangerousness of the defendant" or in a stand-alone factor such as "obstruction of justice" or "participation in additional uncharged homicides, attempted homicides or other serious crimes of violence" (compare Basciano Death Notice § C[1] to §§ C[3] and C[5]).  And that standard, of course, must be "beyond a reasonable doubt".  See 18 U.S.C. § 3593(c).[1]

---

[1]    Although we argue herein that the standard of proof that applies to all instances of prior unadjudicated conduct in the Basciano Death Notice should not be impacted by the specific aggravating factor in which the conduct is to be examined, we note that these

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the Government's request to admit evidence related to Basciano's prior uncharged acts of violence.

Respectfully submitted,

/S/

Richard Jasper
Ying Stafford
George Goltzer

---

arguments are not intended to in any way alter our position that allegations of future dangerousness must be confined to future danger *in prison*.  See, e.g., United States v. Cooper, supra, 91 F.Supp.2d 90, 111-12 (D.D.C.2000); United States v. Peoples, supra, 74 F.Supp.2d 930, 932 (W.D.Mo. 1999); United States v. Nguyen, 928 F.Supp. 1525, 1542, n. 14 (D.Kan.1996).  Such is a separate issue, which we assume was not the subject of this Court's present inquiry.