UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

   UNITED STATES OF AMERICA

                  -against-

   VINCENT BASCIANO,

                   Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**05-CR-060 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Following Defendant Vincent Basciano's May 16, 2011 conviction by jury on the death-eligible murder of Randolph Pizzolo in aid of racketeering count, the parties filed a series of motions regarding the mitigating and aggravating factors to be submitted to the jury and the admissibility of particular evidence at the penalty phase. These motions are granted in part and denied in part as set forth below.

## I. MITIGATING FACTORS

### A. Proposed Mitigating Factors ## 3-9: Comparative Punishment of Co-defendants and Coconspirators

Defendant has provided notice of numerous proposed mitigating factors dealing with the punishments received by co-defendants and coconspirators:

> 3. Joseph "Big Joey" Massino will not be sentenced to death for his role in the murder of George "George from Canada" Sciascia, and others in furtherance of the Bonanno/Massino crime family.

> 4. Dominick Cicale will not be sentenced to death for his role in the murder of Randolph "Randy" Pizzolo.

> 5. Michael "Michael the Nose" Mancuso will not be sentenced to death for his role in the murder of Randolph Pizzolo.

1

6. Anthony "Ace" Aiello will not be sentenced to death for his role in the murder of Randolph "Randy" Pizzolo.

7. Salvatore "Good Looking Sal" Vitale will not be sentenced to death for his role [in] multiple murders for the Bonanno crime family.

8. Patrick Defilippo will not be sentenced to death for his role [in] the death of "George from Canada" Sciascia.

9. The favorable plea agreements offered to cooperating witnesses: Joseph "Big Joey" Massino, Salvatore "Good Looking" Vitale, Michael "Michael the Nose" Mancuso, James "Big Lou" Tartaglione, is something that weighs against imposition of a death sentence for Mr. Basciano.

(Docket Entry # 1202.)

Defendant concedes that only Dominick Cicale, Michael Mancuso, and Anthony Aiello were co-defendants in the capital crime, and thus fit within the statutory mitigating factor codified in 18 U.S.C. § 3592(a)(4): "Another defendant or defendants, equally culpable in the crime, will not be punished by death." (See Docket Entry # 1201.) The Defendant, nonetheless, argues that the punishments received by Joseph Massino, Salvatore Vitale, and presumably James Tartaglione and Patrick Defilippo fit within 18 U.S.C. § 3592(a)(8), the "catchall" provision: "Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence."

Any requirement that these mitigating factors should be submitted to the jury must be found in the statute because their inclusion is not constitutionally required. As the Supreme Court held in Lockett v. Ohio, 438 U.S. 586, 604 (1978), "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than

2

death."   The comparative punishments faced by co-defendants, much less coconspirators, cannot naturally be read into this constitutionally mandated definition of mitigating factors.  Cf. Pulley v. Harris, 465 U.S. 37, 43-51 (1984) (holding that the Eighth Amendment does not require appellate courts to compare the sentence in the case before it with the penalties imposed in similar cases before affirming a death sentence).

Congress nonetheless codified a narrowly defined proportionate sentencing mitigating factor in 18 U.S.C. § 3592(a)(4).  Congress's inclusion of this mitigating factor could suggest that the statute requires a broader range of permissible non-statutory mitigating factors than the Constitution requires.  See United States v. Bin Laden, 156 F. Supp. 2d 359, 369-70 (S.D.N.Y. 2001) ("The circumstance that others who are equally culpable will not be subject to the death penalty is a comparative factor which reflects a determination by Congress that it is appropriate for jurors to consider questions of proportionality and equity when they are evaluating whether a death sentence is appropriate.").

As the court in Bin Laden noted, however, "[a] review of competing draft versions of the death penalty legislation makes clear that the decision to include this factor was contested."  156 F. Supp. 2d at 370, n.12.  The fact that this narrow comparative punishment provision as to co-defendants was contested casts doubt on the argument that Congress must also have intended to incorporate broad concepts of proportionality and equity into the death penalty sentencing scheme.  If Congress had intended to include broader proportionality considerations it could have done so clearly in 18 U.S.C. § 3592(a)(8) or elsewhere.  Congress, however, included no such language.  Instead, it chose language similar to the constitutionally required standard set forth in Lockett, 438 U.S. at 604, which does not include proportionality analysis.  See 18 U.S.C. §

3

3592(a)(8) ("Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.").

