

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:SEF/NMA

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 25, 2011

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Vincent Basciano
           Criminal Docket No. 05-060 (S-12)(NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in response to the Court's Order to brief the following issues: (1) the standard for determining whether the victim, Randolph Pizzolo, died "as a direct result" of an act of the defendant, as contemplated by 18 U.S.C. 3591(a)(2)(C); (2) how that standard differs, if at all, from the causation standard on which the jury was charged at the conclusion of the guilt phase; and (3) how, if at all, the jury should be instructed concerning the meaning of "direct result" in Section 3591(a)(2)(C).

      Section 3591(a)(2) provides that for a defendant to be eligible for the death penalty, the government must first prove that the defendant had the requisite mental state when he committed the offense.  This requirement is satisfied if the government proves, beyond a reasonable doubt, at least one of four statutory intent factors.  These are that the defendant:

          (A) intentionally killed the victim;

          (B) intentionally inflicted serious bodily
          injury that resulted in the death of the
          victim;

          (C) intentionally participated in an act,
          contemplating that the life of a person would

>   be taken or intending that lethal force would
>   be used in connection with a person, other
>   than one of the participants in the offense,
>   and the victim died as a direct result of the
>   act; or
>
>   (D) intentionally and specifically engaged in
>   an act of violence, knowing that the act
>   created a grave risk of death to a person,
>   other than one of the participants in the
>   offense, such that participation in the act
>   constituted a reckless disregard for human
>   life and the victim died as a direct result
>   of the act.

Section 3591 is, on its face, directed at the defendant's mental state. See, e.g., United States v. Kee, 2000 WL 863119, at *11 (S.D.N.Y. 2000) (noting that the factors set forth in Section 3591 "simply assure that no one is sentenced to death without the Government having proved a sufficient level of mens rea in connection with the capital offense"); see also United States v. Webster, 162 F.3d 308, 355 (5th Cir. 1998) (noting that Section 3591(a) "codifies the command in [Enmund v. Florida, 458 U.S. 782, 797 (1982) and Tison v. Arizona, 481 U.S. 137, 157 (1987)] to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life"); id. at 322 (noting that Section 3591 "meets this requirement" of Enmund and Tison "by limiting even the possibility of a death sentence to those defendants with sufficient culpability"). As the Supreme Court has succinctly observed, the preliminary intent factor asks the jury to "determine[] whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity." United States v. Jones, 527 U.S. 373, 407 (1999).

>   The statute's language anticipates various factual scenarios and mental states.  In so doing, Congress indicated that its intent was to make capital punishment available not just in the narrow circumstance where the defendant intentionally killed the victim, but also in other "particularly heinous circumstances . . . where the defendant acted with a state of mind short of an intent to kill or in circumstances where an intent to kill can be imputed to the defendant." See House Report No. 103-466 (Mar. 25, 1994).  "These circumstances can include situations in which the defendant <u>intentionally and substantially participated in actions that resulted in a death</u> and where the defendant's participation in an act of violence

3

constituted extreme reckless indifference for human life." <u>Id</u>. (emphasis added).

As its legislative history thus makes plain, Section 3591(a)(2)(C) was specifically intended to encompass circumstances such as the present one, where the evidence has proved, and the jury has found, that the defendant gave an order, thereby becoming a member of a conspiracy to kill Randolph Pizzolo, and took other actions that ultimately resulted in Pizzolo's death.  The case law confirms this reading.  <u>See, e.g.</u>, <u>United States v. Baskerville</u>, 491 F. Supp. 2d 516, 522 (D.N.J. 2007) ("To the extent the jury may find that Defendant directed that McCray be killed, such an act would be encompassed by the statutory language in subsection (C) which requires a defendant to have 'participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person.'").

Basciano contends that because the statute requires that the victim have died "as a direct result" of the act in which the defendant participated, a defendant is absolved of death eligibility where there are additional or intervening factors that also contributed to the victim's death.[1]  He appears to argue that, in order to have the requisite mental state to satisfy the Section 3591 gateway factor, his actions must have been the sole or nearest cause of Pizzolo's death.  Basciano thus seeks to transform Section 3591 from a statute that sets forth the requisite mental state for death eligibility into one that imposes a heightened causation standard for capital cases.  That, however, is not what the statute says, or was intended to say.  Moreover, such a reading is inconsistent with the very purpose of the statute, which is to broaden liability while ensuring that the defendant acted with the requisite mental culpability to render him eligible for capital punishment – <u>not</u> to relieve the defendant of responsibility simply because an intervening act became another cause of the victim's death.  <u>Cf.</u> <u>United States v. Moussaoui</u>, 382 F.3d 453, 473 n.21 (4th Cir. 2004) (noting without deciding that defendant might be eligible for death penalty pursuant to 18 U.S.C. § 3591(a)(2)(C) simply for failing to

