

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:SEF/NMA

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 25, 2011

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

            Re:   United States v. Vincent Basciano
                  Criminal Docket No. 05-060 (S-12)(NGG)

Dear Judge Garaufis:

          The government respectfully submits this letter in
response to the Court's Order to brief the following issues:
(1) the standard for determining whether the victim, Randolph
Pizzolo, died "as a direct result" of an act of the defendant, as
contemplated by 18 U.S.C. 3591(a)(2)(C); (2) how that standard
differs, if at all, from the causation standard on which the jury
was charged at the conclusion of the guilt phase; and (3) how, if
at all, the jury should be instructed concerning the meaning of
"direct result" in Section 3591(a)(2)(C).

          Section 3591(a)(2) provides that for a defendant to be
eligible for the death penalty, the government must first prove
that the defendant had the requisite mental state when he
committed the offense.  This requirement is satisfied if the
government proves, beyond a reasonable doubt, at least one of
four statutory intent factors.  These are that the defendant:

          (A) intentionally killed the victim;

          (B) intentionally inflicted serious bodily
          injury that resulted in the death of the
          victim;

          (C) intentionally participated in an act,
          contemplating that the life of a person would

be taken or intending that lethal force would
be used in connection with a person, other
than one of the participants in the offense,
and the victim died as a direct result of the
act; or

(D) intentionally and specifically engaged in
an act of violence, knowing that the act
created a grave risk of death to a person,
other than one of the participants in the
offense, such that participation in the act
constituted a reckless disregard for human
life and the victim died as a direct result
of the act.

Section 3591 is, on its face, directed at the defendant's mental
state.  See, e.g., United States v. Kee, 2000 WL 863119, at *11
(S.D.N.Y. 2000) (noting that the factors set forth in Section
3591 "simply assure that no one is sentenced to death without the
Government having proved a sufficient level of mens rea in
connection with the capital offense"); see also United States v.
Webster, 162 F.3d 308, 355 (5th Cir. 1998) (noting that Section
3591(a) "codifies the command in [Enmund v. Florida, 458 U.S.
782, 797 (1982) and Tison v. Arizona, 481 U.S. 137, 157 (1987)]
to limit the imposition of the death penalty to those murderers
who both undertake felony participation and demonstrate at least
reckless indifference to human life"); id. at 322 (noting that
Section 3591 "meets this requirement" of Enmund and Tison "by
limiting even the possibility of a death sentence to those
defendants with sufficient culpability"). As the Supreme Court
has succinctly observed, the preliminary intent factor asks the
jury to "determine[] whether there was a killing or death
resulting from the defendant's intentional engagement in life-
threatening activity."  United States v. Jones, 527 U.S. 373, 407
(1999).

        The statute's language anticipates various factual
scenarios and mental states.  In so doing, Congress indicated
that its intent was to make capital punishment available not just
in the narrow circumstance where the defendant intentionally
killed the victim, but also in other "particularly heinous
circumstances . . . where the defendant acted with a state of
mind short of an intent to kill or in circumstances where an
intent to kill can be imputed to the defendant."  See House
Report No. 103-466 (Mar. 25, 1994).  "These circumstances can
include situations in which the defendant intentionally and
substantially participated in actions that resulted in a death
and where the defendant's participation in an act of violence

constituted extreme reckless indifference for human life."  Id.
(emphasis added).

As its legislative history thus makes plain, Section
3591(a)(2)(C) was specifically intended to encompass
circumstances such as the present one, where the evidence has
proved, and the jury has found, that the defendant gave an order,
thereby becoming a member of a conspiracy to kill Randolph
Pizzolo, and took other actions that ultimately resulted in
Pizzolo's death.  The case law confirms this reading.  See, e.g.,
United States v. Baskerville, 491 F. Supp. 2d 516, 522 (D.N.J.
2007) ("To the extent the jury may find that Defendant directed
that McCray be killed, such an act would be encompassed by the
statutory language in subsection (C) which requires a defendant
to have 'participated in an act, contemplating that the life of a
person would be taken or intending that lethal force would be
used in connection with a person.'").

