# RICHARD JASPER
**Attorney at Law**
276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone (212) 689-3858
Fax    (212) 689-0669

May 30th, 2011

**BY ECF & EMAIL**
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

                 Re:   <u>United States v Vincent Basciano</u>
                         05 CR 060 (S-12) (NGG)

Dear Judge Garaufis:

       This letter memorandum is respectfully submitted in support of an order prohibiting the Government from making certain improper penalty-phase arguments.

I.      <u>Introduction</u>

       In an abundance of caution, counsel respectfully moves this Court for an order prohibiting the Government from making certain improper penalty-phase arguments. This request is neither vague nor hypothetical: The arguments defendant seeks to prohibit are specifically described in his motion.  They are ones that have been condemned by courts, but nevertheless have been and continue to be advanced by prosecutors in a number of federal capital cases — borrowed and repeated, sometimes almost verbatim, from one to the next.

Hon. Nicholas G. Garaufis
May 30th, 2011
Page **2** of **12**

    This motion is made pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution and 18 U.S.C. § 3593, and is based upon the attached memorandum of law.

II.    <u>Argument</u>

    A motion <u>in limine</u> is an appropriate vehicle to determine the contours of proper summation remarks. <u>See</u>, e.g., <u>United States v. Van Eyl</u>, 468 F.3d 428, 436 (7th Cir. 2006) (district court's definitive ruling on defense motion <u>in limine</u> to preclude specific argument in government closing preserved defense objection); <u>United States v. Doyle</u>, 121 F.3d 1078, 1093-94 (7th Cir. 1997) (affirming district court order granting government's motion in limine to preclude particular argument in defense opening statements).[1]

    As the United States Supreme Court has recognized, a District Court's authority to issue <u>in limine</u> rulings derives from its inherent authority to manage the course of trials. <u>United States v. Luce</u>, 469 U.S. 38, 41 n.4 (1984). Rulings <u>in limine</u> serve the useful purposes of (a) avoiding the delay and potential prejudice that might be caused by objections and sidebars during the course of the government's closing arguments, <u>see</u>, e.g., <u>Wilson v. Williams</u>, 182 F.3d 562, 566 (7th Cir. 1999) (en banc); and (b) ensuring that prejudicial material (including those that could

---

[1] <u>Fineman v. Armstrong World Indus.</u>, 980 F.2d 171, 207 n.26 (3d. Cir. 1992) (civil case; motion <u>in limine</u> to limit closing argument adequate to preserve objections to improper argument); <u>Carruthers v. Georgia</u>, 528 S.E.2d 217, 222 (Ga. 2000) (noting that an objection to a specific improper closing argument can be made through a motion <u>in limine</u>), overruled on other grounds by <u>Vergara v. Georgia</u>, 657 S.E.2d 863 (Ga. 2008); <u>Davis v. Maute</u>, 770 A.2d 36, 41 (Del. 2001) ("Upon [civil defendant's] pre-trial motion <u>in limine</u> to prohibit such improper arguments or characterizations, the trial court was required to issue a definitive ruling that marked out clear boundaries for counsels' opening statements and closing arguments.")

Hon. Nicholas G. Garaufis
May 30th , 2011
Page **3** of **12**

possibly necessitate a retrial) is not placed before the jury, see, e.g., Luce, 469 U.S. at 41 n.4 (citing, inter alia, Fed. Rule Evid. 103(c)).[2]

Accordingly, this motion is being made prior to summations for several reasons. First, this will enable the Government to respond and the Court to resolve these issues more fully and deliberately than if they were raised for the first time at a sidebar during closing arguments with the jury in the box.

Second, many forbidden arguments are so inflammatory or otherwise prejudicial that even sustaining a defense objection and giving a curative instruction could not remedy their effect. Thus, as with other in limine motions, it is preferable that improper summation comments be identified and prohibited in advance, before the jury hears them, and that the Government have guidance as to what appeals to the jury may be made in summation.

Third, should an appeal prove necessary, addressing these issues in advance of summations will best enable the appellate courts to have a complete record of each side's positions and of this Court's rulings, to be able to review any such misconduct should it occur.

