UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

    - against-                                      05 CR 060 (S-12) (NGG)


VINCENT BASCIANO,

                    Defendant.
------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
POSTTRIAL MOTIONS FOR DEFENDANT VINCENT BASCIANO**


**<u>INTRODUCTION</u>**

       This Memorandum of Law is submitted on behalf of defendant Basciano, in support of his motion for an order setting aside the jury verdict pursuant to Rule 29 (c) of the Federal Rules of Criminal Procedure and/or in the alternative an order granting a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds that: (1) the jury should have been instructed regarding the law of multiple conspiracies and the termination of a conspiracy rather than the single conspiracy charged, (2) and as such, the evidence adduced at trial was insufficient to support Counts One (Conspiracy to Commit Murder in the Aid of Racketeering), Count Two (Murder in Aid of Racketeering) and Count Three (Using, Carrying and Possessing a Firearm) as charged in the Indictment.

       As detailed more fully below, these grounds, either independently or collectively, compel acquittal for Basciano on each conviction, or at the very least, a new trial on each count.

       Accordingly, it is with the utmost respect that Basciano submits that his motion for a judgment of acquittal or in the alternative a new trial be granted in its entirety.

## STATEMENT OF THE FACTS

On July 31st, 2004, Joseph Massino, sometimes referred to as the "Last Don," was convicted of, among other charges, multiple murders in aid of racketeering.  Massino was the reigning boss of the Bonanno family for over twenty years. During Massino's trial, in March of 2004, the defendant Basciano became the acting boss of the Bonanno family.  On November 22nd, 2004, Massino was informed that despite his extensive proffers with the Government, the Department of Justice would continue to seek the death penalty against him for the murder of Gerlando Sciascia.   On November 19th, 2004, Basciano was arrested. At Basciano's arraignment on November 23rd, 2004, Basciano was placed in a holding cell with Massino at the federal court house in Brooklyn, New York.  During the period that Basciano and Massino were placed in the holding cell, Basciano updated Massino concerning the affairs of the Bonanno family.  However, Basciano did not inform Massino about an alleged order by Basciano to kill Randolph Pizzolo.   Subsequently, Basciano was placed in receiving and discharge at the Metropolitan Detention Center, New York ("MDC").  On November 30th, 2004, Basciano was placed in general population at the MDC.

On December 1st, 2004 Randolph Pizzolo's body was found murdered in Brooklyn, New York.  On December 3rd, 2004, Basciano attended a co-defendant meeting at the MDC, during which the murder of Pizzolo was discussed. Shortly thereafter, Massino reached out to the Government to provide information regarding Basciano's alleged involvement in the murder of Pizzolo. It was then arranged that Massino would consensually record Basciano, while both were at the MDC. A pretext was arranged by the Government, to place both Massino and Basciano in the Special Housing Unit ("SHU") at the MDC, so that Massino was able to aggressively question Basciano regarding the Pizzolo murder. Massino recorded Basciano on two separate occasions - January 3rd, 2005 and January 7th, 2005 ("Massino tapes").  On both occasions,

Massino exhaustively questioned Basciano regarding (1) Basciano's failure to inform Massino about the alleged order by Basciano to kill Pizzolo (2) and Basciano's inconsistent statements to Massino about the Pizzolo murder. In addition to the Massino tapes, the Government presented the testimony of several cooperating witnesses, including Massino, that in most instances, contradicted Basciano's statement on the Massino tapes.

On May 5th, 2011 after the close of the Government's case, defense counsel moved for a judgment of acquittal under Rule 29 of the Rules of Federal Procedure.  In particular, counsel argued that according to the Government's own evidence, Cicale, not Basciano, terminated the conspiracy to murder Pizzolo after Basciano's arrest. Therefore, Basciano could not possibly have been part of the subsequent murder in aid of racketeering of Pizzolo as the Government alleged in the indictment.  The Court denied the defendant's motion. As discussed more fully below, the defense requested the jury be instructed regarding the law of multiple conspiracies, because of the unique facts of the case, and the evidence adduced at trial. In addition, the defense made a specific request regarding multiple conspiracies and termination of the conspiracy. The Court denied the defendant's request for both instructions.

The jury began deliberations on May 10th, 2011. On May 11th, 2005, the jury requested clarification regarding the law of conspiracy. Both parties submitted proposed supplemental instructions to be submitted to the jury. The Court sent a written instruction to the jury room. On May 16th, 2011, the jury reached a verdict finding Basciano guilty of all three counts in the indictment.

## ARGUMENT

I. The Defendant's Request for Jury Instruction Concerning Multiple Conspiracies and Termination of the Conspiracy

On April 18th, 2011, the defendant submitted a proposed charge that included a request for the jury to be charged regarding the law concerning multiple conspiracies. (See ECF Doc. 1143 at 28-29).  On May 6th, 2011, the Court conducted a charge conference at the close of the defendant's case. At the charge conference, the defense argued at length for the Court to include an instruction regarding multiple conspiracies, as well as, an instruction regarding termination of the conspiracy.

> MR. GOLTZER: Thank you. Let me tell you precisely what I am going to argue to the jury and precisely what I am not going to argue to the jury and why the government is absolutely wrong in converting its theory into an unfair and inappropriate jury instruction.
>
> Mr. Basciano is not guilty of any of these crimes because he never gave an order and he never gave an okay. That's been my position from my opening. It's going to be my position on my closing, and that's what I am going to argue vociferously and extensively. The jury may reject my argument. They are free to do that. In addition to the request for an instruction regarding multiple conspiracies, the defense argued in favor of an instruction concerning the termination of a conspiracy.
>
> That leaves us in a position where they have to be properly instructed on the very unique facts of this case. It is absolutely inappropriate to give the Pinkerton charge. What the Court should instruct the jury is very simple – a conspiracy terminates either when its object is accomplished or when its object is frustrated. That's part of what they should be told, because that's a fair statement of the law and it is up to the jury to decide the import of Mr. Cicale's words, notwithstanding my arguments that they shouldn't believe him.
>
> Secondly, the jury should be instructed on the concept of multiple conspiracies. It is a jury question whether the government has proven the single conspiracy charged in the indictment or a separate group of conspiracies and that the defendant was or was not a member of the particular conspiracy charged in the indictment. The government alleges one continuous conspiracy. I dispute that on a lot of levels, but it doesn't matter what they say and it doesn't matter what I say. What matters is what the jury finds based upon a fair and appropriate jury instruction. This jury can't reach a fair verdict unless they understand that there could have been one conspiracy, two conspiracies, or no conspiracies,

and it's up to them to decide what, if anything, the government proved and it's up to the government to bear the burden of proof.