The Defendant has identified no precedent (Docket Entry # 1201), and the court is aware of none, requiring the inclusion of evidence about whether non-co-defendant coconspirators did not receive the death penalty, let alone requiring inclusion of the specific sentences coconspirators received or the "favorable plea agreements offered to cooperating witnesses," as Defendant has requested (Docket Entry # 1202).

The cases that have addressed the issue do not support Defendant's request.  For example, in United States v. Regan, 221 F. Supp. 2d 659, 659-61 (E.D.Va. 2002), the court rejected the defendant's argument that "evidence that his espionage attempts pale in comparison to other acts of espionage where the Government did not seek the death penalty is relevant to mitigation in general and specifically to the 'equally culpable' statutory mitigating factor, 18 U.S.C. § 3592(a)(4)."  The court held that,

> Permitting the submission of evidence of totally unrelated espionage cases would lead to a confusion of the issues or mislead the jury.  Further, introducing evidence of that sort would inevitably amount to separate mini-trials on whether the Government should have sought the death penalty in certain cases.  In sum, the damage assessments of other espionage defendants are irrelevant to the acts of the Defendant and the jury's determination of Defendant's sentence.

Id. at 660-61.

The same reasoning applies here.  The punishment that other members of the Bonanno crime family received for committing murders other than the murder of Randolph Pizzolo are not relevant mitigating evidence.  While the jurors in this case have heard testimony that cooperating witnesses have participated in the commission of numerous murders, for jurors to be able to assess whether these individuals were equally culpable in the crimes that they committed and

4

equally deserving of the death penalty would require a time consuming and distracting side trial of each individual.

Furthermore, arguments about the cooperation agreements entered into with particular coconspirators and the Government's decision not to pursue the death penalty as to other members of the Bonanno crime family are not relevant to what individualized punishment this Defendant deserves, and should not be considered by the jury.  As this court held in United States v. Wilson, 04-CR-1016 (NGG), the particular sentence that another coconspirator or co-defendant received may be the product of numerous factors—including but not limited to the extent, nature, and timing of that person's cooperation with the Government, and his or her decision to plead guilty—that are not within the proper scope of the jury's deliberation.  In the appeal from Wilson, the Court of Appeals held that it was not an abuse of discretion to bar evidence as to "specific prison sentences [of co-defendants] [because it] would have low probative value, would confuse the jury, and would provoke or require trials within the trial concerning the other defendants, their cooperation, and their roles in the murders."  United States v. Whitten, 610 F.3d 168, 204 (2d Cir. 2010).

Nonetheless, since the jury has already heard substantial testimony at the guilt phase about the crimes committed by Joseph Massino, Salvatore Vitale, and James Tartaglione, the court will permit evidence that none of these individuals will be sentenced to death to be moved into the penalty phase.  The court will also allow the Defendant to argue to the jury that neither Massino, Vitale, nor Tartaglione will be sentenced to death so that the jury can consider this fact in its assessment of whether Defendant has proven proposed mitigating factor # 16: "Other relevant circumstances weigh against imposition of a sentence of death."  (Docket Entry # 1202 at 2.)  The court will not, however, submit to the jury the mitigating factors proposed by the

5

Defendant, which—as they are now stated—do not require a finding of equal culpability or other factors applicable to meaningful proportionality analysis.

Under 18 U.S.C. § 3592(a)(4), the Defendant will be permitted to prove the fact that Dominick Cicale, Michael Mancuso, and Anthony Aiello "will not be punished by death," but no evidence of these co-defendants' specific sentences will be permitted.  See 18 U.S.C. § 3593(c). Furthermore, on the special verdict sheet, the court will combine statements about these three co-defendants into one mitigating factor:  "Dominick Cicale, Michael Mancuso, and/or Anthony Aiello are/is equally culpable in the murder of Randolph Pizzolo, and will not be punished by death."