---

[1]  In this regard, Basciano's argument is simply an attempt to introduce through the preliminary intent gateway factor the concepts of termination and multiple conspiracies on which he previously sought unsuccessfully to have the jury instructed during the guilt phase.  Those concepts, however, are wholly distinct from the defendant's intent, and Basciano should not be permitted to confuse the jury in this way.

4

disclose knowledge of September 11 terrorism conspiracy, even if he was not actually part of September 11 attacks).

Here, Basciano's mental state did not change simply because – unbeknownst to him – Dominick Cicale hesitated in carrying out his order, and Michael Mancuso then reaffirmed it. As the evidence adduced at trial made clear, Basciano intended for Pizzolo to die, he ordered Pizzolo to die, his desire to see that murder carried out did not waiver, and he was sufficiently pleased when his order was followed that he took credit for the murder while in prison. In so doing, Basciano "intentionally and substantially participated in actions that resulted in a death." He thus had the requisite intent under Section 3591. More is not required.

This reading is consistent with the aiding and abetting charge the Court already provided to the jury during the guilt phase. See United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000) (affirming that the intent requirement of Section 3591(a)(2)(C) was satisfied where district court instructed jury on intent required for aiding and abetting murder and jury found defendant guilty of aiding and abetting). In that charge, the Court instructed the jury that "the defendant willfully associated himself in some way with the criminal venture, and that the defendant willfully participated in the criminal venture as something he wanted to bring about." During the guilt phase, the jury was also instructed that for this element to be satisfied, they needed to assess whether the defendant's conduct "actually and proximately caused the death of Randolph Pizzolo." The Court instructed:

> "Actual cause" means that the government must, at least, prove that the defendant's conduct forged a link in the chain of causes that brought about the death of Randolph Pizzolo. That is, the defendant's actions must have actually contributed to the death. If you find that they did, the defendant is not relieved of responsibility because other causes may have also contributed.
>
> "Proximate cause" means that there is a sufficient causal connection between the act of the defendant and the death of the victim. Proof of proximate caustion requires evidence that the defendant's act was a substantial factor in bringing about or actually causing death, that is, if the death was a reasonably

5

> foreseeable consequence of the defendant's actions.  A proximate cause need not always be the nearest cause either in time or space.  In addition, there may be more than one proximate cause of a death.  Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause a death.  A defendant's conduct is not a proximate cause of a death if the death was not the reasonably foreseeable consequence of the defendant's actions, or if the death was caused by an unforeseeable  intervening event that was the sole proximate cause of the victim's death.

(T. 8298:14-8299:11).  With this charge, the jury has already been required to find that the defendant engaged in intentional conduct that resulted in Pizzolo's death, thereby satisfying the requirements of Section 3591(a)(2)(C).

Finally, the Court ordered the parties to suggest an instruction so that the Court may charge the jury with regard to the meaning of "direct result" pursuant to Section 3591(a)(2)(C).  Consistent with the Eighth Circuit's guidance in Paul, the government respectfully submits that "[t]he best way to comply with section 3591(a)(2) is to actually use the language of the statute in the jury instruction."  Id.  The jury should thus be instructed as follows:

> When determining whether intent or knowledge has been proven, you may consider any statements and acts of the Defendant and any other facts and circumstances in evidence that may aid in your determination.  You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or committed.
>
> In order to find the defendant had the required mental state, you must find that the defendant intentionally participated in an act, contemplating that the life of Randolph Pizzolo would be taken or that lethal force would be used in connection with a person, other than one of the participants in the

6

offense, and that Randolph Pizzolo died as a direct result of the act undertaken by the defendant.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /S/
Taryn Merkl
Nicole M. Argentieri
Jack Dennehy
Stephen E. Frank
Assistant U.S. Attorneys
(718) 254-6064/6232/6133/6132

cc: Clerk of Court (NGG)(by ECF)
    Defense Counsel (by Email & ECF)



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:SEF/NMA

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 25, 2011

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:  United States v. Vincent Basciano
            Criminal Docket No. 05-060 (S-12)(NGG)

Dear Judge Garaufis:

     The government respectfully submits this letter in response to the Court's Order to brief the following issues: (1) the standard for determining whether the victim, Randolph Pizzolo, died "as a direct result" of an act of the defendant, as contemplated by 18 U.S.C. 3591(a)(2)(C); (2) how that standard differs, if at all, from the causation standard on which the jury was charged at the conclusion of the guilt phase; and (3) how, if at all, the jury should be instructed concerning the meaning of "direct result" in Section 3591(a)(2)(C).