Basciano contends that because the statute requires
that the victim have died "as a direct result" of the act in
which the defendant participated, a defendant is absolved of
death eligibility where there are additional or intervening
factors that also contributed to the victim's death.[1]  He appears
to argue that, in order to have the requisite mental state to
satisfy the Section 3591 gateway factor, his actions must have
been the sole or nearest cause of Pizzolo's death.  Basciano thus
seeks to transform Section 3591 from a statute that sets forth
the requisite mental state for death eligibility into one that
imposes a heightened causation standard for capital cases.  That,
however, is not what the statute says, or was intended to say.
Moreover, such a reading is inconsistent with the very purpose of
the statute, which is to broaden liability while ensuring that
the defendant acted with the requisite mental culpability to
render him eligible for capital punishment – not to relieve the
defendant of responsibility simply because an intervening act
became another cause of the victim's death.  Cf. United States v.
Moussaoui, 382 F.3d 453, 473 n.21 (4th Cir. 2004) (noting without
deciding that defendant might be eligible for death penalty
pursuant to 18 U.S.C. § 3591(a)(2)(C) simply for failing to

---

[1]      In this regard, Basciano's argument is simply an
attempt to introduce through the preliminary intent gateway
factor the concepts of termination and multiple conspiracies on
which he previously sought unsuccessfully to have the jury
instructed during the guilt phase.  Those concepts, however, are
wholly distinct from the defendant's intent, and Basciano should
not be permitted to confuse the jury in this way.

disclose knowledge of September 11 terrorism conspiracy, even if he was not actually part of September 11 attacks).

Here, Basciano's mental state did not change simply because – unbeknownst to him – Dominick Cicale hesitated in carrying out his order, and Michael Mancuso then reaffirmed it. As the evidence adduced at trial made clear, Basciano intended for Pizzolo to die, he ordered Pizzolo to die, his desire to see that murder carried out did not waiver, and he was sufficiently pleased when his order was followed that he took credit for the murder while in prison.  In so doing, Basciano "intentionally and substantially participated in actions that resulted in a death." He thus had the requisite intent under Section 3591.  More is not required.

This reading is consistent with the aiding and abetting charge the Court already provided to the jury during the guilt phase.  See United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000) (affirming that the intent requirement of Section 3591(a)(2)(C) was satisfied where district court instructed jury on intent required for aiding and abetting murder and jury found defendant guilty of aiding and abetting).  In that charge, the Court instructed the jury that "the defendant willfully associated himself in some way with the criminal venture, and that the defendant willfully participated in the criminal venture as something he wanted to bring about."  During the guilt phase, the jury was also instructed that for this element to be satisfied, they needed to assess whether the defendant's conduct "actually and proximately caused the death of Randolph Pizzolo." The Court instructed:

> "Actual cause" means that the government must, at least, prove that the defendant's conduct forged a link in the chain of causes that brought about the death of Randolph Pizzolo.  That is, the defendant's actions must have actually contributed to the death. If you find that they did, the defendant is not relieved of responsibility because other causes may have also contributed.
>
> "Proximate cause" means that there is a sufficient causal connection between the act of the defendant and the death of the victim. Proof of proximate caustion requires evidence that the defendant's act was a substantial factor in bringing about or actually causing death, that is, if the death was a reasonably

foreseeable consequence of the defendant's
actions.  A proximate cause need not always
be the nearest cause either in time or space.
In addition, there may be more than one
proximate cause of a death.  Many factors or
the conduct of two or more people may operate
at the same time, either independently or
together, to cause a death.  A defendant's
conduct is not a proximate cause of a death
if the death was not the reasonably
foreseeable consequence of the defendant's
actions, or if the death was caused by an
unforeseeable  intervening event that was the
sole proximate cause of the victim's death.

(T. 8298:14-8299:11).  With this charge, the jury has already
been required to find that the defendant engaged in intentional
conduct that resulted in Pizzolo's death, thereby satisfying the
requirements of Section 3591(a)(2)(C).

Finally, the Court ordered the parties to suggest an
instruction so that the Court may charge the jury with regard to
the meaning of "direct result" pursuant to Section 3591(a)(2)(C).
Consistent with the Eighth Circuit's guidance in Paul, the
government respectfully submits that "[t]he best way to comply
with section 3591(a)(2) is to actually use the language of the
statute in the jury instruction." Id.  The jury should thus be
instructed as follows:

When determining whether intent or knowledge
has been proven, you may consider any
statements and acts of the Defendant and any
other facts and circumstances in evidence
that may aid in your determination.  You may,
but are not required to, infer that a person
intends the natural and probable consequences
of acts knowingly done or committed.

In order to find the defendant had the
required mental state, you must find that the
defendant intentionally participated in an
act, contemplating that the life of Randolph
Pizzolo would be taken or that lethal force
would be used in connection with a person,
other than one of the participants in the

offense, and that Randolph Pizzolo died as a
direct result of the act undertaken by the
defendant.

                         Respectfully submitted,

                         LORETTA E. LYNCH
                         United States Attorney

             By:   /S/
                         Taryn Merkl
                         Nicole M. Argentieri
                         Jack Dennehy
                         Stephen E. Frank
                         Assistant U.S. Attorneys
                         (718) 254-6064/6232/6133/6132

cc:  Clerk of Court (NGG)(by ECF)
     Defense Counsel (by Email & ECF)