Versions of this motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation have been litigated in prior federal capital trials, and the courts have ruled, in advance, that specified arguments would be improper. See, e.g., United States v. O'Reilly, No. 05-CR-80025 (E.D. Mich. Aug.23, 2010) (Dkt. No. 631) (granting, prior to closing statements, defense motion in limine in to as "statements of broad principles" and specifically forbidding government from "draw[ing] any comparison between [defendant's] life behind bars

---

[2] Federal Rule of Evidence 103(c) directs the trial court, in jury cases, to the extent practicable, to conduct proceedings "so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

and [the vicitim]); <u>United States v. Duong</u>, No. CR-01-20154-JF, Tr. 17028-29 (N.D. Cal. Dec. 10, 2010) (court agrees with defense motion: "If [government attorney] argues that these noncrime mitigators generically should get less weight, that's a misstatement of the law."); <u>United States v. Lujan</u>, No. CR 05-0924 RB (D.N.M. Mar. 25, 2011) (Dkt. No. 737) (granting in part and denying in part, without prejudice, defense motion <u>in limine</u>; specifically forbidding counsel for the government from "vouching. bolstering of evidence with facts not admitted at trial, or misstating the evidence" and from "inciting the passions of the jury or suggesting that the jurors have a civic duty to return a sentence of death"; and directing that counsel for both parties refrain from "unfounded and inflammatory attacks on opposing counsel").[3]

    a. <u>Urging the Jury to Ignore or Disregard Legitimate Mitigating Evidence</u>

Jurors must be able to consider and give effect to any and all relevant mitigating evidence offered in support of a sentence less than death, see, e.g., <u>Penry v. Johnson</u>, 532 U.S. 782, 797 (2001); <u>Skipper v. South Carolina</u>, 476 U.S. 1, 4-5 (1986); <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 113-14 (1982); <u>Lockett v. Ohio</u>, 438 U.S. 586, 605 (1978), and they must be aware of their obligation to do so. As the Supreme Court stated in <u>Boyde v. California</u>, the "[p]resentation of mitigating evidence alone . . . does not guarantee that a jury will feel entitled to consider that evidence." 494 U.S. 370, 384 (1990). Jurors may believe themselves precluded from considering relevant mitigation evidence not only as a result of the judge's instructions, "but also as a result

---

[3] With respect to other specific arguments that the <u>Lujan</u> defense asked be forbidden, the court, noting that the trial was not scheduled to begin for three months and that proceedings were expected to last another three months after that, declined to rule so far in advance of any possible penalty-phase closing statements. See <u>id</u>. at 8. The court's denial was expressly without prejudice to the defendant's "ability to raise specific objections prior to the United States' penalty-phase summation." <u>Id</u>. In addition, the court, based upon the motion, cautioned counsel for the government that they "are now on notice" as to the types of closing arguments deemed improper and objectionable by the defense. <u>Id</u>.

of prosecutorial argument dictating that such consideration is forbidden." <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 259 n.21 (2007).

Accordingly, "[a] prosecutor errs by directing the jury to ignore a proposed mitigating factor." <u>United States v. Rodriguez</u>, 581 F.3d 775, 800-801 (8th Cir.2009) (direct review of federal death sentence) (citations omitted); <u>see</u> also <u>Sinisterra v. United States</u>, 600 F.3d 900, 909 (8th Cir. 2010) ("To ensure the reliability of the determination that death was the appropriate punishment, a prosecutor may not argue that [meaningful] consideration [of potentially relevant mitigating evidence] is forbidden.") (citation omitted); <u>DePew v. Anderson</u>, 311 F.3d 742, 749 (6th Cir. 2002) (granting habeas relief and ordering resentencing from state death sentence, where prosecution's inadmissible, inflammatory, and misleading comments "were designed to keep the jury from properly considering and weighing the mitigating evidence offered by the defendant"); <u>Le v. Mullin</u>, 311 F.3d 1002, 1018 (10th Cir. 2002) (prosecutor may not imply that "the jury had the ability to ignore the legal requirement that it must consider mitigating evidence").[4]

---

[4] Although the government may argue that the jurors, in considering the defense evidence, should give the mitigating factors slight weight, see, e.g., <u>United States v. Whitten</u> (Wilson), __F.3d __, 2010 WL 2595315, *11 n.6 (2d Cir. Jun. 30, 2010); <u>United States v. Bolden</u>, 545 F.3d 609, 630 (8th Cir. 2008); <u>United States v. Johnson</u>, 495 F.3d 951, 978 (8th Cir. 2007), as the Supreme Court explained in <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 113-14 (1982): "[T]he sentencer may not give it no weight by excluding such evidence from . . . consideration." Id. (emphasis added); see also <u>Penry v. Lynaugh</u>, 492 U.S. 302, 328 (1989) (death sentence reversed where instructions failed to provide jury a vehicle for fully considering mitigating evidence of abuse defendant suffered as a child), abrogated in part on other grounds by <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002); <u>Hitchcock v. Dugger</u>, 481 U.S. 393, 394, 397-99 (1987) (death sentence reversed where sentencing judge refused as a matter of law to consider defendant's troubled family history); <u>Eddings</u>, 455 U.S. at 113-114 (same, noting also that such evidence is "particularly relevant" when defendant committed the capital crime as a teenager, not far in time from his difficult upbringing); <u>Wilson</u>, __ F.3d at __, 2010 WL 2595315, *11 n.6 ("On review, we ask whether there is a 'reasonable likelihood that the jurors believed themselves to be