If I chose to argue it -- well, let me put it this way. I'm entitled to the instruction no matter what I argue. If on a view most favorable to the defendant it is an appropriate instruction and on a view most favorable to the defendant the first -- whether or not the conspiracy was absolutely terminated by virtue of Cicale's remarks and actions, in a view most favorable to the defendant there was a second conspiracy of which Basciano was never a member, in a view most favorable to the defendant, and in deciding whether the defendant is entitled to instruction, that's the standard -- view most view most favorable to the defendant… (Trial Transcript 7969-71)

Subsequently, at the request of the Court, the defense submitted the following proposed instruction, regarding multiple conspiracies and termination of the conspiracy:

Whether there existed a single unlawful agreement, or many such agreements, or if the agreement charged terminated, or indeed, no agreement at all, is a question of fact for you, the jury to determine in accordance with the instructions I am about to give you.

Proof of separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment.

When two or more people join together to further one common unlawful purpose, a single conspiracy exists, unless the conspiracy is terminated and then a new one arises. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.

If you find that the conspiracy charged in the Indictment did not exist, the government bears the burden that Mr. Basciano was a member of the conspiracy which resulted in the death of Mr. Pizzolo, and not some other conspiracy that was terminated.

(See ECF Doc. 1192). In addition, the defense maintained that the proposed instruction was necessary otherwise the jury would presume that the conspiracy as charged in the indictment continued.  Accordingly, the burden would shift to the defendant to prove termination of the charged conspiracy in violation of the Fifth Amendment.  On May 9th, 2011, the Court denied the defense request for the jury to be instructed regarding multiple conspiracies and termination of

5

the conspiracy. On May 10th, 2011, the jury began deliberations. On May 11th, 2011, the jury

requested clarification of the Court's instructions regarding conspiracy.

> THE COURT: Mr. Basciano is present. I have a note from the jury dated today, Court
>
> Exhibit number 9, states as follows: Your Honor, we would like clarification on page 38 of the charge, last paragraph, second sentence "he may join it at any point during its progress and be held responsible for all that has gone on before he joined and all that may be done thereafter so long as he remained a member of the conspiracy." They underlined "so long as he remained a member of the conspiracy." According to the law, under what circumstances would a [person] no longer remain a member of the conspiracy? Thank you. Foreperson number 1. (Trial Transcript 8356-57).

In response to the jury's request for clarification, the defense submitted the following proposed

instruction along with arguments in support of the instruction:

> MR. GOLTZER: Requested charge in response to juror's note, United States versus Basciano.
>
> The conspiracy may end in a number of ways. It may end when the agreement to commit a crime is abandoned so there are no longer two persons who are part of the agreement. A conspiracy may end either when its purpose is accomplished or frustrated. In order to decide the question of whether a person is responsible for the acts of coconspirators, you must be convinced beyond a reasonable doubt that the person who is a member at the time the crime was committed or the act was done, if the conspiracy ended and the defendant did not join a later conspiracy that was formed after the termination of the first one, you may not hold him responsible for coconspirators' acts for the later conspiracy. The question of how many, if any, conspiracies have been proven in this case is a question of fact for you, the jury, to resolve. The government bears the burden of proof beyond a reasonable doubt that Basciano was a member of the conspiracy charged in the indictment and not some other conspiracy. (Trial Transcript 8357-58).
>
> [.....] we found the case of Van Riper versus the United States, 13 F.2d 961, Second Circuit, 1926. I think I'm quoting the language from it.  A scheme or conspiracy may be definitively abandoned

though some of the participants subsequently reach another agreement to accomplish the same objective with others. Unless you find an unbroken continuing nucleus of at least two participants, you may not find that a conspiracy once formed has continued to exist. (Trial Transcript 8358)

*         *         *

What the government is doing is shifting the burden of proof in violation of the Fifth Amendment to the United States Constitution and I rely in a confrere way, the quotation on Sandstrom versus Montana in the United States Supreme Court and Patterson versus New York from the United States Supreme Court. The government bears the burden of proving in the first instance Mr. Basciano's conspiratorial liability. The government bears the burden of proving --. (Trial Transcript at 8362).

The parties argued extensively regarding the precise language to be presented to the jury.  During arguments to the Court, the defense made clear based upon the facts adduced at trial, termination of the conspiracy was not premised upon the withdrawal by the defendant, but, by the alleged members of the conspiracy.

MR. GOLTZER: You know, Judge, I don't dispute the notion that the jury, if they found the conspiracy was terminated after Basciano joined it, I don't dispute they're entitled to find him guilty of the conspiracy count. That's not my position. I'm not raising the affirmative defense of withdrawal. If the jury believed Basciano was a member of the conspiracy and then it was terminated, the jury would be entitled to find him guilty of the conspiracy count. There's no question about it. My concern, however, is  that by finding that there's one continuous conspiracy as opposed to a termination, by asking this question, they might find him guilty of a capital murder that he's not guilty of because they think he's responsible for what Cicale did after he terminated the conspiracy. That's the finding they can't make. (Trial Transcript at 8367)

*         *         *

MR. GOLTZER: Of course.
The point is if the jury is under the mistaken impression that Basciano is responsible for everything that happened after Cicale terminated the conspiracy by his withdrawal and his

> communication of the termination of the plan to everybody else
> and their agreement to end it, then Mr. Basciano is being denied a
> fair trial and the presumption of a continuation of the conspiracy
> violates his Fifth Amendment right because it can't be fairly
> applied to these facts in this case. (Trial Transcript at 8368)