The court will not permit the Defendant to introduce the fact that Patrick Defilippo will not be sentenced to death because he is not a co-defendant under 18 U.S.C. § 3592(a)(4). Furthermore, this evidence would be cumulative of other comparative punishment evidence, and because little testimony has been introduced about the crimes committed by Defilippo, introduction of this factor would create a trial within and trial that would mislead the jury and cause confusion.  See 18 U.S.C. § 3593(c).

## B.      Proposed Mitigating Factor # 11: Residual Doubt

The Defendant has also noticed his intent to include the following mitigating factor:

11.  The evidence does not establish Mr. Basciano's guilt of the capital offense, the murder of Randolph Pizzolo, with sufficient certainty to justify the imposition of a sentence of death.

(Docket Entry # 1202.)  The court will not submit this mitigating factor to the jury.

Proposed mitigating factor # 11 calls upon jurors to weigh any residual doubt they may have about the Basciano's guilt on the capital count.  As the Supreme Court has held, a criminal

defendant is not entitled to a residual doubt instruction in the penalty phase.  Franklin v. Lynaugh, 487 U.S. 164, 173-74 (1988).  Although the jury may "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense," lingering doubts as to the defendant's guilt "are not over any aspect of [the defendant's] 'character,' 'record,' or 'circumstance of the offense.'"  Id. at 174 (quoting Eddings v. Oklahoma, 455 U.S. 104, 110 (1982)).  Such a consideration is therefore not constitutionally required.  Id. (further noting that none of the Court's prior decisions have recognized a constitutional right to inclusion of this mitigating factor).

In the trial phase, the jury found Defendant guilty of the murder of Randolph Pizzolo in aid of racketeering beyond a reasonable doubt.  This same standard of proof—beyond a reasonable doubt—applies in the penalty phase.  The court finds that revisiting the jury's trial phase determination through the unnecessary inclusion of a residual doubt mitigating factor would risk confusing the jury and would wrongly suggest the standard of proof for the capital count is higher than "beyond a reasonable doubt."  Quite simply, nothing in the case law or the Federal Death Penalty Act ("FDPA") suggests that it would be appropriate to instruct the jury that they may consider it a mitigating factor that the capital count was not proven to a standard greater than beyond reasonable doubt.  Proposed mitigating factor # 11 is therefore excluded.

### C.  Remaining Mitigating Factors

As discussed at oral argument on May 20, 2011, Defendant may provide the court with a proposed revision of mitigating factor # 15—"Mr. Basciano's life has value"—so as to provide the jury with more specific guidance.  The Defendant's submission, if any, is due by the end of the day today, May 20, 2011.  The court reserves decision on the permissibility of this factor pending this possible additional submission.

7

To the extent that the Government has moved to preclude or consolidate the remaining mitigating factors, such motions are denied.  Nonetheless, the court holds that insofar as Defendant intends to introduce evidence pursuant to proposed mitigating factor # 16—"[o]ther relevant circumstances weigh against imposition of the death penalty"—the Defendant must provide notice of the specific issues that it intends to address.

## II.   BIFURCATED PENALTY PHASE

The Defendant has moved to withdraw his previously granted motion to bifurcate the penalty phase.  (Docket Entry # 1201 at 6.)  The Defendant's motion to withdraw is granted. Thus, upon the Defendant's request and the Government's consent, the penalty phase will not be bifurcated.   The Government has requested that the court provide the jury with an additional instruction in order to prevent any potential for spillover prejudice.   (Docket Entry # 1199.) Consistent with the parties' agreement at oral argument on May 20, 2011, the following charge will not be provided in the opening penalty phase jury instruction but will be provided to the jury, if necessary, upon the introduction of evidence about victim impact or other non-statutory aggravators:

> During the penalty phase, you have heard evidence pertaining to non-statutory aggravating factors including victim impact evidence related to how the victim Randy Pizzolo's death affected Pizzolo's family.  I instruct you that you may not consider this evidence in deciding the preliminary issues of whether the government has proven beyond a reasonable doubt (1) that the defendant is at least 18 years old, (2) that the defendant acted with the requisite preliminary intent factor, or (3) the existence of any statutory aggravator.

See United States v. Bolden, 545 F.3d 609, 618-19 (8th Cir. 2008).  The parties are invited to advise the court should they think this instruction becomes appropriate.