     Section 3591(a)(2) provides that for a defendant to be eligible for the death penalty, the government must first prove that the defendant had the requisite mental state when he committed the offense.  This requirement is satisfied if the government proves, beyond a reasonable doubt, at least one of four statutory intent factors.  These are that the defendant:

        (A) intentionally killed the victim;

        (B) intentionally inflicted serious bodily
        injury that resulted in the death of the
        victim;

        (C) intentionally participated in an act,
        contemplating that the life of a person would

2

>be taken or intending that lethal force would
>be used in connection with a person, other
>than one of the participants in the offense,
>and the victim died as a direct result of the
>act; or
>
>(D) intentionally and specifically engaged in
>an act of violence, knowing that the act
>created a grave risk of death to a person,
>other than one of the participants in the
>offense, such that participation in the act
>constituted a reckless disregard for human
>life and the victim died as a direct result
>of the act.

Section 3591 is, on its face, directed at the defendant's mental state. See, e.g., United States v. Kee, 2000 WL 863119, at *11 (S.D.N.Y. 2000) (noting that the factors set forth in Section 3591 "simply assure that no one is sentenced to death without the Government having proved a sufficient level of mens rea in connection with the capital offense"); see also United States v. Webster, 162 F.3d 308, 355 (5th Cir. 1998) (noting that Section 3591(a) "codifies the command in [Enmund v. Florida, 458 U.S. 782, 797 (1982) and Tison v. Arizona, 481 U.S. 137, 157 (1987)] to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life"); id. at 322 (noting that Section 3591 "meets this requirement" of Enmund and Tison "by limiting even the possibility of a death sentence to those defendants with sufficient culpability"). As the Supreme Court has succinctly observed, the preliminary intent factor asks the jury to "determine[] whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity." United States v. Jones, 527 U.S. 373, 407 (1999).

The statute's language anticipates various factual scenarios and mental states. In so doing, Congress indicated that its intent was to make capital punishment available not just in the narrow circumstance where the defendant intentionally killed the victim, but also in other "particularly heinous circumstances . . . where the defendant acted with a state of mind short of an intent to kill or in circumstances where an intent to kill can be imputed to the defendant." See House Report No. 103-466 (Mar. 25, 1994). "These circumstances can include situations in which the defendant <u>intentionally and substantially participated in actions that resulted in a death</u> and where the defendant's participation in an act of violence

constituted extreme reckless indifference for human life." Id. (emphasis added).

As its legislative history thus makes plain, Section 3591(a)(2)(C) was specifically intended to encompass circumstances such as the present one, where the evidence has proved, and the jury has found, that the defendant gave an order, thereby becoming a member of a conspiracy to kill Randolph Pizzolo, and took other actions that ultimately resulted in Pizzolo's death. The case law confirms this reading. See, e.g., United States v. Baskerville, 491 F. Supp. 2d 516, 522 (D.N.J. 2007) ("To the extent the jury may find that Defendant directed that McCray be killed, such an act would be encompassed by the statutory language in subsection (C) which requires a defendant to have 'participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person.'").

Basciano contends that because the statute requires that the victim have died "as a direct result" of the act in which the defendant participated, a defendant is absolved of death eligibility where there are additional or intervening factors that also contributed to the victim's death.[1] He appears to argue that, in order to have the requisite mental state to satisfy the Section 3591 gateway factor, his actions must have been the sole or nearest cause of Pizzolo's death. Basciano thus seeks to transform Section 3591 from a statute that sets forth the requisite mental state for death eligibility into one that imposes a heightened causation standard for capital cases. That, however, is not what the statute says, or was intended to say. Moreover, such a reading is inconsistent with the very purpose of the statute, which is to broaden liability while ensuring that the defendant acted with the requisite mental culpability to render him eligible for capital punishment – not to relieve the defendant of responsibility simply because an intervening act became another cause of the victim's death. Cf. United States v. Moussaoui, 382 F.3d 453, 473 n.21 (4th Cir. 2004) (noting without deciding that defendant might be eligible for death penalty pursuant to 18 U.S.C. § 3591(a)(2)(C) simply for failing to

---

[1] In this regard, Basciano's argument is simply an attempt to introduce through the preliminary intent gateway factor the concepts of termination and multiple conspiracies on which he previously sought unsuccessfully to have the jury instructed during the guilt phase. Those concepts, however, are wholly distinct from the defendant's intent, and Basciano should not be permitted to confuse the jury in this way.