>Examples of such improper argument include:
>
>• This is the time for punishment. Punishment. And let me caution you respectfully, and I mean this respectfully, the issue of punishment for the Defendant is not an issue of how it affects his family, not under the law.

Rodriguez, 581 F.3d at 800 (direct review of federal death sentence). The Eighth Circuit concluded that, standing alone, this argument would have improperly directed the jury that family-impact mitigating factors are irrelevant "under the law." Id.; see also Simmons v. Bowersox, 235 F.3d 1124, 1136 n.6, 1137 (8th Cir. 2001) ("Show some mercy to his family, give him death. Look at his family. Look at his little brother. [His little brother] said it all. Someday I want to grow up to be just like him. To be just like him. Spare those kids of that."; such comments have "no place in an American courtroom") (citation omitted); Antwine v. Delo, 54 F.3d. 1357, 1362-64 (8th Cir. 1995) (same, regarding "[I]sn't it much more humane to sentence this man to death so that his brother can get on with his life, and so that the two children can get on with their lives, instead of having to think, every day for the next 50 years, they have a brother or a father locked up in the penitentiary?").

>• As I told you yesterday, he used his age in committing this offense because he didn't believe that you would think that he was capable of it. Well, you do, and you have found it. Don't let him use his age to protect himself now, because then he wins.

Simmons, 235 F.3d at 1136 n.6; see also id. at 1137 (argument "improper": "[W]e condemn the prosecution for teetering on the edge of misstating the law with regard to the significance of Simmons' age as a mitigating factor."); Pierce v. Thaler, 604 F.3d 197, 211 (5th Cir. 2010) ("By essentially instructing the venire members that 'youth isn't relevant,' the [prosecutor's]

---

precluded from considering [the] mitigating evidence.'") (quoting United States v. Fell, 531 F.3d 197, 223 (2d Cir.2008)).

comments may have undermined the jury's ability to give mitigating effect to evidence of [defendant's] youth . . . ."); Ferrell v. State, 29 So. 3d 959, 987 (Fla. 2010) (affirming reversal of death sentence based, in part, upon conclusion that prosecutor erroneously and, therefore, improperly argued that age mitigating factor could only apply to someone younger than defendant).

> b. Suggesting that Mitigating Evidence Requires a Nexus to the Crime or to the Defendant's Culpability for the Offense

A particular kind of forbidden appeal to ignore or disregard mitigating evidence, discussed generally above, is any suggestion that mitigating factors must demonstrate a nexus to the crime. The Supreme Court has recognized that mitigating factors need not relate to the defendant's "culpability for the crime." Tennard v. Dretke, 542 U.S. 274, 285 (2004); Smith v. Texas, 543 U.S. 37, 45 (2004); see also, e.g., United States v. Fell, 531 F.3d 197, 222 (2d Cir. 2008) ("A capital defendant's mitigating evidence need not have a nexus to the murder for which he has been convicted, but need only allow 'the sentencer to reasonably find that it warrants a sentence less than death.'") (quoting Tennard, 542 U.S. at 285), cert. denied, 130 S. Ct. 1880 (2010); State v. Kleypas, 40 P.3d 139, 281-82 (Kan. 2001) (arguments that certain circumstances should not be considered mitigating because they were not causally related to the crime "constituted prosecutorial misconduct"), overruled in part on other grounds, State v. Marsh, 102 P.3d 445, 450 (Kan. 2004)[5]  "The question is not whether evidence in mitigation makes the defendant any less guilty, or the crime any less horrible, but whether it provides a reason why, despite those things, the defendant should not die." United States v. Johnson, 495 F.3d 951, 978

---

[5] The United States Supreme Court reversed and remanded Marsh on other grounds, 548 U.S. 163 (2006), after which the Supreme Court of Kansas vacated its opinion in part on other grounds, 144 P.3d 48 (Kan. 2006).