The Court gave the following charge:

> THE COURT: I'm going to give the following charge, the
> following supplemental charge as follows.
>
> To the jury, in response to your note to the court today, I instruct
> you as follows.
>
> Where the government has shown beyond a reasonable doubt that a
> conspiracy existed and that a defendant was a member of it, his
> membership is presumed to continue until the last overt act by any
> of the coconspirators unless the defendant proves by a
> preponderance of the evidence that the conspiracy was terminated
> or that he took affirmative steps to withdraw. The definition of
> preponderance of the evidence is set forth in the jury charge under
> the heading "Venue" at page 12. (Trial Transcript 8376-77)

The defense objected and stated the following:

> MR. GOLTZER: We respectfully object to that instruction and
> request all our prior instructions be given. To the extent the court
> denies that, we accept. We further request if the court gives that
> particular instruction, define the term "termination" as an
> abandonment or withdrawal by any coconspirator so that there is
> no more -- there are no longer two people who are party to the
> agreement. We feel they must be told that if there are no longer
> two parties to the agreement, by virtue of the act of any
> conspirator, it terminates. (Trial Transcript at 8377).

Thus, the additional issue is the jury was improperly instructed that the defendant must prove by

a preponderance of the evidence, he terminated the conspiracy or withdrew from the conspiracy.

Because, what is key, and will be argued in more detail below, is the Government's own case

established Cicale, not Basciano, withdrew from the conspiracy and communicated his

withdrawal to other co-conspirators.   Thus, leaving Basciano to conspire with himself, which as

the Court is aware, is illogical and legally impossible.   Therefore, the only conclusion is there

was no longer a conspiracy. And, the defense contends it is for this reason, the jury asked the question – "a[A]ccording to the law, under what circumstances would a [person] no longer remain a member of the conspiracy?"

However, given that the jury was not instructed regarding the law of multiple conspiracies, and was subsequently instructed the defendant must prove by a preponderance of the evidence that he withdrew from the conspiracy or that the conspiracy, was terminated, the jury was not able to evaluate the evidence with the full knowledge of the law. Therefore, a rational trier of fact jury properly instructed regarding the law of conspiracy could not have found that the Government proved the single conspiracy charged in the indictment. In addition, soon after the Court gave the supplemental instruction to the jury, the jury requested to listen to the portion of the Massino tapes where Basciano tells Massino that he told Cicale to "let him go." At trial the defense argued that the statement "let him go" meant to not kill Pizzolo, on the other hand, the Government argued that "let him go" meant to kill Pizzolo. This evidence will be discussed in more detail below, but the essential point here is; the jury's request for this particular portion of the tape indicated, that subsequent, to the Court's supplemental instruction, the jury sought evidence that Basciano withdrew from the conspiracy, thus suggesting the jury had shifted the burden to the defendant. Moreover, since the jury was instructed to presume that the conspiracy continued, and that it was the defendant's burden to establish his withdrawal, the jury was not permitted to consider the alleged agreement between Basciano-Cicale-Aiello, was separate and apart from the new agreement, between Mancuso-Cicale-Aiello. Therefore, the Government's evidence proved multiple conspiracies, and as such is not proof of the single conspiracy charged.

II.     The Government's Case Established Multiple Conspiracies Not the Single Conspiracy Charged

There is a consensus as to what constitutes a conspiracy, what is required to establish a conspiracy, and how to connect a particular defendant to a given conspiracy. "Agreement is the primary element of a conspiracy." United States v. Varelli, 407 F.2d 735, 741 (7th Cir. 1969), cert. denied, 405 U.S. 1040 (1972); see United States v. Broce, 488 U.S. 563, 570 (1989) (agreement "is all but synonymous" with conspiracy).  and ". . . the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects." Braverman v. United States, 317 U.S. 49, 53 (1942).  The Government has utterly failed to prove that Basciano was part of the subsequent agreement between Mancuso-Cicale-Aiello. Distinct agreements constitute distinct violations of the law and should be the subject of distinct prosecutions. Regardless of whether the Government proves those agreements by direct evidence of written agreements, or by statements made by the parties the conduct prosecuted in a conspiracy case is the agreement.     To establish the existence of a conspiracy and connect a defendant to it, three elements must be proved:[1] (1) knowledge of the object of the conspiracy, (2) knowledge of the composition of the conspiracy, and (3) intent to join the conspiracy. "The agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." United States v. Varelli, 407 F.2d supra; see Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943); United States v. Continental Group, Inc., 603 F.2d 444, 462-63 (3d Cir. 1979), cert. denied, 444 U.S. 1032 (1980); United States v. Lemm, 680 F.2d 1193, 1204 (8th Cir. 1982), cert. denied, 459 U.S. 1110 (1983).  And, it is possible that a conspiracy that once existed ceased to exist before the conspirators accomplished their objective. United States v Rastelli, 870 F.2d 822, 838 (2d Cir), cert denied, 493 U.S. 982, 110 S. Ct. 515, 107 L.Ed. 2d 516 (1989); see e.g.,

---

[1] "Single v. Multiple" Criminal Conspiracies: A Uniform Method of Inquiry for Due Process and Double Jeopardy Purposes, 65 Minn. L. Rev. 295, 297-98 (1981)

United States v Spero, 331 F. 3d 57, 61 (2d Cir.), cert denied, 540 U.S. 819, 214 S. ct. 100, 157 L. Ed. 2d 36 (2003). A conspiracy exists when at least two people combine and agree for the purpose of committing an unlawful act.  A conspirator may withdraw from a conspiracy when he or she abandons the combination and agreement, if one or more conspirators withdraw from a plot, and there are not at least two people who remain in agreement, there is no longer conspiracy.    A scheme or conspiracy may be definitively abandoned, though some of the participants subsequently reach another agreement to accomplish the same objective with others. Unless you find that there is an unbroken continuing nucleus of at least two participants, you may not find that conspiracy once formed has continued to exist.  See Van Riper v United States, 13 F. 2d 961 (2d Cir. 1926).