### III. DISCOVERY

Defendant has moved for the court to reconsider its numerous denials of Defendant's request for disclosure of the transcript of the ex parte in camera hearing before Magistrate Judge Levy pertaining to the validity of the Special Administrative Measures ("SAMS") order, and the identity of the inmate that provided the Government with the handwritten list authored by Defendant. (Docket Entry # 1201 at 7-8.) This motion for reconsideration is denied for the reasons stated by this court on April 11, 2011:

> The Court has reviewed defendant's April 6th, 2011 renewed motion to compel disclosure of an ex parte affidavit submitted to Magistrate Levy concerning the so-called list and the transcript of ex parte proceedings before the magistrate in connection with the list. In its January 12th, 2011 pretrial order the Court denied a motion by the defendant for an order compelling disclosure of these same materials. Defendant argues the changed circumstance justifies reconsideration of that decision—the Court disagrees.
>
> The Court has considered the defendant's renewed request and concludes that if the government chooses not to introduce evidence about the list at a potential penalty phase, the reason for the Court's previous ruling are equally or more compelling. Thus, there is no justification for the Court to revisit previous rulings regarding the disclosure of these materials as set out in the January 12th, 2011 pretrial order and in previous rulings. The defendant's motion is denied.

(Transcript of April 11, 2011 at 4508-09.)

Defendant has not formally noticed his intent to rely on this issue as a mitigating factor and the Government has not moved to preclude it. Nonetheless, the court has serious concerns about the propriety of allowing Defendant to admit evidence to show that "the Government's investigation in connection with the List, was conducted in bad faith, or at the very least was flawed," as Defendant has suggested he intends to do. (Docket Entry # 1201 at 8.) As the court has previously noted, the list was not discovered until approximately a year and a half after the Pizzolo murder and the alleged solicitation to murder AUSA Andres. The court will not allow

9

this penalty phase to be converted into a trial of the United States Attorney's Office's methods and decision-making process, unless the Defendant can demonstrate through case law the propriety of putting such evidence and arguments before the jury.

## IV.        MOTION TO PRECLUDE ADMITON OF UNADJUDICATED CONDUCT

Defendant has moved for the court to preclude the Government from offering evidence of numerous instances of Basciano's unadjudicated alleged serious crimes of violence.  (Docket Entry # 1204.)  The Government has represented that it intends to prove several unadjudicated crimes of violence in support of the future dangerousness aggravating factor and in support of the noticed aggravating factor, "additional uncharged homicides, attempted homicides or other serious crimes of violence" ("uncharged crimes of violence aggravator").  (Docket Entry # 1200).

With regard to the uncharged crimes of violence aggravator, the court held in its omnibus pretrial memorandum and order that,

> [T]he court will require the Government to prove the specific uncharged crimes unanimously and beyond a reasonable doubt, rather than only requiring this standard of proof for the Non-Statutory Aggravating Factor generally.  See e.g., Gilbert, 120 F. Supp. 2d at 152 n.2 ("The Government will have to prove the commission of such crimes beyond a reasonable doubt.") (citing United States v. Cooper, 91 F. Supp. 2d 90, 108 (D.D.C. 2000).

(Docket Entry # 1018 at 80.)

If evidence of unadjudicated crimes of violence were being admitted only for the purpose proving the uncharged crimes of violence aggravator, then the court would need to determine whether sufficient evidence of these crimes exists for the Government to meet its burden of proof beyond a reasonable doubt.  Because these instances of unadjudicated conduct are also being admitted to prove the future dangerousness aggravator, however, they need not be proven

beyond a reasonable doubt for the purpose of that aggravating factor, but merely need to be relevant.

The court has determined that this evidence satisfies the threshold relevance requirement of 18 U.S.C. § 3593(c). As the court held in the omnibus pretrial memorandum and order, these past serious crimes of violence are highly relevant, both to the future dangerousness aggravating factor and to the uncharged crimes of violence aggravating factor. (Docket Entry # 1018 at 79-80). After all, "evidence of other acts of violence by a defendant is arguably more relevant and probative than any other type of aggravating evidence supporting imposition of the death penalty." United States v. Gilbert, 120 F. Supp. 2d 147, 152 (D. Mass. 2000) (internal citation and quotation marks omitted). Furthermore, from the Government's submission it is clear that the Government will be able to produce sufficient evidence of each of these crimes for them to be submitted to the jury in support of either mitigating factor, even if the reasonable doubt standard is applied. (See Docket Entry # 1200.)