4

disclose knowledge of September 11 terrorism conspiracy, even if he was not actually part of September 11 attacks).

Here, Basciano's mental state did not change simply because – unbeknownst to him – Dominick Cicale hesitated in carrying out his order, and Michael Mancuso then reaffirmed it. As the evidence adduced at trial made clear, Basciano intended for Pizzolo to die, he ordered Pizzolo to die, his desire to see that murder carried out did not waiver, and he was sufficiently pleased when his order was followed that he took credit for the murder while in prison. In so doing, Basciano "intentionally and substantially participated in actions that resulted in a death." He thus had the requisite intent under Section 3591. More is not required.

This reading is consistent with the aiding and abetting charge the Court already provided to the jury during the guilt phase. See United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000) (affirming that the intent requirement of Section 3591(a)(2)(C) was satisfied where district court instructed jury on intent required for aiding and abetting murder and jury found defendant guilty of aiding and abetting). In that charge, the Court instructed the jury that "the defendant willfully associated himself in some way with the criminal venture, and that the defendant willfully participated in the criminal venture as something he wanted to bring about." During the guilt phase, the jury was also instructed that for this element to be satisfied, they needed to assess whether the defendant's conduct "actually and proximately caused the death of Randolph Pizzolo." The Court instructed:

> "Actual cause" means that the government must, at least, prove that the defendant's conduct forged a link in the chain of causes that brought about the death of Randolph Pizzolo. That is, the defendant's actions must have actually contributed to the death. If you find that they did, the defendant is not relieved of responsibility because other causes may have also contributed.
>
> "Proximate cause" means that there is a sufficient causal connection between the act of the defendant and the death of the victim. Proof of proximate caustion requires evidence that the defendant's act was a substantial factor in bringing about or actually causing death, that is, if the death was a reasonably

>  foreseeable consequence of the defendant's
>  actions.  A proximate cause need not always
>  be the nearest cause either in time or space.
>  In addition, there may be more than one
>  proximate cause of a death.  Many factors or
>  the conduct of two or more people may operate
>  at the same time, either independently or
>  together, to cause a death.  A defendant's
>  conduct is not a proximate cause of a death
>  if the death was not the reasonably
>  foreseeable consequence of the defendant's
>  actions, or if the death was caused by an
>  unforeseeable  intervening event that was the
>  sole proximate cause of the victim's death.

(T. 8298:14-8299:11).  With this charge, the jury has already been required to find that the defendant engaged in intentional conduct that resulted in Pizzolo's death, thereby satisfying the requirements of Section 3591(a)(2)(C).

 Finally, the Court ordered the parties to suggest an instruction so that the Court may charge the jury with regard to the meaning of "direct result" pursuant to Section 3591(a)(2)(C). Consistent with the Eighth Circuit's guidance in Paul, the government respectfully submits that "[t]he best way to comply with section 3591(a)(2) is to actually use the language of the statute in the jury instruction."  Id.  The jury should thus be instructed as follows:

> When determining whether intent or knowledge
> has been proven, you may consider any
> statements and acts of the Defendant and any
> other facts and circumstances in evidence
> that may aid in your determination.  You may,
> but are not required to, infer that a person
> intends the natural and probable consequences
> of acts knowingly done or committed.
>
> In order to find the defendant had the
> required mental state, you must find that the
> defendant intentionally participated in an
> act, contemplating that the life of Randolph
> Pizzolo would be taken or that lethal force
> would be used in connection with a person,
> other than one of the participants in the

6

        offense, and that Randolph Pizzolo died as a direct result of the act undertaken by the defendant.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                          By:   /S/
                                        Taryn Merkl
                                        Nicole M. Argentieri
                                        Jack Dennehy
                                        Stephen E. Frank
                                        Assistant U.S. Attorneys
                                        (718) 254-6064/6232/6133/6132

cc:   Clerk of Court (NGG)(by ECF)
      Defense Counsel (by Email & ECF)



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:SEF/NMA

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 25, 2011

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Vincent Basciano
           Criminal Docket No. 05-060 (S-12)(NGG)

Dear Judge Garaufis:

     The government respectfully submits this letter in response to the Court's Order to brief the following issues: (1) the standard for determining whether the victim, Randolph Pizzolo, died "as a direct result" of an act of the defendant, as contemplated by 18 U.S.C. 3591(a)(2)(C); (2) how that standard differs, if at all, from the causation standard on which the jury was charged at the conclusion of the guilt phase; and (3) how, if at all, the jury should be instructed concerning the meaning of "direct result" in Section 3591(a)(2)(C).