Hon. Nicholas G. Garaufis
May 30th, 2011
Page **8** of **12**

n.26 (8th Cir. 2007) (direct appeal from federal death sentence) (quotation marks and citation omitted).[6]

> Examples of such improper argument include:
>
> • The intentional murder of children is an unspeakable evil.
> It's an evil that cannot be mitigated by any evidence. None of the defendant's mitigators can take away what she did and her involvement in killing those children. Somebody involved in the murder of children deserves the death penalty.

Johnson, 495 F.3d at 978. The Johnson court cautioned that the government's "infelicitous" wording, standing alone, might have suggested that the defendant's mitigating evidence was only intended to diminish the horror of the killings or of the defendant's involvement therein, when, in fact, some of the mitigating factors "were intended to provide reasons for mercy despite the gravity of the offense, rather than to 'take away' [the defendant's] involvement in the crime or portray the murders as any less evil." Id. at 978 n.26.

> • We have a whole list of things that have been submitted as mitigating circumstances. The Court instructs you that mitigating circumstances are those which in fairness and mercy -- get this -- may be considered as extenuating or reducing the moral culpability or blame. It doesn't say anything about whether you've been a good guy in the past or anything like that. Do these circumstances extenuate or reduce the degree of moral culpability of responsibility for what he did? It's up to you to decide what are mitigating circumstances.

---

[6] In United States v. Fell, 531 F.3d 197 (2d Cir. 2008), two judges suggested, while expressly reserving the issue, that it might not be improper for "a prosecutor to argue that, because such a nexus is absent, the mitigating evidence should be given little or no weight." Id. at 222 n.14. The third judge concluded that the government's arguments "impermissibly suggested that the juror should disregard the mitigating evidence because it did not 'connect' to the charged crimes." Id. In any event, because all three judges agreed that the defendant had not been prejudiced, under the specific facts of that case, the panel expressly declined to resolve their differences. Id. None of the judges, even in dicta, suggested that it would be permissible for the government to argue that the jurors could exclude from consideration any mitigating evidence unconnected to the crime.

> [D]oes that in any way officiate (sic) or mitigate or relieve or make any less horrible what he did . . . ?  I submit to you they do not. . . . Does it make it all right to go out and murder?  Does it make you less guilty when you go out and commit this kind of a crime?
> . . .
> I don't want to go run through all of these.  I submit to you, ladies and gentlemen, there is nothing in here, nothing in that list in any way mitigates or officiates (sic) or alleviates or makes any less horrible what this man did
> . . . .

<u>Le v. Mullin</u>, 311 F.3d 1002, 1016-17 (10th Cir. 2002).

> • Does the defendant's age outweigh what he did?  It doesn't matter if he was seventeen, twenty-seven, or seventy, the crime is still the same, and it's just as vicious.

<u>Simmons v. Bowersox</u>, 235 F.3d 1124, 1136 n.6, 1137 (8th Cir. 2001) (argument "improper"; "we condemn the prosecution for teetering on the edge of misstating the law with regard to the significance of Simmons' age as a mitigating factor").

    c. <u>Arguing that, Because the Defendant Is Serving or Faces a Life Sentence on Other Charges, a Death Sentence is the Only Way to Punish Him for the Murder</u>

In a number of recent prosecutions under the Federal Death Penalty Act, the government has urged the jury to vote for death on a theory that a sentence of life would give the defendant a "free pass" or amount to no punishment at all because the defendant is already serving, or will or could serve, a life sentence on other charges. For example, in <u>United States v. Rodriguez</u>, a federal capital prosecution in the United States District Court for District of North Dakota, No. 2:04-cr-55, a jury convicted the defendant of kidnapping resulting in death, under 18 U.S.C. § 1201(a).  During penalty-phase closing statements, the government argued that a sentence of life "punishes the kidnapping alone" and would treat the murder "as a freebie for which there is no extra punishment . . . ." (Tr. Vol. 42, 8697):

> • Also, he could get the same punishment a defendant with his record would have gotten if he had kidnapped Dru Sjodin from the

Hon. Nicholas G. Garaufis
May 30th, 2011
Page **10** of **12**

> Columbia Mall, taken her across the state line and let her go scared and shaken.
>
> . . .
>
> Prison is what Alfonso Rodriguez knows. Prison is what he's asking for, but death row is what he has earned, and a sentence of death is what this Defendant's intentional aggravated crimes call for under the law of the United States. A prison sentence punishes the kidnapping alone.
>
> . . .
>
> Let the Defendant know that these heinous, cruel, depraved torturous factors in this intentional murder will not be treated as a freebie for which there is no extra punishment on top of what he would have gotten . . . . Tell Alfonso Rodriguez that no matter what he thought as Dru Sjodin desperately needed mercy, no matter what he thought, Dru Sjodin was not a freebie. (Tr. Vol. 42, 8697, 8699).[7]