### a.    Defendant's Right to Jury Instruction

The Court of Appeals has made clear that, so long as it is consistent with the applicable law and the evidence adduced at trial, a defendant is entitled to an instruction regarding his theory of the case:

> We have repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory. In United States v. Pedroza, 750 F.2d 187, 205 (2d Cir.1984) (quoting United States v. O'Connor, 237 F.2d 466, 474 n. 8 (2d Cir.1956) and citing cases), we stated that "[i]t is well established that '[a] criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible, that evidence may be.'" We note that this rule is accepted in other circuits as well. See, e.g., United States v. Plummer, 789 F.2d 435, 438 (6th Cir.1986); United States v. Wellington, 754 F.2d 1457, 1463 (9th Cir.1985), cert. denied, 474 U.S. 1032, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1986); United States v. Hyman, 741 F.2d 906, 912 (7th Cir.1984).

United States v. Durham, 825 F.2d 716, 718-19 (2d Cir. 1987).  The Court further recognized that presentation of the defense theory in the defendant's summation is no substitute for an instruction by the Court; as the Court of Appeals observed, "it is of some value to a defendant to

have the trial judge clearly indicate to the jury what his theory of the case is, and that that theory, if believed, justifies acquittal."  Id. at 719.  See also United States v. Regan, 937 F.2d 823, 826-27 (2d Cir. 1991) (reversing where court failed to instruct jury that the defense theory, if believed, warranted acquittal).


    b.  <u>Government's Evidence</u>

   The Government's evidence established that a separate conspiracy was formed to kill Pizzolo, for which Basciano, was not, and could not have been a part thereof. If one credits the testimony of Dominick Cicale, it proves that the original plot i.e. conspiracy/agreement to kill Pizzolo was terminated upon Basciano's arrest.

> <u>Direct Examination of Dominick Cicale</u>
> Q What happened during that meeting?
> A During that meeting, I told Anthony Ace Aiello that the hit was called off. We weren't going to kill Randy Pizzolo so let Joey Gambini know.
> Q What was Ace's reaction when you told him that?
> A Ace said all right. You know, he said okay. He asked why. I told him my feelings. He agreed. (Trial Testimony at 7124).

And, as demonstrated by Cicale's testimony, in addition to calling "off," the hit Cicale communicated the directives that Pizzolo was not to be killed, to the remaining alleged co-conspirators - Ace Aiello and Joey Gambina, thereby, terminating the original conspiracy.   A conspiracy no longer exists when no two people are still in agreement, because all other members of the conspiracy had withdrawn. A conspirator withdraws from a conspiracy, when he abandons the combination and agreement. A jury can infer that a conspirator withdrew from a conspiracy if he communicated the abandonment, in a manner reasonably calculated to reach co-conspirators.  In this case, Cicale not only communicated that the plan to kill Pizzolo was off, he ordered that Pizzolo not killed.

Cross Examination of Dominick Cicale

Q You had no reason to believe that Anthony Ace Aiello wouldn't transmit your instructions to Joey Gambini?

A Anthony Ace Aiello transmitted my instructions to Joey Gambini, that's correct.

Q In fact, at the time this Anthony Ace Aiello transmitted your instructions, you were the official captain of his crew?

A I was the official captain of my own crew, sir.

Q Was he in your crew?

A Yes, sir.

\*       \*       \*

Q And you had no reason to believe that Joey Gambini wouldn't follow your order not to kill Randy Pizzolo, did you?

A No, sir.

Q And you had no reason to believe that Ace Aiello wouldn't follow your order not to kill Randy Pizzolo, isn't that correct?

A That's correct.

Q So as of the time that those instructions were communicated -- by the way, you say Mr. Basciano had told you to do it, right?

A No. I said Mr. Basciano ordered me to do it.

Q After he ordered you to do it, he was arrested, is that correct?

A Yes, sir, that's correct.

Q And you had decided to disobey whatever he ordered you to do?

A I decided at that point in time it would be the right decision to take it off the table, yes, sir.

Q You did that?

A Yes, sir, I did.

Q Notwithstanding his order?

A At that time I felt that was the best decision, that's correct, sir.

\*       \*       \*

Q As of the time that you took the order off, it was your belief that Randy Pizzolo was going to be alive, is that correct?

A Yes, sir, that's correct.

Q As of the time that you took the order off, it was your understanding that nobody in your crew was going to take care of or hit or murder Randy Pizzolo, correct?

A Yes, sir, that was correct.

Q And as of the time that you instructed your underlings not to kill Randy Pizzolo, as far as you were concerned, it was over?

A Yes, sir, it was over.

The Government presented no evidence to rectify that the conspiracy to murder Pizzolo had terminated. Incredibly, the Government did not present any evidence that Basciano had any

communication with Mancuso, after Basciano's arrest, let alone an instruction to re-affirm his order to kill Pizzolo.  After Basciano's arrest on November 19th, 2004, Basciano was placed in receiving and discharge at the MDC, wherein, each and every one of his social calls were monitored and recorded by the prison. Moreover, the Government could have but chose not to call cooperating witness attorney Thomas Lee to testify that he passed a message to Mancuso from Basciano to follow through with Basciano's original order to kill Pizzolo,[2] although the Government presented evidence that Lee visited with Basciano prior to Pizzolo's murder. Instead, the Government relied upon testimony of Cicale, where he stated, that at a second meeting with Mancuso, after Basciano's arrest, Mancuso told Cicale, "that thing with Randy make sure it gets done."[3] (Trial Transcript at 7187).  More  importantly,  what is conspicuously absent from Cicale's testimony and the Government's case is a meeting, or a discussion, indicating any agreement between Basciano and Mancuso, prior to Basciano's arrest regarding the order to kill Pizzolo. The Government simply asked the jury to speculate that Mancuso's word to Cicale that nothing "skips a beat" proves Mancuso re-affirmed Basciano's original order. Again, the instruction regarding multiple conspiracies would have assisted the jury in evaluating whether the Government sufficiently established Basciano's membership in the second conspiracy that resulted in Pizzolo's death. Instead, a rational trier of fact properly instructed would have been left to speculate that a message was conveyed to Mancuso directly from Basciano to "re-affirm" Basciano's original order to kill Pizzolo.  The defense asserts that the Court may determine that an inference is unreasonable where the jury engaged 'in a degree of

---

[2] As the Court is aware, Thomas Lee previously testified for the Government against Basciano about, among other things, messages that he passed to the street on behalf of Basciano.
[3] The defense does not in any way concede the credibility of the testimony of Cicale; in fact, we assert that Cicale perjured himself during this trial.

speculation and conjecture that renders its finding a guess or mere possibility.' <u>United States v. Jones</u>, 44 F.3d 860, 865 (10th Cir. 1995)."