The court has also considered whether the probative value of each crime outweighs the danger of creating unfair prejudice, confusing the issues or misleading the jury, as § 3593(c) requires. As noted above, these alleged crimes are highly probative of the noticed aggravating factors and the jury's sentencing decision. Yet this evidence is not unfairly prejudicial because it enables the jurors to make the individualized sentencing decision that is required of them.

As this court previously noted, in order to achieve the heightened reliability required by the law, "more evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors. . . . [A] long line of Supreme Court cases [] have emphasized the importance of allowing the sentencing body to have full and complete information about the defendant." United States v. Fell, 360 F.3d 135, 143 (2d Cir. 2004). The FDPA evidentiary

11

standard "permits the jury to have before it all possible relevant information about the individual defendant whose fate it must determine.  As a result, the FDPA does not undermine 'heightened reliability,' it promotes it."  Id. at 144.  To bar the jury from hearing evidence about the Defendant's alleged participation in unadjudicated crimes of serious violence for the purpose of proving both the Defendant's future dangerousness and to prove the uncharged crimes of violence aggravator would deprive the jury of evidence essential to its duty of making an individualized sentencing determination.

The court also notes that there is almost no risk that this evidence will confuse the issues or mislead the jury, as it is highly relevant to the determination they are charged to make.  See 18 U.S.C. § 3593(c).  Consequently, the Government will be permitted to introduce evidence about all alleged crimes noticed in its Trial Brief (Docket Entry # 1200), in addition to the alleged Mancuso murder plot as discussed at oral argument and introduced in the trial phase.[1]

## V.   CONCLUSION

For the foregoing reasons the Government's and Defendant's motions are GRANTED in part and DENIED in part.  Proposed mitigating factors 3, 7, 8, 9 and 11 are impermissible and will be excluded.  The court will permit the Defendant to introduce evidence as to the other proposed mitigating factors as stated in Appendix A to this order.  As the penalty phase proceeds, these factors may be withdrawn or modified on the motion of the Defendant.  Before

---

[1]  As discussed today at oral argument, the parties will provide additional briefing by May 22, 2011 as to the permissibility of the Government's proposed introduction of evidence to prove the prior uncharged murder of Anthony Colangelo.  The court reserves decision on this issue.

introducing evidence pursuant to proposed mitigating factor 16, Defendant must identify the

issue or issues he intends to raise.

SO ORDERED.

                                                    /s/ Nicholas G. Garaufis

Dated: Brooklyn, New York                    NICHOLAS G. GARAUFIS
       May 20, 2011                        United States District Judge

Appendix A: Mitigating Factors

Pursuant to the court's order dated May 20, 2011, Defendant Vincent Basciano may

introduce evidence of the following mitigating factors for submission to the jury:

1.      If not sentenced to death, Mr. Basciano will be imprisoned for the remainder of
his life with no possibility of release.  This factor must be accepted as proven.

2.      The Federal Bureau of Prisons is capable of fashioning conditions of confinement
that will control Mr. Basciano's activities while he is in prison.

3.      Dominick Cicale, Michael Mancuso, and/or Anthony Aiello are/is equally
culpable in the murder of Randolph Pizzolo, and will not be punished by death.

4.      By voluntarily choosing to engage in violent criminal conduct, the victim in this
case, Randolph Pizzolo willingly participated in dangerous and illegal activities, a
circumstance that contributed to his death.

5.      If Mr. Basciano is executed, others will suffer grief and loss, including his family
and friends.

6.      Mr. Basciano suffered an abusive childhood.

7.      Mr. Basciano has proven himself to be capable of acts of generosity and kindness.

8.      Mr. Basciano's life has value.[2]

9.      Other relevant circumstances weigh against imposition of a sentence of death.

---

[2]  As stated in the court's order dated May 20, 2011, decision on this factor is reserved pending submission by the
Defendant and possible rephrasing.