     Section 3591(a)(2) provides that for a defendant to be eligible for the death penalty, the government must first prove that the defendant had the requisite mental state when he committed the offense.  This requirement is satisfied if the government proves, beyond a reasonable doubt, at least one of four statutory intent factors.  These are that the defendant:

        (A) intentionally killed the victim;

        (B) intentionally inflicted serious bodily
        injury that resulted in the death of the
        victim;

        (C) intentionally participated in an act,
        contemplating that the life of a person would

2

>     be taken or intending that lethal force would
>     be used in connection with a person, other
>     than one of the participants in the offense,
>     and the victim died as a direct result of the
>     act; or
>
>     (D) intentionally and specifically engaged in
>     an act of violence, knowing that the act
>     created a grave risk of death to a person,
>     other than one of the participants in the
>     offense, such that participation in the act
>     constituted a reckless disregard for human
>     life and the victim died as a direct result
>     of the act.

Section 3591 is, on its face, directed at the defendant's mental state. See, e.g., United States v. Kee, 2000 WL 863119, at *11 (S.D.N.Y. 2000) (noting that the factors set forth in Section 3591 "simply assure that no one is sentenced to death without the Government having proved a sufficient level of mens rea in connection with the capital offense"); see also United States v. Webster, 162 F.3d 308, 355 (5th Cir. 1998) (noting that Section 3591(a) "codifies the command in [Enmund v. Florida, 458 U.S. 782, 797 (1982) and Tison v. Arizona, 481 U.S. 137, 157 (1987)] to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life"); id. at 322 (noting that Section 3591 "meets this requirement" of Enmund and Tison "by limiting even the possibility of a death sentence to those defendants with sufficient culpability"). As the Supreme Court has succinctly observed, the preliminary intent factor asks the jury to "determine[] whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity." United States v. Jones, 527 U.S. 373, 407 (1999).

      The statute's language anticipates various factual scenarios and mental states. In so doing, Congress indicated that its intent was to make capital punishment available not just in the narrow circumstance where the defendant intentionally killed the victim, but also in other "particularly heinous circumstances . . . where the defendant acted with a state of mind short of an intent to kill or in circumstances where an intent to kill can be imputed to the defendant." See House Report No. 103-466 (Mar. 25, 1994). "These circumstances can include situations in which the defendant <u>intentionally and substantially participated in actions that resulted in a death</u> and where the defendant's participation in an act of violence

3

constituted extreme reckless indifference for human life." <u>Id</u>. (emphasis added).

As its legislative history thus makes plain, Section 3591(a)(2)(C) was specifically intended to encompass circumstances such as the present one, where the evidence has proved, and the jury has found, that the defendant gave an order, thereby becoming a member of a conspiracy to kill Randolph Pizzolo, and took other actions that ultimately resulted in Pizzolo's death. The case law confirms this reading. <u>See, e.g.</u>, <u>United States v. Baskerville</u>, 491 F. Supp. 2d 516, 522 (D.N.J. 2007) ("To the extent the jury may find that Defendant directed that McCray be killed, such an act would be encompassed by the statutory language in subsection (C) which requires a defendant to have 'participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person.'").

Basciano contends that because the statute requires that the victim have died "as a direct result" of the act in which the defendant participated, a defendant is absolved of death eligibility where there are additional or intervening factors that also contributed to the victim's death.[1] He appears to argue that, in order to have the requisite mental state to satisfy the Section 3591 gateway factor, his actions must have been the sole or nearest cause of Pizzolo's death. Basciano thus seeks to transform Section 3591 from a statute that sets forth the requisite mental state for death eligibility into one that imposes a heightened causation standard for capital cases. That, however, is not what the statute says, or was intended to say. Moreover, such a reading is inconsistent with the very purpose of the statute, which is to broaden liability while ensuring that the defendant acted with the requisite mental culpability to render him eligible for capital punishment – <u>not</u> to relieve the defendant of responsibility simply because an intervening act became another cause of the victim's death. <u>Cf.</u> <u>United States v. Moussaoui</u>, 382 F.3d 453, 473 n.21 (4th Cir. 2004) (noting without deciding that defendant might be eligible for death penalty pursuant to 18 U.S.C. § 3591(a)(2)(C) simply for failing to