So, too, in United States v. Davis, a federal capital prosecution in the Eastern District of Louisiana, the government argued:

> • He's already serving life for the cocaine conviction. If you don't return a sentence of death, you're giving him a free pass for killing Kim Marie Groves. Is that just? He won't be punished at all. And I want you to listen to what I'm saying. You give him life, you don't give him death, he won't be punished at all for killing, executing Kim Marie Groves. He gets a free pass. Is that just? Huh? Life here is no punishment at all. . . . He gets life, he wins again. . . . [I]f you don't return a sentence of death, which is the only just sentence in this case, Len Davis will be celebrating again tonight. Don't let that happen. United States v. Davis, Case No. 94-CR-381-C, Tr. 111-12 (E.D. La. Aug. 8, 2005).[8]

---

[7] On appeal, Mr. Rodriguez challenged the statements from the government's closing arguments set out in the text above. The Eighth Circuit affirmed the defendant's federal death sentence; the court did not hold that the government's statements were permissible, but, instead, concluded that Rodriguez had not been prejudiced because the district court had both sustained defense objections to the argument quoted in the text above and properly instructed the jury on its sentencing options. United States v. Rodriguez, 581 F.3d 775, 799-800 (8th Cir. 2009).

[8] On appeal, the Fifth Circuit declined to address whether this was improper, since the argument had not been objected to below: "Courts have divided on the question of whether such an argument is permissible . . . . Given the contradictory authority, and our lack of circuit precedent on the issue, the district court's error, if any, was not clear or obvious." United States v. Davis, ___ F.3d ___, 2010 WL 2388422 (5th Cir. June 16, 2010).

This kind of argument, in any form, is highly improper. In Sumner v. Shuman, 483 U.S. 66 (1987), the Court specifically rejected "[t]he argument is that the death penalty must be mandatory for life-term inmates because there is no other available punishment for one already serving a sentence of life imprisonment without possibility of parole. . . . [T]here are other sanctions less severe than execution that can be imposed even on a life-term inmate. An inmate's terms of confinement can be limited further, such as through a transfer to a more restrictive custody or correctional facility or deprivation of privileges of work or socialization." Id. at 83-84.

Thus, several lower courts have condemned prosecutorial arguments such as those set out above. In State v. Smith, 755 S.W.2d 757 (Tenn. 1988), overruled in part on other grounds, State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), for example, the court held it was improper for the prosecutor to tell jurors that "to give life, a punishment of life, in this second killing is the equivalent of giving no punishment at all." Id. at 767. The court found the argument "effectively eliminated the option of life imprisonment as a sentence" for the defendant in the case before the jury. The prejudice was "obvious" because his punishment "should have been determined without regard . . . to the punishment to which the defendant was sentenced in that case." Id.; see also State v. Bigbee, 885 S.W.2d 797, 810 (Tenn. 1994) (reversing death sentence based on, among other misconduct, prosecutor's argument that "Mr. Bigbee has already received a life sentence, a life sentence. . . . What's another life sentence going to do? Nothing. He's already got a life sentence. Another life sentence is no skin off his nose."), superseded by statute on other grounds as stated in State v. Stout, 46 S.W.3d 689 (Tenn. 2001).

Similarly, in People v. Kuntu, 752 N.E.2d 380, 403 (Ill. 2001), the Illinois Supreme Court vacated a death sentence because of the prosecutor's argument that, because life imprisonment

Hon. Nicholas G. Garaufis
May 30th , 2011
Page **12** of **12**

was the mandated punishment for two or more killings, the jury's failure to impose a death sentence in the case of a defendant who had killed seven victims would "be giving defendant five free murders." Id. at 403. It observed that such argument "is simply an inflammatory statement with no basis in either law or fact; it is tantamount to the conclusion that, as a matter of law, a person who kills more than two persons should be sentenced to death."

III.     Conclusion

For the foregoing reasons, the Defense respectfully requests the Court prohibit the Government from advancing the previously specified arguments in closing or rebuttal.

>Respectfully submitted,
>
>_____/s/_____
>Richard Jasper
>George Goltzer
>Ying Stafford
>*Attorneys for Vincent Basciano*