Additionally, the evidence presented by Government contradicts what the Government asked the jury to infer in convicting Basciano, which is, that Mancuso's order to kill Pizzolo was simply a re-affirmation of Basciano's original order to kill Pizzolo.  Firstly, in or about October 23rd, 2004, Cicale was given the definitive order by Basciano to kill Pizzolo. As stated previously, Cicale makes no reference to a meeting with, or statement by Basciano, that Mancuso had any knowledge of the existing order to kill Pizzolo.   Yet, Cicale testified that he needed to devise a way to let Basciano know that the Mancuso ordered the murder of Pizzolo.

> <u>Cross Examination of Dominick Cicale</u>
> 11 Q And after Mr. Pizzolo's death you sent a message to
> 12 Basciano that Michael had me take care of footings and
> 13 foundation; is that correct?
> 14 A Yes, sir, that's correct.
> 15 Q And when you sent that message using the words footings
> 16 and foundations were you trying to devise a way to let
> 17 Vincent Basciano know what happened?
> 18 A I did devise a way to let Vincent Basciano know what
> 19 happened.
> 20 Q And that was the way, by mentioning the word footing and
> 21 foundation?
> 22 MS. ARGENTIERI: Objection.
> 23 THE COURT: You may answer.
> 24 A Yes, sir, that's correct.
> 25 Q And were you also trying to let Vincent Basciano know who
> 1 actually gave you the okay to complete the task of killing
> 2 Pizzolo?
> 3 A I did let Vinny Basciano know about who gave the final
> 4 order to kill Randy Pizzolo.
> 5 MR. GOLTZER: Referring, Your Honor, to Government
> 6 Exhibit 3500 DC 84 B as in boy, pages 83 to -- 5843, I'm
> 7 sorry, 5843 to 5844?
> 8 THE COURT: I'm sorry 3500 DC 84B?
> 9 MR. GOLTZER:yes, sir. Beginning at page 5843 line
> 10 19.
> 11
> 12 THE COURT: Hold on (perusing). Go ahead.

13 Q At a prior trial, Mr. Cicale, did you give the
14 following answers to the following questions:
15 Question: You sent a message with the word footings
16 and foundations?
17 Answer: Correct.
18 Question: What did you mean by that word?
19 Answer: I was trying to devise a way to let Vincent
20 Basciano know what happened and who actually gave me the okay
21 to complete this task, and on the Schier's Avenue job after
22 Randy was getting in Vinny's bad graces we started on the
23 footings. There were imperfections. One footing had a barrel
24 (ph) sticking out of it and another footing had a piece of
25 plywood in it, so I figured Vinny Basciano would realize when
1 I told him that Michael had fixed the footings that he would
2 realize what that meant because that was pertaining to Randy
3 Pizzolo.
4 Did you give those answers to those questions under
5 oath at a prior trial?
6 A Yes, sir, that's correct.
7 Q The word okay was your word in your answer, was it not?
8 A Yes, sir. (Trial Transcript 7336-7338).

Hence, the question remains why Cicale needed to find a way to inform Basciano that Mancuso issued the final order to kill Pizzolo, if, in fact, Basciano had previously agreed with Mancuso that Pizzolo be killed.  Once more, the jury may have been contemplating the same question in requesting clarification concerning the law of conspiracy.  Also, the Government presented the testimony of Joseph "Guiseppe" Gambina, whose testimony is in stark contradiction to Cicale's testimony.  Particularly, Gambina testifies that he never received any order from Cicale to kill Pizzolo prior to Basciano's arrest. In fact, it was after Basciano was arrested that Cicale approaches Gambina to kill Pizzolo.  Furthermore, Gambina testified that he never agreed to kill Pizzolo as testified to by Cicale.  To more fully illustrate the contradiction in the timeline of the testimony by both Cicale and Gambina the defense provide the following diagram:

# GAMBINA'S TESTIMONY



**A couple days after Basciano's arrest, Gambina informed of Pizzolo hit.** (Gambina: 6580 ln. 3-24)

**Next day, Gambina says he's not going to do it.** (Gambina: 6585 ln. 21)

**Never approached about plan to kill Randy prior to Basciano's arrest.** (Gambina: 6650 ln. 6-17)

**Cicale tries to convince him again, Gambina says no.** (Gambina: 6590 ln. 17-25)

**Oct. 23:**
Napa Sonoma Incident

**Nov. 19:**
Basciano Arrested

**Nov. 30:**
Pizzolo Murdered

# <u>CICALE'S TESTIMONY</u>



a.      The Massino Tape – "Let Him Go"

Almost immediately after the Court sent the supplemental instruction back to the jury room, the jurors requested to listen to the portion of the Massino tapes where Basciano stated "let him go." Again, as stated previously, both sides disputed the meaning of "let him go." However, it was Government's witnesses that provided the proof that "let him go" did not mean kill. The following is an excerpt of the relevant part of the Massino tape.