---

[1] In this regard, Basciano's argument is simply an attempt to introduce through the preliminary intent gateway factor the concepts of termination and multiple conspiracies on which he previously sought unsuccessfully to have the jury instructed during the guilt phase. Those concepts, however, are wholly distinct from the defendant's intent, and Basciano should not be permitted to confuse the jury in this way.

4

disclose knowledge of September 11 terrorism conspiracy, even if he was not actually part of September 11 attacks).

Here, Basciano's mental state did not change simply because – unbeknownst to him – Dominick Cicale hesitated in carrying out his order, and Michael Mancuso then reaffirmed it. As the evidence adduced at trial made clear, Basciano intended for Pizzolo to die, he ordered Pizzolo to die, his desire to see that murder carried out did not waiver, and he was sufficiently pleased when his order was followed that he took credit for the murder while in prison. In so doing, Basciano "intentionally and substantially participated in actions that resulted in a death." He thus had the requisite intent under Section 3591. More is not required.

This reading is consistent with the aiding and abetting charge the Court already provided to the jury during the guilt phase. See United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000) (affirming that the intent requirement of Section 3591(a)(2)(C) was satisfied where district court instructed jury on intent required for aiding and abetting murder and jury found defendant guilty of aiding and abetting). In that charge, the Court instructed the jury that "the defendant willfully associated himself in some way with the criminal venture, and that the defendant willfully participated in the criminal venture as something he wanted to bring about." During the guilt phase, the jury was also instructed that for this element to be satisfied, they needed to assess whether the defendant's conduct "actually and proximately caused the death of Randolph Pizzolo." The Court instructed:

> "Actual cause" means that the government must, at least, prove that the defendant's conduct forged a link in the chain of causes that brought about the death of Randolph Pizzolo. That is, the defendant's actions must have actually contributed to the death. If you find that they did, the defendant is not relieved of responsibility because other causes may have also contributed.
>
> "Proximate cause" means that there is a sufficient causal connection between the act of the defendant and the death of the victim. Proof of proximate caustion requires evidence that the defendant's act was a substantial factor in bringing about or actually causing death, that is, if the death was a reasonably

5

>foreseeable consequence of the defendant's actions.  A proximate cause need not always be the nearest cause either in time or space.  In addition, there may be more than one proximate cause of a death.  Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause a death.  A defendant's conduct is not a proximate cause of a death if the death was not the reasonably foreseeable consequence of the defendant's actions, or if the death was caused by an unforeseeable intervening event that was the sole proximate cause of the victim's death.

(T. 8298:14-8299:11).  With this charge, the jury has already been required to find that the defendant engaged in intentional conduct that resulted in Pizzolo's death, thereby satisfying the requirements of Section 3591(a)(2)(C).

Finally, the Court ordered the parties to suggest an instruction so that the Court may charge the jury with regard to the meaning of "direct result" pursuant to Section 3591(a)(2)(C).  Consistent with the Eighth Circuit's guidance in Paul, the government respectfully submits that "[t]he best way to comply with section 3591(a)(2) is to actually use the language of the statute in the jury instruction."  Id.  The jury should thus be instructed as follows:

>When determining whether intent or knowledge has been proven, you may consider any statements and acts of the Defendant and any other facts and circumstances in evidence that may aid in your determination.  You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or committed.
>
>In order to find the defendant had the required mental state, you must find that the defendant intentionally participated in an act, contemplating that the life of Randolph Pizzolo would be taken or that lethal force would be used in connection with a person, other than one of the participants in the

6

        offense, and that Randolph Pizzolo died as a direct result of the act undertaken by the defendant.

                                  Respectfully submitted,

                                  LORETTA E. LYNCH
                                  United States Attorney

                        By:   /S/
                                  Taryn Merkl
                                  Nicole M. Argentieri
                                  Jack Dennehy
                                  Stephen E. Frank
                                  Assistant U.S. Attorneys
                                  (718) 254-6064/6232/6133/6132

cc:   Clerk of Court (NGG)(by ECF)
      Defense Counsel (by Email & ECF)