> MASSINO:    A hundred percent. You see the last thing you want
> to see Vinny, is like I told you, is junkies.  My
> policy is, as long as I know it, I'll never use a junky
> for a piece of work. I don't trust them.
>
> BASCIANO:   Listen to me, (UI), when I left off, I says, listen to
> me, when I go in the can, this kid over here, let him
> go.  I thought it was Dominick and Joey Gambina.
> Dominick told, told me, I believe, and I'm not
> getting messages the right way, that he didn't
> handle himself the right way. Dominick called
> me back and (UI) hold up Joe's.
>
> MASSINO:    Yeah, but who gave the okay to clip 'em? You did?
>
> BASCIANO:   Michael.
>
> MASSINO:    Oh.
>
> BASCIANO:   Yeah.
>
> MASSINO:    Aha.
>
> BASCIANO:   It wasn't me. You know what I'm saying?
> (Govt. Exh. 405-T at 51: Lines 3-23)

The Government's own witnesses testified at several points in the trial that "Let him go" did not mean to kill someone.

> Cross Examination of Joseph Massino
> 3 A I could have killed him. They wanted me to kill him and
> 4 I gave him a pass. The west side come to me when I was on the

5 floor. *They said, "You need help? We'll get rid of him." I*
6 *said, "Let him go. Let him do what he's doing."*
7 *Q You said let him go?*
8 *A Let him do what he's doing. Let him run with it.*
9 *Q You just said let him go?*
10 *A Yes.*
11 *Q What does "let him go" mean?*
12 *A Let him run the family.*
13 *Q Let him go didn't mean kill him?*
14 *A No.* (Trial Testimony at 5357).

Direct Examination of James Tartaglione
10 A What happened was, supposedly Randy got into an argument
11 with this Kasman; smacks Kasman in the face or gives him a
rap.
12 A couple of days later Kasman sends four or five guys
13 to give Randy a beating, in which they do. Randy signs an
14 incident report stating who it was that gave him the beating,
15 and that was the incident report I received.
16 Q Randy reported the incident?
17 A Yes.
18 *Q What, if anything, did Jackie Nose ask you to do about it?*
19 *A Chase him.*
20 *Q What does that mean?*
21 *A Let him go.*
22 *Q What does it mean to chase somebody?*
23 *A Not to have them around you.*
24 *Q And did Jackie Nose ask for Randy to be killed?*
25 *A No.* (Trial Transcript at 5800)

Cross Examination of James Tartaglione
10 Q What is "chase"?
11 A Well, you turn around, you chase somebody that's around
12 you, that you don't feel he's, he's -- he should be part of
13 this life, or associated with this life.
14 *Q What's "let him go"?*
15 *A Same thing.*
16 *Q It doesn't mean kill him?*
17 *A No.* (Trial Transcript at 6023)

Direct Examination of Guiseppe Gambina
20 Q Did you later have a conversation with John Palazzolo
21 regarding Anthony's transfer to Bruno?
22 A Yes.
23 Q What was the substance of that conversation?
24 *A I just told John, you know, what John, let him go. If he*

> *25 wants to be there, just let him go. Don't put in no beef.*
> (Trial Transcript at 6517).

Most respectfully, the defense asserts that a jury properly instructed regarding multiple conspiracies and termination of the conspiracy could have concluded, in conjunction with Cicale's testimony, Basciano did not intend for Pizzolo to be killed after Basciano went to jail. As a result, it would not make sense that Basciano intended for Pizzolo to be killed after he went to jail, and therefore was not a participant to the conspiracy that killed Pizzolo.

III.   Basciano's Rule 29 Motion

In essence, the defense contends, that had the jury been instructed regarding multiple conspiracies and termination of a conspiracy the jury would have found the evidence insufficient to sustain a conviction on the counts charged.  Since, a rational trier of fact properly instructed regarding the law of conspiracy, would have to conclude that the evidence was insufficient to prove beyond a reasonable doubt Basciano, was a member of the conspiracy that resulted in the death of Randolph Pizzolo, and as such, the conviction under Count Two and Three of the indictment must be dismissed.[4]  At the very least, all the evidence introduced by the Government to support a theory of guilt on Count Two and Three equally support a theory of innocence, and as such requires a rational trier of fact to find reasonable doubt.[5]  Therefore, we incorporate our previous arguments and assert that the evidence was insufficient to convict Basciano of the counts charged in the indictment.

A Court may grant a motion for acquittal, under Rule 29 of the Federal Rules of Criminal Procedure if, after viewing the evidence in the light most favorable to the Government and

---

[4] Although, we do not specifically address Count One in this argument, the defense does not concede that the evidence was sufficient to convict Basciano of the original conspiracy.
[5] Regarding Count Three, the Court instructed the jury to decide on a Pinkerton theory therefore all arguments concerning Count Two are incorporated and equally apply to Count Three.

drawing all reasonable inferences in its favor, the Court determines that "no rational trier of fact could have concluded that the Government met its burden of proof." United States v. Cassese, 428 F.3d 92 (2nd Cir. 2005); United States v. Gotti, 2006 US Dist. LEXIS 66641 (SDNY 2006); United States v. Stewart, 305 F. Supp.2d 368 (SDNY 2004); United States v. Morrison, 158 F.3d 34, 49 (2d. Cir. 1998); see United States v. Irving, 452 F.3d 110 (2d Cir. 2006) ("A rule 29 should be granted only if the district court finds there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." (internal quotation marks omitted); accord United States v. Gaskin, 364 F.3d 438, 459-60 (2d. Cir. 2004).   Although the "defendant challenging the sufficiency of the evidence supporting the conviction faces a 'heavy burden,'" a Court may nonetheless enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 1994) (quoting United States v. Matthews, 20 F.3d 538, 548 (2d. Cir. 1994)).

The defendant is well aware that the Court's review must consider "the evidence in its totality" and the Government "need not negate every theory of innocence." United States v. Autuori, 212 F.3d 105, 114 (2d. Cir. 2000).   "Crediting every inference that could have been drawn in the Government's favor, we will reject a sufficiency challenge if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Jones, 455 F.3d 134, 143 (2d. Cir. 2006) (quoting United States v. Best, 219 F.3d 192, 200 (2d. Cir. 2000)(Emphasis in original)).   The Court must also credit the testimony of the Government witness and "it is not for the court on a Rule 29 motion to make credibility determinations." Autouri, 212 F.3d at 118.

However, the critical question that needs to be answered in this case is "whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence,

and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." Autouri, 212 F.3d at 114 (quoting United States v. Mariani, 725 at F.2d 865) (Emphasis supplied). Additionally, this Court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." Id., (citing Martinez, 54 F.3d at 1043. See also, United States v. Soto, 47 F.3d 546, 549 (2d Cir.1995); United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir.1994)).

Here, the defense contends that the Government has failed to prove that Basciano was part of the agreement/conspiracy that resulted in the death of Pizzolo - Count Two of the Indictment. For the reason that the conspiracy as charged by the Government was terminated because the co-conspirators withdrew from the conspiracy after Basciano's arrest. Therefore, Basciano was not part of the second conspiracy, and did not intentionally and knowingly, join the conspiracy that resulted in Pizzolo's death. There are many cases where Rule 29 motions were granted, often because there was insufficient evidence.[6]

---

[6] United States v. Cassese, 428 F.3d 92 (2nd Cir. 2005) (insufficient evidence of willfulness); United States v. Frampton, 382 F.3d 213 (2nd Cir. 2004)(insufficient evidence of intent); United States v. Rodriguez, 392 F.3d 539 (2nd Cir. 2004) (insufficient evidence of intent in conspiracy case); United States v. Jones, 393 F.3d 107 (2nd Cir. 2004); United States v. Samaria, 239 F.3d 228 (2nd Cir. 2001) (insufficient evidence of intent in conspiracy case); United States v. Autouri, 212 F.3d 105 (2 Cir. 2000); United States v. Nusraty, 867 F.2d 759 (2nd Cir. 1989) (insufficient evidence of knowledge and intent in conspiracy case); United States v. Gotti, 2006 US Dist. LEXIS 66641 (SDNY 2006);United States v. Stewart, 305 F. Supp.2d 368 (SDNY 2004) (insufficient evidence of intent); United States v. Yannotti, 415 F. Supp.2d 280 (SDNY 2005)(jury engaged in impermissible speculation); United States v. Martinez-Sandoval, 2003 US Dist. LEXIS 3045 (SDNY 2003) (insufficient evidence of intent in conspiracy case); United States v. Scofield, 433 F.3d 580 (8 Cir. 2006); United States v. Pahulu, 108 th Fed. Appx 606 (10 Cir. 2004); United States v. Hernandez, 301 F.3d 886 (2nd Cir. 2002);United States v.Hernandez-Bautista, 293 F.3d 845 (5 Circuit 2002); United States v. Frigerio, 254 F.3d 30 (1st Cir. 2001); United States v. Rahseparian, 231 F.3d 1257 (10th Cir. 2000); United States v. Rosario-Diaz, 202 F.3d 54 (1st Cir. 2000) (insufficient evidence of knowledge with respect to aiding and abetting); United States v. Schuchmann, 84 F.3d 752 (5th Cir. 1996); United States v. Pappathanasi, 383 F. Supp.2d 289 (Dist. MA 2005) (insufficient evidence of willfulness in

While the jury may draw reasonable inferences from the evidence, it may not engage in speculation or conjecture, especially as to the crucial issue of the defendant's intent. United States v. Autuori, 212 F.3d 105 (2nd Cir. 2000); United States v. Lopac, 411 F. Supp.2d 350 (SDNY 2006). In Stewart, supra, the court granted a Rule 29 motion, stating:

> "... [T]he Second Circuit has emphasized that 'where a fact to be proved is also an element of the offense... it is not enough that the inferences in the government's favor are permissible....The Supreme Court has noted that 'the defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense "element"' Apprendi v. New Jersey, 530 US 466, 493 (2000).
>
> ...'It is the function of the judge to deny the jury an opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation... The critical point in this boundary is the existence or nonexistence of reasonable doubt as to guilt. If the evidence is such that reasonable jurymen must necessarily have such doubt, the judge must require acquittal, because no other result is permissible within the fixed boundaries of jury consideration.' United States v. Taylor, 464 F.2d 240, 243 (quoting Curley v. United States, 160 F.2d 229, 232)" Stewart, supra, at 375, emphasis supplied and some citations deleted.

Similarly, in Rahseparian, supra, the court, with respect to an alleged conspiracy, granted the Rule 29 motion, stating:

> "A defendant's knowledge of the purpose of the criminal conspiracy must be shown by 'clear, unequivocal evidence.' See United States v. Austin, 786 F.2d 986, 988 (10th Cir. 1986). ...An inference is unreasonable where the jury engaged 'in a degree of speculation and conjecture that renders its finding a guess or mere possibility.' United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)." Rahseparian, supra, at 1262.

---

conspiracy case); United States v. Jones, 291 F. Supp.2d 78 (D CT. 2003) (jury engaged in speculation); United States v. Waters, 850 F. Supp. 1550 (ND AL 1994); United States v. Price, 623 F.2d 587 (9 Cir. 1980) (insufficient evidence of intent and the knowledge); United States v. REI, 725 F. Supp. 587 (D. DC 1989).

As previously argued in detail above, the Government did not present clear and unequivocal evidence, that Basicano joined the second conspiracy therefore, any inference that he had knowledge of the purpose would be speculation. Actually, this case, is akin to <u>United States v. Pappathanasi</u>, <u>supra</u> where the district court granted a Rule 29 motion at the close of the government's case because, looking just at the evidence elicited by the government there was insufficient evidence of intent in a conspiracy case. The court stated, with respect to the Rule 29 standard:

> "... 'The government is not bound by all of the evidence it presents. **However, if the government introduces evidence contrary to the inferences it wants the jury to draw, it must introduce other direct or circumstantial evidence to relieve itself of the effect flowing from the evidence introduced.** The evidence must be sufficient to prove the fact at issue beyond a reasonable doubt. ...' <u>United States v. Sampson</u>, 335 F. Supp.2d 201 (D. Mass. 2004)(citing First Circuit cases). ..."

<u>Pappathanasi</u>, supra, at 290, emphasis supplied. In <u>United States v. Lopac</u>, the court found insufficient evidence of intent in a conspiracy case, stating:

> "... To establish the requirement of intent, 'there must be something more than "mere knowledge, approval of or acquiescence in the object or the purpose of the conspiracy."' United States v. Cianchetti, 315 F.2d 584, 588 (2 Cir. 1963). The defendant must 'in some way promote the venture himself, make it his own, [or] have a stake in its outcome.' United States v. Falcone, 109 F.2d 579, 581 (2 Cir. 1940), aff'd 311 US 205 (1940). ..." Lopac, supra, at 361.
>
>                       *              *              *
>
> ...Lopac, like the defendants in Cianchetti and Nusraty, disavowed criminal intent by showing no interest to take part in any of the conspiratorial activities or to receive any benefit from the conspiracy..." Lopac, supra, at 366-367.

As argued previously, the Government did not in any way relieve itself of the effect of the evidence that contradicted the inferences it asked the jury to draw i.e. the testimony of Gambina.

Consequently, we most respectfully request the Court grant Basciano's motion pursuant to Rule 29(c).

IV.     Basciano's Rule 33 Motion

In this case, the defense asserts, that the supplemental instruction provided to the jury should have been given orally in the presence of counsel and the defendant. See Guam v. Marquez, 963 F.2d 1311, 1314-15 (9th Cir. 1992). Also, the defense submits the perjured testimony of Cicale as well as the previous arguments detailed above warrant that Basciano be granted a new trial in the interests of justice.

    a.     The Court's Supplemental Jury Instruction Should have been Read Aloud
           in the Presence of Counsel and the Defendant

"The Fifth and Sixth Amendments to the United States Constitution require that every criminal conviction rest upon a jury determination that the defendant is guilty beyond a reasonable doubt of every element of the charged crime." Sandstrom v. Montana, 442 U.S. 510, 520 (1979). Thus, "a trial court has a duty to instruct the jury on every element of an offense with which a defendant is charged." United States v. Gaudin, 515 U.S. 506, 514, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), and determine the defendant's guilt as to every element of the crime with which he is charged, id. at 510, 115 S.Ct. 2310. See also Guam v. Marquez, 963 F.2d 1311, 1314-15 (9th Cir. 1992) (holding 'that all jury instructions must be read aloud to the jury in the presence of counsel and the defendant'); 2 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 483, at 693-94 (2d ed. 1982) (stating that jury instructions 'must be given orally by the judge')."

    b.     The Government's Witness Committed Perjury

At this trial the Government's witness, Dominick Cicale, committed perjury before Your Honor.  It was established by the testimony of Carlos Medina, also a cooperating witness for the United States Attorney's Office in the Eastern District, that Cicale committed perjury during his testimony in this trial.  The following is the testimony of both Cicale and Carlos Medina.

**<u>Testimony of Dominick Cicale</u>**
Q Isn't it true that you tried to frame Vincent Basciano in
a false murder plot so you could get bail?
A Absolutely not. That's incorrect.
Q Isn't it true that Dino Diablo said to you Santomaggio
could lose his job?
A Absolutely not. That's incorrect.
Q Isn't it true that you said to Dino Diablo "fuck him"?
A No, sir, I did not.
Q You deny all of it?
A Yes, sir, I do. It's not true. (Trial Transcript at 7510).

**<u>Testimony of Carlos Medina</u>**
Q Did Mr. Cicale ever propose that you do anything for him
connected to Vinny Gorgeous?
A Yes.
Q What was that?
A He asked me around the end of April of 2007 or the
beginning of May if I could get together and put on a story
where I was to call my prosecutors and tell my prosecutors
that I was being hired by Marco Santomaggio on behalf of Vinny
Gorgeous to kill him.
Q Was that your idea or Dominick Cicale's idea?
A No. It was all Dominick Cicale's idea. Q Was that your idea or
Dominick Cicale's idea?
A No. It was all Dominick Cicale's idea.
Q Did Dominick Cicale tell you during that conversation why
he wanted to do that?
A He was stressed out and because they had him in jail
because -- because the government had him in jail. He didn't
want to be in that unit and he believed he needed to be either
in a safe house with the U.S. marshals or out on bail.
Q Did Dominick Cicale tell you how using you in this plan
would get him bail or a safe house? (Trial Transcript at 7884)

*          *          *

Q Did he tell you why he wanted to use you?

> A Well, he told me that he needed somebody with good
> credibility with the government, somebody who had already
> testified. Unfortunately, he already knew of me from being in
> SHU in MDC Brooklyn because a guy who I was cooperating
> against was with him in SHU. (Trial Transcript at 7885).

A motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure may be granted, "if the interests of justice so require." Fed.R.Crim. P. 33. The rule gives the trial court broad discretion … "to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d.at133 (quoting United States v. Sanchez, 969 F.2d. 1409, 1413 (2d Cir. 1992)). A district court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. United States v. Ferguson, 246 F.3d. at 134. While it is well-settled that "motions for a new trial are disfavored in this Circuit, "United States v. Gambino, 59 F.3d. 353, 364 (2d Cir. 1995), and recognized that the defendant bears the burden of proving the necessity of a new trial, United States v. Sasso, 59 F.3d. 341, 350 (2d Cir. 1995), a Court has much broader discretion under Rule 33 than it does under Rule 29, and can upset the jury's verdict "where exceptional circumstances can be demonstrated." United States v. Sanchez, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice…The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. 'There must be a real concern that an innocent person may have been convicted.'" U.S. v. D'Angelo, 2004 WL 315237 (EDNY 2004) *29 citing U.S. v. Ferguson, 246 F.3d at 133-134.

## CONCLUSION

For the foregoing reasons set forth above Basciano's motion for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure and/or motion for a new trial

pursuant to Rule 33 of the Federal Rules of Criminal Procedure, must be granted in their entirety; or alternatively a hearing be granted on both motions.

Respectfully Submitted,

_____/s/_____
George Goltzer
Richard Jasper
Ying Stafford
*Attorneys for the Defendant*